# 22-1870

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

Roger Rowe

Plaintiff-Appellant

- v -

Cenlar FSB, CitiMortgage, Inc

Defendant(s)-Appellee(s)

---

On Appeal from the United States District Court
for the Eastern District of New York
District Court Case No. 2:19-cv-7278-JMA-AYS
From a Contract Action Related to a Consumer Credit Transaction

---

Appendix Vol I
Page 1 to 234

---

Roger Rowe, Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

---

RECEIVED

# Table of Contents

Docket List Oct 11, 2022................................................................................ 1

First Amended Complaint Doc 19.................................................................. 3

Exhibit A Cenlar Letter dated July 12, 2019................................................. 49

Exhibit B First Second Mortgage 119k, 134k............................................... 52

Exhibit C Notice of Rescission October 21, 2019......................................... 75

Exhibit D Credit Report................................................................................. 82

Exhibit E Cenlar Payoff Statement................................................................ 102

Exhibit F Notice of Service Transfer & Note Indorsement............................ 107

Exhibit G Cenlar Loan History Report.......................................................... 118

Exhibit H Loan Servicing Disclosure............................................................ 134

Exhibit I QWR June 27, 2019....................................................................... 136

Exhibit J Cenlar response to QWR August 2, 2019...................................... 138

Exhibit K Daily Treasury Yield Rates........................................................... 142

Exhibit L Loan Disclosure............................................................................ 149

Exhibit M Settlement Cost............................................................................ 151

Exhibit N Estimate Closing Cost.................................................................. 153

Corporate Disclosure Doc 21........................................................................ 156

Motion to Dismiss Doc 24............................................................................ 158

Opposition to Motion to Dismiss.................................................................. 178

Plaintiff Statement of Material Fact.............................................................. 209

Plaintiff Affirmation in Opposition of Motion to Dismiss............................ 216

Memorandum of Law in further Support of Motion...................................... 224

Memorandum & Order Dec 22, 2021 Doc 25............................................... 235

Judgment Dec 29, 2021 Doc 26.................................................................... 246

Motion for Relief from Judgement Doc 27................................................................. 248

Opposition to Relief from Judgment Doc 28............................................................ 384

Plaintiff Affirmation for Relief Doc 29..................................................................... 397

Motion to Compel Doc 30........................................................................................ 422

Opposition to Motion to Compel Doc 31.................................................................. 427

Plaintiff Affirmation for Motion to Compel Doc 32................................................. 434

Memorandum and Order Aug 25, 2022 Doc 33........................................................ 438

Notice of Appeal Doc 34.......................................................................................... 449

Case 22-1870, Document 38, 12/12/2022, 3441836, Page4 of 237

Query    Reports    Utilities    Help    Log Out

**2:19-cv-07278-JMA-AYS** Rowe v. Cenlar FSB
Joan M. Azrack, presiding
Anne Y. Shields, referral
**Date filed:** 12/30/2019
**Date terminated:** 12/29/2021
**Date of last filing:** 08/26/2022

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | *Filed & Entered:* | 12/30/2019 | Filing Fee Received |
| 1 | *Filed & Entered:* | 12/30/2019 | Complaint |
| 2 | *Filed & Entered:* | 12/30/2019 | Summons Issued |
| 3 | *Filed & Entered:* | 12/30/2019 | Pro Se Consent to Electronic Notification |
| 4 | *Filed & Entered:* | 12/30/2019 | Clerks Notice of Rule 73 |
| 6 | *Filed:* *Entered:* | 01/02/2020 01/03/2020 | Summons Returned Executed |
| 5 | *Filed & Entered:* | 01/03/2020 | Letter |
| 7 | *Filed & Entered:* *Terminated:* | 01/21/2020 02/21/2020 | Motion for Pre Motion Conference |
| 8 | *Filed & Entered:* | 01/21/2020 | Notice of Appearance |
| 9 | *Filed:* *Entered:* | 01/27/2020 01/28/2020 | Response in Opposition to Motion |
| | *Filed & Entered:* | 01/29/2020 | Email Test |
| | *Filed & Entered:* | 02/21/2020 | Order on Motion for Pre Motion Conference |
| 10 | *Filed & Entered:* | 03/05/2020 | Pre Motion Conference |
| 11 | *Filed & Entered:* *Terminated:* | 04/28/2020 03/15/2021 | Motion to Dismiss for Failure to State a Claim |
| 12 | *Filed & Entered:* | 06/15/2020 | Memorandum in Opposition |
| 13 | *Filed & Entered:* | 06/15/2020 | Reply in Support |
| 14 | *Filed & Entered:* *Terminated:* | 08/06/2020 03/15/2021 | Motion to Amend/Correct/Supplement |
| 15 | *Filed & Entered:* | 08/14/2020 | Notice of Appearance |
| 16 | *Filed & Entered:* | 08/14/2020 | Memorandum in Opposition |
| 17 | *Filed:* *Entered:* | 08/17/2020 08/18/2020 | Reply to Response to Motion |
| 18 | *Filed & Entered:* *Terminated:* | 11/12/2020 03/15/2021 | Motion for Hearing |
| | *Filed & Entered:* | 03/15/2021 | Order on Motion to Dismiss for Failure to State a Claim |
| 19 | *Filed:* *Entered:* | 03/22/2021 03/23/2021 | Amended Complaint |

Case 22-1870, Document 38, 12/12/2022, 3441836, Page5 of 237

| 20 | Filed & Entered: | 04/08/2021 | Notice of Appearance |
|----|----|----|----|
| 21 | Filed & Entered: | 04/08/2021 | Corporate Disclosure Statement |
| 22 | Filed & Entered:<br>Terminated: | 04/08/2021<br>05/24/2021 | Motion for Pre Motion Conference |
| 23 | Filed:<br>Entered: | 04/15/2021<br>04/16/2021 | Response in Opposition to Motion |
|  | Filed & Entered: | 05/24/2021 | Order on Motion for Pre Motion Conference |
| 24 | Filed & Entered:<br>Terminated: | 08/11/2021<br>12/22/2021 | Motion to Dismiss for Failure to State a Claim |
| 25 | Filed & Entered: | 12/22/2021 | Order on Motion to Dismiss for Failure to State a Claim |
| 26 | Filed & Entered: | 12/29/2021 | Judgment |
| 27 | Filed:<br>Entered:<br>Terminated: | 01/10/2022<br>01/11/2022<br>08/25/2022 | Motion for Reconsideration |
| 28 | Filed & Entered: | 01/19/2022 | Memorandum in Opposition |
| 29 | Filed:<br>Entered: | 01/28/2022<br>01/31/2022 | Affidavit in Support of Motion |
|  | Filed & Entered: | 06/08/2022 | Incorrect Case/Document/Entry Information. |
| 30 | Filed & Entered: | 06/08/2022 | Motion to Compel |
| 31 | Filed & Entered: | 06/15/2022 | Memorandum in Opposition |
| 32 | Filed:<br>Entered: | 06/17/2022<br>06/21/2022 | Motion to Compel |
| 33 | Filed & Entered: | 08/25/2022 | Order on Motion for Reconsideration |
|  | Filed & Entered: | 08/26/2022 | Electronic Index to Record on Appeal |
| 34 | Filed & Entered: | 08/26/2022 | Notice of Appeal |
| 35 | Filed & Entered: | 08/26/2022 | USCA Appeal Fees |

| PACER Service Center | | | |
|----|----|----|----|
| **Transaction Receipt** | | | |
| 10/11/2022 09:48:00 | | | |
| PACER Login: | RVROWENY | Client Code: | |
| Description: | History/Documents | Search Criteria: | 2:19-cv-07278-JMA-AYS |
| Billable Pages: | 2 | Cost: | 0.20 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAR 2 2021   ★

2021 MAR 22  PM 2: 25

LONG ISLAND OFFICE

Roger Rowe
       Plaintiff(s)

2:19-cv-07278-JMA-AYS

-v-

Cenlar FSB,
CitiMortgage, Inc.
       Defendant(s)

**FIRST AMENDED
COMPLAINT**
Jury trial requested

RECEIVED

MAR 2 3 2021

EDNY PRO SE OFFICE

## I. PRELIMINARY STATEMENT

1. This Complaint is filed for compensatory damages under UCC § 3-419 the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter called "TILA") to enforce the plaintiff's right relative to Defendant(s) breach of contract, breach of fiduciary duty and conversion of Plaintiff's property. .

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court as a matter of Federal Question of Law by 15 U.S.C. § 1640(e), 15 U.S.C. § 1641(g) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

3. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within the district.

### III. PARTIES

5. The Plaintiff, Roger Rowe, is a natural person, residing at 20 Spruce rd Amityville NY, 11701; phone # 631-767-6537 ; email rroweny@gmail.com

6. Defendant (New Creditor), Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

7. Defendant (Assignee), CitiMortgage, Inc, is a mortgage company engaged in the business of residential mortgage loan services. CitiMortgage operates in the United States at 399 Park Ave, New York, NY 10022

8. At all times relevant hereto, the Defendant(s) New Creditor and assignee, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

### IV. FACTUAL ALLEGATIONS

9. On November 7, 2002 Plaintiff entered into a credit transaction with Citibank, .N.A a non party to this action (see Exhibit B)

Page **2** of **32**

Case 22-1870, Document 38, 12/12/2022, 3441838, Page8 of 237

10. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original Citibank, N.A loan was currently owned by Federal National Mortgage Administration (FNMA) a non party to this action located at Mid Town Center 1100 15th Street NW Washington, DC 20005.

11. A true copy of the July 12, 2019 letter evidencing Defendant Cenlar's statements is attached hereto, marked PLAINTIFF'S EXHIBIT A, and by this reference is incorporated herein.

12. As part of this consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home.

13. The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

14. A true and accurate copy of the mortgage evidencing Citibank's security interest in the amount of $157,500.00 is attached hereto, marked PLAINTIFF'S EXHIBIT B, and by this reference is incorporated herein.

15. On or about July 12, 2019 Plaintiff was notified that Defendant Cenlar was assigned servicing rights which is the rights to collect the debt obligation in question (see Exhibit F page 1 to 5).

16. Both Defendant Cenlar FSB and CitiMortgage failed disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C.

1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

17. Defendant failed to respond properly to Plaintiff's notice of rescission (see Exhibit C). As such Plaintiff commenced this action against Defendant Cenlar on December 30, 2019.

18. In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion.

19. Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge.

20. Plaintiff know submits this amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment includes objections to Defendant Cenlar's contention that Plaintiff is in default as well as the addition of Defendant CitiMortgage.

21. Plaintiff includes CitiMortgage in this action based on Defendants Cenlar's allegation that they are a sub servicer for CitiMortgage. As such based on the information provided Plaintiff believes that CitiMortgage is the current assignee of Plaintiff's mortgage.

22. Plaintiff entered into a credit transaction with Citibank on November 7, 2002. However the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to Citibank, N.A. exclusively and was apparently used to secure these receivables in this transaction as well.

23. Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. is negligent as it relates to altering and producing an unauthorized signature.

24. By executing an unauthorized signature Citibank altered the instrument discharging Plaintiff from any liability.

25. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

26. Not only was Citibank N.A. negligent as it relates to the production of an unauthorized signature. Citibank N.A. altered the instrument when it made material

changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As such Plaintiff asserts the following cause of action against Defendants.

## V. FIRST CAUSE OF ACTION RIGHT OF RESCISSION CONVERSION TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq.

27. Plaintiff incorporates the allegations in Paragraphs 9 thru 26 above with the same force and effect as if herein set forth.

28. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 1026.23 (12 C.F.R. § 1026.23 [formerly § 226.23]).

29. Plaintiff is a consumer within the meaning of 15 U.S.C. §1602(i) [§ 1602(h) prior to Dodd-Frank amendments] and Regulation Z §1026.2(a)(11) [formerly § 226.2(a)(11)].

30. In the course of this consumer credit transaction, Defendant Creditor (Cenlar) and Defendant Assigner (CitiMortgage) violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

-PA 8-

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant Creditor's place of business.

e. Clearly and conspicuously disclosed the effects of rescission.

f. Clearly and conspicuously disclosed the date the rescission period expired.

31. The Defendants failed to provide a mortgage transfer disclosure. Pursuant to § 1026.39.

32. Defendants failure to deliver notice pursuant to § 1026.23 extended the start of Plaintiff's rescission period to three years for the time the notice of rescission was sent to Defendant .

33. On October 21, 2019, Plaintiff exercised his right to rescind Defendants security interest in the property known as 20 Spruce rd Amityville, NY 11701.  A true and accurate copy of that notice of rescission is attached hereto, marked PLAINTIFF'S EXHIBIT C, and by this reference is incorporated herein.

34. More than 20 calendar days have passed since the Defendants received copies of the Plaintiff's notice of rescission.

35. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction,

including the security interest described in Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

36. The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

37. As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendant Cenlar and CitiMortgage are liable to Plaintiff for:

a. Rescission of this transaction.

b. Termination of any security interest in Plaintiff's property created under the transaction.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

d. Statutory damages pursuant to 15 U.S.C. § 1640 of $4,000 for the disclosure violations.

e. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's rescission notice.

f. Forfeiture of return of loan proceeds.

g. Actual damages in an amount to be determined at trial.

h. Reasonable costs of this action including reasonable attorney fee.

i. Award such other further relief as the Court deems just and proper.

CONVERSION

38. Defendant Cenlar's failure to return the security instrument on demand resulted in an act of conversion.

39. Pursuant to UCC § 3-419(1) conversion accurse when (a) "a drawee to whom it is delivered for acceptance refuses to return it on demand," (b) "any person to whom it is delivered for payment refuses on demand either to pay or to return it," or (c) "it is paid on a forged indorsement." N.Y. U.C.C. § 3-419(1), 3-419(1)(a) – 3-419(1)(c); *see* N.Y. U.C.C. § 3-102(1)(e); *id.* § 3-104 (defining "negotiable instrument").

40. The term forgery is included in the meaning of unauthorized signature. Pursuant to UCC § 1-201(41) General Definitions "Unauthorized signature" means a signature made without actual, implied, or apparent authority. The term includes a forgery.

41. Despite knowledge of the forged signature and Plaintiff's October 21, 2019 demand for the return of the instrument, Defendant Cenlar nor CitiMortgage have attempted to returned Plaintiff's property.

42. As such UCC § 3-419(2) states that In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the

instrument.   In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

43. Here the face of the instruments dated November 7, 2002 is $119,893.44 and the instrument dated October 23, 1989 is $134,400.00, Total for both instruments is $254,293.44 (see Exhibit F page 6 & 8).

44.  Given the subrogative and severable nature of the related contracts and agreements. Both CitiMortgage and Cenlar are liable severly for the original creditors ("Citibank") act of conversion.

## CENLAR CONVERSION LIABILITY RELATIVE TO CITIBANK ACTIONS

45.  As the purchaser of the debt obligation (see Exhibit F Notice of Service Transfer page 1 to 5) Cenlar is liable to Plaintiff for Citibank's conversion of Plaintiff's property. Pursuant to UCC § 3-419(1) conversion accurse when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand, (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it, or (c) it is paid on a forged indorsement.

46. Here the face of the Note proves the instrument was forged and altered. Pursuant to UCC § 3-407 any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number of relations of the parties (b) an incomplete instrument, by completing it otherwise than as authorized (c) the writing as signed, by adding to it or by removing any part of it.

47. In this instance the alteration changed (a) the number of parties to the contract (b) was an incomplete and unauthorized instrument (c) the writing removed Plaintiff's liability with the use of the term "without recourse".

48. Blacks Law defines the term "without recourse" as the inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This notation indicates a lack of means or legal right. As such the Note provided notice to Cenlar of its inability to enforce.

49. Moreover UCC § 3-407(2)(a) states that alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense.

50. At no time did Plaintiff assent or was precluded from asserting a defense. As such Defendant Cenlar is liable to Plaintiff for the face value of the instruments dated November 7, 2002 of $119,893.44 and for the face value of the instrument dated October 23, 1989 of $134,400.00, Total for both instruments $254,293.44 (see Exhibit F page 6 & 8).

51. In addition to the liabilities under UCC § 3-419, the Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

52. Total State and Federal conversion damage claim based on Citibank's forged signature $ 553,990.23

## CITIMORTGAGE CONVERSION LIABILITY RELATIVE TO CITIBANK ACTIONS

53. As the assignee of the debt obligation (see Exhibit F Notice of Service Transfer) CitiMortgage is liable for Citibank's conversion of Plaintiff property. Pursuant to UCC § 3-419(1) conversion accurse when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand, (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it, or (c) it is paid on a forged indorsement.

54. Here the face of the Note proves the instrument was forged and altered. Pursuant to UCC § 3-407 any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number of relations of the parties (b) an incomplete instrument, by completing it otherwise than as authorized (c) the writing as signed, by adding to it or by removing any part of it.

55. The alteration changed (a) the number and relationships of parties to the contract (b) was an incomplete and unauthorized instrument (c) the writing removed Plaintiff's liability with the use of the term "without recourse".

56. Blacks Law defines the term "without recourse" as the inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This

notation indicates a lack of means or legal right. As such the Note provided notice to CitiMortgage of its inability to enforce this instrument.

57. Moreover UCC § 3-407(2)(a) states that alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense.

58. At no time did Plaintiff assent or was precluded from asserting a defense. As such Defendant CitiMortgage is liable to Plaintiff for the face value of the instruments dated November 7, 2002 for $119,893.44 and for the face value of the instrument dated October 23, 1989 for $134,400.00, Total for both instruments $254,293.44 (see Exhibit F page 6 & 8).

59. In addition to the liabilities under UCC § 3-419, the Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

60. Total State and Federal conversion damages $ 553,990.23

## VI. SECOND CAUSE OF ACTION BREACH OF CONTRACT& BREACH OF FIDUCIARY DUTY

61 Under New York law, to establish a prima facie case for breach of contract, a plaintiff must show (1) existence of a contract, (2) plaintiff's performance there under, (3) defendant's breach of that contract, and (4) resulting damages. E.g., U.S.

Bank Nat'l Ass'n v. Lieberman, 98 A.D.3d 422, 423, 950 N.Y.S.2d 127, 129 (1st Dep't 2012); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004).

62. The existence of the Note and Mortgage between Plaintiff and Citibank N.A. is prima facie evidence of a contract between the parties (see Exhibit F page 6 & 8).

63. The Plaintiff performed under the terms of the agreement and as such the Plaintiff had no liability to pay the instrument and is entitled to recourse on the instrument against such payment.

64. As an accommodation party Plaintiff is not liable to the party accommodated (see UCC § 3-415(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party).

65. Citibank N.A. breached the contract when they negligently altered the contract by means of an unauthorized signature which resulted in the sale of Plaintiff mortgage obligation.  Citibank N.A. did not get Plaintiff's authorization to sale Plaintiff's collateral or associated debt obligation.

66. Citibank N.A. was not authorize to transfer Plaintiff's title. Pursuant to UCC § 9-203 a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral.

67. UCC § 9-203(b)(2) indicates that a security interest is enforceable against the

debtor and third parties with respect to collateral only if the debtor has the rights in the collateral or the power to transfer rights in the collateral to secured party.

68. Plaintiff did not authorize Citibank N.A. to transfer his property and as such Citibank N.A. breached the contract when they negligently altered the contract by changing the number and relationships of the parties. As evident by the indorsement on the Note, Citibank N.A. materially changed the contract when it added CitiMortgage and Cenlar as a party's (see Exhibit F)

69. Pursuant to UCC § 3-415(5). An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party. As such Plaintiff has a right of recourse to recover all cost incurred on this instrument.

70. On or around March 15, 2019 CitiMortgage and Cenlar informed Plaintiff that they where holders of Plaintiff's mortgage and note evidenced by (Exhibit F). As such Plaintiff is well within the statute of limitation to bring this breach of contract action. New York law provides a six year statute of limitation of a breach of contract claim therefore Plaintiff claim is timely.

71. Citibank was negligent when they altered and forged Plaintiff's signature. UCC § 3-406 states that Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in

due course.

72. Moreover as an "accommodation party" the Plaintiff is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

73. 15 U.S.C. 1641(d)(1) allows any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

74. Based on the face of the mortgage and note (see Exhibit F) as well as the mortgage documents in Exhibit L, Exhibit M and Exhibit N the Defendants had knowledge that this loan was that of a mortgage referred to in section 1602(aa).

CENLAR LIABILITY FOR CITIBANK BREACH OF CONTRACT

75. Cenlar is liable for amount paid by Plaintiff $186,969.42 principle and interest and $7,634.37 closing cost Total $194,603.79.

76. In addition to damages that are the natural and probable consequence of the breach, Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

77. As such Cenlar is liable for actual damages resulting from cost incurred for money paid to Citibank the "accommodated party" by Plaintiff the "accommodation party". Pursuant to UCC § 3-415(5) Defendant Cenlar is liable for actual cost and Federal damages allowed under 15 U.S.C. 1641(d)(2)(B); Total damages $ 494,300.58.

## CITIMORTGAGE LIABILITY FOR CITIBANK BREACH OF CONTRACT

78. CitiMortgage is liable for amount paid by Plaintiff $186,969.42 principle and interest and $7,634.37 closing cost Total $194,603.79.

79. In addition to damages that are the natural and probable consequence of the breach, Plaintiff is entitled to statutory damages under TILA. 15 U.S.C. 1641(d)(2)(B) allows (i) the amount of all remaining indebtedness $105,093.00 (see Exhibit A) (ii) the total amount paid by the consumer in connection with the

transaction. $186,969.42 principle and interest and $7,634.37 closing cost Total paid $194,603.79.

80. As such CitiMortgage is liable for actual damages resulting from cost incurred for money paid to Citibank the "accommodated party" by Plaintiff the "accommodation party". Pursuant to UCC § 3-415(5) Defendant CitiMortgage is liable for actual cost and Federal damages allowed under 15 U.S.C. 1641(d)(2)(B); Total damages $ 494,300.58.

Breach of Fiduciary Duty

81. The contract between the Defendant and the Plaintiff is that of a bailment. A contract of bailment exists when a person turns over an article of property for a particular purpose or merely for safekeeping to another person who accepts the property with the understanding that it will be returned or kept until reclaimed or otherwise disposed of in accordance with the understanding of the parties.

82. Parties to a bailment contract are called the bailor and bailee. The bailor is the party who surrenders the property and the bailee is the party who receives the property. For a bailment contract to exist the bailee must be given physical possession and control over the property. The bailee must know that the property has been delivered to him/her and he/she must have an intention, express or implied from the circumstances, to exercise control over the property.

83. The contract of bailment may be expressly agreed upon, in writing or verbally,

or it may be implied from the circumstances of the transaction and the conduct of the parties.

84. The standard of care for the safety of the property that must be exercised by the bailee, the person who has received the property, depends upon the purpose of the bailment, namely, whether it is for the benefit of the bailee alone, or the bailor alone, or for their mutual benefit.

85. In this case the parties agree that plaintiff delivered possession of (collateral as identified in the Note as 20 Spruce rd Amityville, NY 11701) to defendant for (the refinancing of a home loan described under 1602(aa)) and defendant agreed to return the property (December 1, 2032). Therefore there is no dispute as to the existence of the bailment contract.

86. As bailee, Citibank did not exercise that degree of care for the safety of the property as was required by law and that as a proximate resulted in damages relative to the unauthorized signature of Plaintiffs name.

87. Pursuant to 15 U.S.C. § 1641(d)(1) Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the

documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

88. Moreover UCC § 3-419(1)(c) states that "an instrument is converted when it is paid on a forged indorsement".

89. In this instance Citibank failed to exercise ordinary care. As a bailment with mutual benefit a bailee is liable for damage to the property or loss of the property if that damage or loss results from the baill's negligence.

90. Thus a bailee is liable to the bailor for loss or damage to the property if the bailee has failed to exercise reasonable care for the safety of the property which came into the bailee's possession. Reasonable care means such care for the safety of the property as a person of ordinary prudence would exercise in the same or similar circumstances.

91. A bailee in possession and control of an instrument is liable for damages as a result for its failure of duty of care. In this instance Citibank without Plaintiff's knowledge or authorization altered the instrument when they transferred rights to title of the debt obligation.

92. Pursuant to UCC § 3-407 an "Alteration" means Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in.

**Page 20 of 32**

93. Here Citibank added additional parties to the agreement as well as changed the terms of the agreement when it altered the instrument by transferring it with a "Without recourse" indorement (see Exhibit F page 7 & 10).

94. As a bailee Citibank was prohibited from creating an impairment against Plaintiff's property and was required to exercise ordinary care in the handling of Plaintiff's property.

95. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

## CITIMORTGAGE LIABILITY FOR CITIBANK BREACH OF FIDUCIARY DUTY

96. In this instance CitiMortgae is liable for all losses associated with Citibank's negligence and failure to exercise ordinary care when it altered the instrument and forged Plaintiff's signature.

97. As a result of Citibank's actions Plaintiff loss $194,603.79 in principle and interest payments and closing cost.

98. Defendant is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the

amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

99. CitiMortgage is liable to Plaintiff for damages related to money paid of $194,603.79. CitiMortgage if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 494,300.58

CENLAR LIABILITY FOR CITIBANK BREACH OF FIDUCIARY DUTY

100. Cenlar is liable for all losses associated with Citibank's negligence and failure to exercise ordinary care when it altered the instrument and forged Plaintiff's signature.

101. As a result of Citibank's actions Plaintiff loss $194,603.79 in principle and interest payment and closing cost.

102. Defendant Cenlar is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

103. Cenlar is liable to Plaintiff for damages related to money paid $194,603.79. Cenlar if also liable to Plaintiff for statutory damages allowed under

15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 494,300.58.

## VII. THIRD CAUSE OF ACTION VIOLATION OF FDCPA

104. "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Vincent v. The Money Store, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

105. In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v.

Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here it is clear that Cenlar either acting in its own capacity or acting on behalf of FNMA has violated 15 U.S.C. § 1692e.

106. The Plaintiff falsely represented itself in this action as FNMA, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

107. As previously stated, Section 1692e generally prevents the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Within Section 1692e is a non-exhaustive list of practices that violate the section. Pifko v. CCB Credit Servs., Inc., No. 09-cv-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010). Section 1692e(14) prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. § 1692e(14). Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Lastly, Section 1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt[.]" 15

U.S.C. § 1692e(10).

108. Here it is clear that Defendant willfully made false claims as to the character, type and status of the debt. A copy of Defendants payoff statement is attached hereto, marked PLAINTIFF'S EXHIBIT E.

109. Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

110. Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

111. Here it is evident by the notice of servicing transfer and the payment coupon included in the notice that Cenlar was collecting a debt in its own name (see Exhibit F). 15 U.S.C. 1692(a) indicates that any creditor "who in the process of collecting his own debt , uses any name other than its own which would indicate

that a third person is collecting or attempting to collect such debt" is a debt collector.

112. Defendant Cenlar is liable to Plaintiff for violations of FDCPA. Pursuant to 15 U.S.C. 1692k(1) and (2) Cenlar is liable for actual damages incurred by Plaintiff. i.e. court cost and time spent as well as any such additional cost the court may allow up to $1,000.00.

113. Cenlar is liable to Plaintiff for 160hr @ $200 = $32,000.00 of time preparing legal documents for this case.

## VIII. FORTH CAUSE OF ACTION AIDING AND ABETTING

114. CitiMortgage and Cenlar aided and abetted Citibank in forgery and the alteration of Plaintiff's note.

115. A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance.

116. Here the underlying fraud is the forged signature noted on the face of the Note.

117. Pursuant to UCC § 1-201 "Unauthorized signature" means a signature made without actual, implied, or apparent authority. The term includes a forgery.

118. UCC § 3-419(1)(c) also states that an instrument is converted when it is paid on a forged indorsement. As such the primary tortfeasor "Citibank" committed the act of conversion when it forged Plaintiff's signature.

119. The face of the Note give notice of such forged indorsement. UCC § 3-414 states Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.

120. Here the indorsement was clearly marked with the term "without recourse". The term without recourse as defined by Blacks Law means "Inability to obtain a judgment against, or reimbursement from, a defaulting or opposing party. This notation indicates a lack of means or legal right".

121. It is apparent that CitiMortgage and Cenlar had actual knowledge of the underlying conversion by the primary tortfeasor. In Intel Corporation Investment Policy Committee v. Sulyma, The Supreme Court held unanimously (J. Alito) that "actual knowledge" means " when a person actually is aware of the relevant facts, not when he should be."

122. Aiding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance. A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.

123. Cenlar and CitiMortgage refuse to return Plaintiff's property on demand (see Exhibit C). The Defendants refusal along with the collection of Plaintiff's payment is evidence of Cenlar and CitiMortgage giving substantial assistance to Citibank relative to the conversion of Plaintiff's property.

124. Cenlar and CitiMortgage actions clearly substantial assisted Citibank. A person substantially assist when (1) a defendant(s) affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.

125. Both CitiMortgage and Cenlar collected payments from Plaintiff (see Exhibit G). The collection of monthly payments is evidence of active involvement.

126. CitiMortgage and Cenlar's action caused harm in which the primary liability is predicated on. As such CitiMortgage and Cenlar is liable for aiding and abetting the conversion of Plaintiff's property.

CITIMORTGAGE LIABILITY FOR AIDING AND ABETTING

127. Defendant CitiMortgage is liable to Plaintiff for the face value of Note # 1 of $134,400.00 and Note # 2 of $119,893.44 total $254,293.44

128. CitiMortgage is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in

connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.

129. As such CitiMortgage is liable to Plaintiff for statutory damages equaling the face value of any instrument paid under a forged signature $254,293.44 (see UCC § 3-419(c)). the liability for an instrument paid under forged indorsement is the face amount of the instrument. CitiMortgage if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 553,990.23

CENLAR LIABILITY FOR AIDING AND ABETTING

130. As indicated in UCC § 3-419(2) Defendant Cenlar is liable to Plaintiff for the face value of Note # 1 of $134,400.00 and Note # 2 of $119,893.44 total $254,293.44

133. Cenlar is also liable for damages under 15 U.S.C. 1641(d)(2)(B) (i) the amount of the remaining indebtedness of $105,093.00 as shown Cenlars payoff statement (see Exhibit E) (ii) the total amount paid by the consumer in connection with the transaction, The consumer paid $194,603.79 in principle and interest payments and closing cost.  Total damage under TILA $299,696.79

134. Cenlar is liable to Plaintiff for statutory damages equaling the face value of any instrument paid under a forged signature $254,293.44 (see UCC § 3-419(c)).  the liability for an instrument paid under forged indorsement is the face

amount of the instrument. Cenlar if also liable to Plaintiff for statutory damages allowed under 15 U.S.C. 1641(d)(2)(B) $299,696.79; Total damages $ 553,990.23.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;

2. Declare the security interest in Plaintiff's home void;

3. Rescind the transaction of to Cenlar.

4. Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of CitiMortgage and Cenlar.

5. Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with the transaction;

6. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

7. Award the Plaintiff statutory damages for Citibanks conversion of Plaintiff's property. Liability assessed to CitiMortgage of $553,990.23 and liability assessed to Cenlar of $553,990.23.

8. Award the Plaintiff statutory damages for Citibank's Breach of contract liability assessed to CitiMortgage of $494,300.58 and liability assessed to Cenlar of $494,300.58.9. Award the Plaintiff statutory damages for Citibank's breach of fiduciary duty. Liability assessed to CitiMortgage $494,300.58 and liability assessed to Cenlar $494,300.58.

10. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;

11. Award actual damages and punitive damages in an amount to be established at trial;

11. Award damages for aiding and abetteing conversion cost as a result of Citibank's actions $553,990.23 and cost as a result of Cenlars actions $553,990.23.

12.

13. Award statutory damages related to FDCPA 15 U.S.C. § 1692 $32,000 to Plaintiff's time spent and statutory damage of $1,000.00.

14. Award such other and further relief as the Court deems just and proper.

## IX. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

March 22, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

**Page 32 of 32**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

Roger Rowe

_____
Plaintiff(s)

v.

Cenlar FSB

_____
Defendant(s)

Civil Action No. 19 CV 7278

AZRACK, J.

SHIELDS, M.J.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
Cenlar FSB
425 Phillips Blvd Ewing, NJ 08618

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Roger Rowe
20 Spruce rd
Amityville NY 11701

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: December 30, 2019                    _____
*Signature of Clerk or Deputy Clerk*

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

★  DEC 30 2019  ★

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Roger Rowe

Plaintiff(s)

-v-

Cenlar FSB

Defendant(s)

**COMPLAINT**

Jury trial requested

AZRACK, J.

SHIELDS M.J.

RECEIVED

DEC 3 1 2019

EDNY PRO SE OFFICE

## I. PRELIMINARY STATEMENT

1. This Complaint is filed under the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter called "Act") to enforce the plaintiff's right to rescind a consumer credit transaction, to void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349.

## II. JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court as a matter of Federal Question of Law by 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331, 1337. The Defendant's has violated Regulation Z, 12 C.F.R. § 1026, 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

Page 1 of 13

3. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within the district.

### III. PARTIES

5. The Plaintiff, Roger Rowe, is a natural person, residing at 20 Spruce rd Amityville NY, 11701; phone # 631-767-6537 ; email rroweny@gmail.com

6. Defendant Creditor, Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

7. Defendant Assigner, Cenlar FSB, is a mortgage subservicing company engaged in the business of residential mortgage loan services, as well as central loan administration, and reporting services. Cenlar FSB operates in the United States at 425 Phillips Blvd Ewing, NJ 08618; phone 866-677-8807.

8. At all times relevant hereto, the Defendant Creditor, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

## IV. FACTUAL ALLEGATIONS

9. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original CitiMortgage loan was currently owned by Federal National Mortgage Administration (FNMA) located at Mid Town Center 1100 15th Street NW Washington, DC 20005.

10. A true copy of the July 12, 2019 letter evidencing Defendants statements is attached hereto, marked PLAINTIFF'S EXHIBIT A, and by this reference is incorporated herein.

11. As part of this consumer credit transaction, the Defendant retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home.

12. The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

13. A true and accurate copy of the mortgage evidencing the Defendant's security interest in the amount of $157,500.00 is attached hereto, marked PLAINTIFF'S EXHIBIT B, and by this reference is incorporated herein.

14. On or about July 12, 2019 Plaintiff was notified that Defendant was assigned the obligation in question.

15. Defendant Cenlar FSB failed disclose or provide notice of mortgage transfer or right of rescission.

16. Defendant failed to respond properly to Plaintiff's notice of rescission.

## V. FIRST CAUSE OF ACTION
### TRUTH IN LENDING ACT, 15 U.S.C. § 1601 et seq.

17. Plaintiff incorporates the allegations in Paragraphs 9 thru 16 above with the same force and effect as if herein set forth.

18. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 1026.23 (12 C.F.R. § 1026.23 [formerly § 226.23]).

19. Plaintiff is a consumer within the meaning of 15 U.S.C. §1602(i) [§ 1602(h) prior to Dodd-Frank amendments] and Regulation Z §1026.2(a)(11) [formerly § 226.2(a)(11)].

20. In the course of this consumer credit transaction, Defendant Creditor and Defendant Assigner violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant Creditor's place of business.

e. Clearly and conspicuously disclosed the effects of rescission.

f. Clearly and conspicuously disclosed the date the rescission period expired.

21. The Defendants failed to provide a mortgage transfer disclosure. Pursuant to § 1026.39.

22. Defendants failure to deliver notice pursuant to § 1026.23 extended the start of Plaintiff's rescission period to three years for the time the notice of rescission was sent to Defendant .

23. On October 21, 2019, Plaintiff exercised his right to rescind Defendants security interest in the property known as 20 Spruce rd Amityville, NY 11701. A true and accurate copy of that notice of rescission is attached hereto, marked PLAINTIFF'S EXHIBIT C, and by this reference is incorporated herein.

24. More than 20 calendar days have passed since the Defendants received copies of the Plaintiff's notice of rescission.

25. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, including the security interest described in Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

26. The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. § 1635(b) and Regulation Z § 1026.23(d)(2) [formerly § 226.23(d)(2)].

27. As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiff for:

a. Rescission of this transaction.

b. Termination of any security interest in Plaintiff's property created under the transaction.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

d. Statutory damages pursuant to 15 U.S.C. § 1640 of $4,000 for the disclosure violations.

e. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's rescission notice.

f. Forfeiture of return of loan proceeds.

g. Actual damages in an amount to be determined at trial.

h. Reasonable costs of this action including reasonable attorney fee.

i. Award such other further relief as the Court deems just and proper.

## VI. SECOND CAUSE OF ACTION FALSE ENTRY
## IN BOOK, REPORT, OR STATEMENT OF SUCH BANK

28. Both 18 U.S.C. § 1005 and § 1006 prohibit the making of false entries in any book, report, or statement with the intent to defraud the institution or other persons or to deceive any officer of the bank, examiner or agent appointed to examine the institution. Title 12 Banks and Banking Chapter 3 Section § 503 Liability of directors and officers of member banks as well as Section § 504 and § 505 Civil money penalty. The violations covered under 12 U.S. § 503 are reflected under the provisions of sections 217, 218, 219, 220, 655, 1005, 1014, 1906 or 1909 of title 18. Not only are the directors and officers personally liable for said violation, 12 U.S. § 504 and 12 U.S. § 505, holds the member bank liable for civil penalties as well.

29. The elements related to making false bank statements are (1) making a false entry, (2) with intent to defraud or deceive. A false entry includes any entry on the books of the bank which is intentionally made to represent what is not true or does not exist. See Agnew v. United States, 165 U.S. 36, 52 (1897). Any entry in which that which has been done by the officers or agents of the bank is correctly set forth in detail is not a false entry. See Coffin v. United States, 156 U.S. 432 (1895). If ostensible borrowers are not liable to the bank on their notes, an entry on the bank's books showing liability could be a false entry under the holding and rationale of United States v. Darby, 289 U.S. 224 (1933).

30. Defendant Cenlar made false claims to Credit Reporting Agencies (CRA) relative to a $107,239.00 liability. A true and accurate copy of Plaintiff's Credit Report is attached hereto, marked PLAINTIFF'S EXHIBIT D, and by this reference is incorporated herein.

31. Defendant Cenlar claims that he is a sub servicer of CitiMortgage however Cenlar added a new trade line to Plaintiff's credit report. The added trade line is proof that Cenlar is acting on its own behalf as a debt collector and not as a sub servicer for CitiMortgage.

32. CitiMortgage Inc, the original creditor indicates an original balance of $157,500.00 for an account opened in November 2002. The comment section related to this trade line indicates "Transfer to another lender or claim purchased".

33. Defendant Cenlar false claims as to a balance of $107,239.00 is a clear a violation of Title 12 Banks and Banking Chapter 3 Section § 503 Liability of directors and officers of member banks as well as Section § 504 and § 505 Civil money penalty.

34. If Defendant Cenlar is acting as a sub servicer to CitiMortgage Inc., the debt would remains with and Cenlar would be prohibited from adding a trade line to Plaintiff's credit report. As such Cenlar's reporting to the CRA's is inaccurate and is in violation Fair Credit Reporting Act (FCRA).

35. If Defendant Cenlar obtained the debt by "transfer or claimed purchased"

Cenlars statement of being a sub servicer to CitiMortgage Inc, would be false. Such a false statement is further proof of Cenlar's intent to defraud and deceive Plaintiff.

## VII. THIRD CAUSE OF ACTION VIOLATION OF FDCPA

36. "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Vincent v. The Money Store, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

37. In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the

debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here it is clear that Cenlar either acting in its own capacity or acting on behalf of FNMA has violated 15 U.S.C. § 1692e.

38. The Plaintiff falsely represented itself in this action as FNMA, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

39. As previously stated, Section 1692e generally prevents the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Within Section 1692e is a non-exhaustive list of practices that violate the section. Pifko v. CCB Credit Servs., Inc., No. 09-cv-3057, 2010 WL 2771832, at *4 (E.D.N.Y. July 7, 2010). Section 1692e(14) prohibits the use of anything but the "true name" of the debt collector. 15 U.S.C. § 1692e(14). Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Lastly, Section 1692e(10)

prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt[.]" 15 U.S.C. § 1692e(10).

40. Here it is clear that Defendant willfully made false claims as to the character, type and status of the debt. A copy of Defendants payoff statement is attached hereto, marked PLAINTIFF'S EXHIBIT E.

41. Plaintiff cannot be entitled to collect this debt being that this debt is an executory contract which under section § 365 of the bankruptcy code prohibits the assignment of an executory contract (see Nonassignment Act, 41 U.S.C. § 15. Section 365(e)(1) of the Bankruptcy Code).

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;

2. Declare the security interest in Plaintiff's home void;

3. Rescind the transaction of to Cenlar.

4. Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of CitiMortgage and Cenlar.

5. Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with the transaction;

6. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

7. Award the Plaintiff statutory damages for the disclosure violations, in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $4,000 as provided under 15 U.S.C. § 1640(a);25

8. Award the Plaintiff statutory damages for Defendant's failure to respond properly to the Plaintiff's rescission notice, in the amount of twice the finance charge in connection with this transaction, but not less than $400 or more than $4,000 as provided under 15 U.S.C. § 1640(a);

9. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;

10. Award actual damages in an amount to be established at trial;

11. Award the Plaintiff costs and a reasonable attorney fee as provided under 15 U.S.C. § 1640(a);

12. Award statutory damages pursuant to§ 504 and § 505 Civil money penalty.

13. Award statutory damages related to FDCPA 15 U.S.C. § 1692

14. Award such other and further relief as the Court deems just and proper.

## IX. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11. I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

December 30, 2019

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

Page 13 of 13

# EXHIBIT A



**CENLAR**
CENTRAL LOAN ADMINISTRATION & REPORTING.

July 12, 2019

Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY 11701

Re    Loan number   4770947259

Dear Borrower:

We are in receipt of your Qualified Written Request and your request to validate the debt related to the above-referenced loan ("the Loan"), which is dated June 27, 2019. This was received in our offices on June 28, 2019.

The Loan was originated by CitiBank, N.A. dba CitiMortgage, Inc. and is currently owned by Federal National Mortgage Administration (FNMA) located at MidTown Center 1100 15th Street NW Washington, DC 20005. CitiMortgage, Inc., located at 1000 Technology Drive O'Fallon, MO 63368, is the servicer of the Loan.  Cenlar, FSB subservices the loan on behalf of CitiMortgage, Inc. effective April 1, 2019

On March 15, 2019 the enclosed Notice of Servicing Transfer was mailed, which explained that the loan servicing would be transferred to Cenlar, FSB from CitiMortgage, Inc., effective April 1, 2019

The Loan is due for the June 1, 2019 installment and the following payments are in arrears:
Two payments, June 2019- July 2019 @ $1,697.60          =          $3395.20
The following amounts are due and owing
Accrued late charges                                       =          $18.89

With respect to the questions raised in your correspondence, we enclose the following:
- Copies of the Note and Mortgage agreements you signed at closing, along with the Consolidation, Extension, and Modification Agreement dated November 7, 2001   These documents were all executed by Ines Rowe and Roger Rowe, obligating both parties to the loan agreement.
- Loan payment history and transaction codes key list as well as an itemized breakdown above
- Please refer to the payment history to obtain how the amounts owed have been calculated.
- Please refer to the above referenced Note as evidence of the obligation of amounts owed
- Our records show no evidence of any judgments entered in relation to this debt
- The original creditor as stated above is CitiBank, N.A

Ines Rowe-Bryan
July 12, 2019
Page 2


Additionally we show no record of this loan having been paid in full at any time in the past. If you have evidence or proof of this, please forward this to our Research department at:

Attention: Research Department
PO Box 77404
Ewing, NJ 08628
Fax: 609-538-4005

Should you require additional assistance please contact us at 866-677-8807.


Sincerely

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures

# EXHIBIT B

| Number of pages | | | | RECORDED |
|---|---|---|---|---|
| TORRENS | | | | Suffolk County |
| Serial # | | | | Clerk of County |
| Certificate # | | | | M00009728 |
| Prior Ctf. # | | | | P 423 |
| | | | | CT130436 |

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**FEES**

| | | Mortgage Amt | 119,843 |
|---|---|---|---|
| Page / Filing Fee | | 1 Basic Tax | |
| Handling | | 2 Additional Tax | |
| TP-584 | | Sub Total | |
| Notation | | Spec./Assit | |
| EA-52 17 (County) | Sub Total | Or | |
| EA-5217 (State) | | Spec /Add | |
| R P T S A | | TOT MTG. TAX | 1174 |
| Comm of Ed | 5 00 | Dual Town _____ Dual County _____ | |
| Affidavit | | Held for Apportionment _____ | |
| Certified Copy | | Transfer Tax | |
| Reg. Copy | | Mansion Tax | |
| Other | Sub Total | The property covered by this mortgage is or will be improved by a one or two family dwelling only | |
| | GRAND TOTAL | YES ____ or NO ____ | |
| | | If NO, see appropriate tax clause on page # _____ of this instrument. | |

| Real Property Tax Service Agency Verification | | | | | Community Preservation Fund |
|---|---|---|---|---|---|
| Dist | Section | Block | Lot | | Consideration Amount $ _____ |
| 1172 | 124.00 | 02.00 | 021.000 | | CPF Tax Due $ _____ |
| Date | | | | | Improved |
| Initials | | | | | Vacant Land |

Satisfactions/Discharges/Releases List Property Owners Mailing Address
**RECORD & RETURN TO:**

Citibank, N.A.
P.O. Box 9206
Mail Station 81026
Farmington Hills, MI 48333-9206

| | TD _____ |
| | TD _____ |
| | TD _____ |

| 8 | **Title Company Information** |
|---|---|
| | Co Name CROSS COUNTY ABSTRACT, INC. |
| | Title # CCA TK6605 |

## Suffolk County Recording & Endorsement Page

This page forms part of the attached _____ Mortgage _____ made by
(SPECIFY TYPE OF INSTRUMENT)

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

In the Township of _Babylon_

In the VILLAGE
or HAMLET of _Copiague_

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING

Recordation Requested by:
Citibank, N.A.
8333 Ridgepoint Drive
Irving, TX 75063

When Recorded Mail to:
CitiMortgage, Inc.
Attn: Document Processing
P O Box 790021
St. Louis, MO 63179-0021
Send Tax Notices to:
Citibank, N.A.
15851 Clayton Road
MS 309
Ballwin, MO 63011

M⊤ A 1174.

A    2000360738  INES ROWE-BRYAN

[Space Above This Line For Recording Data]

Application No: 002000360738

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated November 7, 2002                    will be called the
"Security Instrument."
(B) "Borrower."
INES ROWE-BRYAN AND ANNA ROWE, AS JOINT TENANTS whose address is 20 SPRUCE RD, AMITYVILLE,
NY  11701-1019

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
Citibank, N.A.
will be called "Lender." Lender is a corporation or association which exists under the laws of the United States
Lender's address is 399 Park Avenue, New York, NY 10043

(D) "Note." The note signed by Borrower and dated November 7, 2002                    , will be called the "Note." The
Note shows that I owe Lender One Hundred Nineteen Thousand Eight Hundred Ninety Three & 44/100
Dollars (U.S. $ 119,893.44                    ) plus interest
I have promised to pay this debt in monthly payments and to pay the debt in full by December 1, 2032
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the
"Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument This means that, by
signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights
that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from
possible losses that might result if I fail to.
(A) Pay all the amounts that I owe Lender as stated in the Note.
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value
of the Property and Lender's rights in the Property, and
(C) Keep all of my other promises and agreements under this Security Instrument

*Premises herein Improved by a 1-2 family Dwelling*

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 9/99
159005NY - 12/13/2000(002000360738)                    Page 1 of 11                    Initials _____ JKB

Transferred to the County Clerk
under Deed Liber 12038 p688

DESCRIPTION OF THE PROPERTY
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at 20 Spruce Rd

[Street]

Amityville . New York 11701-1019 This Property is in

[City] [Zip Code,

SUFFOLK County. It has the following legal description:
See Attached Legal Description

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights
are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in
subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND
OWNERSHIP OF THE PROPERTY
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and
(C) there are no outstanding claims or charges against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers
because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will
defend my ownership of the Property against any claims of such rights.

PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the
country. It also contains other promises and agreements that vary to a limited extent in different parts of the country. My
promises and agreements are stated in "plain language."

189005NY - 12/13/2000[002000360738]          Page 2 of 11          Form 3033 10/01
                                                                    Initials: _____

-PA 55-                                                                Page 3

## COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligations**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) If, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":

(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);

(iii) The estimated yearly premium for hazard or property insurance covering the Property;

(iv) The estimated yearly premium for flood insurance covering the Property (if any);

(v) The estimated yearly premium for mortgage insurance (if any), and

(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any)

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds". The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality or entity or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me without charge an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds, or (ii) the law requires Lender to pay interest on the Funds.

Form 3033 10/91

Initials: _____

(C) Adjustments to the Funds

Lender has. there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured. Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale. Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note.
Next, to pay the amounts due to Lender under Paragraph 2 above.
Next, to pay interest due.
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under any lease if I am a tenant on the Property, and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien. Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above. Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

NY0005077   7213/2600/003/0003E0730                    Page 4 of 1

Form 3033 10/81
Initials

-PA 57-                                                          Page 5

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration, or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION
(A) Borrower's Obligations to Occupy the Property
I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

(B) Borrower's Obligations to Maintain and Protect the Property
I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

(C) Borrower's Obligations to Fulfill Any Lease Obligations
If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

(D) Borrower's Loan Application
If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a

SB0US/NY  12/13/2000[002000J6573H]                    Page 5 of 11                                      Form 3033 10/91
                                                                                                       Initials _____

misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations) Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7 Lender does not have to do so

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

**8. MORTGAGE INSURANCE**

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above

**9. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

**10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property, and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender

If all of the Property is taken the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full the remaining proceeds will be paid to me

Unless Lender and I agree otherwise in writing if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me

159005NY  12/13/2000[002000360738]                          Page 6 of 9                    Form 3033 10/91
                                                                                           Initials: _____

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

11 CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
(A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

12 OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument, and (B) that person is not personally obligated to pay the Sums Secured, and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

13 LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14 NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of any

Form 3033 10/01
Initials ___

-PA 60-                    Page 8

different address  Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document."  A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address  A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15  LAW THAT GOVERNS THIS SECURITY INSTRUMENT**
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term  This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced

**16  BORROWER'S COPY**
I will be given one conformed copy of the Note and of this Security Instrument

**17  AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However  Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement  The notice will give me at least 30 days to make the required payment  The 30-day period will begin on the date the notice is mailed or delivered  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment

**18  BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**
Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued  I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions
(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument, and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees  and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument  and my obligations under the Note and under this Security Instrument continue unchanged

If I fulfill all of the conditions in this Paragraph 18  then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above

**19  NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE, BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**
The Note  or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer"  There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer  The written notice must be given in the manner required under Paragraph 14 above and under applicable law  The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments  The notice also will contain any other information required by the law

159006NY  12/13/2000002000360738          Page 8 of 11          Form 3033 10/81
                                                                Initials _____  J.E.B

20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY
The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances"

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure)

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws

21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS
Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:
(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured
(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states
  (i) The promise or agreement that I failed to keep,
  (ii) The action that I must take to correct that default,
  (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given,
  (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
  (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required, and
  (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice

F5900SNY  12/3/2000(00/0903507)6                  Page 9 of 11

Form 3033 10/01,
Initials _____  JKB

-PA 62-                                                          Page 10

**22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**23. AGREEMENTS ABOUT NEW YORK LIEN LAW**
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund", and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**24. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V A Rider | ☒ Other(s) [specify] | |
| | Schedule "A" | |

     BY SIGNING BELOW. I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.
Witnesses

_____          _Ines Rowe Bryan_ (Seal)
                                 INES ROWE BRYAN            -Borrower

_____          _Anna Rowe_ (Seal)
                                 ANNA ROWE                 -Borrower

· 59005NY · 12/13/2000[0020003600738]          Page 10 of 11          Form 3033 10/01

UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged Inside of New York State)

STATE OF NEW YORK
                           } SS

COUNTY OF   SUFFOLK

On the  __7TH__  day of  __NOVEMBER__  in the year __2002__ before me, the undersigned, a Notary Public in and for said State, personally appeared  __INES ROWE-BRYAN AND ANNA ROWE__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument

_____
           Notary Public


UNIFORM ACKNOWLEDGMENT
(For use on Documents being Acknowledged Outside of New York State)

State  District of Columbia, Territory, Possession or Foreign Country   }
                                             } SS
_____   }

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____ _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____
(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken)


_____
     Signature and office of individual taking acknowledgment

4866205
48234

**Homeowner's Key Note**   453 878105   **CITICORP ● CITIBANK®**

453878105

October 23 , 19 89                    New York , New York
                                        (CITY)      (STATE)

20 Spruce Road, North Amityville, New York 11701
(PROPERTY ADDRESS)

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 134,400.00 (this amount is called "principal"), plus interest, to the order of Lender. The Lender is Citibank, N A
399 Park Avenue, New York, New York
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
(A) Interest will be charged on unpaid principal until the full amount of principal has been paid I will pay interest at the yearly rate of 10.625 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.
(B) _N/A_ If I have initialed the space to the left of this sub-paragraph, the interest will be charged under this Note is subject to the terms of a Buy Down/Subsidy Agreement dated the same date as this Note and which is incorporated into this Note by reference to it.

### 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on December 1 ,
19 89 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1 , 2004 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at CMI, 15851 Clayton Road,
Ballwin, MO 63011 , or at a different place if required by the Note Holder
(B) Amount of Monthly Payments
My monthly payments will be in the following amounts and according to the following schedule

| Number of Payments | Total Payment Amount |
|---|---|
| 1 | 1,507.33 |
| 11 | 1,190.00 |
| 12 | 1,190.13 |
| 12 | 1,279.39 |
| 12 | 1,375.34 |
| 12 | 1,478.49 |
| 12 | 1,589.38 |
| 12 | 1,708.58 |
| 95 | 1,749.92 |
| 1 | 1,749.11 |

| Monthly Payments Numbered | Borrower's Actual Monthly Payment |
|---|---|
| 1 | 1,424.43 |
| 2-12 | 1,107.10 |

Subsidy withdrawals as provided in Paragraph 2 will be applied only upon Citibank's receipt of Borrower's monthly payment. Interim interest billed in addition to the first monthly payment will be based on the Note interest rate and will not be subsidized.

4. Withdrawals from the Account will commence on the due date of the first monthly payment and will continue until such time as the Account is terminated

5. At the time the Account is fully depleted as provided in Paragraph 2 above, Borrower must then remit to Citibank the total principal and interest mortgage payment as provided for in the Note.

6. Borrower's interest in the Account is to have the withdrawals applied to the current monthly payment due under the Note and no part thereof may be used to pay any delinquent payments due from Borrowers under Paragraph 3.

7. If Citibank is collecting monthly escrow payments from the Borrowers for insurance, taxes or similar charges, this Agreement does not reduce or impact those escrow payments.

8. Citibank is the sole party authorized to withdraw from the Account, except as herein provided and no deposit beyond the initial deposit will be made to the Account

9. If Citibank's interest in the Borrower's Loan on the subject property is assigned, sold or transferred to any third party, Citibank has the option to unilaterally assign its rights and/or obligations under this Agreement to that party. In Citibank's discretion, this Agreement may be terminated upon such assignment and the remaining deposit funds released to Citibank from the escrow; provided the Borrower's monthly payment during the subsidy period will remain as provided in Paragraph 3 after termination.

10. This Account will be terminated and all parties released from obligations hereunder upon the happening of any of the following events:
   a) all monthly amounts being withdrawn as specified in Paragraph 2,
   b) the Loan being prepaid in full prior to all monthly payments being withdrawn as specified in Paragraph 2;
   c) the Security Instrument being foreclosed;
   d) upon assignment of the Loan as provided in Paragraph 9 if so elected by Citibank

11. There are no other terms or agreements, expressed or implied, concerning the Account herein established

12. This Agreement shall be binding and inure to the benefit of the heirs, successors and assigns of the parties hereto; provided, however, Borrower(s) may not assign its rights and obligations under this Agreement without Citibank's written approval.

CITIBANK, N.A.

By:

INES ROWE-BRYAN (Borrower)

ANNA ROWE (Borrower)

_____ (Provider)
_____ (Borrower)

_____ (Provider)
_____ (Borrower)

_____ (Provider)

# NOTE

002000360738

November 7, 2002                    Garden City                    New York
[Date]                             [City]                          [State]

20 Spruce Rd, Amityville, NY 11701-1019
[Property Address]

1    BORROWER'S PROMISE TO PAY
     In return for a loan that I have received, I promise to pay U. S. $ 119,893.44          (this amount is called
"principal"), plus interest, to the order of the Lender  The Lender is  Citibank, N.A.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder"
2    INTEREST
     Interest will be charged on unpaid principal until the full amount of principal has been paid  I will pay interest at a
yearly rate of 6.000           %
     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note
3    PAYMENTS
     (A) Time and Place of Payments
     I will pay principal and interest by making payments every month
     I will make my monthly payments on the First       day of each month beginning on January 1
2003            I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. My monthly payments will be applied to interest before
principal. If, on December 01        ,2032          I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "maturity date."
     I will make my monthly payments at 15851 Clayton Road, Ballwin, MO  63011
                                                       or at a different place if required by the Note Holder

     (B) Amount of Monthly Payments
     My monthly payment will be in the amount of U.S. $ 718.82
4    BORROWER'S RIGHT TO PREPAY
     I have the right to make payments of principal at any time before they are due. A payment of principal only is
known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
     I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will
use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment,
there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in
writing to those changes
5    LOAN CHARGES
     If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then, (i) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums
already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make
this refund by reducing the principal I owe under this Note or by making a direct payment to me  If a refund reduces
principal, the reduction will be treated as a partial prepayment
6.   BORROWER'S FAILURE TO PAY AS REQUIRED
     (A) Late Charge for Overdue Payments
     If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen      calendar days
after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be  2.000          %
of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment.
     (B) Default
     If I do not pay the full amount of each monthly payment on the date it is due, I will be in default
     (C) Notice of Default
     If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been
paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is
delivered or mailed to me
     (D) No Waiver By Note Holder
     Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time
     (E) Payment of Note Holder's Costs and Expenses
     If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the
right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by
applicable law. Those expenses include, for example, reasonable attorneys' fees.
7    GIVING OF NOTICES
     Unless applicable law requires a different method, any notice that must be given to me under this Note will be
given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I
give the Note Holder a notice of my different address.
     Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to
the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that
different address

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3833 10/91
3758NY (07/30/1999) [002000360738]                        Page 1 of 2                Initials

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____        _____ (Seal)
                                      INES ROWE-BRYAN                -Borrower

_____        _____ (Seal)
                                      Ross Rowe                      -Borrower

[Space Above This Line For Recording Data]

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Agreement." This document, which is dated November 7, 2002, and exhibits and riders attached to this document will be called the "Agreement."
(B) "Borrower." INES ROWE-BRYAN, Roger Rowe

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 20 SPRUCE RD, AMITYVILLE, NY 11701-1019.

(C) "Lender." Citibank, N.A.
will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of the United States.          Lender's address is 399 Park Avenue, New York, NY 10043.

(D) "Mortgages." The mortgages, deeds of trust or other security instruments identified below and any additional security instruments and related agreements identified in to this Agreement will be called the "Mortgages;"
(1) The Mortgage given by   INES ROWE-BRYAN AND ANNA ROWE
and dated  10-23-89          in favor of      CITIBANK, N.A.
securing the original principal amount of U.S. $ 134,400.00 . This Mortgage is on a Fannie Mac/Freddie Mac Security Instrument and [was recorded on  1-17-90              in the  COUNTY CLERKS OFFICE
of   SUFFOLK COUNTY                              State of    NEW YORK
at  SERIAL NO. 375462
[~~with~~~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~] At this date, the unpaid principal
balance secured by this mortgage is U.S $ 37,606.56                          [Strike if not applicable.]
(2) The Mortgage given by  INES ROWE-BRYAN AND ANNA ROWE
and dated   11-7-02          in favor of     CITIBANK, N.A.
securing the original principal amount of U.S. $ 119,893.44
This Mortgage ~~XXXXXXXXXX~~ IS INTENDED TO BE        ~~XXXXX~~ RECORDED SIMULTANEOUSLY
of                                                  State of
at                                                                At this date, the unpaid
principal balance secured by this mortgage is U.S $ 119,893.44                  [Strike if not applicable.]
(3) The Mortgage given by
and dated            In favor of
securing the original principal amount of U.S. $
This Mortgage was recorded on                       in the
of                                                  State of
at                                                                At this date, the unpaid
principal balance secured by this mortgage is U S $                        [Strike if not applicable.]

(E) "Note Holder." Lender or anyone who succeeds to Lender's rights under the Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."
(F) "Notes." The Notes identified below and any additional Notes and related obligations identified in Exhibit A to this Agreement will be called the "Notes."
(1) The Note secured by the Mortgage identified in Section (D)(1) above and dated   10-23-89
(2) The Note secured by the Mortgage identified in Section (D)(2) above and dated   11-7-02
(3) The Note secured by the Mortgage identified in Section (D)(3) above and dated

(G) "Property." The property which is described in the Mortgages(s) and in Exhibit B to this agreement, will be called the "Property." [Strike italics if not applicable.] The Property is located at 20 Spruce Rd

[Street]

Amityville                        SUFFOLK                    NY 11701-1019
[City]                          [County]                  [State and Zip Code]

I promise and I agree with Lender as follows:

## I.   BORROWER'S AGREEMENT ABOUT OBLIGATIONS UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower.  This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me.  The total unpaid principal balance of the Notes is U.S. $ 157,500.00 .  Of this amount, U.S. $ 119,893.44 was advanced to me (or for my account) immediately prior to this consolidation.

## II.  AGREEMENT TO COMBINE NOTES AND MORTGAGES

By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages.  This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.

## III. THE CONSOLIDATED NOTE AND THE CONSOLIDATED MORTGAGE

This combining of notes and mortgages is known as a "consolidation."  The Notes together will be called the "Consolidated Note," the Mortgage together will be called the "Consolidated Mortgage."  The Consolidated Mortgage secures the Consolidated Note and is a single lien upon the Property.  I have no right to set-off or counterclaim or defense to the obligations of the Consolidated Note or the Consolidated Mortgage

## IV.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree to change the terms of the Consolidated note  The new terms are:

1. Borrower's Promise to Pay Principal and Interest

I promise to pay the principal that has not yet been paid under the Consolidated Note, plus interest, to the order of Lender.  That Principal amount is U.S. $ 157,500.00 .  Interest will be charged on unpaid principal as provided in this Agreement beginning on the date of this Agreement until the  full amount of principal has been paid.

2. Payments

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on January 1, 2003 I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Agreement and the Consolidated Note.  My monthly payments will be applied to interest before principal.  If on December 1, 2032 I still owe amounts  under this Agreement or the Consolidated Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 15851 Clayton Road, Ballwin, MO  63011 or a different place if required by the Note Holder.

(B)  Interest Rate

I will pay interest at a yearly rate of 6.000 %.  The interest rate required by this Section 2 (B) is that rate I will pay both before and after any default described in Section 3(B) of this Consolidated Note.  An Adjustable Rate Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement.  The interest rate I will pay will change in accordance with that Rider. [Strike italics if not applicable]

(C)  Monthly Payments

Each of my payments will be in the amount of U.S. $ 944.29 .  An ☐ Adjustable Rate or ☐  Graduated Payment or _____ Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement.  My monthly payment may change in accordance with that Rider. [Strike italics if not applicable]

3.  Borrower's Failure to Pay as Required

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 2.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.  I will also be in default if I do not keep my promises and agreements under this Agreement and the Consolidated Mortgage.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees.

4.  Borrower's Right to Prepay

(A)  Borrower's Right to Make Prepayments

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.  I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial  prepayment, there will be no changes in the due dates or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

3172NY- 05/11/2000 (002000360738)                    Page 2 of 5

Form 3172  7/00
Initials

-PA 70-                                                    Page 18

**(B) Cancellation of Other Prepayment Terms**

Any terms contained in the Consolidated Note about my right to make prepayments which do not agree with this Section 4 are canceled by this Agreement. My right to make prepayments under the Consolidated Note is governed only by the terms contained in this Section 4.

**5. Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the principal I owe under this Consolidated Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. Giving of Notice**

Any notice that must be given to me under this Consolidated Note will be given as provided in the Consolidated Mortgage.

**7. Waivers**

I and any other person who has obligations under this Consolidated Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**8. Unchanged Terms of Consolidated Note in Full Effect**

All of the terms of the Consolidated Note that are not changed in this Agreement remain in full effect as if they were stated in this Agreement.

**V. AGREEMENTS ON TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree to change the terms of the Consolidated Mortgage. The new terms of the Consolidated Mortgage and the security instrument terms that are set out in Exhibit D to this Agreement. However, the terms of the Consolidated Mortgage prior to this change that are not inconsistent with the security instrument terms set out in Exhibit D shall also continue in effect.

**VI. BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property. I promise that I am a lawful tenant occupying the Property. [Strike inapplicable sentence.]

**VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of the Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

Lender and I agree that any person who takes over my rights or obligations under this Agreement will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements in this Agreement.

**IX. ___ CO-BORROWER ACKNOWLEDGEMENT**

[X] Notwithstanding paragraph VI above, Lender acknowledges that ROGER ROWE does not own the Property but is fully obligated to repay the loan and to keep all of the promises and obligations contained in this Agreement. [Strike if not applicable.]

**X. ___ CO-OWNER ACKNOWLEDGEMENT**

[ ] Notwithstanding paragraph VIII above, Lender acknowledges that _____ will not be personally liable for repayment of the loan but is signing below to grant a security interest in the Property. [Strike if not applicable.]

By signing this Agreement, Lender and I agree to all of the above.

Citibank, N.A.

_____ Lender

By: _____

RANDY DOTSON, VP
Business Service Center/Post Funding
CitiMortgage, Inc.
15851 Clayton Road
Ballwin, MO 63011
636-756-5797
Pers. #5077987

_____ Borrower
INES ROWE-BRYAN

_____ Borrower
Roger Rowe

_____ Borrower

_____ Borrower

## UNIFORM ACKNOWLEDGMENT
### (For use on Documents being Acknowledged Inside of New York State)

STATE OF NEW YORK )
) SS:
COUNTY OF  SUFFOLK )

On the 7TH day of NOVEMBER in the year 2002 before me, the undersigned, a Notary Public in and for said State, personally appeared INES ROWE-BRYAN & ROGER . ROWE personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

                                    DAVID J. ROSENBLUM
                                    Notary Public, State of New York
                                    No. 03-4725
_____           Qualified in Suffolk County
Notary Public                       Commission Expires Oct 31, 20 0 5

## UNIFORM ACKNOWLEDGMENT
### (For use on Documents being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country )
St. of Mo. ) SS:
)

On the 11th day of Nov in the year 2002 before me, the undersigned, personally appeared Marilyn Watson personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the St. Louis Co.

(Insert the city or other political subdivision and the state or country or other place the acknowledgment was taken)

_____
Signature and office of individual taking acknowledgment

                                    ARLENE C. HAYNES
                                    Notary Public - Notary Seal
                                    State of Missouri
                                    St. Louis County
                                    My Commission Expires Jul 15, 2003

## INSTRUCTIONS

The following instructions apply if this Agreement is used in consolidation, extension or modification of single family loan intended for possible sale to Fannie Mae or Freddie Mac---

(1) All notes, security instruments, the most recent consolidation agreement and related agreements that modify, consolidate or extend prior underlying obligations and which predate this Agreement must be listed in this Agreement or in an Exhibit to this Agreement.

(2) For sales of whole loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(3) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by a new note and new mortgage on the current Fannie Mae/Freddie Mac Single Family Uniform Instruments. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the new note reflect the terms of the Consolidated Note; the applicable repayment terms for the total indebtedness are supplied by this Agreement (see Section IV).

(4) The dollar amount in the first blank in Section I and the dollar amount entered in the blank in Section IV (i) should be the same. The amount entered in the last blank in Section I should be completed with the dollar amount of the new loan, if any, made in connection with this consolidation. Enter a "zero" if no new loan was made in connection with this consolidation. Enter a "zero" if no new loan was made in connection with this consolidation.

(5) The repayment terms of the Consolidated note (e.g. the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligation) are restated in this Agreement by completion of the appropriate blanks in Section IV. If the Consolidated Single Family loan has an adjustable interest rate (or other alternative mortgage loan provisions), the appropriate Fannie Mae or Freddie Mac Rider must be attached as Exhibit C to this Agreement and recorded together with it. The terms of the Consolidated Mortgage, as changed by this Agreement, must be the current version of the Uniform and Non-uniform Covenant from the security instrument for the appropriate jurisdiction, together with any applicable riders. These terms are supplied by means of Exhibits C (if any) and D to this Agreement.

TITLE NO.

## EXHIBIT B

BLOCK     2                         LOT   21

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Babylon, County of Suffolk and State of New York; known and designated upon a certain map entitled, "Map of Breslau Garden Plots, part of Section No. 1 made by J. Sammis Surveyor" and duly filed in the Office of the Clerk of Suffolk County, May 7, 1881 as Map No.72 as and by lots numbered Fifteen (15), Sixteen (16), Seventeen (17) and Eighteen (18) in Block No. Six (6).

BEGINNING at a point on the Southerly side of Spruce Road, distant 250.00 feet Easterly from the corner formed by the intersection of the Southerly side of Spruce Road and the Easterly side of East Street;

RUNNING THENCE along the Southerly side of Spruce Road, North 86° 28' 40" East 100 feet;

THENCE South 3° 31' 20" East 100 feet;

THENCE South 86° 28' 40" West 100 feet;

THENCE North 3° 31' 20" West 100 feet to the Southerly side of Spruce Road, the point or place of BEGINNING.

# EXHIBIT D

That certain mortgage and rider of even date herewith between INES ROWE-BRYAN, Roger Rowe, the mortgagor and Citibank, N.A. the mortgagee, to be recorded simultaneously herewith.

## UNIFORM ACKNOWLEDGMENT
### (For use on Documents being Acknowledged Inside of New York State)

STATE OF NEW YORK       )
                              ) SS·

COUNTY OF  SUFFOLK    )

On the __7TH__ day of __NOVEMBER__ in the year __2002__ before me, the undersigned, a Notary Public in and for said State, personally appeared __INES ROWE-BRYAN AND ROGER ROWE__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

DAVID J. ROSENBLUM
Notary Public, State of New York
No. 3802645
Qualified in Suffolk County
Commission Expires Oct 31, 20__ __

## UNIFORM ACKNOWLEDGMENT
### (For use on Documents being Acknowledged Outside of New York State)

State, District of Columbia, Territory, Possession or Foreign Country   )
                                                         ) SS:
_____ )

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____
(insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
Signature and office of individual taking acknowledgment

# EXHIBIT C

James Bauer
Executive Resolution Analyst
PO Box 77404
Ewing, NJ 08628

**Sent via Fax 609-718-2782 and CERTIFIED U.S. Mail**

October 21, 2019

RE:: Account 4770947259.

# NOTICE RIGHT OF RESCISSION 12 CFR Part §1026.23 Right of rescission

This notice memorializes my formal rescission of loan number "4770947259. The right to rescission is related to the security interest Note and Mortgage referenced in you July 12, 2019 letter. I am exercising my legal right to rescind pursuant to the Federal Truth in Lending Act. 12 CFR Part § 1026.23.

§1026.23(a) states that

> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. For purposes of this section, the addition to an existing obligation of a security interest in a consumer's principal dwelling is a transaction. The right of rescission applies only to the addition of the security interest and not the existing obligation. The creditor shall deliver the notice required by paragraph (b) of this section but need not deliver new material disclosures. Delivery of the required notice shall begin the rescission period.

The official interpretation of Paragraph 23(a)(1) states the following.

> A security interest arising from transaction.
> i. In order for the right of rescission to apply, the security interest must be retained as part of the credit transaction. For example:
> A. A security interest that is acquired by a contractor who is also extending the credit in the transaction.
> B. A mechanic's or materialman's lien that is retained by a subcontractor or supplier of the contractor-creditor, even when the latter has waived its own security interest in the consumer's home.
> This request is being made based on information

Based on Cenlar's July 12, 2019 letter Federal National Mortgage Administration (FNMA) currently owns my loan. If this is the case FNMA was and is required to provide a Mortgage transfer disclosure pursuant to § 1026.39. Based on the information provided FNMA does not

meet the exceptions outlined under § 1026.39(c). That being said, based on your current claim of being a sub servicer to CitiMortgage, Inc as it relates to FNMA being the new owner of my loan, I present my Notice of Right of Rescission to you and remind you that you are obligated under § 1026.23(c) to delay creditor's performance. § 1026.23(c) states the following:

> Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

In addition to the delay in creditor's performance, be advised that § 1026.23(d) Effects of rescission gives rise to the security interest becoming void and the consumer shall not be liable for any amount including any finance charge. Furthermore pursuant to § 1026.23(d)(1) "Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."

If you have any question please don't hesitate to contact me.

Sincerely,

Roger Rowe
20 Spruce rd
Amityville, NY 11701
631-767-6537

# FAX



To: James Bauer

Fax:609-718-2782

Phone:866-677-8807

Subject: Acct 4770947259

Comments

From:   Roger    Rowe

Fax:631-608-2876

Phone:631-767-6537

Date:              October 21,
                        2019

Mr. James Bauer

Attached you will find my Notice Right of Rescission.

If you have any questions I could be reached at 631-767-6537.

-PA 79-

```
*****************************
***   ACTIVITY REPORT   ***
*****************************
```

| ST. TIME | DESTINATION NUMBER | DESTINATION ID | NO. | MODE | | PGS. | RESULT | |
|----------|--------------------|----------------|-----|------|---|------|--------|---|
| *07/14 20:57 | 18888656260 | | 0126 | TRANSMIT | ECM | 1 | OK | 00'25 |
| *07/19 09:51 | 16095384005 | | 0127 | TRANSMIT | ECM | 1 | NG | 00'52 |
| | | | | | | 1 | | |
| *07/19 09:54 | 16095384005 | | 0128 | TRANSMIT | ECM | 2 | NG | 01'12 |
| | | | | | | 2 | | |
| *07/19 09:59 | 16095384005 | | 0129 | TRANSMIT | ECM | 2 | NG | 01'12 |
| | | | | | | 2 | | |
| *07/19 10:09 | 16097182782 | | 0130 | TRANSMIT | ECM | 2 | OK | 00'50 |
| *07/19 10:12 | 16095384005 | | 0131 | TRANSMIT | ECM | 2 | NG | 01'20 |
| | | | | | | 2 | | |
| *08/14 15:00 | 16095384005 | | 0132 | TRANSMIT | G3 | 0 | NG | 00'45 |
| | | | | | | 0 | | |
| *08/14 15:28 | 6095384005 | | 0133 | TRANSMIT | ECM | 2 | NG | 01'09 |
| | | | | | | 2 | | |
| *08/14 15:30 | 16097182782 | | 0134 | TRANSMIT | G3 | 3 | OK | 01'11 |
| *08/14 16:17 | 16095384011 | | 0135 | TRANSMIT | ECM | 2 | OK | 00'55 |
| *08/16 15:50 | 16095384011 | | 0136 | TRANSMIT | ECM | 3 | OK | 01'08 |
| *08/16 16:19 | 18434137133 | | 0137 | TRANSMIT | ECM | 3 | OK | 01'09 |
| *08/22 10:34 | | | 5310 | AUTO RX | ECM | 4 | OK | 02'08 |
| *08/31 10:06 | | | 5311 | AUTO RX | ECM | 4 | OK | 02'14 |
| *09/04 10:23 | | | 5312 | AUTO RX | ECM | 4 | OK | 02'08 |
| *09/04 14:25 | 16097182782 | | 0138 | TRANSMIT | ECM | 2 | OK | 00'42 |
| *10/02 15:21 | 15184741418 | | 0139 | TRANSMIT | ECM | 4 | OK | 01'24 |
| 10/03 10:15 | 518 474 8571 | | 5313 | AUTO RX | G3 | 1 | OK | 00'55 |
| 10/03 10:21 | 518 474 8571 | | 5314 | AUTO RX | G3 | 1 | OK | 00'51 |
| 10/21 03:50 | 16097182782 | | 0140 | TRANSMIT | ECM | 3 | OK | 01'03 |

James Bauer
Executive Resolution Analyst
PO Box 77404
Ewing. NJ 08628

**Sent via Fax 609-718-2782 and CERTIFIED U.S. Mail**

November 11, 2019

RE: **Account 4770947259.**
    **NOTICE RIGHT OF RESCISSION**
    **12 CFR Part §1026.23 Right of rescission**

Dear Mr. James Bauer

This letter is in response to your November 5. 2019 letter in which you provided copies of rights to cancel from the original lender Citi Mortgage. Please note I am also entitled to rescind from someone that becomes the owner of an existing mortgage loan whom acquired legal title to the debt obligation. As stated in my October 21. 2019 letter Federal National Mortgage Administration (FNMA) was required to provide a Mortgage transfer disclosure pursuant to § 1026.39.(a)(1) if FNMA was the new owner of the loan as described in your July 12. 2019 letter.

Nevertheless. the failure of FNMA to issues said notice does not terminate my rights to rescission pursuant to §1026.23(d)(1) **Termination of security interest.**

> Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission. The security interest is automatically negated regardless of its status and whether or not it was recorded or perfected. Under § 1026.23(d)(2). however. the creditor must take any action necessary to reflect the fact that the security interest no longer exists.

As such FNMA and Cenlar is required to provide notice of mortgage transfer disclosure as well as a notice of consumers right to rescission relative to security interest arising from a transaction noted in § 1026.23(a)(1). Furthermore the rescission period will not begin to run until delivery of rescission notice. As noted under § 1026.23(a) the right to rescission applies as follows:

**Addition of a security interest.** Under § 1026.23(a). the addition of a security interest in a consumer's principal dwelling to an existing obligation is rescindable even if the existing obligation is not satisfied and replaced by a new obligation. and even if the existing obligation was previously exempt under § 1026.3(b). The right of rescission applies only to the added security interest. however. and not to the original obligation. In those situations. only the § 1026.23(b) notice need be delivered. not new material disclosures; the rescission period will begin to run from the delivery of the notice.

Furthermore a consumer may exercise its right to rescission pursuant to paragraph 23(a)(2) **Consumer's exercise of right.** The consumer must exercise the right of rescission in writing but not necessarily on the notice supplied under § 1026.23(b). Whatever the means of sending the notification of rescission - mail, telegram or other written means - the time period for the creditor's performance under § 1026.23(d)(2) does not begin to run until the notification has been received.

That being said a security interest to title of a debt obligation becomes void when the consumer exercises the right of rescission. At this point FNMA and Cenlar is willfully violating my right to rescission and as such has cause undue hardship. The failure to provide rescission is adversely effecting my ability to obtain financing, resulted in a negative impact on my credit report and caused emotional distress.

I hope that this letter clarified any misunderstanding you might of had regarding FNMA and Cenlars responsibility to provide me with the appropriate **mortgage transfer disclosure** and the requisite **notice of right to rescission**. Pursuant to § 1026.23(d)(3) I ask that you take whatever steps necessary to indicate this security instrument is terminated. Please note that time is of the essence and your 20 days from my rescission is about to expire. Please email to (rroweny@gmail.com) a confirmation of rescission which indicates the security instrument has been terminated.

If you have any question please don't hesitate to contact me.

Sincerely,

Roger Rowe
20 Spruce rd
Amityville, NY 11701
631-767-6537

# EXHIBIT D

Case 22-1670, Document 19-1, https://usa.experian.com/#/print/experian/now



Credit Report Prepared For:

## ROGER ROWE

Experian Report As Of:  Dec 24, 2019

Personal & Confidential

Case 22-1870, Document 19, Filed 02/23/23, Page 87 of 237

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Account Summary

## My Accounts Summary

| | |
|---|---|
| Open Credit Cards | 3 |
| Open Retail Cards | 0 |
| Open Real Estate Loans | 1 |
| Open Installment Loans | 0 |
| Total Open Accounts | 4 |
| Accounts Ever Late | 2 |
| Collections Accounts | 0 |
| Average Account Age | 12 yrs |
| Oldest Account | 19 yrs 4 mos |

## My Overall Credit Usage

**76%**

Credit Debt
$2,290

Total Credit
$3,000

## My Debt Summary

| | |
|---|---|
| Credit and Retail Card Debt | $2,290 |
| Real Estate Debt | $107,239 |
| Installment Loans Debt | $0 |
| Collections Debt | $0 |
| Total Debt | $109,529 |

## My Hard Credit Inquiries

16

## My Public Records

0

*Summary*    *Accounts*    *Collections*    *Inquiries*    *Public Records*    *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Account Summary

## My Personal Information

**Name**
ROGER ROWE

**Also Known As**

**Birth Year**
1967

**Addresses**
20 SPRUCE RD
AMITYVILLE, NY 11701-1019

2 MORTELL CT
COPIAGUE, NY 11726-1000

116 MADISON AVE
AMITYVILLE, NY 11701-1930

**Employer(s)**
ICM GROUP

INTEGRATED CONSTRUCTION

**Personal Statement(s)**
No Statement(s) present at this time

*Summary*        *Accounts*        *Collections*        *Inquiries*        *Public Records*        *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Open Accounts

**CAPITAL ONE BANK USA N**
**400344XXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | CAPITAL ONE BANK USA N |
| Account # | 400344XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Sep 2019 |
| Account Status! | Open |
| Payment Status | Current |
| Status Updated | Dec 2019 |
| Balance | $352 |
| Balance Updated | Dec 20, 2019 |
| Credit Limit | $500 |
| Monthly Payment | $25 |
| Past Due Amount | - |
| Highest Balance | $467 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | - |

## CREDIT USAGE

**70%**

**High Credit Usage**
Keeping your account balances
as low as possible can have a
positive impact on your credit.

## CONTACT INFORMATION

15000 CAPITAL ONE DR
RICHMOND, VA 23238
(800) 955-7070

## PAYMENT HISTORY

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ |

| May | Jun | Jul | Aug |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ |

| Sep | Oct | Nov | Dec |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ |

OK OK

Summary    Accounts (Open)    Collections    Inquiries    Public Records    Credit Score

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



**CAPITAL ONE BANK USA N**
**517805XXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | CAPITAL ONE BANK USA N |
| Account # | 517805XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Aug 2018 |
| Account Status! | Open |
| Payment Status | Current |
| Status Updated | Dec 2019 |
| Balance | $189 |
| Balance Updated | Dec 7, 2019 |
| Credit Limit | $500 |
| Monthly Payment | $25 |
| Past Due Amount | - |
| Highest Balance | $491 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | - |

### CREDIT USAGE

**38%**

Fair Credit Usage
Keeping your account balances
as low as possible can have a
positive impact on your credit.

### CONTACT INFORMATION

15000 CAPITAL ONE DR
RICHMOND, VA 23238
(800) 955-7070

### PAYMENT HISTORY

| 2019 | | | | 2018 | | | |
|---|---|---|---|---|---|---|---|
| Jan | Feb | Mar | Apr | Jan | Feb | Mar | Apr |
| May | Jun | Jul | Aug | May | Jun | Jul | Aug |
| Sep | Oct | Nov | Dec | Sep | Oct | Nov | Dec |

[OK] OK

*Summary        Accounts (Open)        Collections        Inquiries        Public Records        Credit Score*

12/29/2019 https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

 experian.

⚠

**CENTRAL LOAN ADMIN & R**
**300477XXXXXXX**

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | CENTRAL LOAN ADMIN & R |
| Account # | 300477XXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REAL ESTATE |
| Date Opened | Nov 2002 |
| Account Status! | Open |
| Payment Status | Past due 90 days |
| Status Updated | Sep 2019 |
| Balance | $107,239 |
| Balance Updated | Sep 3, 2019 |
| Original Balance | $157,500 |
| Monthly Payment | $1,697 |
| Past Due Amount | $5,149 |
| Highest Balance | - |
| Terms | 360 Months |
| Responsibility | Joint Account |
| Your Statement | - |
| Comments | - |

## CONTACT INFORMATION

425 PHILLIPS BLVD
EWING, NJ 08618
(609) 883-3900

### PAYMENT HISTORY

**2019**

| Jan | Feb | Mar | Apr |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ |

| May | Jun | Jul | Aug |
|---|---|---|---|
| ☐ | ☐ | 30 | ☐ |

| Sep | Oct | Nov | Dec |
|---|---|---|---|
| 90 | ☐ | ☐ | ☐ |

| | | | |
|---|---|---|---|
| OK OK | | 30 30 Days Late | |
| 90 90 Days Late | | ☐ Data Unavailable | |

---

*Summary*   *Accounts (Open)*   *Collections*   *Inquiries*   *Public Records*   *Credit Score*

https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

 experian.

TD BANK USA/TARGETCRED
511786XXXXXXXXXX

Open

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | TD BANK USA/TARGETCRED |
| Account # | 511786XXXXXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Sep 2006 |
| Account Status | Open |
| Payment Status | Current |
| Status Updated | Nov 2019 |
| Balance | $1,749 |
| Balance Updated | Nov 26, 2019 |
| Credit Limit | $2,000 |
| Monthly Payment | $55 |
| Past Due Amount | - |
| Highest Balance | $2,164 |
| Terms | Revolving |
| Responsibility | Authorized User |
| Your Statement | - |
| Comments | - |

### CREDIT USAGE

87%

**High Credit Usage**
Keeping your account balances
as low as possible can have a
positive impact on your credit.

### CONTACT INFORMATION

PO BOX 673
MINNEAPOLIS, MN 55440
(888) 755-5856

### PAYMENT HISTORY

**2019** **2018** **2017**
Jan Feb Mar Apr Jan Feb Mar Apr Jan Feb Mar Apr
May Jun Jul Aug May Jun Jul Aug May Jun Jul Aug
Sep Oct Nov Dec Sep Oct Nov Dec Sep Oct Nov Dec

**2016** **2015** **2014**
Jan Feb Mar Apr Jan Feb Mar Apr Jan Feb Mar Apr
May Jun Jul Aug May Jun Jul Aug May Jun Jul Aug
Sep Oct Nov Dec Sep Oct Nov Dec Sep Oct Nov Dec

**2013** **2012**
Jan Feb Mar Apr Jan Feb Mar Apr
May Jun Jul Aug May Jun Jul Aug
Sep Oct Nov Dec Sep Oct Nov Dec

OK OK

*Summary      Accounts (Open)      Collections      Inquiries      Public Records      Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Closed Accounts

**CITIMORTGAGE INC**
**200036XXXX**                                                                    Closed

**ACCOUNT DETAILS**                                              **CONTACT INFORMATION**

| | | |
|---|---|---|
| Account Name | CITIMORTGAGE INC | PO BOX 9438 |
| Account # | 200036XXXX | GAITHERSBURG, MD 20898 |
| Original Creditor | - | (800) 283-7918 |
| Company Sold | - | **PAYMENT HISTORY** |
| Account Type | REAL ESTATE | |
| Date Opened | Nov 2002 | |
| Account Status! | Closed | |
| Payment Status | Account transferred to another office | |
| Status Updated | Apr 2019 | |
| Balance | - | |
| Balance Updated | Apr 30, 2019 | |
| Original Balance | $157,500 | |
| Monthly Payment | - | |
| Past Due Amount | - | |
| Highest Balance | - | |
| Terms | 360 Months | |
| Responsibility | Joint Account | |
| Your Statement | - | |
| Comments | Transferred to another lender or claim purchased | |

**PAYMENT HISTORY**

| 2019 | 2018 | 2017 |
|---|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec | Sep Oct Nov Dec |

| 2016 | 2015 | 2014 |
|---|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec | Sep Oct Nov Dec |

| 2013 | 2012 |
|---|---|
| Jan Feb Mar Apr | Jan Feb Mar Apr |
| May Jun Jul Aug | May Jun Jul Aug |
| Sep Oct Nov Dec | Sep Oct Nov Dec |

OK OK

*Summary*      *Accounts (Closed)*      *Collections*      *Inquiries*      *Public Records*      *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



| | JPMCB HL | |
|---|---|---|
| | 465002XXXXXXX | Closed |

**?**

## ACCOUNT DETAILS

| Account Name | JPMCB HL |
|---|---|
| Account # | 465002XXXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REAL ESTATE |
| Date Opened | Mar 2006 |
| Account Status | Closed |
| Payment Status | Account transferred to another office |
| Status Updated | Nov 2014 |
| Balance | - |
| Balance Updated | Nov 1, 2014 |
| Original Balance | $0 |
| Monthly Payment | - |
| Past Due Amount | - |
| Highest Balance | - |
| Terms | Unknown |
| Responsibility | Individual |
| Your Statement | **CONSUMER STATEMENT** Y ITEM DISPUTED BY CONSUMER |
| Comments | - |

## CONTACT INFORMATION

700 KANSAS LN
MONROE, LA 71203
(800) 848-9136

### PAYMENT HISTORY

**2014**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| | | | |
| May | Jun | Jul | Aug |
| | 30 | | 30 |
| Sep | Oct | Nov | Dec |
| 60 | 90 | | |

**2013**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| | | | |
| May | Jun | Jul | Aug |
| | | | |
| Sep | Oct | Nov | Dec |
| | | | |

**2012**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| | | | |
| May | Jun | Jul | Aug |
| | | | |
| Sep | Oct | Nov | Dec |
| | | | |

**2011**
| Jan | Feb | Mar | Apr |
|---|---|---|---|
| | | | |
| May | Jun | Jul | Aug |
| | | | |
| Sep | Oct | Nov | Dec |
| | | | |

OK | OK
30 | 30 Days Late
60 | 60 Days Late
90 | 90 Days Late

*Summary*     *Accounts (Closed)*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

-PA 91-

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



⚠                          **SELECT PORTFOLIO SVCIN**                          Closed
                           **277001XXXXXXX**

**ACCOUNT DETAILS**                          **CONTACT INFORMATION**

| Account Name | SELECT PORTFOLIO SVCIN | PO BOX 65250 |
| Account # | 277001XXXXXXX | SALT LAKE CITY, UT 84165 |
| | | BYMAILONLY |
| Original Creditor | - | |

**PAYMENT HISTORY**

| | | 2018 | 2017 | 2016 |
|---|---|---|---|---|
| Company Sold | - | Jan Feb Mar Apr | Jan Feb Mar Apr | Jan Feb Mar Apr |
| Account Type | REAL ESTATE | ☐ ☐ ☐ ☐ | ☐ ☐ ☐ ☐ | 120 120 120 120 |
| | | May Jun Jul Aug | May Jun Jul Aug | May Jun Jul Aug |
| Date Opened | Mar 2006 | ☐ ☐ ☐ 120 | ☐ ☐ ☐ ☐ | 120 120 120 120 |
| | | Sep Oct Nov Dec | Sep Oct Nov Dec | Sep Oct Nov Dec |
| Account Status | Closed | 120 120 N | ☐ ☐ ☐ ☐ | 120 ☐ ☐ ☐ |

| | | 2015 | 2014 | |
|---|---|---|---|---|
| Payment Status | Foreclosure proceeding started | Jan Feb Mar Apr | Jan Feb Mar Apr | |
| Status Updated | Nov 2018 | 120 120 120 120 | ☐ ☐ ☐ ☐ | |
| | | May Jun Jul Aug | May Jun Jul Aug | |
| Balance | $352,753 | 120 120 120 120 | ☐ ☐ ☐ ☐ | |
| Balance Updated | Nov 11, 2018 | Sep Oct Nov Dec | Sep Oct Nov Dec | |
| | | 120 120 120 120 | ☐ ☐ ☐ ☐ | |

| Original Balance | $250,000 | 120 120+ Days Late    N Negative |
| Monthly Payment | $2,789 | ☐ Data Unavailable |
| Past Due Amount | $138,006 | |
| Highest Balance | - | |
| Terms | 360 Months | |
| Responsibility | Individual | |
| Your Statement | **CONSUMER STATEMENT** Y ITEM DISPUTED BY CONSUMER | |
| Comments | Account was in dispute-now resolved-reported by subscriber | |
| | Account previously in dispute - now resolved, reported by data furnisher (To be used for FCRA or FCBA disputes) | |

*Summary      Accounts (Closed)      Collections      Inquiries      Public Records      Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



**SYNCB/JCP**
**600889XXXXXX**

Closed

## ACCOUNT DETAILS

| | |
|---|---|
| Account Name | SYNCB/JCP |
| Account # | 600889XXXXXX |
| Original Creditor | - |
| Company Sold | - |
| Account Type | REVOLVING |
| Date Opened | Aug 2000 |
| Account Status! | Closed |
| Payment Status | Paid satisfactorily |
| Status Updated | Feb 2012 |
| Balance | - |
| Balance Updated | Feb 17, 2012 |
| Credit Limit | $0 |
| Monthly Payment | - |
| Past Due Amount | - |
| Highest Balance | $154 |
| Terms | Revolving |
| Responsibility | Individual |
| Your Statement | - |
| Comments | - |

### CREDIT USAGE

N/A

Unknown Credit Usage
Credit usage could not be calculated for this account because either the balance and/or credit limit were not reported.

### CONTACT INFORMATION

PO BOX 965007
ORLANDO, FL 32896
(800) 542-0800

### PAYMENT HISTORY

| | 2012 | 2011 | 2010 |
|---|---|---|---|
| Jan Feb Mar Apr | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |
| May Jun Jul Aug | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |
| Sep Oct Nov Dec | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |

| | 2009 | 2008 | 2007 |
|---|---|---|---|
| Jan Feb Mar Apr | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |
| May Jun Jul Aug | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |
| Sep Oct Nov Dec | ☐☐☐☐ | ☐☐☐☐ | ☐☐☐☐ |

| | 2006 | 2005 |
|---|---|---|
| Jan Feb Mar Apr | ☐☐☐☐ | ☐☐☐☐ |
| May Jun Jul Aug | ☐☐☐☐ | ☐☐☐☐ |
| Sep Oct Nov Dec | ☐☐☐☐ | ☐☐☐☐ |

☐ OK

*Summary*     *Accounts (Closed)*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

**experian.**

## Collections

**No collection accounts**

Summary     Accounts     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Inquiries

**Q   CAP ONE NA**

| | |
|---|---|
| Inquiry Date | Sep 6, 2019 |
| Removal Date | Sep 2021 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 30281 |
| | SALT LAKE CITY, UT 84130 |
| | (800) 227-4825 |

**Q   UNIVERSAL CREDIT SVCS-**

| | |
|---|---|
| Inquiry Date | Jul 25, 2019 |
| Removal Date | Jul 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 201 MARPLE AVE |
| | CLIFTON HEIGHTS, PA 19018 |
| | (610) 284-1000 |

**Q   CREDIT PLUS**

| | |
|---|---|
| Inquiry Date | Jul 18, 2019 |
| Removal Date | Jul 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY |
| | SALISBURY, MD 21804 |
| | (410) 742-9551 |

**Q   MARK A KIRKKORSKY PC**

| | |
|---|---|
| Inquiry Date | Jun 4, 2019 |
| Removal Date | Jun 2021 |
| Business Type | Collections attorney |
| Contact Information | 1119 W SOUTHERN AVE S-20 |
| | MESA, AZ 85210 |
| | (480) 551-2173 |

**Q   CREDIT PLUS**

| | |
|---|---|
| Inquiry Date | Apr 30, 2019 |
| Removal Date | Apr 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY |
| | SALISBURY, MD 21804 |
| | (410) 742-9551 |

**Q   CREDIT PLUS**

| | |
|---|---|
| Inquiry Date | Mar 8, 2019 |
| Removal Date | Mar 2021 |
| Business Type | Mortgage reporters |
| Contact Information | 31550 WINTERPLACE PKWY |
| | SALISBURY, MD 21804 |
| | (410) 742-9551 |

*Summary        Accounts        Collections        Inquiries        Public Records        Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

 experian.

| 🔍 EMS/CITIBANK | | 🔍 JPMCB CARD | |
|---|---|---|---|
| Inquiry Date | Feb 28, 2019 | Inquiry Date | Jan 4, 2019 |
| Removal Date | Feb 2021 | Removal Date | Jan 2021 |
| Business Type | Bank - mortgage department | Business Type | Bank credit cards |
| Contact Information | 4300 WESTOWN PKWY STE 20 WEST DES MOINES, IA 50266 (800) 333-0037 | Contact Information | PO BOX 15077 WILMINGTON, DE 19850 (800) 453-9719 |

| 🔍 EMS/CITIBANK | | 🔍 CBNA | |
|---|---|---|---|
| Inquiry Date | Oct 23, 2018 | Inquiry Date | Oct 22, 2018 |
| Removal Date | Oct 2020 | Removal Date | Oct 2020 |
| Business Type | Bank - mortgage department | Business Type | Mortgage companies |
| Contact Information | 4300 WESTOWN PKWY STE 20 WEST DES MOINES, IA 50266 (800) 333-0037 | Contact Information | 15851 CLAYTON RD # MS760 ELLISVILLE, MO 63011 BYMAILONLY |

| 🔍 MARK A KIRKKORSKY PC | | 🔍 CAP ONE NA | |
|---|---|---|---|
| Inquiry Date | Sep 25, 2018 | Inquiry Date | Aug 21, 2018 |
| Removal Date | Sep 2020 | Removal Date | Aug 2020 |
| Business Type | Collections attorney | Business Type | Bank credit cards |
| Contact Information | 1119 W SOUTHERN AVE S-20 MESA, AZ 85210 (480) 551-2173 | Contact Information | 4851 COX RD RICHMOND, VA 23229 |

*Summary*     *Accounts*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



### 🔍 OLLO/TBOM/CWS

| | |
|---|---|
| Inquiry Date | Apr 1, 2018 |
| Removal Date | Apr 2020 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 9222 |
| | OLD BETHPAGE, NY 11804 |
| | (877) 494-0020 |

### 🔍 CBNA/PRE02 UFC

| | |
|---|---|
| Inquiry Date | Jan 13, 2018 |
| Removal Date | Jan 2020 |
| Business Type | Bank credit cards |
| Contact Information | 5800 SOUTH CORPORATE PLA |
| | SIOUX FALLS, SD 57108 |
| | (605) 331-2626 |

### 🔍 CAP ONE NA

| | |
|---|---|
| Inquiry Date | Jan 13, 2018 |
| Removal Date | Jan 2020 |
| Business Type | Bank credit cards |
| Contact Information | 4851 COX RD |
| | RICHMOND, VA 23229 |

### 🔍 CITI CARDS CBNA

| | |
|---|---|
| Inquiry Date | Dec 4, 2017 |
| Removal Date | Dec 2019 |
| Business Type | Bank credit cards |
| Contact Information | PO BOX 6000 |
| | SIOUX FALLS, SD 57117 |
| | BYMAILONLY |

*Summary*     *Accounts*     *Collections*     *Inquiries*     *Public Records*     *Credit Score*

ROGER ROWE - Experian
Date of Report: Dec 24, 2019

experian.

## Public Records

**No public records**

Summary        Accounts        Collections        Inquiries        Public Records        Credit Score

12/29/2019                                                                https://usa.experian.com/#/print/experian/now

ROGER ROWE - Experian
Date of Report: Dec 24, 2019



# Credit Score



**609**

300   FICO² SCORE6 Experian data 12/24/2019   850

Learn More about FICO ®
Scores ▸

Your score is below the average
score of U.S. consumers, though
many lenders will approve loans with
this score.

## What's helping your score?

⊘ **Long Credit History**

You have an established credit history.

Your oldest account was opened
**19 Years, 4 Months ago**

FICO® Scores measure the age of the oldest account and the average age of all accounts being reported. Generally speaking, having a relatively long credit history and not opening many new accounts is reflective of lower risk.

FICO High Achievers ⑦ opened their oldest account 25 years ago, on average.

## What's hurting your score?

⊖ **Serious Delinquency**

You have a serious delinquency (60 days past due or greater) or derogatory indicator on your credit report.

Number of your accounts that were ever 60 days late or worse or have a derogatory indicator
**3 accounts**

The presence of a serious delinquency or derogatory indicator ⑦ is a highly correlated predictor of future payment risk. People with previous late payments are more likely to pay late in the future.

As these items age, they will have less impact on the FICO® Score.

Most late payments stay on your report for no more than seven years.

Virtually no FICO High Achievers ⑦ have a 60 days late payment or worse listed on their credit report.

⊖ **High Credit Usage**

You've made heavy use of your available revolving credit.

Ratio of your revolving balances to your credit limits
**54%**

The FICO® Score evaluates balances in relation to available credit on revolving accounts ⑦. The extent of a person's credit usage is one of the most important factors considered by a FICO® Score. People who keep their ratio of balances to credit limits lower are generally considered less ~~risk to lenders than those with higher ratios~~

| Summary | Accounts | Collections | Inquiries | Public Records | Credit Score |
|---------|----------|-------------|-----------|----------------|--------------|

For FICO High Achievers ⑦, the average ratio of the revolving account balances to credit limits is less than 7%.

⊖ **Few Accounts Paid On Time**

You have few accounts that are in good standing.

:experian.

Number of your accounts currently being paid as agreed

2 accounts

Date of report: Dec 24, 2019

The FI_____ _____ _____ _____ ____nts showing on time payments. In your case this ___ __ _____ _____ ____ ___ __ _ __e very few accounts or you've missed payments recently on some of your accounts or have accounts with derogatory indicators @ reported.

**Credit Score**

FICO High Achievers @ have an average of 6 accounts currently being paid as agreed.

You have no positive factors impacting your Score.

## What's hurting your score?

$\ominus$ **Bad Payment History**

You have one or more accounts showing missed payments or derogatory indicators.

Number of your accounts with a missed payment or derogatory indicator

**3 accounts**

The presence of missed and late payments or derogatory indicators @ on a credit report, including the number of late payments, how late they were and how recently they occurred, are correlated with future credit risk. Your FICO® Score was lowered due to the number of missed and late payments and/or accounts with derogatory indicators reported.

As the number of accounts with delinquency or derogatory indicators decreases, they have less impact on a FICO® Score.

About 98% of FICO High Achievers @ have no missed payments at all. But of those who do, the missed payment happened nearly 4 years ago, on average.

| *Summary* | *Accounts* | *Collections* | *Inquiries* | *Public Records* | *Credit Score* |

**:experian.**

# Disclaimer

**Disclaimer**

## About your FICO® Score 8 or other FICO Scores

Your FICO®Score 8 powered by Experian data is formulated using the information in your credit file at the time it is requested. Many but not all lenders use FICO® Score 8. In addition to the FICO® Score 8, we may offer and provide other base or industry-specific FICO® Scores (such as FICO® Auto Scores and FICO® Bankcard Scores). The other FICO® Scores made available are calculated from versions of the base and industry-specific FICO® Score models.

Base FICO® Scores (including the FICO® Score 8) range from 300 to 850. Industry-specific FICO® Scores range from 250-900. Higher scores represent a greater likelihood that you'll pay back your debts so you are viewed as being a lower credit risk to lenders. A lower FICO® Score indicates to lenders that you may be a higher credit risk. There are many scoring models used in the marketplace. The type of score used, and its associated risk levels, may vary from lender to lender. But regardless of what scoring model is used, they all have one purpose: to summarize your creditworthiness. Keep in mind that your score is just one factor used in the application process. Other factors, such as your annual salary and length of employment, may also be considered by lenders when you apply for a loan.

## What this means to you:

Credit scoring can help you understand your overall credit rating and help companies better understand how to serve you. Overall benefits of credit scoring have included faster credit approvals, reduction in human error and bias, consistency, and better terms and rates for American consumers through reduced costs and losses for lenders. Your lender or insurer may use a different FICO® Score than FICO® Score 8 or other base or industry-specific FICO Scores provided by us, or different scoring models to determine how you score.

# EXHIBIT E



PAYOFF STATEMENT AS OF August 22, 2019 ("Effective Date")

**IMPORTANT: Your payoff statement consists of multiple pages!**
**To ensure that your payoff transaction is processed efficiently, please read**
**the entire payoff statement and follow all instructions. Pay CLOSE ATTENTION**
**to the Wiring Instructions, as they are UNIQUE to this loan ONLY!**

Ines Rowe-Bryan
Roger Rowe
20 Spruce Rd
Amityville NY 11701

Property Address: 20 Spruce Rd
Amityville NY 11701-1019

Loan No.: 4770947259                    Original Loan Date: 11-07-02
Original Loan Amount: $    157,500      Loan Type: Conventional
FHA/VA/MI No.:                          Investor No. KPS 001 1084647799

Statement forwarded to
6316082876                                          TV(8160)

**NOTICE REGARDING BANKRUPTCY AND BANKRUPTCY DISCHARGE:** This statement is not an attempt to collect a debt that is subject to a pending bankruptcy or has been discharged as the result of a bankruptcy proceeding. This statement is being provided upon request and for informational purposes only.
**LOANS WITH MIP OR PMI PREMIUMS DUE:** If your payoff is not received prior to the first of the month, or if your payoff is received prior to the first but short of the amount due to pay off the loan prior to the first, you will be required to remit an additional monthly MIP or PMI premium.
**ATTENTION BORROWERS USING AUTOMATIC DRAFTING:** If your monthly payments are automatically withdrawn from your checking/savings account using our Payment Drafting Program (automatic drafting) you must instruct this office to discontinue automatic drafting at least fifteen (15) business days before the next scheduled withdrawal. For your convenience and self-service you can delete the auto draft by visiting our website or call the number provided. You may also send a written notice to: Drafting Department PO Box 77421 Ewing NJ 08628. Please allow extra time if mailing your request. Failure to comply may result in serviced withdrawals.
**ATTENTION BORROWERS USING ONLINE BILL PAYMENT SERVICES:** If you authorize a Third Party Bill Payment Service to remit your monthly payment, it is your responsibility to cancel this service before it cannot the Bill Payment Service has sent in an additional withdrawal after your loan is paid off.

XP141 VC 013 2Q3 (FI 51)

Ines Rowe-Bryan
Roger Rowe
4770542209

Statement of amount necessary to pay loan in full on or before 09-22-19

Interest Rate: 6.00000%                    Interest Paid to: 05-01-19
Next Payment Due Date: 06-01-19            Loan Type: Conventional

Present Principal Balance: $         105,093.00
Interest to 09-22-19:                  2,464.67

Subtotal of Amount Secured
by Security Instrument:     $        107,557.00

OTHER CHARGES
Accrued Late Charge:                     56.67
Recording Fee          :                450.50

Other Charges Sub Total:    $           507.17

Total Due:                  $        108,064.84

* Itemization of these amounts is available upon request. Please call
  1-855-839-6253 to request an itemization.

If funds are received after 09-22-19 include an additional amount of
$ 17.28 per Day. If the current month's payment or payoff is
not received within 16 days of the due date of the next payment,
a late charge in the amount of $ 18.89  in addition to the amount
shown above  must be remitted

XP161-N1 017 SQ2 (92-91)

-PA 104-                                                      Page 2

Ines Rowe-Bryan
Roger Rowe
4770947259

## LOAN PAYOFF INFORMATION

GENERAL INSTRUCTIONS AND CONDITIONS:

* ALL PAYOFF FIGURES PROVIDED ARE SUBJECT TO CLERICAL ERROR CORRECTION
  AND FINAL AUDIT.

  PAYMENT BY WIRE: ATTENTION: UNIQUE WIRING INSTRUCTIONS BELOW.

* Our preferred method of payoff remittance is by wire transfer.
* Funds should be wired to CENLAR FS PRINCETON, TRENTON, NJ
  ABA Nor:231271365 Acct. Nb:  2094770947259
  Central Loan Administration & Reporting
* NOTE: If the above wiring instructions are not followed, it could
  result in additional accrued interest and delayed processing.
* The wire must include the borrower's name, loan number, and the
  notation ATTENTION: PAYOFF DEPARTMENT. A contact name and phone
  number of the originator of the wire should also be included.
* Conversions of these instructions into an ACH CREDIT will NOT be
  accepted.

PAYMENT BY CHECK:
* PERSONAL CHECKS WILL NOT BE ACCEPTED.
* ONLINE BILL PAYMENTS WILL NOT BE ACCEPTED
* All checks should be made payable to
  Central Loan Administration & Reporting

Send to the following address: Payoff Department, 425 Phillips Boulevard,
Ewing, NJ 08618. Include the borrower's name and loan number on the check.
Also, include a contact name and telephone number.

REMITTANCE OF FUNDS:
Payoff remittances (wires or checks) received in our office after 2:00 p.m.
ET will be processed the following business day. Payoffs are not
posted on weekends and Holidays. Accrued interest will be added to the
payoff for those days.

* Payoff funds may be remitted in the form of a wire, certified check,
  bank/cashier's check or attorney's trust check.
* Payoff remittances of less than the full payoff amount due will not be
  applied and interest will continue to accrue until the full amount is
  received. We will attempt to notify the sender of the amount of the
  shortage. If the shortage amount is not received within 15 hours of
  our initial receipt of the funds, the entire remittance may be
  returned.
* If we must reverse the receipt and application of funds due to an
  error in the payoff request, a $200.00 handling fee will be assessed.

* Please note the required payoff amount MAY CHANGE if a payment is
  returned, or if fees or advances occur to or on after the effective date
  of this statement.

XP162 MO (Rev AUG (2)  4)

Ines Rowe-Bryan
Roger Rowe
4770647259

* You must pay all interest that accrues and/or fees that are assessed
  after the Effective Date
* In the event a previously applied payment is reversed due to a
  dishonored or returned item, that will be a charge not to exceed
  the amount permitted by law, and an updated Payoff Statement will be
  issued
* IN THE EVENT THE FUNDS RECEIVED ARE LESS THAN THE TOTAL AMOUNT DUE,
  ANY AVAILABLE ESCROW FUNDS WILL BE USED TO COVER THE SHORTAGE.

SINCE AMOUNTS MAY CHANGE, WE RECOMMEND YOU CONTACT OUR OFFICE TO VERIFY
PAYOFF FIGURES PRIOR TO REMITTING FUNDS.

IF THE LOAN IS DELINQUENT, IN FORECLOSURE OR BANKRUPTCY, this office must
be contacted at least 48 hours prior to payoff in order to allow us
sufficient time to verify the current amount necessary to satisfy the loan

ESCROW ACCOUNTS & DISBURSEMENTS:
* If we collect escrow funds for payment of real estate taxes and hazard
  or flood insurance, we will continue to make required disbursements
  from the escrow account until our application of the payoff funds to
  the account. Once a loan is paid in full, no further disbursements
  will be made for escrowed items.
* CAUTION: If an escrow disbursement creates a shortage in the escrow
  account and causes us to advance our funds, the amount of the advance
  will be added to the amount due and must be paid at time of payoff
* We will attempt to notify the sender of any payoff shortage created by
  escrow disbursements
* Following the payoff, we will conduct a final review of the escrow
  account. You will be notified if additional funds are due; otherwise
  any excess funds remaining in your escrow account, or funds received
  in excess of the payoff amount, will be processed and returned in
  accordance with the applicable state and federal laws

LATE CHARGES:
* Until a loan is paid in full, late charges will continue to accrue as
  permitted by law for any monthly payment that is due but not received
  by the late charge assessment date.

ADDITIONAL PAYOFF STATEMENTS:
* We will charge a fee, as permitted by law, for each additional payoff
  statement generated or for priority delivery of each statement. The
  amount of the fee varies by state and by loan type. Please contact
  us for the amount of the fee.

DOCUMENT CANCELLATION:
* Satisfaction documents will be sent directly to the recording office
  for cancellation of the conveyance

MAILING ADDRESS CHANGE:
* Please provide the mailing address to which original loan documents
  and any escrow refund should be returned

XPH62 MC 045 sdt (1 of 1)

# EXHIBIT F



# citimortgage

Dear CitiMortgage Client(s):          CitiMortgage Account Number: 2000360738

When it comes to your mortgage, you want a simple, easy experience. From payments and insurance to escrow and year-end tax statements, you want access to important information when you want it, so you can get back to living your life with the full confidence your home loan is in good hands.

We are proud of the service we provide to mortgage customers. To continue this tradition, we have entered into an agreement with Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar FSB"), where CitiMortgage will utilize Cenlar FSB to perform various servicing functions. For decades, Cenlar FSB has specialized in caring for mortgage customers. Simply put, this is all they do, and they do it extraordinarily well.

**ACTION NEEDED**
**Beginning April 1, 2019, all mortgage payments should be made to Cenlar FSB directly. To reach Cenlar FSB, please call 1-855-839-6253 or go online at www.loanadministration.com.**

**Your new Cenlar FSB account number: 4770947259**

If you currently make your loan payments via EZPay, Equity Builder, Auto Deduct or BiWeekly Advantage, this service will continue automatically. If you do not currently use one of these plans to make your payments, we have enclosed an ACH authorization form for your convenience. If you would like to take advantage of automated payments please complete and return the authorization form using the mailing instructions provided or visit www.loanadministration.com. Although you will be receiving regular monthly statements from Cenlar FSB we have attached a temporary payment coupon that may be used to make your next payment. You may use this coupon should you wish to make a payment prior to receiving your monthly statement. Citibank checking or savings accountholders may continue to make payments through Citi Mobile or Online Banking.

After the transfer of your mortgage servicing, Cenlar FSB will be your new contact for all questions related to payments, escrow, insurance and other details of your mortgage account. The Notice of Servicing Transfer required by federal law is enclosed and includes contact information.

This transfer of servicing does not impact any other relationship(s) you may have with Citi, and your current Personal Banker, Relationship Manager, or Financial Advisor is still available to help you with all of your other banking needs. We are also happy to continue providing you with new home loan solutions, including refinances of your existing loans.

Thank you for continuing to allow Citi to serve your financial needs. We look forward to continuing this relationship for many years to come.

Sincerely,                              Sincerely,

CitiMortgage, Inc.                       Cenlar FSB

Enclosures



©2019 Citigroup Inc. All rights reserved. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc. or its affiliates, used and registered throughout the world. *Calls are randomly monitored and recorded to ensure quality service

BUS1008815.75265

## NOTICE OF SERVICING TRANSFER

The servicing of your mortgage loan is being transferred effective April 1, 2019. This means that after this date a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

CitiMortgage, Inc. is now collecting your payments. CitiMortgage, Inc. will stop accepting payments received from you after March 31, 2019.

Central Loan Administration & Reporting will collect your payments going forward. Your new servicer will start accepting payments received from you on April 1, 2019.

**Send all payments due on or after April 1, 2019, to Central Loan Administration & Reporting at this address: Payment Processing Center P.O. Box 11733, Newark, NJ 07101-4733.**

If you have any questions for either your present servicer, CitiMortgage, Inc., or your new servicer, Central Loan Administration & Reporting, about your mortgage loan or this transfer, please contact them using the information below:

| Current Servicer: | New Servicer: |
|---|---|
| CitiMortgage, Inc. | Central Loan Administration & Reporting |
| Attention: Customer Research Team | P.O. Box 77404 |
| P.O. Box 6243 | Ewing, NJ 08628 |
| Sioux Falls, SD 57117-6243 | 1-855-839-6253 |
| 1-800-283-7918* | |

**OPTIONAL INSURANCE - SOME WILL TRANSFER, SOME WILL NOT:**
Important note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: If your monthly payment includes a collection of premium for optional insurance with the following companies - Affinion Group/Benefit Consultants, Minnesota Life, NUFIC Insurance Company, ACE Financial, Securian Life/Northstar, Protective Life or Popular Insurance Company, Cenlar will collect the premium for your optional insurance product. Please continue to remit the premium with your payment. If your monthly payment includes a collection of premium for optional insurance with the following company, Assurant, you should do the following to maintain coverage: Contact your insurance provider to make arrangements for you to remit your insurance premium directly to the provider.

Important note about optional products: If you have other optional products, the transfer of servicing rights may affect your products in the following way: The transfer of servicing is not affecting your optional products. The fees for your optional product will be collected by Central Loan Administration & Reporting as part of your mortgage payment. You should do the following to maintain coverage: Continue to include your optional product fees as part of your mortgage payment.

**HOME AFFORDABLE MODIFICATION PROGRAM:**
If you previously accepted an offer for financial counseling under HAMP and have not completed your counseling sessions, you may continue to receive financial counseling with your existing counselor even after the loan is transferred.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

CitiMortgage, Inc.                                              03/15/2019
Cenlar FSB

For New York Accounts Only: You may file complaints about the servicing of your mortgage loan by CitiMortgage, Inc. with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

BUS1008815.75265

### *GENERAL TRANSFER FAQS*

**Q: Why is my mortgage transferring?**
**A:** Cenlar will be servicing your loan on behalf of Citi. The transfer of mortgage servicing is a common practice in today's mortgage industry. It simply means that going forward Cenlar FSB will manage your mortgage, including collecting payments, handling escrow transactions and providing you with high-quality customer service. Citi will continue to originate loans.

**Q: Who is Cenlar FSB?**
**A:** For decades, Cenlar FSB has specialized in caring for mortgage customers. Cenlar FSB is the nation's leading mortgage loan servicing provider and focuses exclusively on mortgage loan servicing. Cenlar FSB's commitment to customer satisfaction, teamwork and effective management continues to earn them the number one position among mortgage servicers.

**Q: How can I access my account information?**
**A:** You may enroll your account at Cenlar FSB's secured website, www.loanadministration.com after the servicing transfer is complete, which may take several days.

**Q: Will this impact my other Citi banking relationships in any way?**
**A:** No. All of your non-mortgage Citi relationships will remain exactly the same. Citi will also still be available to assist you with any future home lending needs, such as refinancing your mortgage or obtaining a new mortgage.

**Q: I am currently under the protection of the Servicemembers Civil Relief Act (SCRA). What action do I need to take regarding this?**
**A:** All protections under SCRA will continue. Please notify Cenlar FSB of any change in your active duty status.

**Q: Will I receive Year-End Statements from CitiMortgage and Cenlar FSB?**
**A:** Yes. You will receive two Year-End Statements in 2020, one from CitiMortgage and one from Cenlar FSB, for activity that occurs in 2019.

**Q: What if I am selling, refinancing, or paying off my loan?**
**A:** Prior to the transfer date, please contact CitiMortgage for a payoff statement. After the transfer date, payoff statements may be delayed.

### *PAYMENT FAQS*

**Q: When should I begin sending my payments to Cenlar FSB?**
**A:** You should immediately, upon the transfer of the servicing of your mortgage, begin making payments to Cenlar FSB. CitiMortgage will no longer accept payments at branches or ATMs. For the first 90 days after the transfer date, any payments mailed to (or transmitted by a third party to) CitiMortgage will be forwarded to Cenlar FSB. Forwarded payments may experience a delay in posting to your account.

**Q: My payment is automatically drafted by CitiMortgage, do I need to do anything?**
- If CitiMortgage is currently deducting payments from your checking or savings account on a recurring basis through EZPay, Equity Builder or Auto Deduct, **Cenlar FSB will continue this service.** Your payment information will be updated on the website, www.loanadministration.com, or on our automated phone system after the transfer has been completed. It will not be necessary to make an additional payment during that time. Prior to the first draft, Cenlar (under the name of "Central Loan Adm") will complete a zero-dollar draft test to your bank account to ensure the information has been transferred correctly.
- The initial auto debit will be delayed until the transfer has been completed. Future drafts will occur on the previously scheduled draft date (no late charge will be assessed due to this delay in the first draft). If your automatic draft includes additional funds for escrow, this will be discontinued at Cenlar FSB. Any additional funds you have authorized to draft for principal will continue.
- Any other automatic payment drafts, which may have been setup during phone conversations with Citi representatives, will not be transferred. You will need to make new arrangements with Cenlar FSB.
- If your payment is initiated from your bank account by an online service or third party, please contact the company performing this service and provide them with your new Cenlar FSB account number and payment address listed in the enclosed Notice of Servicing Transfer.

**Q: My account is enrolled in The BiWeekly Advantage Plan® administered by FNC Insurance Agency (FNCIA). Will this program continue with Cenlar FSB?**
**A:** The program will continue. FNCIA will send you a separate letter with additional information.

**Q: How do I enroll in automatic payments with Cenlar FSB?**
**A:** Cenlar FSB offers a convenient service that automatically debits your payment each month from your checking or savings account. You may enroll in this service by logging on to Cenlar FSB's website, www.loanadministration.com, and selecting the Auto Payment Draft option. You may also enroll in automatic payments by completing the enclosed Automatic Payment (ACH) Authorization form.

**Q: Can I still make a payment at a Citi branch or ATM?**
**A:** No. Effective upon the servicing transfer of your mortgage to Cenlar FSB, Citi will be unable to accept payments at our branches or ATMs.

BUS1008815.75265



# Automatic Payment (ACH) Authorization

We offer a convenient system that automatically debits your payment from your checking or savings account each month. To take advantage of this FREE service, simply complete this form and return to: **Drafting Department, PO Box 77421, Ewing, NJ 08628, Fax: (609) 718-1735, or Email to cenlar@loanadministration.com.** For faster processing, you can sign up for monthly Automatic Payments online at loanadministration.com.

I/We hereby authorize my/our lender, its successors, assigns, and subservicers to initiate a debit from my/our checking/savings account listed below for my/our recurring scheduled monthly loan payment. If the required payment changes for any reason, this authorization will be automatically amended to authorize the debit of an amount equal to the new required payment plus any optional additional principal that you indicate below.

Name: _____

Loan Number: _____

Bank Name: _____

ABA Routing Number: _____

Account Number: _____

Account Type (please check one): ☐ Checking ☐ Savings

PAY TO THE
ORDER OF:

MEMO

|⑈123456789⑈| |⑈123456789⑈| |⑈1234|
|---|---|---|
| **ABA Routing Number** | **Account Number** | **Check Number** |

**Draft my payment monthly (please check one):**

☐ On the due date
☐ 1 day following due date
☐ 2 days following due date
☐ 3 days following due date
☐ 4 days following due date
☐ 5 days following due date
☐ 6 days following due date
☐ 7 days following due date
☐ 8 days following due date
☐ 9 days following due date

*Bi-weekly loans will always be drafted on the due date regardless of which option is selected.*

You will be notified of the month in which the first transfer will occur, and this notification will serve as a substitute of the photocopy of your authorization form. *Please continue making payments by check or online through the website* (loanadministration.com) *until you are notified that this authorization has been processed.*

**Optional:** In addition to my/our regular payment, please deduct an additional $_____ *per debit* and apply to the principal. The authorization to initiate a debit from your account will remain in full force and effect until my/our lender receives written notice from you of its termination at least 15 business days prior to the next scheduled draft date, or in such manner and time frame as to afford my/our lender and its correspondent bank a reasonable opportunity to act upon it. Termination requests can be mailed, faxed, or emailed to: **Drafting Department, PO Box 77421, Ewing, NJ 08628 Fax: (609) 718-1735 Email: cenlar@loanadministration.com.**

Account Holder
Signature: _____    Date: _____

Joint Account Holder
Signature: _____    Date: _____

If you have questions regarding this program, please visit loanadministration.com or email **cenlar@loanadministration.com.**

29002072018

Please return this portion with your payment

MO

INES ROWE-BRYAN
20 SPRUCE RD
AMITYVILLE NY 11701-1019

Make Checks Payable To:



Account Number:
4770947259

Amount Enclosed  $_____

| Payment Amount | $_____ |
| Late Charge | $_____ |
| Additional Principal | $_____ |
| Additional Escrow | $_____ |
| Other Fees | $_____ |
| Total Amount paid | $_____ |

PAYMENT PROCESSING CENTER
PO BOX 11733
NEWARK, NJ 07101-4733



# NOTE

002000360738

November 7, 2002      Garden City      New York
  [Date]          [City]          [State]

20 Spruce Rd, Amityville, NY 11701-1019
                          [Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 119,893.44        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Citibank, N.A.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the First day of each month beginning on January 1 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on December 01 ,2032 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 15851 Clayton Road, Ballwin, MO 63011 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S $ 718.82

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me  If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3833 10/91
3758NY (07/30/1999) (002000360738)        Page 1 of 2      Initials: _____

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____       _Ines Rowe Bryan_____ (Seal)
                                        INES ROWE-BRYAN          -Borrower

_____       _____ (Seal)
                                        Roger Rowe               -Borrower

Pay to the order of

without recourse on us Citibank, N.A.

_____
Juliey L. Sims, Vice President
CitiMortgage, Inc.
Attorney in-fact for Citibank, N.A.

**Homeowner's Key Note**    453 878105    **CITICORP ◆ CITIBANK**

453878105

October 23, 19 89                    New York ,  New York
                                        (CITY)        (STATE)

20 Spruce Road, North Amityville, New York 11701
(PROPERTY ADDRESS:)

**1.  BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 134,400.00 (this amount is called "principal"), plus interest, to the order of Lender. The Lender is Citibank, N.A.
399 Park Avenue, New York, New York
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
   (A) Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of 10.625 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.
   (B)  _N/A_  If I have initialed the space to the left of this sub-paragraph, the interest I will be charged under this Note is subject to the terms of a Buy Down/Subsidy Agreement dated the same date as this Note and which is incorporated into this Note by reference to it.

**3.  PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on December 1, 19 89. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal if, on November 1, 2004, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
   I will make my monthly payments at CMI, 15851 Clayton Road, Ballwin, MO 63011, or at a different place if required by the Note Holder
   (B) Amount of Monthly Payments
   My monthly payments will be in the following amounts and according to the following schedule.

| Number of Payments | Total Payment Amount |
|---|---|
| 1 | 1,507.33 |
| 11 | 1,190.00 |
| 12 | 1,190.13 |
| 12 | 1,279.39 |
| 12 | 1,375.34 |
| 12 | 1,478.49 |
| 12 | 1,589.38 |
| 12 | 1,708.58 |
| 95 | 1,749.92 |
| 1 | 1,749.11 |

Item 359784 (NTPL 807 R) 02-01/89/ Pkg  5C
PAGE 1 OF 3

CB0024
Version 1.0

**-PA 115-**                    Page 8

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payments unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be two (2%) percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment within fifteen (15) calendar days after the date it is due, I will be in default.

If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

**(C) No Waiver By Note Holder**

Even if, at the time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the property address above or at a different address if I give the Note Holder notice of that different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay in full the amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURITY INSTRUMENT**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Security Agreement (giving Note Holder a security interest in the shares of stock and proprietary lease described in said Agreement), Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in it is sold or transferred (or if beneficial Interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the

Item 350204 (LTPL) 807 (L) 02/C/1/89) Pag 50
PAGE 2 OF 3

C80035
Version 1.0

notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. FIRST PAYMENT**
At the time that I make my first monthly payment, I will also pay the Note Holder interest on the unpaid principal for the period from the date of this Note to the end of the month in which this Note is signed.

**12. APPLICATION OF PAYMENTS**
All payments received by the Note Holder shall be applied, first, to payments made by the Note Holder to protect its lien under the Security Instrument, second, to pay unpaid late charges, third, on account of interest, and then, on account of principal.

**13. NEW YORK LAW**
This Note shall be governed by the laws of the State of New York and any applicable federal law. In the event of a conflict between any provision of this Note and any federal or New York State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

WITNESS:

*Refer to the Subsidy Account Agreement for information concerning your payment schedule during the subsidy period.*

_____     *Ines Rowe Bryan*
     INES ROWE-BRYAN      (Borrower)

_____     *Anna Rowe*
     ANNA ROWE      (Borrower)

     _____     (Borrower)

     _____     (Borrower)


STATE OF NEW YORK)
COUNTY OF QUEENS )


On this 23rd day of October 1989 before me personally came INES ROWE-BRYAN and ANNA ROWE to me known and known to me to be the individuals described in and who executed the foregoing instrument and they duly acknowledged to me that they executed the same.

     _____
     NOTARY PUBLIC

     MICHELE DOBBS
     NOTARY PUBLIC, State of New York
     No. 41-4904304
     Qualified in Queens County
     Commission Expires Sept. 6, 19__


PAY TO THE ORDER OF
**FEDERAL HOME LOAN MORTGAGE CORPORATION**
DATE: 12-13-89
WITHOUT RECOURSE ON US
CITIBANK, N.A.

*Kelly Woodring*
KELLY WOODRING, ASSISTANT SECRETARY
ATTORNEY-IN-FACT FOR
CITIBANK, N.A.

Pay to the order of

without recourse on us Citibank, N.A.

Jane L. Sims, Vice President
CitiMortgage, Inc.
Attorney-in-fact for Citibank, N.A.

Item 359784 (NTPL 607 (L) 02/01/89) Pkg. 50
PAGE 3 OF 3

C60038
Version 1.0

-PA 117-

Page 10

# EXHIBIT G

## Previous Loan History - All Transactions
### 300 · CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259      Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 03/30/2019 | 03/12/2019 | 02/11/2019 | 01/15/2019 | 12/29/2018 | 12/18/2018 | 12/10/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2019 | 03/01/2019 | 02/01/2019 | 01/01/2019 | 12/01/2018 | 12/01/2018 | 12/01/2018 |
| Transaction Type/Code | 1 60 | 1 73 | 1 72 | 1 73 | 1 60 | 3 13 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $15.49 | $1,697 60 | $1,697 60 | $1,697 60 | $26.15 | ($4,745.77) | $1,697 60 |
| Principal Paid Amt. | $0.00 | $412 60 | $410.55 | $408 51 | $0.00 | $0.00 | $406 48 |
| Principal Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Interest Paid | $0 00 | $531.69 | $533.74 | $535.78 | $0 00 | $0.00 | $537 81 |
| Escrow Paid | $15.49 | $753 31 | $753.31 | $753 31 | $26 15 | ($4,745.77) | $753 31 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0 00 |
| A&H Insurance | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0.00 | $0 00 |
| Life Insurance | $0.00 | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0 00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0 00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0 00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0.00 | $0 00 | $0.00 | $0 00 | $0.00 | $0 00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Mort Rec. Corp. Adv. Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0 00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0 00 | $0 00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0 00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/30/2019 | 03/12/2019 | 02/11/2019 | 01/15/2019 | 12/29/2018 | 12/18/2018 | 12/08/2018 |
| Nonrecoverable Corp. Adv. Amt. | $0 00 | $0 00 | $0.00 | $0 00 | $0 00 | $0.00 | $0 00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 11/09/2018 | 11/05/2018 | 11/05/2018 | 10/02/2018 | 09/29/2018 | 09/03/2018 | 08/07/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 2 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 11/01/2018 | 10/01/2018 | 10/01/2018 | 10/01/2018 | 09/01/2018 | 09/01/2018 | 08/01/2018 |
| Transaction Type/Code | 1  73 | 7  66 | 7  66 | 1  73 | 1  60 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,697.60 | ($5,284.67) | $5,284.67 | $1,697.60 | $18.59 | $1,697.60 | $1,692.00 |
| Principal Paid Amt. | $404.45 | $0.00 | $0.00 | $402.44 | $0.00 | $400.44 | $398.45 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $539.84 | $0.00 | $0.00 | $541.85 | $0.00 | $543.85 | $545.84 |
| Escrow Paid | $753.31 | ($5,284.67) | $5,284.67 | $753.31 | $18.59 | $753.31 | $747.71 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort. Rec. Corp. Adv. Amt. | $0.00 | ($5,284.67) | $5,284.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | CONV CORP ADV | CONV CORP ADV | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | BAL TRAN - CONV | BAL TRAN - CONV | | | | |
| Corporate Adv. Payee Code | | 16R00 | 16R00 | | | | |
| Corporate Adv. Tran. Reason | | CDBT | CDBT | | | | |
| Effective Date | 11/09/2018 | 10/01/2018 | 10/01/2018 | 10/02/2018 | 09/29/2018 | 09/01/2018 | 08/07/2018 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 07/04/2018 | 06/30/2018 | 06/05/2018 | 05/15/2018 | 05/03/2018 | 04/05/2018 | 03/31/2018 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 07/01/2018 | 06/01/2018 | 06/01/2018 | 05/01/2018 | 05/01/2018 | 04/01/2018 | 03/01/2018 |
| Transaction Type/Code | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692 00 | $17.96 | $1,692.00 | ($4,517.37) | $1,692.00 | $1,692.00 | $18 23 |
| Principal Paid Amt. | $396 47 | $0.00 | $394.49 | $0.00 | $392 53 | $390.58 | $0.00 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $547 82 | $0.00 | $549.80 | $0.00 | $551 76 | $553.71 | $0.00 |
| Escrow Paid | $747 71 | $17.96 | $747.71 | ($4,517.37) | $747 71 | $747 71 | $18.23 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Suspense Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0 00 | $0.00 | $0 00 | $0.00 | $0 00 | $0.00 | $0 00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0 00 | $0.00 | $0 00 | $0 00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/03/2018 | 06/30/2018 | 06/05/2018 | 05/15/2018 | 05/03/2018 | 04/05/2018 | 03/31/2018 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259         Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 03/05/2018 | 02/05/2018 | 01/04/2018 | 12/29/2017 | 12/27/2017 | 12/05/2017 | 11/05/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2018 | 02/01/2018 | 01/01/2018 | 12/01/2017 | 12/01/2017 | 12/01/2017 | 11/01/2017 |
| Transaction Type/Code | 1 73 | 1 73 | 1 73 | 1 60 | 3 13 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692.00 | $1,692.00 | $1,692.00 | $28.52 | ($4,517.38) | $1,692.00 | $1,692.00 |
| Principal Paid Amt. | $388.63 | $386.70 | $384.78 | $0.00 | $0.00 | $382.86 | $380.96 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $555.66 | $557.59 | $559.51 | $0.00 | $0.00 | $561.43 | $563.33 |
| Escrow Paid | $747.71 | $747.71 | $747.71 | $28.52 | ($4,517.38) | $747.71 | $747.71 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/03/2018 | 02/03/2018 | 01/04/2018 | 12/29/2017 | 12/27/2017 | 12/05/2017 | 11/04/2017 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 10/06/2017 | 10/06/2017 | 10/06/2017 | 09/30/2017 | 09/06/2017 | 08/04/2017 | 07/20/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 3 | 2 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 10/01/2017 | 10/01/2017 | 10/01/2017 | 09/01/2017 | 09/01/2017 | 08/01/2017 | 07/01/2017 |
| Transaction Type/Code | 1 73 | 1 32 | 1 70 | 1 60 | 1 73 | 1 73 | 3 7 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,692.00 | $18 88 | $18.88 | $18.42 | $1,692.00 | $1,714.50 | ($191.49) |
| Principal Paid Amt. | $379.06 | $0 00 | $0.00 | $0.00 | $377.18 | $375.30 | $0 00 |
| Principal Balance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $565.23 | $0.00 | $0.00 | $0.00 | $567 11 | $568.99 | $0.00 |
| Escrow Paid | $747 71 | $0.00 | $0.00 | $18.42 | $747.71 | $770.21 | ($191.49) |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Suspense Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 10/06/2017 | 10/06/2017 | 10/06/2017 | 09/30/2017 | 09/06/2017 | 08/04/2017 | 07/20/2017 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259　　　　　　　　　　　　　　　　　　Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 07/06/2017 | 07/01/2017 | 06/06/2017 | 05/16/2017 | 05/05/2017 | 04/05/2017 | 04/01/2017 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 07/01/2017 | 06/01/2017 | 06/01/2017 | 05/01/2017 | 05/01/2017 | 04/01/2017 | 03/01/2017 |
| Transaction Type/Code | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,714.50 | $18.50 | $1,714.50 | ($4,486.26) | $1,714.50 | $1,714.50 | $17.78 |
| Principal Paid Amt. | $373.43 | $0.00 | $371.58 | $0.00 | $369.73 | $367.89 | $0.00 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $570 86 | $0.00 | $572 71 | $0.00 | $574.56 | $576.40 | $0 00 |
| Escrow Paid | $770 21 | $18.50 | $770.21 | ($4,486.26) | $770.21 | $770.21 | $17 78 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0.00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0 00 | $0 00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 | $0 00 |
| HUD Fee Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/06/2017 | 07/01/2017 | 06/06/2017 | 05/16/2017 | 05/05/2017 | 04/05/2017 | 04/01/2017 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions

### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

**Loan Number:** 4770947259      **Borrower Name:** ROWE-BRYAN,INES

| Transaction Date | 03/03/2017 | 02/14/2017 | 01/04/2017 | 12/30/2016 | 12/21/2016 | 12/06/2016 | 11/22/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 03/01/2017 | 02/01/2017 | 01/01/2017 | 12/01/2016 | 12/01/2016 | 12/01/2016 | 11/01/2016 |
| Transaction Type/Code | 1 73 | 1 73 | 1 73 | 1 60 | 3 13 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,714.50 | $1,714.50 | $1,714.50 | $25.69 | ($4,486.27) | $1,714.50 | $1,714.50 |
| Principal Paid Amt. | $366.06 | $364.24 | $362.42 | $0.00 | $0.00 | $360.62 | $358.83 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $578.23 | $580.05 | $581.87 | $0.00 | $0.00 | $583.67 | $585.46 |
| Escrow Paid | $770.21 | $770.21 | $770.21 | $25.69 | ($4,486.27) | $770.21 | $770.21 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 03/03/2017 | 02/14/2017 | 01/04/2017 | 12/30/2016 | 12/21/2016 | 12/06/2016 | 11/22/2016 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

-F 125-

P. 7

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259      Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 11/17/2016 | 11/17/2016 | 10/10/2016 | 10/01/2016 | 09/07/2016 | 08/12/2016 | 07/09/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 2 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 10/01/2016 | 10/01/2016 | 10/01/2016 | 09/01/2016 | 09/01/2016 | 08/01/2016 | 07/01/2016 |
| Transaction Type/Code | 1 32 | 1 52 | 1 73 | 1 60 | 1 73 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | ($18 88) | ($18.88) | $1,714.50 | $17 04 | $1,714.50 | $1,682 77 | $1,682 77 |
| Principal Paid Amt. | $0.00 | $0.00 | $357.04 | $0.00 | $355.27 | $353.50 | $351.74 |
| Principal Balance | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $0.00 | $587.25 | $0.00 | $589.02 | $590.79 | $592.55 |
| Escrow Paid | $0.00 | $0 00 | $770.21 | $17.04 | $770.21 | $738 48 | $738 48 |
| Escrow Balance | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | 1 | | | | | |
| Fee Amount | $0 00 | $18 88 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | LATE CHARGE | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 11/17/2016 | 11/17/2016 | 10/08/2016 | 10/01/2016 | 09/07/2016 | 08/12/2016 | 07/09/2016 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0 00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions

### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

**Loan Number:** 4770947259                                        **Borrower Name:** ROWE-BRYAN,INES

| Transaction Date | 07/01/2016 | 06/06/2016 | 05/16/2016 | 05/06/2016 | 04/05/2016 | 04/01/2016 | 03/04/2016 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 06/01/2016 | 06/01/2016 | 05/01/2016 | 05/01/2016 | 04/01/2016 | 03/01/2016 | 03/01/2016 |
| Transaction Type/Code | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 | 1  60 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $17 40 | $1,682.77 | ($4,525.99) | $1,682.77 | $1,682.77 | $17.83 | $1,682 77 |
| Principal Paid Amt. | $0.00 | $349 99 | $0.00 | $348.25 | $346.52 | $0.00 | $344.79 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $594.30 | $0.00 | $596.04 | $597.77 | $0.00 | $599.50 |
| Escrow Paid | $17 40 | $738.48 | ($4,525 99) | $738.48 | $738.48 | $17.83 | $738.48 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0 00 | $0 00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0 00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 07/01/2016 | 06/04/2016 | 05/16/2016 | 05/06/2016 | 04/05/2016 | 04/01/2016 | 03/04/2016 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0 00 | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259             Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 02/05/2016 | 01/04/2016 | 12/31/2015 | 12/16/2015 | 12/04/2015 | 11/05/2015 | 10/06/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 02/01/2016 | 01/01/2016 | 12/01/2015 | 12/01/2015 | 12/01/2015 | 11/01/2015 | 10/01/2015 |
| Transaction Type/Code | 1  73 | 1  73 | 1  60 | 3  13 | 1  73 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,682.77 | $1,682.77 | $25.42 | ($4,525.99) | $1,682 77 | $1,682 77 | $1,682 77 |
| Principal Paid Amt. | $343.08 | $341.37 | $0.00 | $0.00 | $339.67 | $337.98 | $336.30 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Interest Paid | $601 21 | $602.92 | $0.00 | $0 00 | $604.62 | $606.31 | $607.99 |
| Escrow Paid | $738 48 | $738.48 | $25.42 | ($4,525.99) | $738.48 | $738.48 | $738 48 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0 00 | $0.00 | $0.00 | $0 00 | $0 00 | $0 00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 02/05/2016 | 01/02/2016 | 12/31/2015 | 12/16/2015 | 12/04/2015 | 11/05/2015 | 10/06/2015 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions

### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259          Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 10/01/2015 | 09/04/2015 | 08/06/2015 | 07/20/2015 | 07/03/2015 | 07/01/2015 | 06/05/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 09/01/2015 | 09/01/2015 | 08/01/2015 | 07/01/2015 | 07/01/2015 | 06/01/2015 | 06/01/2015 |
| Transaction Type/Code | 1  60 | 1  73 | 1  73 | 3  7 | 1  73 | 1  60 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $18.19 | $1,682.77 | $1,727.68 | ($67.39) | $1,727.68 | $16.96 | $1,727.68 |
| Principal Paid Amt. | $0.00 | $334.63 | $332.96 | $0.00 | $331.30 | $0.00 | $329.66 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $609.66 | $611.33 | $0.00 | $612.99 | $0.00 | $614.63 |
| Escrow Paid | $18.19 | $738.48 | $783.39 | ($67.39) | $783.39 | $16.96 | $783.39 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 10/01/2015 | 09/04/2015 | 08/06/2015 | 07/20/2015 | 07/02/2015 | 07/01/2015 | 06/05/2015 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 · CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259    Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 05/14/2015 | 05/05/2015 | 04/03/2015 | 04/01/2015 | 03/05/2015 | 02/05/2015 | 01/13/2015 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 05/01/2015 | 05/01/2015 | 04/01/2015 | 03/01/2015 | 03/01/2015 | 02/01/2015 | 01/01/2015 |
| Transaction Type/Code | 3  13 | 1  73 | 1  73 | 1  60 | 1  73 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | ($4,430 89) | $1,727 68 | $1,727.68 | $16.19 | $1,727.68 | $1,727.68 | $1,727 68 |
| Principal Paid Amt. | $0 00 | $328.02 | $326.38 | $0.00 | $324.76 | $323.14 | $321.54 |
| Principal Balance | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Interest Paid | $0 00 | $616.27 | $617 91 | $0.00 | $619.53 | $621.15 | $622.75 |
| Escrow Paid | ($4,430 89) | $783 39 | $783.39 | $16.19 | $783.39 | $783.39 | $783.39 |
| Escrow Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0 00 |
| Suspense Amount | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0 00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 05/14/2015 | 05/05/2015 | 04/03/2015 | 04/01/2015 | 03/05/2015 | 02/05/2015 | 01/13/2015 |
| Nonrecoverable Corp. Adv Amt. | $0 00 | $0.00 | $0 00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259

Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 12/31/2014 | 12/23/2014 | 12/05/2014 | 11/04/2014 | 10/03/2014 | 10/01/2014 | 09/05/2014 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 12/01/2014 | 12/01/2014 | 12/01/2014 | 11/01/2014 | 10/01/2014 | 09/01/2014 | 09/01/2014 |
| Transaction Type/Code | 1  60 | 3  13 | 1  73 | 1  73 | 1  73 | 1  60 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $25.22 | ($4,430.90) | $1,727.68 | $1,727.68 | $1,727.68 | $15.41 | $1,727.68 |
| Principal Paid Amt. | $0.00 | $0.00 | $319.94 | $318.35 | $316.76 | $0.00 | $315.19 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $0.00 | $624.35 | $625.94 | $627.53 | $0.00 | $629.10 |
| Escrow Paid | $25.22 | ($4,430.90) | $783.39 | $783.39 | $783.39 | $15.41 | $783.39 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 12/31/2014 | 12/23/2014 | 12/05/2014 | 11/04/2014 | 10/03/2014 | 10/01/2014 | 09/05/2014 |
| Nonrecoverable Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions
### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259                                      Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 08/06/2014 | 07/03/2014 | 07/01/2014 | 06/05/2014 | 05/16/2014 | 05/05/2014 | 04/04/2014 |
|---|---|---|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Segment Number | | | | | | | |
| Due Date | 08/01/2014 | 07/01/2014 | 06/01/2014 | 06/01/2014 | 05/01/2014 | 05/01/2014 | 04/01/2014 |
| Transaction Type/Code | 1  73 | 1  73 | 1  60 | 1  73 | 3  13 | 1  73 | 1  73 |
| Hi Type | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Transaction Amount | $1,700.81 | $1,700.81 | $14.85 | $1,700.81 | ($4,428.68) | $1,700.81 | $1,700.81 |
| Principal Paid Amt. | $313.62 | $312.06 | $0.00 | $310.51 | $0.00 | $308.96 | $307.42 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $630.67 | $632.23 | $0.00 | $633.78 | $0.00 | $635.33 | $636.87 |
| Escrow Paid | $756.52 | $756.52 | $14.85 | $756.52 | ($4,428.68) | $756.52 | $756.52 |
| Escrow Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | | | | |
| Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | | | | |
| Misc. Paid Reason Code | | | | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Description | | | | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | | | | |
| Payee Description | | | | | | | |
| Check Number | | | | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | | | | |
| Corporate Adv. Payee Code | | | | | | | |
| Corporate Adv. Tran. Reason | | | | | | | |
| Effective Date | 08/06/2014 | 07/03/2014 | 07/01/2014 | 06/05/2014 | 05/16/2014 | 05/03/2014 | 04/04/2014 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Prior Due Date | | | | | | | |
| Credit Card Description 1 | | | | | | | |
| Credit Card Description 2 | | | | | | | |

## Previous Loan History - All Transactions

### 300 - CENTRAL LOAN ADMINISTRATION & REPORTING

Loan Number: 4770947259        Borrower Name: ROWE-BRYAN,INES

| Transaction Date | 04/01/2014 | 03/06/2014 | 02/06/2014 | 01/06/2014 |
|---|---|---|---|---|
| Sequence Number | 1 | 1 | 1 | 1 |
| Segment Number | | | | |
| Due Date | 03/01/2014 | 03/01/2014 | 02/01/2014 | 01/01/2014 |
| Transaction Type/Code | 1 60 | 1 73 | 1 73 | 1 73 |
| Hi Type | 1 | 1 | 1 | 1 |
| Transaction Amount | $14 30 | $1,700.81 | $1,700.81 | $1,700.81 |
| Principal Paid Amt. | $0.00 | $305.89 | $304.37 | $302.86 |
| Principal Balance | $0.00 | $0.00 | $0.00 | $0.00 |
| Interest Paid | $0.00 | $638.40 | $639.92 | $641.43 |
| Escrow Paid | $14.30 | $756.52 | $756.52 | $756.52 |
| Escrow Balance | $0.00 | $0.00 | $0 00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Fee Code | | | | |
| Fee Amount | $0 00 | $0.00 | $0.00 | $0.00 |
| Fee Description | | | | |
| Misc. Paid Reason Code | | | | |
| Miscellaneous Paid | $0.00 | $0.00 | $0 00 | $0.00 |
| Suspense Amount | $0.00 | $0.00 | $0.00 | $0.00 |
| Suspense Balance | $0 00 | $0.00 | $0 00 | $0.00 |
| Suspense Description | | | | |
| HUD Amount | $0.00 | $0.00 | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 | $0 00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | | | |
| Payee Description | | | | |
| Check Number | | | | |
| Current Payment Due | $0.00 | $0.00 | $0.00 | $0.00 |
| Corporate Adv. Tran. Desc. | | | | |
| Corporate Adv. Payee Code | | | | |
| Corporate Adv. Tran. Reason | | | | |
| Effective Date | 04/01/2014 | 03/06/2014 | 02/06/2014 | 01/04/2014 |
| Nonrecoverable Corp. Adv Amt. | $0.00 | $0.00 | $0.00 | $0 00 |
| Prior Due Date | | | | |
| Credit Card Description 1 | | | | |
| Credit Card Description 2 | | | | |

-F  133-

# EXHIBIT H

0(2000360738

# LOAN SERVICING APPLICATION DISCLOSURE

Thank you for applying for a mortgage loan. This disclosure will provide you with information about the servicing of mortgage loans. We want you to know that our current business practice is to retain all servicing within the CitiGroup family. CitiMortgage, Inc., (CMI) is the servicing affiliate for Citibank, N.A., Citibank (New York State), Citibank (Nevada) N.A., Citibank, Federal Savings Bank as well as the servicer of its own new or refinanced mortgage loans. In the past we have assigned, sold or transferred the servicing of mortgage loans we originated to other servicers. For all the loans that we make in the 12-month period after your loan is funded, we estimate that the chances we will transfer the servicing of those loans to a servicer other than CitiMortgage, Inc., or any one of its affiliates, are between 0 to 25%. This is our best estimate and is not binding, as business conditions or other circumstances may affect our future transferring decisions.

## TRANSFER PRACTICES AND REQUIREMENTS

We are providing this disclosure to you because RESPA gives you certain rights relating to the servicing of your new or refinanced mortgage loan. "Servicing" refers to collecting your principal, interest and escrow account payments. If for some reason your loan servicer changes, there are certain procedures which must be followed. This statement generally explains those procedures.

Since CMI is the servicing affiliate for your originator, (Citibank or CMI), you will be notified at settlement that CitiMortgage, Inc. will be the servicer of your mortgage loan. If for any reason we were to assign, sell or transfer the servicing of your loan to another servicer, we will notify you in writing at least 15 days before the date of the transfer. This written notice will contain the effective date of the transfer of the servicing, and the name, address, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. The new loan servicer is also required to send you written notice of the transfer within 15 days after the date of the transfer. In the case of a new or refinanced mortgage loan, a notice of prospective transfer may be provided to you at loan settlement to satisfy these notice requirements. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

There are exceptional situations in which the law allows a delay in notification to be submitted not more than 30 days after the transfer. These limited circumstances will apply if the servicer of your loan is fired for cause, is in bankruptcy proceedings, or is involved in a conservatorship or receivership initiated by a Federal Agency. If any of these exceptions occur, you will be notified according to the conditions outlined by RESPA.

## IF YOU NEED HELP WITH SERVICING ISSUES

There may be a time when you have an issue with your servicing. If you do, just send a "qualified written request" to your loan servicer. A "qualified written request" is a letter, other than your notation on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. Your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. Not later than 60 business days after receiving your request, your servicer must provide you with a written clarification regarding any dispute, and if appropriate, make corrections to your account. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this loan servicing application disclosure form, and understand its contents, as evidenced by my/our signature(s) below.

INES ROWE BRYAN _____      Roger Rowe _____

_____

DATE _____

MB-1380 Rev. 3/2000 Page 1 of 1
CFI Version citi 1.0.1.33 05/31/2002

# EXHIBIT I

Cenlar
PO Box 77423
Ewing, NJ 08628

June 27, 2019

RE: Account 4770947259.

It appears that Cenlar is claiming payment for a previously paid in full loan.

In accordance with the Fair Debt Collection Practices Act formally known as and codified under 15 U.S.C. These duties call for a reasonable examination of the consumer dispute by the CRA and the furnisher (see 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)). As well as 15 USCA §§ 1692(a-p), I am asking for, and you are required to provide me with the following information:

    a) Why do I owe the money?
    b) How this amount has been calculated in a way I can understand.
    c) Copies of the papers where I agreed to pay what the furnisher is saying I owe.
    d) (if applicable) a copy of the judgment.
    e) The name of the original creditor.

In addition to the information requested above I ask that your agency immediately stop its dissemination of false and defamatory statements. If said actions does not cease immediately, I would be force to commence a lawsuit against Cenlar. Keep in mind that FCRA specifically bars defamation, invasion of privacy, and negligence claims that concern the reporting of information from being brought against any CRA, any user of a consumer report, or any furnisher of reported information, except for false information furnished with malice or willfully intended to injure the consumer (15 U.S.C. § 1681h(e); see, for example, Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980)). After being place on notice of said false and defamatory information Cenlar will surely be acting with malice and willful intent to injure if it continues its current activities.

That being said this letter is a Qualified Written Request and your firm must respond accordingly. If appropriate response is not received, I will have no choice but to proceed with all legal remedies available to me.

Sincerely,

Roger Rowe
20 Spruce rd
Amityville, NY 11701

# EXHIBIT J



August 2, 2019


Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY 11701

Re:     Loan number: 4770947259

Dear Borrower:

We are in receipt of your Qualified Written Request and your request to validate the debt related to the above-referenced loan ("the Loan"), which was received in our office on July 19, 2019 and on July 23, 2019.

Your correspondences were regarding our dispute of obligation to the above referenced mortgage loan debt. The correspondences were reviewed, and found to be substantially similar to a previous complaint received on June 28, 2019. A detailed review of the loan origination and closing documents was performed. On July 12, 2019, a response was sent to the address of record along with supporting documentation, which is enclosed. We stand by our prior response and reiterate that Cenlar FSB subservices the Loan on behalf of CitiMortgage, Inc. as previously indicated.

Regarding your concerns with receiving acknowledgement letters: please find the enclosed three acknowledgment letters sent July 10, 2019, July 19, 2019, and July 24, 2019 for the three correspondences we have reviewed.

As stated in the previous response, we show no record of this loan having been paid in full. Please be advised that the Loan has not been satisfied and we consider your letter to be of no legal effect. We will continue to service the Loan in accordance with its terms. We do not waive any of our rights or any of your obligations under the Note. You are responsible to continue making your loan payments.

As a servicer, we are bound by contract with investors to report to the credit repositories. The Fair Credit Reporting Act (FCRA) requires that if we report, it must be accurate. We are therefore unable to waive or revise our present reporting. We would also like to confirm the complaints filed have no bearing on the servicing transfer of the Loan. Transfers of servicing are common in the mortgage banking industry and transpire regardless of the status of the Loans included in the transfer

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you. After this 60-day period, late fees were assessed on June 17, 2019, and July 17, 2019 of $18.89 each and are due and owing since monthly installments were not received.

855-839-6253 • www.loanadministration.com

-PA 139-                                                    1

Ines Rowe-Bryan
August 2, 2019
Page 2

As stated in our prior response, if you have evidence or proof of satisfaction of this debt, please forward this to our Research department at:

Attention: Research Department
PO Box 77404
Ewing, NJ 08628
Fax: 609-538-4005

As of today's date, your loan remains due for the June 2019 installment and all subsequent payments. Should you require additional assistance please contact us at 866-677-8807.

Sincerely,

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures



CENLAR®
CENTRAL LOAN ADMINISTRATION & REPORTING

August 19, 2019

Ines Rowe-Bryan
Roger Rowe
20 Spruce Road
Amityville, NY  11701

Re:     Loan number:  4770947259

Dear Ines Rowe-Bryan and Roger Rowe:

We are in receipt of your Qualified Written Request and your request to Cease and Desist from any further contact or collection activity related to the above-referenced loan ("the Loan"), which was received in our office on August 7, 2019 and on August 16, 2019.

Your correspondences were regarding our dispute of obligation to the above referenced mortgage loan debt. The correspondences were reviewed. and found to be substantially similar to a previous complaints received on June 28. 2019, July 19, 2019, and July 23, 2019. On July 12. 2019, and August 2, 2019. The enclosed responses were sent to the address of record along with supporting documentation. We stand by our prior responses and reiterate that Cenlar FSB subservices the Loan on behalf of CitiMortgage, Inc. as previously indicated. We have processed your cease and desist request at this time.

Our review of the loan determined that no servicing errors occurred related to the servicing of your loan.   You have a right to receive a copy of the documentation we relied upon to reach this conclusion.  For your convenience. the documentation is enclosed. We feel we have addressed in full all of your concerns raised. and we will no longer respond to any similar correspondence received.

As of today's date, your loan remains due for the June 2019 installment and all subsequent payments. Should you require additional assistance, or wish to dispute the outcome of our review, please contact us in writing at:  Cenlar, FSB, PO Box 77423, Ewing, New Jersey 08628.  Alternatively. we may be reached by telephone at 866-677-8807.

Sincerely.

*James Bauer*

James Bauer
Executive Resolution Analyst

Enclosures

# EXHIBIT K

# U.S. DEPARTMENT OF THE TREASURY

## Resource Center

## Daily Treasury Yield Curve Rates

Get updates to this content.

These data are also available in XML format by clicking on the XML icon.

The schema for the XML is available in XSD format by clicking on the XSD icon.

If you are having trouble viewing the above XML in your browser, click here.

To access interest rate data in the legacy XML format and the corresponding XSD schema, click here.

Select type of Interest Rate Data
Daily Treasury Yield Curve Rates     ▼   Go

Select Time Period
2002     ▼   Go

| Date | 1 Mo | 2 Mo | 3 Mo | 6 Mo | 1 Yr | 2 Yr | 3 Yr | 5 Yr | 7 Yr | 10 Yr | 20 Yr | 30 Yr |
|------|------|------|------|------|------|------|------|------|------|-------|-------|-------|
| 01/02/02 | 1.73 | N/A | 1.74 | 1.85 | 2.28 | 3.22 | 3.75 | 4.52 | 4.97 | 5.20 | 5.86 | 5.56 |
| 01/03/02 | 1.73 | N/A | 1.73 | 1.82 | 2.24 | 3.19 | 3.71 | 4.48 | 4.93 | 5.16 | 5.83 | 5.54 |
| 01/04/02 | 1.72 | N/A | 1.72 | 1.82 | 2.25 | 3.19 | 3.72 | 4.50 | 4.97 | 5.18 | 5.87 | 5.57 |
| 01/07/02 | 1.70 | N/A | 1.68 | 1.77 | 2.19 | 3.08 | 3.61 | 4.39 | 4.86 | 5.09 | 5.76 | 5.49 |
| 01/08/02 | 1.70 | N/A | 1.68 | 1.77 | 2.19 | 3.07 | 3.60 | 4.39 | 4.86 | 5.10 | 5.77 | 5.51 |
| 01/09/02 | 1.68 | N/A | 1.68 | 1.77 | 2.17 | 3.03 | 3.57 | 4.38 | 4.86 | 5.10 | 5.76 | 5.51 |
| 01/10/02 | 1.66 | N/A | 1.68 | 1.75 | 2.10 | 2.94 | 3.46 | 4.27 | 4.74 | 5.00 | 5.64 | 5.42 |
| 01/11/02 | 1.62 | N/A | 1.58 | 1.62 | 1.98 | 2.76 | 3.28 | 4.14 | 4.65 | 4.92 | 5.60 | 5.37 |
| 01/14/02 | 1.62 | N/A | 1.58 | 1.63 | 2.00 | 2.79 | 3.32 | 4.15 | 4.64 | 4.91 | 5.62 | 5.38 |
| 01/15/02 | 1.64 | N/A | 1.60 | 1.63 | 1.99 | 2.79 | 3.32 | 4.14 | 4.62 | 4.88 | 5.56 | 5.34 |
| 01/16/02 | 1.62 | N/A | 1.61 | 1.65 | 2.01 | 2.84 | 3.36 | 4.16 | 4.62 | 4.88 | 5.58 | 5.36 |
| 01/17/02 | 1.60 | N/A | 1.64 | 1.73 | 2.09 | 2.96 | 3.49 | 4.28 | 4.73 | 4.98 | 5.65 | 5.41 |
| 01/18/02 | 1.59 | N/A | 1.62 | 1.71 | 2.08 | 2.91 | 3.43 | 4.23 | 4.69 | 4.94 | 5.59 | 5.36 |
| 01/22/02 | 1.67 | N/A | 1.70 | 1.77 | 2.11 | 2.97 | 3.48 | 4.27 | 4.72 | 4.98 | 5.62 | 5.39 |
| 01/23/02 | 1.70 | N/A | 1.71 | 1.78 | 2.15 | 3.07 | 3.58 | 4.36 | 4.81 | 5.05 | 5.73 | 5.48 |
| 01/24/02 | 1.69 | N/A | 1.72 | 1.82 | 2.22 | 3.15 | 3.67 | 4.40 | 4.82 | 5.07 | 5.71 | 5.47 |
| 01/25/02 | 1.69 | N/A | 1.72 | 1.83 | 2.25 | 3.17 | 3.71 | 4.46 | 4.86 | 5.10 | 5.72 | 5.47 |
| 01/28/02 | 1.71 | N/A | 1.76 | 1.88 | 2.28 | 3.19 | 3.73 | 4.48 | 4.88 | 5.12 | 5.72 | 5.47 |
| 01/29/02 | 1.72 | N/A | 1.72 | 1.84 | 2.23 | 3.05 | 3.59 | 4.35 | 4.76 | 5.02 | 5.63 | 5.40 |
| 01/30/02 | 1.70 | N/A | 1.75 | 1.86 | 2.23 | 3.06 | 3.61 | 4.37 | 4.77 | 5.02 | 5.64 | 5.41 |
| 01/31/02 | 1.69 | N/A | 1.76 | 1.89 | 2.29 | 3.16 | 3.70 | 4.42 | 4.82 | 5.07 | 5.68 | 5.44 |
| 02/01/02 | 1.69 | N/A | 1.76 | 1.87 | 2.22 | 3.08 | 3.62 | 4.37 | 4.78 | 5.02 | 5.63 | 5.40 |
| 02/04/02 | 1.70 | N/A | 1.77 | 1.87 | 2.19 | 2.99 | 3.52 | 4.29 | 4.69 | 4.94 | 5.57 | 5.35 |
| 02/05/02 | 1.74 | N/A | 1.76 | 1.86 | 2.22 | 2.99 | 3.53 | 4.29 | 4.66 | 4.92 | 5.56 | 5.35 |
| 02/06/02 | 1.73 | N/A | 1.74 | 1.84 | 2.20 | 2.98 | 3.51 | 4.30 | 4.71 | 4.92 | 5.61 | 5.38 |
| 02/07/02 | 1.71 | N/A | 1.73 | 1.83 | 2.20 | 2.99 | 3.54 | 4.33 | 4.73 | 4.93 | 5.64 | 5.42 |
| 02/08/02 | 1.69 | N/A | 1.73 | 1.82 | 2.16 | 2.95 | 3.48 | 4.28 | 4.69 | 4.90 | 5.60 | 5.39 |
| 02/11/02 | 1.73 | N/A | 1.75 | 1.86 | 2.21 | 2.95 | 3.49 | 4.29 | 4.70 | 4.91 | 5.63 | 5.41 |
| 02/12/02 | 1.76 | N/A | 1.75 | 1.87 | 2.26 | 3.04 | 3.58 | 4.36 | 4.76 | 4.97 | 5.69 | 5.45 |
| 02/13/02 | 1.75 | N/A | 1.76 | 1.87 | 2.27 | 3.09 | 3.63 | 4.40 | 4.80 | 5.01 | 5.72 | 5.47 |
| 02/14/02 | 1.75 | N/A | 1.75 | 1.86 | 2.26 | 3.07 | 3.59 | 4.35 | 4.76 | 4.95 | 5.64 | 5.42 |
| 02/15/02 | 1.72 | N/A | 1.74 | 1.84 | 2.20 | 2.97 | 3.50 | 4.29 | 4.66 | 4.86 | 5.58 | 5.37 |

PA 143

| Date | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/19/02 | 1.73 | N/A | 1.76 | 1.87 | 2.23 | 2.98 | 3.52 | 4.28 | 4.71 | 4.88 | 5.61 | N/A |
| 02/20/02 | 1.75 | N/A | 1.76 | 1.87 | 2.24 | 3.00 | 3.53 | 4.28 | 4.71 | 4.88 | 5.60 | N/A |
| 02/21/02 | 1.76 | N/A | 1.76 | 1.87 | 2.25 | 3.00 | 3.52 | 4.27 | 4.72 | 4.88 | 5.58 | N/A |
| 02/22/02 | 1.75 | N/A | 1.76 | 1.86 | 2.22 | 2.97 | 3.48 | 4.23 | 4.67 | 4.84 | 5.55 | N/A |
| 02/25/02 | 1.76 | N/A | 1.77 | 1.89 | 2.26 | 3.01 | 3.53 | 4.26 | 4.69 | 4.86 | 5.56 | N/A |
| 02/26/02 | 1.78 | N/A | 1.77 | 1.91 | 2.31 | 3.08 | 3.61 | 4.33 | 4.77 | 4.93 | 5.63 | N/A |
| 02/27/02 | 1.77 | N/A | 1.77 | 1.88 | 2.27 | 3.09 | 3.56 | 4.22 | 4.67 | 4.84 | 5.56 | N/A |
| 02/28/02 | 1.76 | N/A | 1.79 | 1.87 | 2.25 | 3.06 | 3.64 | 4.27 | 4.70 | 4.88 | 5.61 | N/A |
| 03/01/02 | 1.78 | N/A | 1.77 | 1.91 | 2.33 | 3.18 | 3.73 | 4.43 | 4.82 | 4.98 | 5.70 | N/A |
| 03/04/02 | 1.77 | N/A | 1.81 | 1.94 | 2.36 | 3.24 | 3.75 | 4.43 | 4.86 | 5.02 | 5.71 | N/A |
| 03/05/02 | 1.78 | N/A | 1.80 | 1.93 | 2.36 | 3.25 | 3.77 | 4.44 | 4.86 | 5.02 | 5.70 | N/A |
| 03/06/02 | 1.77 | N/A | 1.78 | 1.92 | 2.34 | 3.26 | 3.77 | 4.45 | 4.89 | 5.06 | 5.74 | N/A |
| 03/07/02 | 1.77 | N/A | 1.78 | 1.96 | 2.43 | 3.36 | 3.95 | 4.65 | 5.07 | 5.22 | 5.88 | N/A |
| 03/08/02 | 1.77 | N/A | 1.81 | 2.05 | 2.57 | 3.60 | 4.21 | 4.77 | 5.17 | 5.33 | 5.95 | N/A |
| 03/11/02 | 1.80 | N/A | 1.86 | 2.08 | 2.59 | 3.59 | 4.17 | 4.77 | 5.18 | 5.33 | 5.96 | N/A |
| 03/12/02 | 1.82 | N/A | 1.84 | 2.06 | 2.57 | 3.56 | 4.14 | 4.75 | 5.17 | 5.32 | 5.96 | N/A |
| 03/13/02 | 1.80 | N/A | 1.82 | 2.02 | 2.52 | 3.49 | 4.06 | 4.69 | 5.11 | 5.28 | 5.95 | N/A |
| 03/14/02 | 1.79 | N/A | 1.86 | 2.06 | 2.59 | 3.63 | 4.20 | 4.83 | 5.24 | 5.40 | 6.05 | N/A |
| 03/15/02 | 1.79 | N/A | 1.86 | 2.09 | 2.61 | 3.63 | 4.23 | 4.80 | 5.20 | 5.35 | 5.98 | N/A |
| 03/18/02 | 1.77 | N/A | 1.88 | 2.14 | 2.65 | 3.67 | 4.27 | 4.79 | 5.17 | 5.32 | 5.95 | N/A |
| 03/19/02 | 1.81 | N/A | 1.85 | 2.10 | 2.61 | 3.64 | 4.26 | 4.78 | 5.18 | 5.33 | 5.96 | N/A |
| 03/20/02 | 1.79 | N/A | 1.84 | 2.12 | 2.66 | 3.71 | 4.30 | 4.87 | 5.25 | 5.40 | 6.04 | N/A |
| 03/21/02 | 1.78 | N/A | 1.84 | 2.12 | 2.66 | 3.73 | 4.39 | 4.88 | 5.26 | 5.39 | 6.02 | N/A |
| 03/22/02 | 1.78 | N/A | 1.84 | 2.13 | 2.70 | 3.77 | 4.40 | 4.90 | 5.28 | 5.40 | 6.04 | N/A |
| 3/25/02 | 1.78 | N/A | 1.85 | 2.16 | 2.75 | 3.78 | 4.38 | 4.92 | 5.28 | 5.41 | 6.03 | N/A |
| 03/26/02 | 1.82 | N/A | 1.81 | 2.12 | 2.69 | 3.68 | 4.27 | 4.85 | 5.23 | 5.35 | 5.96 | N/A |
| 03/27/02 | 1.77 | N/A | 1.81 | 2.10 | 2.65 | 3.66 | 4.28 | 4.85 | 5.22 | 5.35 | 5.96 | N/A |
| 03/28/02 | 1.76 | N/A | 1.79 | 2.12 | 2.70 | 3.72 | 4.31 | 4.91 | 5.29 | 5.42 | 6.03 | N/A |
| 04/01/02 | 1.79 | N/A | 1.79 | 2.16 | 2.76 | 3.74 | 4.29 | 4.93 | 5.29 | 5.44 | 6.04 | N/A |
| 04/02/02 | 1.79 | N/A | 1.80 | 2.12 | 2.68 | 3.63 | 4.21 | 4.84 | 5.21 | 5.36 | 5.96 | N/A |
| 04/03/02 | 1.77 | N/A | 1.79 | 2.08 | 2.61 | 3.55 | 4.14 | 4.76 | 5.13 | 5.30 | 5.92 | N/A |
| 04/04/02 | 1.77 | N/A | 1.78 | 2.07 | 2.61 | 3.57 | 4.16 | 4.76 | 5.12 | 5.29 | 5.89 | N/A |
| 04/05/02 | 1.76 | N/A | 1.76 | 2.03 | 2.54 | 3.49 | 4.10 | 4.68 | 5.04 | 5.22 | 5.84 | N/A |
| 04/08/02 | 1.76 | N/A | 1.75 | 2.02 | 2.61 | 3.51 | 4.03 | 4.70 | 5.07 | 5.25 | 5.89 | N/A |
| 04/09/02 | 1.73 | N/A | 1.73 | 2.02 | 2.55 | 3.48 | 4.06 | 4.67 | 5.03 | 5.22 | 5.84 | N/A |
| 04/10/02 | 1.72 | N/A | 1.71 | 1.98 | 2.52 | 3.48 | 4.08 | 4.68 | 5.05 | 5.24 | 5.88 | N/A |
| 04/11/02 | 1.72 | N/A | 1.72 | 1.97 | 2.51 | 3.47 | 4.07 | 4.66 | 5.03 | 5.22 | 5.85 | N/A |
| 04/12/02 | 1.71 | N/A | 1.71 | 1.96 | 2.44 | 3.41 | 4.01 | 4.60 | 4.99 | 5.18 | 5.81 | N/A |
| 04/15/02 | 1.71 | N/A | 1.72 | 1.96 | 2.44 | 3.38 | 3.99 | 4.57 | 4.95 | 5.15 | 5.78 | N/A |
| 04/16/02 | 1.71 | N/A | 1.74 | 1.97 | 2.46 | 3.43 | 4.03 | 4.62 | 5.00 | 5.20 | 5.83 | N/A |
| 04/17/02 | 1.71 | N/A | 1.73 | 1.92 | 2.43 | 3.41 | 3.99 | 4.64 | 5.03 | 5.24 | 5.90 | N/A |
| 04/18/02 | 1.70 | N/A | 1.72 | 1.91 | 2.40 | 3.38 | 3.97 | 4.64 | 5.02 | 5.23 | 5.88 | N/A |
| 04/19/02 | 1.69 | N/A | 1.73 | 1.91 | 2.39 | 3.36 | 3.95 | 4.62 | 5.00 | 5.21 | 5.85 | N/A |
| 04/22/02 | 1.67 | N/A | 1.72 | 1.92 | 2.41 | 3.37 | 3.94 | 4.62 | 4.98 | 5.19 | 5.85 | N/A |
| 04/23/02 | 1.68 | N/A | 1.73 | 1.92 | 2.41 | 3.39 | 3.96 | 4.62 | 4.98 | 5.18 | 5.83 | N/A |
| 04/24/02 | 1.67 | N/A | 1.72 | 1.89 | 2.35 | 3.28 | 3.87 | 4.53 | 4.90 | 5.11 | 5.77 | N/A |
| 04/25/02 | 1.68 | N/A | 1.74 | 1.90 | 2.33 | 3.25 | 3.83 | 4.52 | 4.89 | 5.10 | 5.77 | N/A |
| 04/26/02 | 1.68 | N/A | 1.75 | 1.90 | 2.31 | 3.22 | 3.80 | 4.49 | 4.86 | 5.08 | 5.75 | N/A |
| 04/29/02 | 1.73 | N/A | 1.78 | 1.93 | 2.36 | 3.26 | 3.85 | 4.55 | 4.91 | 5.13 | 5.77 | N/A |

-PA-144-

Daily Treasury Yield Curve Rates

| 04/30/02 | 1.77 | N/A | 1.77 | 1.91 | 2.35 | 3.24 | 3.83 | 4.53 | 4.88 | 5.11 | 5.74 | N/A |
| 05/01/02 | 1.76 | N/A | 1.77 | 1.91 | 2.33 | 3.21 | 3.78 | 4.49 | 4.86 | 5.08 | 5.71 | N/A |
| 05/02/02 | 1.74 | N/A | 1.77 | 1.92 | 2.35 | 3.25 | 3.83 | 4.54 | 4.91 | 5.13 | 5.74 | N/A |
| 05/03/02 | 1.73 | N/A | 1.76 | 1.88 | 2.28 | 3.17 | 3.75 | 4.48 | 4.85 | 5.08 | 5.70 | N/A |
| 05/06/02 | 1.74 | N/A | 1.78 | 1.90 | 2.30 | 3.19 | 3.77 | 4.50 | 4.87 | 5.10 | 5.71 | N/A |
| 05/07/02 | 1.77 | N/A | 1.76 | 1.86 | 2.27 | 3.14 | 3.67 | 4.43 | 4.85 | 5.09 | 5.71 | N/A |
| 05/08/02 | 1.76 | N/A | 1.76 | 1.91 | 2.37 | 3.32 | 3.87 | 4.58 | 4.99 | 5.24 | 5.84 | N/A |
| 05/09/02 | 1.74 | N/A | 1.77 | 1.90 | 2.33 | 3.27 | 3.80 | 4.53 | 4.96 | 5.20 | 5.80 | N/A |
| 05/10/02 | 1.73 | N/A | 1.77 | 1.88 | 2.27 | 3.19 | 3.71 | 4.46 | 4.89 | 5.15 | 5.77 | N/A |
| 05/13/02 | 1.77 | N/A | 1.79 | 1.92 | 2.36 | 3.28 | 3.81 | 4.54 | 4.98 | 5.23 | 5.86 | N/A |
| 05/14/02 | 1.78 | N/A | 1.78 | 1.95 | 2.43 | 3.40 | 3.94 | 4.64 | 5.05 | 5.32 | 5.94 | N/A |
| 05/15/02 | 1.76 | N/A | 1.76 | 1.93 | 2.41 | 3.37 | 3.90 | 4.59 | 5.02 | 5.28 | 5.92 | N/A |
| 05/16/02 | 1.74 | N/A | 1.75 | 1.90 | 2.35 | 3.28 | 3.81 | 4.52 | 4.94 | 5.20 | 5.87 | N/A |
| 05/17/02 | 1.73 | N/A | 1.76 | 1.95 | 2.45 | 3.41 | 3.95 | 4.60 | 5.01 | 5.27 | 5.94 | N/A |
| 05/20/02 | 1.73 | N/A | 1.77 | 1.94 | 2.41 | 3.33 | 3.87 | 4.53 | 4.94 | 5.21 | 5.88 | N/A |
| 05/21/02 | 1.73 | N/A | 1.75 | 1.92 | 2.38 | 3.28 | 3.82 | 4.49 | 4.90 | 5.18 | 5.84 | N/A |
| 05/22/02 | 1.72 | N/A | 1.74 | 1.90 | 2.34 | 3.23 | 3.75 | 4.43 | 4.85 | 5.13 | 5.80 | N/A |
| 05/23/02 | 1.73 | N/A | 1.74 | 1.91 | 2.38 | 3.28 | 3.80 | 4.46 | 4.87 | 5.16 | 5.83 | N/A |
| 05/24/02 | 1.71 | N/A | 1.74 | 1.91 | 2.37 | 3.28 | 3.81 | 4.47 | 4.87 | 5.16 | 5.83 | N/A |
| 05/28/02 | 1.73 | N/A | 1.77 | 1.94 | 2.41 | 3.30 | 3.82 | 4.46 | 4.87 | 5.16 | 5.83 | N/A |
| 05/29/02 | 1.73 | N/A | 1.75 | 1.91 | 2.35 | 3.24 | 3.76 | 4.41 | 4.81 | 5.11 | 5.79 | N/A |
| 05/30/02 | 1.73 | N/A | 1.75 | 1.90 | 2.31 | 3.17 | 3.69 | 4.36 | 4.74 | 5.06 | 5.74 | N/A |
| 05/31/02 | 1.72 | N/A | 1.74 | 1.91 | 2.34 | 3.22 | 3.73 | 4.37 | 4.77 | 5.08 | 5.77 | N/A |
| 06/03/02 | 1.72 | N/A | 1.77 | 1.93 | 2.35 | 3.19 | 3.72 | 4.36 | 4.75 | 5.06 | 5.76 | N/A |
| 06/04/02 | 1.73 | N/A | 1.76 | 1.90 | 2.31 | 3.13 | 3.64 | 4.31 | 4.72 | 5.04 | 5.75 | N/A |
| 06/05/02 | 1.75 | N/A | 1.75 | 1.90 | 2.33 | 3.16 | 3.68 | 4.35 | 4.76 | 5.09 | 5.79 | N/A |
| 06/06/02 | 1.74 | N/A | 1.74 | 1.88 | 2.30 | 3.13 | 3.63 | 4.30 | 4.72 | 5.04 | 5.75 | N/A |
| 06/07/02 | 1.74 | N/A | 1.74 | 1.89 | 2.31 | 3.16 | 3.67 | 4.36 | 4.78 | 5.10 | 5.81 | N/A |
| 06/10/02 | 1.75 | N/A | 1.76 | 1.89 | 2.30 | 3.15 | 3.66 | 4.34 | 4.75 | 5.07 | 5.76 | N/A |
| 06/11/02 | 1.75 | N/A | 1.75 | 1.87 | 2.27 | 3.09 | 3.59 | 4.24 | 4.69 | 5.02 | 5.71 | N/A |
| 06/12/02 | 1.74 | N/A | 1.74 | 1.85 | 2.25 | 3.05 | 3.55 | 4.24 | 4.65 | 4.98 | 5.68 | N/A |
| 06/13/02 | 1.71 | N/A | 1.72 | 1.82 | 2.20 | 3.00 | 3.50 | 4.20 | 4.61 | 4.94 | 5.65 | N/A |
| 06/14/02 | 1.71 | N/A | 1.71 | 1.80 | 2.16 | 2.92 | 3.40 | 4.10 | 4.51 | 4.83 | 5.54 | N/A |
| 06/17/02 | 1.70 | N/A | 1.74 | 1.85 | 2.20 | 2.96 | 3.44 | 4.14 | 4.57 | 4.89 | 5.61 | N/A |
| 06/18/02 | 1.70 | N/A | 1.73 | 1.82 | 2.16 | 2.93 | 3.41 | 4.13 | 4.55 | 4.88 | 5.60 | N/A |
| 06/19/02 | 1.69 | N/A | 1.71 | 1.77 | 2.07 | 2.81 | 3.28 | 4.01 | 4.43 | 4.76 | 5.51 | N/A |
| 06/20/02 | 1.68 | N/A | 1.73 | 1.81 | 2.12 | 2.93 | 3.40 | 4.11 | 4.53 | 4.85 | 5.59 | N/A |
| 06/21/02 | 1.68 | N/A | 1.72 | 1.79 | 2.09 | 2.88 | 3.35 | 4.06 | 4.47 | 4.79 | 5.54 | N/A |
| 06/24/02 | 1.66 | N/A | 1.74 | 1.82 | 2.15 | 2.93 | 3.41 | 4.13 | 4.55 | 4.87 | 5.60 | N/A |
| 06/25/02 | 1.74 | N/A | 1.73 | 1.81 | 2.16 | 2.92 | 3.41 | 4.13 | 4.55 | 4.88 | 5.62 | N/A |
| 06/26/02 | 1.72 | N/A | 1.70 | 1.74 | 2.05 | 2.77 | 3.25 | 3.99 | 4.40 | 4.75 | 5.53 | N/A |
| 06/27/02 | 1.70 | N/A | 1.70 | 1.76 | 2.09 | 2.85 | 3.34 | 4.08 | 4.51 | 4.84 | 5.63 | N/A |
| 06/28/02 | 1.69 | N/A | 1.70 | 1.75 | 2.06 | 2.90 | 3.37 | 4.09 | 4.52 | 4.86 | 5.65 | N/A |
| 07/01/02 | 1.71 | N/A | 1.72 | 1.78 | 2.09 | 2.88 | 3.35 | 4.08 | 4.54 | 4.85 | 5.64 | N/A |
| 07/02/02 | 1.72 | N/A | 1.72 | 1.76 | 2.04 | 2.78 | 3.24 | 3.99 | 4.45 | 4.77 | 5.56 | N/A |
| 07/03/02 | 1.71 | N/A | 1.72 | 1.74 | 2.02 | 2.78 | 3.25 | 4.00 | 4.47 | 4.78 | 5.57 | N/A |
| 07/05/02 | 1.71 | N/A | 1.72 | 1.77 | 2.08 | 2.90 | 3.38 | 4.13 | 4.60 | 4.90 | 5.67 | N/A |
| 07/08/02 | 1.73 | N/A | 1.73 | 1.78 | 2.08 | 2.84 | 3.32 | 4.07 | 4.53 | 4.84 | 5.63 | N/A |
| 07/09/02 | 1.72 | N/A | 1.72 | 1.75 | 2.01 | 2.74 | 3.21 | 3.98 | 4.47 | 4.78 | 5.57 | N/A |

| Date | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/10/02 | 1.73 | N/A | 1.72 | 1.74 | 1.97 | 2.61 | 3.07 | 3.85 | 4.33 | 4.66 | 5.48 | N/A |
| 07/11/02 | 1.72 | N/A | 1.72 | 1.74 | 1.95 | 2.61 | 3.07 | 3.86 | 4.33 | 4.66 | 5.47 | N/A |
| 07/12/02 | 1.71 | N/A | 1.71 | 1.74 | 1.97 | 2.56 | 3.02 | 3.82 | 4.30 | 4.63 | 5.45 | N/A |
| 07/15/02 | 1.71 | N/A | 1.72 | 1.73 | 1.97 | 2.55 | 3.04 | 3.85 | 4.33 | 4.66 | 5.49 | N/A |
| 07/16/02 | 1.74 | N/A | 1.72 | 1.75 | 1.99 | 2.66 | 3.14 | 3.93 | 4.42 | 4.75 | 5.58 | N/A |
| 07/17/02 | 1.72 | N/A | 1.72 | 1.75 | 1.99 | 2.63 | 3.10 | 3.89 | 4.36 | 4.71 | 5.54 | N/A |
| 07/18/02 | 1.72 | N/A | 1.72 | 1.74 | 1.95 | 2.55 | 3.01 | 3.82 | 4.29 | 4.66 | 5.52 | N/A |
| 07/19/02 | 1.71 | N/A | 1.71 | 1.73 | 1.94 | 2.48 | 2.94 | 3.76 | 4.25 | 4.61 | 5.47 | N/A |
| 07/22/02 | 1.71 | N/A | 1.70 | 1.73 | 1.94 | 2.40 | 2.83 | 3.65 | 4.15 | 4.51 | 5.40 | N/A |
| 07/23/02 | 1.73 | N/A | 1.70 | 1.71 | 1.91 | 2.34 | 2.76 | 3.59 | 4.11 | 4.47 | 5.39 | N/A |
| 07/24/02 | 1.70 | N/A | 1.69 | 1.70 | 1.89 | 2.38 | 2.81 | 3.60 | 4.13 | 4.49 | 5.42 | N/A |
| 07/25/02 | 1.71 | N/A | 1.70 | 1.69 | 1.86 | 2.28 | 2.69 | 3.51 | 4.05 | 4.43 | 5.39 | N/A |
| 07/26/02 | 1.71 | N/A | 1.69 | 1.68 | 1.80 | 2.20 | 2.62 | 3.46 | 4.03 | 4.43 | 5.42 | N/A |
| 07/29/02 | 1.73 | N/A | 1.72 | 1.74 | 1.93 | 2.41 | 2.84 | 3.68 | 4.22 | 4.62 | 5.54 | N/A |
| 07/30/02 | 1.73 | N/A | 1.72 | 1.75 | 1.96 | 2.44 | 2.88 | 3.71 | 4.24 | 4.65 | 5.54 | N/A |
| 07/31/02 | 1.73 | N/A | 1.71 | 1.70 | 1.80 | 2.23 | 2.67 | 3.53 | 4.09 | 4.51 | 5.41 | N/A |
| 08/01/02 | 1.70 | N/A | 1.68 | 1.66 | 1.75 | 2.15 | 2.60 | 3.46 | 4.04 | 4.47 | 5.41 | N/A |
| 08/02/02 | 1.66 | N/A | 1.63 | 1.59 | 1.65 | 1.99 | 2.43 | 3.27 | 3.88 | 4.33 | 5.29 | N/A |
| 08/05/02 | 1.68 | N/A | 1.64 | 1.59 | 1.64 | 1.93 | 2.34 | 3.21 | 3.83 | 4.29 | 5.26 | N/A |
| 08/06/02 | 1.71 | N/A | 1.65 | 1.60 | 1.69 | 2.11 | 2.53 | 3.36 | 3.98 | 4.42 | 5.35 | N/A |
| 08/07/02 | 1.66 | N/A | 1.59 | 1.55 | 1.64 | 1.98 | 2.40 | 3.24 | 3.89 | 4.35 | 5.31 | N/A |
| 08/08/02 | 1.67 | N/A | 1.62 | 1.59 | 1.68 | 2.10 | 2.52 | 3.35 | 3.96 | 4.40 | 5.34 | N/A |
| 08/09/02 | 1.66 | N/A | 1.62 | 1.59 | 1.68 | 2.10 | 2.49 | 3.28 | 3.85 | 4.27 | 5.22 | N/A |
| 08/12/02 | 1.68 | N/A | 1.68 | 1.64 | 1.75 | 2.10 | 2.48 | 3.24 | 3.81 | 4.22 | 5.16 | N/A |
| 08/13/02 | 1.68 | N/A | 1.63 | 1.58 | 1.70 | 2.00 | 2.37 | 3.15 | 3.72 | 4.12 | 5.09 | N/A |
| 08/14/02 | 1.68 | N/A | 1.64 | 1.61 | 1.77 | 2.12 | 2.47 | 3.19 | 3.74 | 4.06 | 5.03 | N/A |
| 08/15/02 | 1.66 | N/A | 1.62 | 1.63 | 1.78 | 2.22 | 2.58 | 3.28 | 3.85 | 4.17 | 5.12 | N/A |
| 08/16/02 | 1.66 | N/A | 1.62 | 1.65 | 1.82 | 2.28 | 2.67 | 3.41 | 3.99 | 4.32 | 5.24 | N/A |
| 08/19/02 | 1.67 | N/A | 1.67 | 1.69 | 1.85 | 2.25 | 2.64 | 3.40 | 3.97 | 4.29 | 5.21 | N/A |
| 08/20/02 | 1.69 | N/A | 1.62 | 1.64 | 1.77 | 2.12 | 2.50 | 3.25 | 3.84 | 4.17 | 5.12 | N/A |
| 08/21/02 | 1.68 | N/A | 1.63 | 1.65 | 1.77 | 2.12 | 2.51 | 3.28 | 3.85 | 4.20 | 5.14 | N/A |
| 08/22/02 | 1.66 | N/A | 1.65 | 1.68 | 1.85 | 2.22 | 2.61 | 3.37 | 3.95 | 4.30 | 5.22 | N/A |
| 08/23/02 | 1.66 | N/A | 1.65 | 1.67 | 1.80 | 2.19 | 2.56 | 3.31 | 3.88 | 4.25 | 5.15 | N/A |
| 08/26/02 | 1.68 | N/A | 1.68 | 1.69 | 1.79 | 2.19 | 2.56 | 3.29 | 3.85 | 4.22 | 5.12 | N/A |
| 08/27/02 | 1.69 | N/A | 1.68 | 1.71 | 1.89 | 2.26 | 2.63 | 3.37 | 3.93 | 4.29 | 5.20 | N/A |
| 08/28/02 | 1.71 | N/A | 1.67 | 1.69 | 1.85 | 2.23 | 2.59 | 3.31 | 3.86 | 4.22 | 5.14 | N/A |
| 08/29/02 | 1.71 | N/A | 1.68 | 1.66 | 1.75 | 2.14 | 2.51 | 3.24 | 3.80 | 4.16 | 5.08 | N/A |
| 08/30/02 | 1.70 | N/A | 1.69 | 1.67 | 1.74 | 2.14 | 2.50 | 3.22 | 3.78 | 4.14 | 5.06 | N/A |
| 09/03/02 | 1.69 | N/A | 1.64 | 1.62 | 1.71 | 2.01 | 2.36 | 3.04 | 3.63 | 3.98 | 4.92 | N/A |
| 09/04/02 | 1.69 | N/A | 1.63 | 1.60 | 1.69 | 2.02 | 2.35 | 3.02 | 3.58 | 3.96 | 4.91 | N/A |
| 09/05/02 | 1.66 | N/A | 1.61 | 1.58 | 1.66 | 1.95 | 2.29 | 2.95 | 3.52 | 3.91 | 4.88 | N/A |
| 09/06/02 | 1.68 | N/A | 1.66 | 1.66 | 1.75 | 2.08 | 2.42 | 3.10 | 3.66 | 4.05 | 5.00 | N/A |
| 09/09/02 | 1.70 | N/A | 1.69 | 1.69 | 1.77 | 2.13 | 2.46 | 3.11 | 3.66 | 4.05 | 4.99 | N/A |
| 09/10/02 | 1.72 | N/A | 1.68 | 1.68 | 1.77 | 2.12 | 2.44 | 3.08 | 3.63 | 4.00 | 4.96 | N/A |
| 09/11/02 | 1.71 | N/A | 1.69 | 1.69 | 1.84 | 2.18 | 2.51 | 3.15 | 3.71 | 4.07 | 5.01 | N/A |
| 09/12/02 | 1.70 | N/A | 1.69 | 1.68 | 1.79 | 2.12 | 2.44 | 3.07 | 3.61 | 3.98 | 4.93 | N/A |
| 09/13/02 | 1.68 | N/A | 1.69 | 1.68 | 1.78 | 2.07 | 2.38 | 3.00 | 3.55 | 3.92 | 4.87 | N/A |
| 09/16/02 | 1.69 | N/A | 1.71 | 1.69 | 1.78 | 2.07 | 2.38 | 3.00 | 3.53 | 3.90 | 4.85 | N/A |
| 09/17/02 | 1.70 | N/A | 1.70 | 1.69 | 1.77 | 2.06 | 2.36 | 2.97 | 3.49 | 3.87 | 4.83 | N/A |

| 09/18/02 | 1.70 | N/A | 1.68 | 1.68 | 1.75 | 2.04 | 2.35 | 2.96 | 3.50 | 3.86 | 4.85 | N/A |
| 09/19/02 | 1.64 | N/A | 1.65 | 1.64 | 1.68 | 1.93 | 2.24 | 2.87 | 3.42 | 3.79 | 4.80 | N/A |
| 09/20/02 | 1.64 | N/A | 1.65 | 1.64 | 1.68 | 1.94 | 2.25 | 2.86 | 3.42 | 3.79 | 4.82 | N/A |
| 09/23/02 | 1.65 | N/A | 1.65 | 1.62 | 1.68 | 1.93 | 2.21 | 2.76 | 3.32 | 3.70 | 4.75 | N/A |
| 09/24/02 | 1.68 | N/A | 1.65 | 1.61 | 1.68 | 1.93 | 2.20 | 2.76 | 3.31 | 3.69 | 4.74 | N/A |
| 09/25/02 | 1.67 | N/A | 1.66 | 1.63 | 1.73 | 2.00 | 2.29 | 2.83 | 3.40 | 3.77 | 4.83 | N/A |
| 09/26/02 | 1.66 | N/A | 1.65 | 1.61 | 1.68 | 1.97 | 2.27 | 2.86 | 3.42 | 3.79 | 4.85 | N/A |
| 09/27/02 | 1.63 | N/A | 1.63 | 1.57 | 1.62 | 1.82 | 2.13 | 2.74 | 3.31 | 3.69 | 4.78 | N/A |
| 09/30/02 | 1.60 | N/A | 1.57 | 1.51 | 1.53 | 1.72 | 2.02 | 2.63 | 3.25 | 3.63 | 4.75 | N/A |
| 10/01/02 | 1.63 | N/A | 1.59 | 1.54 | 1.56 | 1.80 | 2.11 | 2.75 | 3.34 | 3.72 | 4.81 | N/A |
| 10/02/02 | 1.61 | N/A | 1.58 | 1.52 | 1.53 | 1.75 | 2.07 | 2.74 | 3.33 | 3.71 | 4.78 | N/A |
| 10/03/02 | 1.58 | N/A | 1.57 | 1.51 | 1.53 | 1.75 | 2.08 | 2.74 | 3.33 | 3.70 | 4.79 | N/A |
| 10/04/02 | 1.60 | N/A | 1.61 | 1.56 | 1.58 | 1.78 | 2.09 | 2.73 | 3.31 | 3.69 | 4.77 | N/A |
| 10/07/02 | 1.61 | N/A | 1.63 | 1.57 | 1.59 | 1.77 | 2.07 | 2.67 | 3.27 | 3.64 | 4.75 | N/A |
| 10/08/02 | 1.62 | N/A | 1.61 | 1.57 | 1.60 | 1.80 | 2.10 | 2.70 | 3.29 | 3.65 | 4.75 | N/A |
| 10/09/02 | 1.60 | N/A | 1.57 | 1.53 | 1.55 | 1.72 | 2.03 | 2.65 | 3.24 | 3.61 | 4.72 | N/A |
| 10/10/02 | 1.59 | N/A | 1.58 | 1.56 | 1.60 | 1.75 | 2.06 | 2.68 | 3.30 | 3.68 | 4.78 | N/A |
| 10/11/02 | 1.59 | N/A | 1.58 | 1.58 | 1.63 | 1.85 | 2.17 | 2.83 | 3.45 | 3.83 | 4.91 | N/A |
| 10/15/02 | 1.66 | N/A | 1.68 | 1.69 | 1.79 | 2.08 | 2.42 | 3.11 | 3.70 | 4.07 | 5.09 | N/A |
| 10/16/02 | 1.66 | N/A | 1.66 | 1.67 | 1.74 | 2.02 | 2.38 | 3.11 | 3.68 | 4.06 | 5.10 | N/A |
| 10/17/02 | 1.66 | N/A | 1.67 | 1.69 | 1.78 | 2.10 | 2.47 | 3.20 | 3.77 | 4.16 | 5.18 | N/A |
| 10/18/02 | 1.66 | N/A | 1.67 | 1.68 | 1.77 | 2.09 | 2.45 | 3.17 | 3.73 | 4.14 | 5.17 | N/A |
| 10/21/02 | 1.69 | N/A | 1.71 | 1.72 | 1.86 | 2.23 | 2.58 | 3.28 | 3.83 | 4.24 | 5.23 | N/A |
| 10/22/02 | 1.71 | N/A | 1.69 | 1.71 | 1.85 | 2.21 | 2.57 | 3.29 | 3.85 | 4.27 | 5.26 | N/A |
| 10/23/02 | 1.68 | N/A | 1.68 | 1.69 | 1.84 | 2.20 | 2.55 | 3.26 | 3.82 | 4.26 | 5.26 | N/A |
| 10/24/02 | 1.64 | N/A | 1.65 | 1.66 | 1.73 | 2.09 | 2.45 | 3.18 | 3.74 | 4.16 | 5.20 | N/A |
| 10/25/02 | 1.63 | N/A | 1.64 | 1.62 | 1.69 | 1.98 | 2.35 | 3.10 | 3.69 | 4.12 | 5.16 | N/A |
| 10/28/02 | 1.59 | N/A | 1.59 | 1.55 | 1.60 | 1.88 | 2.26 | 3.03 | 3.65 | 4.10 | 5.15 | N/A |
| 10/29/02 | 1.58 | N/A | 1.51 | 1.46 | 1.51 | 1.79 | 2.15 | 2.89 | 3.51 | 3.97 | 5.05 | N/A |
| 10/30/02 | 1.56 | N/A | 1.51 | 1.46 | 1.49 | 1.74 | 2.12 | 2.87 | 3.53 | 3.99 | 5.07 | N/A |
| 10/31/02 | 1.48 | N/A | 1.44 | 1.43 | 1.46 | 1.68 | 2.05 | 2.81 | 3.45 | 3.91 | 5.03 | N/A |
| 11/01/02 | 1.44 | N/A | 1.43 | 1.42 | 1.46 | 1.76 | 2.14 | 2.92 | 3.54 | 4.01 | 5.07 | N/A |
| 11/04/02 | 1.44 | N/A | 1.43 | 1.43 | 1.48 | 1.79 | 2.19 | 3.00 | 3.59 | 4.07 | 5.11 | N/A |
| 11/05/02 | 1.44 | N/A | 1.42 | 1.41 | 1.48 | 1.82 | 2.21 | 3.00 | 3.62 | 4.10 | 5.13 | N/A |
| 11/06/02 | 1.24 | N/A | 1.23 | 1.26 | 1.46 | 1.87 | 2.26 | 3.01 | 3.62 | 4.09 | 5.12 | N/A |
| 11/07/02 | 1.20 | N/A | 1.22 | 1.27 | 1.46 | 1.86 | 2.20 | 2.86 | 3.46 | 3.88 | 4.94 | N/A |
| 11/08/02 | 1.19 | N/A | 1.22 | 1.26 | 1.43 | 1.87 | 2.21 | 2.87 | 3.44 | 3.85 | 4.87 | N/A |
| 11/12/02 | 1.20 | N/A | 1.22 | 1.26 | 1.44 | 1.79 | 2.14 | 2.83 | 3.42 | 3.84 | 4.87 | N/A |
| 11/13/02 | 1.22 | N/A | 1.21 | 1.25 | 1.42 | 1.76 | 2.11 | 2.82 | 3.40 | 3.84 | 4.86 | N/A |
| 11/14/02 | 1.22 | N/A | 1.22 | 1.27 | 1.48 | 1.89 | 2.28 | 3.01 | 3.60 | 4.03 | 5.01 | N/A |
| 11/15/02 | 1.23 | N/A | 1.22 | 1.28 | 1.49 | 1.91 | 2.30 | 3.05 | 3.63 | 4.05 | 5.02 | N/A |
| 11/18/02 | 1.24 | N/A | 1.23 | 1.27 | 1.48 | 1.91 | 2.30 | 3.04 | 3.61 | 4.02 | 4.98 | N/A |
| 11/19/02 | 1.23 | N/A | 1.21 | 1.27 | 1.49 | 1.91 | 2.30 | 3.02 | 3.58 | 3.99 | 4.94 | N/A |
| 11/20/02 | 1.22 | N/A | 1.22 | 1.27 | 1.50 | 1.98 | 2.39 | 3.13 | 3.72 | 4.08 | 5.04 | N/A |
| 11/21/02 | 1.23 | N/A | 1.22 | 1.27 | 1.52 | 2.05 | 2.46 | 3.20 | 3.80 | 4.14 | 5.10 | N/A |
| 11/22/02 | 1.23 | N/A | 1.23 | 1.29 | 1.54 | 2.10 | 2.52 | 3.26 | 3.84 | 4.18 | 5.12 | N/A |
| 11/25/02 | 1.24 | N/A | 1.24 | 1.30 | 1.56 | 2.09 | 2.51 | 3.26 | 3.85 | 4.19 | 5.13 | N/A |
| 11/26/02 | 1.27 | N/A | 1.22 | 1.28 | 1.51 | 1.97 | 2.38 | 3.14 | 3.71 | 4.08 | 5.03 | N/A |
| 11/27/02 | 1.28 | N/A | 1.23 | 1.30 | 1.58 | 2.13 | 2.58 | 3.34 | 3.93 | 4.26 | 5.23 | N/A |

| Date | 1 Mo | 2 Mo | 3 Mo | 6 Mo | 1 Yr | 2 Yr | 3 Yr | 5 Yr | 7 Yr | 10 Yr | 20 Yr | 30 Yr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/02 | 1.25 | N/A | 1.22 | 1.30 | 1.56 | 2.08 | 2.51 | 3.28 | 3.88 | 4.22 | 5.18 | N/A |
| 12/02/02 | 1.26 | N/A | 1.24 | 1.31 | 1.56 | 2.07 | 2.51 | 3.31 | 3.89 | 4.22 | 5.17 | N/A |
| 12/03/02 | 1.23 | N/A | 1.23 | 1.31 | 1.57 | 2.08 | 2.53 | 3.33 | 3.92 | 4.24 | 5.18 | N/A |
| 12/04/02 | 1.23 | N/A | 1.22 | 1.29 | 1.53 | 2.02 | 2.45 | 3.25 | 3.85 | 4.18 | 5.14 | N/A |
| 12/05/02 | 1.23 | N/A | 1.22 | 1.28 | 1.50 | 1.97 | 2.39 | 3.19 | 3.79 | 4.13 | 5.09 | N/A |
| 12/06/02 | 1.23 | N/A | 1.21 | 1.27 | 1.47 | 1.89 | 2.31 | 3.13 | 3.73 | 4.09 | 5.08 | N/A |
| 12/09/02 | 1.24 | N/A | 1.23 | 1.28 | 1.48 | 1.88 | 2.28 | 3.08 | 3.68 | 4.06 | 5.05 | N/A |
| 12/10/02 | 1.23 | N/A | 1.21 | 1.27 | 1.48 | 1.90 | 2.30 | 3.07 | 3.67 | 4.06 | 5.02 | N/A |
| 12/11/02 | 1.23 | N/A | 1.21 | 1.26 | 1.46 | 1.85 | 2.24 | 3.02 | 3.61 | 4.01 | 4.97 | N/A |
| 12/12/02 | 1.20 | N/A | 1.21 | 1.27 | 1.46 | 1.85 | 2.25 | 3.03 | 3.62 | 4.01 | 4.97 | N/A |
| 12/13/02 | 1.20 | N/A | 1.21 | 1.28 | 1.47 | 1.87 | 2.27 | 3.08 | 3.68 | 4.07 | 5.03 | N/A |
| 12/16/02 | 1.20 | N/A | 1.23 | 1.29 | 1.50 | 1.94 | 2.35 | 3.14 | 3.75 | 4.15 | 5.11 | N/A |
| 12/17/02 | 1.22 | N/A | 1.22 | 1.27 | 1.48 | 1.89 | 2.30 | 3.11 | 3.71 | 4.13 | 5.11 | N/A |
| 12/18/02 | 1.20 | N/A | 1.21 | 1.26 | 1.43 | 1.81 | 2.21 | 3.03 | 3.63 | 4.06 | 5.05 | N/A |
| 12/19/02 | 1.19 | N/A | 1.21 | 1.24 | 1.37 | 1.74 | 2.13 | 2.91 | 3.52 | 3.96 | 4.97 | N/A |
| 12/20/02 | 1.18 | N/A | 1.21 | 1.25 | 1.39 | 1.76 | 2.15 | 2.93 | 3.53 | 3.97 | 4.97 | N/A |
| 12/23/02 | 1.15 | N/A | 1.19 | 1.25 | 1.43 | 1.79 | 2.17 | 2.95 | 3.54 | 3.98 | 4.98 | N/A |
| 12/24/02 | 1.17 | N/A | 1.19 | 1.26 | 1.42 | 1.73 | 2.10 | 2.92 | 3.51 | 3.95 | 4.93 | N/A |
| 12/26/02 | 1.14 | N/A | 1.18 | 1.27 | 1.41 | 1.70 | 2.08 | 2.89 | 3.47 | 3.93 | 4.91 | N/A |
| 12/27/02 | 1.07 | N/A | 1.16 | 1.23 | 1.36 | 1.60 | 1.97 | 2.79 | 3.36 | 3.83 | 4.83 | N/A |
| 12/30/02 | 1.15 | N/A | 1.22 | 1.24 | 1.36 | 1.61 | 1.95 | 2.76 | 3.34 | 3.82 | 4.82 | N/A |
| 12/31/02 | 1.20 | N/A | 1.22 | 1.23 | 1.32 | 1.61 | 1.99 | 2.78 | 3.36 | 3.83 | 4.83 | N/A |

* The 2-month constant maturity series begins on October 16, 2018, with the first auction of the 8-week Treasury bill.

30-year Treasury constant maturity series was discontinued on February 18, 2002 and reintroduced on February 9, 2006. From February 18, 2002 to February 8, 2006, Treasury published alternatives to a 30-year rate. See Long-Term Average Rate for more information.

Treasury discontinued the 20-year constant maturity series at the end of calendar year 1986 and reinstated that series on October 1, 1993. As a result, there are no 20-year rates available for the time period January 1, 1987 through September 30, 1993.

**Treasury Yield Curve Rates:** These rates are commonly referred to as "Constant Maturity Treasury" rates, or CMTs. Yields are interpolated by the Treasury from the daily yield curve. This curve, which relates the yield on a security to its time to maturity is based on the closing market bid yields on actively traded Treasury securities in the over-the-counter market. These market yields are calculated from composites of indicative, bid-side market quotations (not actual transactions) obtained by the Federal Reserve Bank of New York at or near 3:30 PM each trading day. The CMT yield values are read from the yield curve at fixed maturities, currently 1, 2, 3 and 6 months and 1, 2, 3, 5, 7, 10, 20, and 30 years. This method provides a yield for a 10 year maturity, for example, even if no outstanding security has exactly 10 years remaining to maturity.

**Treasury Yield Curve Methodology:** The Treasury yield curve is estimated daily using a cubic spline model. Inputs to the model are primarily indicative bid-side yields for on-the-run Treasury securities. Treasury reserves the option to make changes to the yield curve as appropriate and in its sole discretion. See our Treasury Yield Curve Methodology page for details.

**Negative Yields and Nominal Constant Maturity Treasury Series Rates (CMTs):** At times, financial market conditions, in conjunction with extraordinary low levels of interest rates, may result in negative yields for some Treasury securities trading in the secondary market. Negative yields for Treasury securities most often reflect highly technical factors in Treasury markets related to the cash and repurchase agreement markets, and are at times unrelated to the time value of money.

At such times, Treasury will restrict the use of negative input yields for securities used in deriving interest rates for the Treasury nominal Constant Maturity Treasury series (CMTs). Any CMT input points with negative yields will be reset to zero percent prior to use as inputs in the CMT derivation. This decision is consistent with Treasury not accepting negative yields in Treasury nominal security auctions.

In addition, given that CMTs are used in many statutorily and regulatory determined loan and credit programs as well as for setting interest rates on non-marketable government securities, establishing a floor of zero more accurately reflects borrowing costs related to various programs.

For more information regarding these statistics contact the Office of Debt Management by email at debt.management@do.treas.gov.

For other Public Debt information contact (202) 504-3550

# EXHIBIT L

## TRUTH IN LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicant: INES ROWE-BRYAN<br>Roger Rowe<br>20 SPRUCE RD<br>AMITYVILLE, NY 11701-1019 | Lender: Citibank, N.A.<br>399 Park Avenue<br>New York, NY 10043 |

Loan No: 002000360738

| | |
|---|---|
| Property: 20 Spruce Rd<br>Amityville, NY 11701-1019 | Type of Loan: Conventional<br>Date: November 7, 2002<br>Disclosure Type: Final |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.247 % | $ 187,004.34 | $ 152,942.16 | $ 339,946.50 |

REPAYMENT: See Payment Schedule below.

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|---|---|---|
| 359 | 944.29 | Monthly beginning 01/01/2003 | | | |
| 1 | 946.39 | Monthly beginning 12/01/2032 | | | |

DEMAND FEATURE: [X] This loan does not have a Demand Feature. [ ] This loan has a Demand Feature as follows:

REQUIRED DEPOSIT: [ ] The annual percentage rate does not take into account your required deposit.

VARIABLE RATE FEATURE: [ ] This loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at    20 Spruce Rd<br>Amityville, NY 11701-1019

ASSUMPTION: Someone buying this property [X] cannot assume the remainder of the mortgage on the original terms<br>[ ] may assume, subject to conditions, the remainder of the mortgage on the original terms.

NON-FILING INSURANCE: $ N/A

PROPERTY INSURANCE: [X] Homeowner's insurance, or fire and extended coverage, is a required condition of this loan. Also, if the property securing this loan is located in a flood hazard area, you will be required to obtain flood insurance. Borrower may purchase this insurance from any insurance company acceptable to lender.

LATE CHARGES: If a payment is more than 15 days late, you will be charged a late charge of  2.000% of the payment.

PREPAYMENT: If you pay off your loan early, you

| | | |
|---|---|---|
| [ ] may | [X] will not | have to pay a prepayment penalty. |
| [ ] may | [X] will not | have to pay a minimum finance charge. |
| [ ] may | [X] will not | be entitled to a refund of part of the finance charge. |

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | |
|---|---|
| _____<br>BORROWER/DATE | *Ines Rowe Bryan* 11-7-02<br>INES ROWE-BRYAN                  BORROWER/DATE |
| _____<br>BORROWER/DATE | *Roger Rowe* 11-7-02<br>Roger Rowe                  BORROWER/DATE |

159005 - 07/22/2002 [002000360738]<br>LASER PRO, Reg. U.S. Pat. & T.M.Off., Version citi 2.0.0.74 10/28/2002 (c) 2002 Concentrex Incorporated, All Rights Reserved.

-PA 150-

Case 22-1676, Document 60, 12/12/2022, 3424636, Page149 of 527

# EXHIBIT M

# GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

Applicant: INES ROWE-BRYAN
Roger Rowe
20 SPRUCE RD
AMITYVILLE, NY 11701-1019

Lender: Citibank, N.A.
399 Park Avenue
New York, NY 10043

Application No: 002000360738

Property: 20 Spruce Rd
Amityville, NY 11701-1019

Loan Type: Conventional
Date: 07/19/2002
Mortgage Amount: $ 157,500.00
Estimated Interest Rate: 6.250%

The information provided below reflects estimates of the charges which you are likely to incur at settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
The numbers listed inside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement which you will be receiving at settlement. The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. Items marked "(p.o.c.)" were or will be paid outside the closing, they are shown here for information purposes and are not included in the totals.

| Description of Settlement Charges | BUYER | LENDER |
|---|---|---|
| 0801. Loan Origination Fee ( 1.000%) | 1,575.00 | |
| 0802. Total Discount ( 0.625%) | 984.38 | |
| 0802A. Standard Discount Points (S984.38) | | |
| 0808. Processing Fee | 250.00 | |
| 0809. Tax Service Fee | 89.00 | |
| 0810. Freight Fee | 27.00 | |
| 0811. Document Preparation Fee | 100.00 | |
| 0812. Application Fee (p.o.c. 400.00) | | |
| 0814. Flood Certification | 22.00 | |
| 0901. Interim Interest 30 days @ $26.97 per day | 809.10 | |
| 1004. County Property Tax Escrow 2 payments @ $540.28 per payment | 1,080.56 | |
| 1015. Aggregate Escrow Account Adjustment | -270.14 | |
| 1107. Attorney Fees | 625.00 | |
| 1108. Title Insurance | 799.83 | |
| 1111. Title Insurance Endorsements | 75.00 | |
| 1120. Municipal Search | 200.00 | |
| 1201. Recording Fees | 150.00 | |
| 1202. City/County Tax/Stamps | 847.50 | |
| 1205. MECA Filing Fees | 125.00 | |
| 1211. Lender Paid Mortgage Tax | | 282.50 |
| Total | S 7,489.23 | S 282.50 |

GFECX - 03/01/2002 [002000360738]

# EXHIBIT N



07/19/2002

Ines Rowe-Bryan, Roger Rowe
20 Spruce Rd
Amityville, NY 11701-1019

RE:     Loan Number: 002000360738
        Anticipated Settlement Date:  September 16, 2002

Dear Ines Rowe-Bryan and  Roger Rowe:

Per our discussion, in addition to the information provided on your Good Faith Estimate of Settlement
Costs and the Truth-In-Lending Statement, the following is an estimate of your required Cash To Close
and Estimated Payment:

| ESTIMATED CASH TO CLOSE - REFINANCE | |
| --- | --- |
| Purchase (if applicable) | $ 0.00 |
| Alterations, improv, repairs | 0.00 |
| Land (Acquired Separately) | |
| Refi (incl. debts to be paid off) | 44,506.00 |
| Estimated Total Fees | 7,889.23 |
| PMI, MIP, Funding Fee | 0.00 |
| Discount (if Borr will  pay) | 0.00 |
| Total Costs | 52,395.23 |
| Subordinate/other financing | 0.00 |
| Seller paid closing costs | 0.00 |
| Other credits | 0.00 |
| Loan Amt (excl. PMI & MIP) | 157,500.00 |
| PMI, MIP & Fund. Fee Fin. | 0.00 |
| Total Loan Amt | 157,500.00 |
| Cash from/to Borr | $ -105,104.77 |

| ESTIMATED PAYMENT | |
| --- | --- |
| P&I Payment | $ 969.75 |
| Taxes | 540.28 |
| Hazard Ins. | 0.00 |
| Mortgage Ins. | 0.00 |
| Assn. Dues | 0.00 |
| Other Fee | 0.00 |
| Total Payment | $ 1,510.03 |

Thank you for your interest in Citibank.  If we can be of further assistance, please call John Morrison at
1-866-559-9735.

MB2504  1/2000
Version citi 1.0.1.33  05/31/2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
—————————————————— x

Roger Rowe

                             Plaintiff,                  Affirmation of Service

          -against-

Cenlar FSB,
CitiMortgage, Inc                               2:19____ CV __07278___ ( JMA )

                          Defendant.
—————————————————— x

RECEIVED

MAR 2 3 2021

EDNY PRO SE OFFICE

I, __KIM DAVIS_____ , declare under penalty of perjury that I have

served a copy of the attached FIRST AMENDED COMPLAINT AND RELATED EXHIBITS

upon CITIMORTGAGE, INC BY PERSONAL DELIVERY TO DAFINA MEHMETI AND BY UPS MAIL

whose address is: 399 PARK AVE, NEW YORK, NY 10022

Dated: 3/22/21_____
      SUFFOLK_____ , New York

                                       Signature

                                        20 SPRUCE RD
                                        Address

                                        AMITYVILLE, NEW YORK 11701
                                        City, State, Zip Code

Case 22-1870, Document 66, 12/12/2022, 3441836, Page159 of 239

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROGER ROWE, | |
| Plaintiff, | |
| v. | Case No.: 2:19-cv-7278-JMA-JAS |
| CENLAR FSB; CITIMORTGAGE, INC., | |
| Defendants. | |

## CORPORATE DISCLOSURE STATEMENT OF DEFENDANT
## PURSUANT TO RULE 7.1

CitiMortgage, Inc., by and through its attorneys, Stradley Ronon Stevens & Young, LLP, pursuant to Federal Rule of Civil Procedure 7.1, hereby submits its Corporate Disclosure Statement and states as follows:

Defendant, CitiMortgage, Inc. is owned in-part by Citibank, N.A. and in part by Citi Retail Services LLC. Citibank, N.A. owns 70% of CitiMortgage, Inc., and Citi Retail Services LLC owns the remaining 30% of CitiMortgage, Inc.

Dated:  April 8, 2021

/s/ Lijue T. Philip
Lijue T. Philip
STRADLEY RONON STEVENS & YOUNG, LLP
100 Park Avenue, Suite 2000
New York, NY 10017
(212) 404-0625
(646) 582-7180 (fax)
lphilip@stradley.com

*Attorney for Defendants, Cenlar FSB and
CitiMortgage, Inc.*

1

4963914v.1

## CERTIFICATE OF SERVICE

I, Lijue T. Philip, certify that on the 8th day of April, 2021, I caused to be served, via this Honorable Court's ECF filing system a true and correct copy of the foregoing *Rule 7.1 Disclosure,* on all parties which have appeared in this action.

/s/ Lijue T. Philip
Lijue T. Philip

4965902v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                      Plaintiff,

        v.

CENLAR FSB; CITIMORTGAGE, INC.,

                    Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

---

## MOTION OF DEFENDANTS CENLAR FSB AND CITIMORTGAGE, INC. TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

Defendants, Cenlar FSB and CitiMortgage, Inc., hereby move for the dismissal of the First

Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In support of

this Motion, Defendants incorporate by reference the accompanying Memorandum of Law. A

proposed Order is attached.

Dated: June 17, 2021          STRADLEY RONON STEVENS & YOUNG, LLP
New York, NY

                            By:    */s/ Lijue T. Philip*

                            Lijue T. Philip
                            100 Park Avenue, Suite 2000
                            New York, New York 10017
                            Telephone: (212) 812-4124
                            Facsimile: (646) 682-7180
                            LPhilip@stradley.com

                            *Counsel for Cenlar FSB and CitiMortgage, Inc.*

5025132v.2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

               Plaintiff,

      v.

CENLAR FSB; CITIMORTGAGE, INC.,

               Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

5025132v.2

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION..................................................................................1

II. FACTUAL BACKGROUND.................................................................1

III. ARGUMENT.......................................................................................2

    A. Legal Standard.........................................................................2

    B. Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred..............3

    C. Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA...4

    D. Plaintiff Fails To State A Claim For Breach of Contract..................5

    E. Plaintiff Fails To State A Claim For Breach of Fiduciary Duty.......7

    F. Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage ...8

        1. Plaintiff Fails To State A Claim For Common Law Conversion.....8

        2. Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC...9

    G. Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector........10

    H. Plaintiff Fails To State A Claim For Aiding And Abetting............11

    I. Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile .................12

IV. CONCLUSION ................................................................................13

i

5025132v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. Ocwen Federal Bank,*
    523 U.S. 410, 118 S.Ct. 1408 (1998) ......................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................................2

*Dougherty v. North Hempstead Bd. of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002) ....................................................................................12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
    837 F.Supp.2d 162 (2d Cir. 2011) ..........................................................................7

*Fed. Deposit Ins, Corp. v. Wilson,*
    11-CV-0065, 2013 WL 1236864 (E.D. N.Y. Mar. 26, 2013) ..................................11

*Hourani v. Wells Fargo Bank, N.A.,*
    158 F.Supp.3d 142 (E.D. N.Y. Feb. 1, 2016) ..........................................................8

*Kapsis v. Am. Home Mortg. Servicing Inc.,*
    923 F.Supp.2d 430 (E.D. N.Y. Feb. 14, 2013) ........................................................6

*Prezzi v. Schelter,*
    469 F.2d 691 (2d Cir. 1972) ....................................................................................3

*Qurashi v. Ocwen Loan Servicing, LLC,*
    *760 Fed.Appx. 66 (2d Cir. 2019)* ..........................................................................10

*RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC,*
    156 Fed.Appx. 349 (2d Cir. 2005) ..........................................................................6

*Roth v. CitiMortgage, Inc.,*
    756 F.3d 178 (2d Dept. 2014) ................................................................................10

*Shoemaker v. State of Cal.,*
    101 F.3d 108 (2d Cir. 1996) ....................................................................................3

*Thyroff v. Nationwide Mut. Ins. Co.,*
    360 Fed.Appx. 179 (2d Cir. 2010) ..........................................................................8

*Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.,*
    87 N.Y.2d 36, 660 N.E.2d 1121 (1995) ..................................................................8

5025132v.2

## Statutes

15 U.S.C. § 1635(a) ........................................................................................................3, 4, 12

15 U.S.C. § 1635(f) ............................................................................................................3, 4

15 U.S.C. § 1640 ...................................................................................................................4

15 U.S.C. § 1641(g) ...........................................................................................................4, 5

FDCPA........................................................................................................................1, 10, 11

NY UCC § 3-201(3)...........................................................................................................9, 11

NY UCC § 3-204(2)............................................................................................................9, 11

NY UCC § 3-419 ....................................................................................................................9

TILA .................................................................................................................................1, 3

UCC .....................................................................................................................8, 9, 10

## Other Authorities

12 C.F.R. § 1026.39 ...............................................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................................1, 2, 12, 13

Federal Rules of Civil Procedure Rule 8 ....................................................................................3

5025132v.2

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law in support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.    **INTRODUCTION**

In response to Cenlar's motion to dismiss his complaint, Plaintiff sought and was granted leave to amend his complaint. However, the complaint as amended does not resolve any of the issues Cenlar raised in its first motion to dismiss and dismissal remains appropriate. Plaintiff reasserts her cause of action to rescind his mortgage loan pursuant to the Truth in Lending Act ("TILA"), but does so nearly fourteen years too late. Plaintiff alleges that the defendants are guilty of breach of contract, but fail to allege the existence of a contract between the parties. Plaintiff alleges that defendants "converted" a security agreement by not returning it upon demand, but demonstrates by his own complaint that he made no such demand. Plaintiff alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), but fails to allege that either Cenlar or CitiMortgage are debt collectors. Indeed, he affirmatively proves the contrary by the allegations in his own complaint. Accordingly, Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## II.    **FACTUAL BACKGROUND**

On or about November 7, 2002, Plaintiff entered into a Consolidation Extension and Modification Agreement ("CEMA") with Citibank, N.A. (the "Loan"), which created a single lien in the amount of $157,500.00 on the property known as 20 Spruce Road, Amityville, New York 11701-1019 (the "Property"). *See* First Amended Compl. ("Compl."), Ex. B. Plaintiff signed a Truth in Lending Disclosure Statement at the time he signed the CEMA on November 7, 2002. *See* Compl., Ex. L.

5025132v.2

Effective April 1, 2019, Cenlar began subservicing the Loan on behalf of CitiMortgage. *See* Compl., Ex. F. A little more than three months after this service transfer, Plaintiff fell two months behind on his monthly payments on the Loan, with payments for both June 2019 and July 2019 due as of July 12, 2019. *See* Compl., Ex. A.

Plaintiff claims to have rescinded the Loan pursuant to TILA by correspondence dated October 21, 2019. *See* Compl., Ex. C. Notably, this was nearly twelve years after Plaintiff entered into the CEMA and signed the Truth in Lending Disclosure Statement. Likewise, Plaintiff makes no claim that he returned the proceeds from the Loan or transferred title to the Property to the holder of the CEMA.

For the reasons set forth below, Plaintiff's Complaint fails to state a claim and should be dismissed with prejudice.

## III.   **ARGUMENT**

### A.   **Legal Standard.**

A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim if it does not contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Further, a complaint must contain more than unsupported legal conclusions. *See id.* at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

"[A] complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (internal citations and quotations omitted).

2

5025132v.2

A pro se plaintiff is typically afforded liberal pleading standards, however a pro se plaintiff must still comply with Rule 8 in order to survive a motion to dismiss. *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996).

Here, Plaintiff is unable to plead the elements of the three claims he asserts against Defendants, and Plaintiff's Complaint should therefore be dismissed with prejudice.

**B.      Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.**

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago. Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature. Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement. Plaintiff's claim is not supported by either the facts as he alleges them or the law.

15 U.S.C. § 1635(a) provides that,

> in the case of any consumer credit transaction…in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Bureau, of his intention to do so.

The time to rescind is governed by 15 U.S.C. § 1635(f), which states, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, *notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor…*" (emphasis added). *See also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998). Generally, a cause of action pursuant to TILA seeking

3

5025132v.2

damages must be brought "within one year from the date of the occurrence of the violation…" 15 U.S.C. § 1640.

In commencing this action, Plaintiff alleges that the Loan at issue originated on November 7, 2002. *See* Compl. ¶ 9. Further, Plaintiff himself annexes a copy of the Truth in Lending Disclosure Statement bearing his signature and dated November 7, 2002 to his First Amended Complaint. *See* Compl., Ex. L. Thus, Plaintiff had until November 10, 2002 to rescind the Loan and did not do so. By Plaintiff's inclusion of this signed disclosure form, he defeats his own claim for rescission as well as for damages for the failure to provide the disclosure. Assuming *in arguendo* that Plaintiff did not receive the Truth in Lending Disclosure Statement – which is inconceivable in light of Plaintiff's signature and his decision to annex the document to his First Amended Complaint – Plaintiff still had until November 6, 2005 to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely. Similarly, Plaintiff's cause of action for damages would have accrued on November 7, 2002, when he was entitled to said disclosures and would be time-barred on November 6, 2003, pursuant to 15 U.S.C. § 1640. Accordingly, Plaintiff's claims under TILA should be dismissed.

### C.   Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.

Plaintiff alleges that Cenlar and CitiMortgage violated 15 U.S.C § 1641(g) of TILA when both allegedly failed to inform him of the transfer of the Loan to Federal National Mortgage Association ("FNMA"). However, both section 1641(g) of TILA and its corresponding regulatory section demonstrate that neither Cenlar nor CitiMortgage are guilty of any such violation.

15 U.S.C. 1641(g)(1) provides that, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, *the creditor that is the*

4

5025132v.2

*new owner or assignee* of the debt shall notify the borrower in writing of such transfer..."
(emphasis added).

Further, the related regulatory provision of TILA, 12 C.F.R. § 1026.39(a)(1), defines a
"covered person" having such a disclosure obligation as any person "that becomes the *owner* of
an existing mortgage loan by acquiring legal title to the debt obligation, whether through a
purchase, assignment or other transfer..." (emphasis added). 12 C.F.R. § 1026.39(b) goes on to
specify that any such covered person is required to provide a disclosure regarding the transfer of
the mortgage loan.

Plaintiff's own complaint demonstrates that 15 U.S.C. § 1641(g) is not applicable to either
Cenlar or CitiMortgage. Plaintiff asserts that CitiMortgage and Cenlar violated 15 U.S.C §
1641(g) when both allegedly failed to disclose that the Loan was transferred to FNMA. *See* Compl.
¶ 16. However, the statute on which Plaintiff relies places the onus not upon Defendants but rather
upon "the creditor that is the new owner or assignee..." 15 U.S.C. § 1641(g)(1). Similarly, 12
C.F.R. § 1026.39(a)(1) places the requirement on the *transferee* of the mortgage loan. Taking
Plaintiff's allegation as true for the purposes of this motion, FNMA – not Cenlar or CitiMortgage
– would be the creditor and/or transferee under 15 U.S.C. § 1641(g)(1) and thus the "covered
person" under 12 C.F.R. § 1026.39(a)(1). *See* Compl. ¶ 10.

Therefore, Plaintiff fails to state a claim pursuant to TILA against either Cenlar or
CitiMortgage under 15 U.S.C. § 1641(g) where Plaintiff's own complaint establishes neither were
the owner or assignee of the Loan or "covered persons" as contemplated under the regulation.

### D.  Plaintiff Fails To State A Claim For Breach of Contract.

Plaintiff alleges that Cenlar and CitiMortgage have breached their contract with Plaintiff.
However, Plaintiff himself demonstrates that there is no actual contract between the parties to this
action. In the absence of this very first element, Plaintiff fails to state a claim for breach of contract.

5025132v.2

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 156 Fed.Appx. 349, 350 (2d Cir. 2005). Generally speaking, a loan servicer cannot be held liable for breach of contract in the absence of an independent contract with the plaintiff unless there is an allegation of an agency relationship. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 451 (E.D. N.Y. Feb. 14, 2013) (breach of contract action dismissed against loan servicer in the absence of an independent contractual relationship or an alleged agency relationship with a party in privity).

Plaintiff fails to set forth the existence of a contract as between CitiMortgage and/or Cenlar and himself. The "contract" Plaintiff points to is the note and mortgage between Plaintiff and Citibank, N.A. *See* Compl. ¶ 62. Plaintiff does not allege either Cenlar or CitiMortgage are parties to this contract and a review of the agreements fail to show any privity. Further, while Plaintiff alleges that, "[a]s evident by the indorsement on the Note, Citibank, N.A. materially changed the contract when it added CitiMortgage and Cenlar as a party's (sic)" (*Id.* at ¶ 68), a review of the indorsements fail to support such a claim. Neither note included in the complaint are indorsed in favor of either Cenlar or CitiMortgage. In the absence of an independent contractual relationship between Plaintiff and Cenlar and/or CitiMortgage and the allegation of any agency relationship, Plaintiff fails to state a claim for breach of contract.

Notwithstanding Defendants' lack of privity to the contract at issue, Plaintiff does not even allege a breach on Defendant's part. Plaintiff alleges, "Citibank N.A. breached the contract when they negligently altered the contract by means of an unauthorized signature which resulted in the sale of Plaintiff (sic) mortgage obligation. Citibank N.A. did not get Plaintiff's authorization to

6

5025132v.2

sale (sic) Plaintiff's collateral or associated debt obligation." Compl. ¶ 65. Plaintiff's claims are clearly targeted at Citibank, N.A., which he readily admits is a "non party (sic) to this action". *See* Compl. ¶ 9. Plaintiff does not otherwise allege how Cenlar and/or CitiMortgage would be liable for actions which it alleges Citibank N.A. undertook. Therefore, Plaintiff fails to sufficiently allege that it was Defendants which breached the terms of the note or mortgage.

Finally, even if Cenlar and/or CitiMortgage were subject to claims that Plaintiff makes solely against Citibank, N.A., Plaintiff still does not establish a breach. As noted, Plaintiff claims that Citibank, N.A. indorsed and negotiated the note without his prior consent. *See* Compl. ¶ 65. However, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, indorsement and negotiation of the note without Plaintiff's prior consent was contemplated and agreed to by the parties to the mortgage. Plaintiff fails to establish the existence of a breach of the note or mortgage.

### E.     Plaintiff Fails To State A Claim For Breach of Fiduciary Duty.

Interwoven in his claim for breach of contract, Plaintiff alleges that Cenlar and CitiMortgage breached their respective fiduciary duties to Plaintiff. However, Plaintiff fails to demonstrate the existence of a contractual relationship amongst the parties and any other sort of relationship which could give rise to a fiduciary obligation. In the absence of any such relationship, there cannot be a breach of a fiduciary duty.

"To state a claim for breach of fiduciary duties under New York law, a plaintiff must establish: '(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 191 (2d Cir. 2011). Further, "[u]nder New York law, 'absent specific contractual language or circumstances

7

5025132v.2

to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor.'" *Hourani v. Wells Fargo Bank, N.A.*, 158 F.Supp.3d 142, 148 (E.D. N.Y. Feb. 1, 2016).

As noted above, Plaintiff relies upon the note and mortgage as the basis for his contractual claim. *See* Compl. ¶ 62. Neither Cenlar nor CitiMortgage are parties to either the note or mortgage. *See* Compl., Ex. B. Plaintiff does not allege any other relationship between Cenlar, CitiMortage and himself which would give rise to a fiduciary relationship. Accordingly, in the absence of a fiduciary relationship, there can be no claim for a breach of a fiduciary duty.

F. **Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage.**

Tied to his factually and legally incorrect claim that he rescinded the Loan, Plaintiff claims that Cenlar and CitiMortgage converted "the security instrument" by failing to return it upon demand. However, the very evidence Plaintiff includes in his complaint demonstrates (1) he did not rescind the Loan, (2) he did not demand return of a security instrument and (3) that the indorsement of a promissory note pursuant to the UCC does not amount to conversion.

1. **Plaintiff Fails To State A Claim For Common Law Conversion.**

Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *See Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.*, 87 N.Y.2d 36, 660 N.E.2d 1121 (1995). Generally speaking, conversion does not occur until the defendant has refused to return property after demand or until he sooner disposes of it. *See Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed.Appx. 179, 180 (2d Cir. 2010).

By the First Amended Complaint, Plaintiff alleges that, "Cenlar's failure to return the security instrument on demand resulted in an act of conversion." Compl. ¶ 38. Plaintiff claims

8

5025132v.2

that the demand occurred by virtue of the October 21, 2019 letter. *See* Compl. ¶ 41. Notably, this correspondence is the basis for Plaintiff's claim of rescission pursuant to TILA, which Defendants have already demonstrated to be ineffective. Thus, Plaintiff had no authority to "demand" return of the security instrument to begin with. Notwithstanding, a review of the October 21, 2019 correspondence fails to reveal any explicit demand for the return of a security instrument. *See* Compl. Ex. C. In the absence of a demand, Plaintiff fails to state a claim for conversion.

### 2. Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC.

Pertinent to this action, NY UCC § 3-419(1)(b) – (1)(c) provides, "[a]n instrument is converted when…any person to whom it is delivered for payment refuses on demand either to pay or to return it; or it is paid on a forged indorsement."

Though it was not terribly clear in his original complaint, nor is it any clearer in his amended complaint, Plaintiff seemingly alleges that CitiBank, N.A. committed "forgery" when it endorsed the November 7, 2002 promissory note in blank. *See* Compl. ¶¶ 23 – 24, Ex. F. This claim fails as a matter of law. NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank. Plaintiff himself admits that the payee of the November 7, 2002 note was CitiBank, N.A., a fact clear on the face of the promissory note itself. *See* Compl. ¶ 9, Ex. F. Thus, CitiBank, N.A. was free to indorse the promissory note in blank pursuant to the UCC. Further, Plaintiff does not allege that CitiBank, N.A. did not authorize the indorsement. Instead, Plaintiff alleges the indorsement is a forgery because Plaintiff's did not authorize CitiBank N.A. to indorse the promissory note. *See* Compl. ¶ 50. However, the UCC contains no requirement for a payor of an instrument to agree to negotiation. Plaintiff fails to state a claim of conversion under the UCC for forgery.

9

5025132v.2

Plaintiff's claim of failure to return an instrument upon demand fairs no better. Plaintiff claims that Cenlar failed to return "the security instrument" on demand, which resulted in conversion. *See* Compl. ¶ 38. Plaintiff claims that the return was demanded by way of his Notice of Rescission. *See* Compl., Ex. C. However, reviewing the Notice of Rescission in a light most favorable to Plaintiff, it only demands the "return of any money or property that has been given to anyone in connection with the transaction…" *Id.* Setting aside the utterly vague nature of this demand, there is no clear demand made for any negotiable instrument as contemplated under the UCC. Notably, the security instrument (in the case the mortgage) is not a negotiable instrument under the UCC. Regardless, in the absence of any such demand, Plaintiff's conversion claim pursuant to the UCC fails against both Cenlar and CitiMortgage.

### G.    <u>Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector.</u>

Plaintiff's claim under the FDCPA, which is asserted solely as against Cenlar, fails because Plaintiff does not allege that Cenlar is a debt collector as defined by the FDCPA.

A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66, 68 (2d Cir. 2019) ("A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status."). Moreover, a complaint that "does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default…fails to plausibly allege that [the servicer] qualifies as a debt collector under FDCPA." *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 183 (2d Dept. 2014).

Plaintiff's Complaint identifies Cenlar as the sub-servicer of Plaintiff's loan. *See* Compl. ¶ 21. Plaintiff makes no claim that either CitiMortgage or Cenlar began servicing the debt after it fell into default. In fact, Plaintiff does not claim that the loan is in default. Further, Plaintiff

10

5025132v.2

includes correspondence to the First Amended Complaint establishing that Cenlar began sub-servicing the loan effective April 1, 2019[1] (*See* Compl., Ex. F), a payment history confirming the loan was current at that time (*See* Compl., Ex. G) and correspondence supporting that it wasn't until after Cenlar began subservicing that Plaintiff fell behind (*See* Compl., Ex. A). Accordingly, Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed.

### H. Plaintiff Fails To State A Claim For Aiding And Abetting.

Plaintiff claims that Cenlar and CitiMortgage aided and abetted in the fraudulent indorsement of the note. Plaintiff does not claim that the indorsement of the note was obtained fraudulently or that the signature was forged, but instead that the indorsement of the note itself is a fraudulent act and that Cenlar and CitiMortgage aided and abetted in it. Plaintiff is incorrect.

"The elements of a claim for aiding and abetting fraud are, 'the existence of a fraud, defendant's knowledge of the fraud, and that the defendant providing substantial assistance to advance the fraud's commission.'" *Fed. Deposit Ins, Corp. v. Wilson*, 11-CV-0065, 2013 WL 1236864 *5 (E.D. N.Y. Mar. 26, 2013).

Plaintiff seemingly alleges that the indorsement of a note in this Loan amounts to fraud. *See* Compl. ¶¶ 119 – 120. However, as noted above, NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank. Further, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security

---

[1] __While Plaintiff claims that this notice indicated that Cenlar was collecting its own debt (*See* Compl. ¶ 111), in fact the notice specifically states that Cenlar has entered into an agreement with CitiMortgage "to perform various functions" and that the servicing of the loan is transferring to Cenlar. *See* Compl., Ex F.

5025132v.2

Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, beyond the statutory authority to negotiate the note, Plaintiff explicitly assented to a sale of the obligation and agreed that he need not be consulted. CitiBank, N.A. exercising this contractual right cannot be viewed as fraudulent.

Thus, where the indorsement and negotiation of the note is not itself fraudulent, there can be no cause of action against either Cenlar or CitiMortgage for aiding and abetting.

I. **Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile.**

Plaintiff should not be permitted to amend the Complaint a second time because the deficiencies in Plaintiff's Complaint cannot be remedied by an amendment. This is evident because Plaintiff was already granted one amendment and asserted a complaint containing the exact same deficiencies as before.

Plaintiff's attempt to rescind the Loan was almost seventeen years after origination and was not coupled with any return of the loan proceeds. No amendment could ever change that reality. *See* 15 U.S.C. § 1635(a). Further, each of the remaining causes of action relate to an alleged rescission which was significantly untimely. A proposed amended complaint that would not withstand a Rule 12(b)(6) motion to dismiss would be considered futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Therefore, the Court should dismiss the Complaint with prejudice against Defendant.

12

-PA 174-

IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.


Dated:    June 17, 2021                    STRADLEY RONON STEVENS & YOUNG, LLP
          New York, NY                     A Pennsylvania Limited Liability Company


                                    By:    /s/ Lijue T. Philip
                                           Lijue T. Philip
                                           100 Park Avenue, Suite 2000
                                           New York, New York  10017
                                           Telephone:  (212) 812-4124
                                           Facsimile:  (646) 682-7180
                                           LPhilip@stradley.com


                                           *Counsel for Cenlar FSB & CitiMortgage, Inc.*

5025132v.2

-PA 175-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                 Plaintiff,

       v.

CENLAR FSB; CITIMORTGAGE, INC.,

                 Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

### ORDER

AND NOW, on this _____ day of _____, 2021, upon consideration of the Motion of Defendants, Cenlar FSB and CitiMortgage, Inc., to dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Brief in support thereof, any response thereto, and any argument thereon, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED.

It is further ORDERED that the Complaint in this action is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

Honorable Joan M. Azrack

5025132v.2

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on June 17, 2021, I caused the foregoing document to be served on

the below by First Class Mail:

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

*s/ Lijue T Philip*_____
Lijue T. Philip

5025132v.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Roger Rowe

      Plaintiff(s)

   -v-

Cenlar FSB

      Defendant(s)

2:19-cv-07278-JMA-AYS

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

1

I. BACKGROUND      1

II. LEGAL STANDARD      2

III. TILA DISCLOSURE VIOLATION      4

     1.    RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION      4

     2.    RIGHTS TO RESCISSION      8

     3.    NOTICE OF MORTGAGE TRANSFER      9

     4.    REQUIREMENTS FOR CERTAIN MORTGAGE      10

     5.    PARTIAL INTEREST      11

IV. DAMAGES RELATED TO TILA VIOLATIONS      17

V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION      23

VI. FDCPA VIOLATION      24

CONLUSION      25

2

## Cases

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ......................................................... 2

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ........................................ 2

Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002) ...... 25

Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991) ...... 9

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ...................................... 3

Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012) ......................... 17

Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014) ........ 17

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) ................................................... 3

Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015 ............ 9

Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996) ................... 5

Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) ................... 8

Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co.

    2/4/10) (Driscoll, J.) ............................................................................................... 3

Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010) ...... 11

Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006) ...... 3

Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) ...... 24

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) ...... 24

Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc) ............ 4

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986) ...................................... 3

Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979) ............................. 4

3

Williams v. Public Finance Corp. 598 F.2d 349 (1979)                                    17

**Statutes**

§ 1602(h)                                                                               7, 18

§ 1635                                                                                   passim

§ 1635(a)                                                                               1, 4

§ 1639                                                                                   passim

§ 1640(a)(2)(iv)                                                                        23

§ 1640(e)                                                                               4

§ 1641                                                                                   passim

§ 1641(a)                                                                               7, 10

§ 1641(g)(1)                                                                            1, 9

§1635(b)                                                                                9

12 U.S. § 504                                                                           2

12 U.S. § 505                                                                           2

15 U.S.C. § 1601(a)                                                                     3

15 U.S.C. § 1602(f)                                                                     18

15 U.S.C. § 1602(g)                                                                     15

15 U.S.C. § 1611                                                                        3

15 U.S.C. § 1635                                                                        passim

15 U.S.C. § 1639(a)(1)(B)                                                               18

15 U.S.C. § 1640                                                                        4, 8

4

15 U.S.C. § 1640(a)(2)(A)(iv)     4

15 U.S.C. § 1692     2

15 U.S.C. § 1692e     25

15 USC Chapter 41 Subchapter I Part B     5

1692e(10)     25

1692e(14)     25

1692e(2)(A)     25

Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005)     6

Fed R Civ 12(b) (6)     2

Fed. R. Civ. P. 8(a)     2

NY GBS § 349     2

UCC § 3-301     15

## Regulations

12 C.F.R. § 1026     1

12 CFR Part § 1026.2(a)(25)(6)     16

12 CFR Part 1026     7, 8, 10, 11

12 CFR Part 1026.2     8

12 CFR Part 1026.39     7, 10, 11

12 U.S.C. § 2605(i)(2)     15

12 U.S.C. § 2605(i)(3)     15

# I. BACKGROUND

Plaintiff Roger Rowe filed a three-count Complaint (Doc. No. 2) against defendant, Cenlar FSB in this District Court. Plaintiff allege that he executed a real estate mortgage with nonparty Citibank, on November 7, 2002, and that Federal National Mortgage Administration (FNMA) was the current owner of the first mortgage lien and that as of April 1, 2019 Cenlar FSB was assigned, transferred or sold security interest in Plaintiff's mortgage(s). Plaintiff further alleges that Cenlar failed to provide adequate disclosures and the disclosures provided are generally misleading, incomplete, inaccurate and ambiguous. Plaintiff claimed that Defendant failed to provide a notice of mortgage transfer as required by the Truth in Lending Act, 15 U.S.C. (TILA).

As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer,"

The Plaintiff also alleges that Defendant failed to rescind the loan pursuant to 15 U.S.C. § 1635. Under 15 U.S.C. § 1635 the Plaintiff has the right to rescind a consumer credit transaction and void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). § 1635(a) requires a creditor to disclose clearly and conspicuously an obligor's right to rescind. Defendant

1

failed to provide the request disclosures and or the disclosures provided were incomplete, inaccurate and ambiguous.

Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349. Plaintiff alleges that the Defendant made statements when they claimed $107,239.00 was owed to various credit reporting agencies (CRA). Plaintiff's own payment history shows a principal balance of zero as of March 30, 2019 see (Exhibit G). Plaintiff also alleges that Defendant inaccurately stated the character, status and amount of the debt obligation. The actions noted were willful, deceptive and a violation of NY GBS § 349.

Defendants also violated BNK 6-l when the lender exceeded one or more of the thresholds as defined in paragraph (g) of this subdivision. Defendants violated BNK 6-l(m) Financing of points and fees.   In making a high-cost home loan, a lender shall not, directly or indirectly, finance any points and fees as defined in paragraph (f) of subdivision one of this section, in an amount that exceeds three percent of the principal amount of the loan. As well as BNK 6-l(q)  No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Fed R Civ 12(b) (6) motion to dismiss does not need detailed factual allegations, a

2

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.". Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss.". When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When a plaintiff is pro se, the Court must apply a liberal reading to the complaint and hold pro se litigants to a less stringent pleading standard. Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006) (a "pro se complaint should be construed liberally in favor of the pleader). Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co. 2/4/10) (Driscoll, J.) (answer stating that defendant "does not waive any right to challenge jurisdiction . . . at any point during this proceeding even upon final determination" is "precisely the sort of drafting leniency the law permits for a pro se litigant"). Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ( pro se pleadings "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

3

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986) (complaint not to be dismissed unless "frivolous on its face or wholly unsubstantial").

### III. TILA DISCLOSURE VIOLATION

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1611 (criminal liability), 1640(a)1 (civil liability).

TILA's remedial scheme was designed to deter and prevent disclosure violations by creditors. See Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979). Rather than relying solely on government enforcement efforts, Congress deliberately provided consumers that right to privately enforce TILA's disclosure requirements. Thus, for example, TILA entitles consumers to collect statutory damage awards, even when they suffered no actual damages. Under TILA a consumer has more protection against deceptive creditors than is provided by non statutory law.

### 1.    RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION

TILA's extended right of rescission also encourages consumers to police lender conduct. Rescission is uniquely important and central to TILA's deterrent scheme because it serves a function not replicated by other TILA remedies.

Recovery of actual damages under TILA generally requires proof of detrimental reliance, a difficult showing for consumers to establish see, e.g., Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc). Although statutory damages are available without proof of reliance, TILA caps statutory damages awards to only $4,000 for credit transactions secured by a

4

consumer's home—a relatively low amount that limits consumer incentives to enforce TILA. See 15 U.S.C. § 1640(a)(2)(A)(iv).

TILA requires damage claims be brought within 3 year of a creditor's violation of any provisions under § 1635 and subsection (f) or (g) of § 1641. TILA also allows an obligor to bring an action before the end of the 3 years period for violations of section § 1639., see § 1640(e). In this instance Defendant violated § 1635(a) when they failed to provide notice of the April 1, 2019 credit transaction. As such Plaintiff brought this action when Defendant failed to return money and property following Plaintiffs October 21, 2019 notice of rescission.

§ 1635(a) gives an obligor the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the information and rescission forms required under 15 USC Chapter 41 Subchapter I Part B. The Defendant failed to clearly and conspicuously disclose Plaintiff's right to rescission which extends Plaintiff right to rescind until Defendant provide clear and conspicuous disclosures or the 3 year statute expiration.

Defendant obtained interest in Plaintiff's loan on April 1, 2019 as evidenced in the joint Notice of Servicing Transfer (see Exhibit F). The Defendant failed to provide Plaintiff with notice of his right to rescission. The Plaintiff failure to provide rescission forms extended Plaintiff's right to rescind until Defendant provides appropriate disclosure forms or 3 years after consummation. As such Plaintiff right to rescission is not time barred. The Defendant obtained the debt obligation on April 1, 2019 which gives Plaintiff until April 1, 2022 to commence an action against Defendant. Rescission is particularly important as a means for deterring TILA violations. Because many mortgage loans are sold on the secondary market or securitized, effectively absolving the loans from consumer damages claims. TILA attempts to inform the consumer of a

5

transfer of their mortgage loan or any security interest in said loan. TILA is structured to hold Assignees liable for original creditor's violations that are apparent on the face of loan disclosure statements.

Indeed, one of the very purposes of securitization is to insulate parties from responsibility for the liability producing conduct of the original lender by taking advantage of assignee liability limitations. See, e.g., Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996). Congress specified, however, that consumers may exercise TILA rescission rights "against any assignee," 15 U.S.C. § 1641(c), thus ensuring that rescission would remain as a deterrent even if a mortgage loan is sold or securitized. The potential for rescission also gives the secondary mortgage market strong incentives to police loan originators to prevent threshold TILA violations.

The accessibility of TILA's rescission remedy to consumers was enacted to make rescission a private, out of court process and give the consumer the power to incentivize due diligence on the part of lenders. See, e.g., Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005). In the course of this consumer credit transaction, Defendant's CitiMortgage and Cenlar committed among other violations; violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed the effects of rescission.

e. Clearly and conspicuously disclosed the date the rescission period expired.

6

The Truth in Lending Act provides rescission as a remedy for obligors subject to lender loan disclosure violations. Under 15 U.S.C. §1635(a), the right is available until midnight of the third day after closing or after delivery of the lending documents and rescission forms required under TILA; at the latest, the right expires after three years. Unlike common law rescission, where tender is required, the obligor need only notify the creditor of rescission and it is automatically effectuated under TILA.

The Defendant's contention that Plaintiff's TILA claim is somehow "Time - Barred" is a misrepresentation of the law. On April 1, 2019 the Defendant was part of a credit sale relative to Plaintiffs mortgage. § 1602(h) refers to credit sales as any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

As the new creditor the Defendant was required to provide various disclosures to the person who is obligated on the consumer credit transaction see § 1639(a)(1)(B). The disclosure were to have conspicuous type size noting the following. "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

The disclosure provided by Defendant's as Exhibit 1 is immaterial due to the fact that said credit transaction is not related to the subject matter of this litigation. Defendants claim that the Notice of Servicing Transfer somehow provided sufficient notice is patently false. It is apparent

7

on the face of the Notice of Servicing Transfer that it fails to meet the requirements of a Notice of Mortgage Transfer pursuant to § 1641(g) and 12 CFR Part 1026.39. Under § 1641(a) a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

In this instance it is apparent on the face of the Notice of Servicing Transfer that the notice is incomplete, inaccurate and ambiguous. The notice fails to provide information related to § 1641(g)(D) the location of the place where transfer of ownership of the debt is recorded. The disclosure does not include § 1639(a)(1)(B) language stating "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

## 2.    RIGHTS TO RESCISSION

Under TILA, a borrower has two remedies for a loan disclosure violation: civil damages and rescission. 15 U.S.C. § 1640, 1635. With regard to rescission, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)). Here, Plaintiffs seek rescission and damages for the Defendants failure to provide adequate disclosure.

(Regulation Z) 12 CFR Part 1026.2 Definitions and Rules of Construction 2(a)(11)(2)-

8

Rescission rules. For purposes of rescission under §§ 1026.15 and 1026.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction. An ownership interest does not include, for example, leaseholds or inchoate rights, such as dower.

In Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015 Justice Scalia opinion noted that "Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice."

As such Plaintiff is only required to provide written notice of rescission to exercise his right to rescind. The Defendants failure to return money given and reflect the termination of any security interest in Plaintiff's home is a direct violation of §1635(b). As such the Plaintiff is entitled to rescission and statutory damages as proscribed under TILA.

## 3.    NOTICE OF MORTGAGE TRANSFER

Defendant's contention that their March 15, 2019 Notice of Service Transfer satisfied their notice provisions required under 15 U.S.C. § 1641(g)(1) is incorrect. The provisions under 15 U.S.C. § 1641(g)(1) relates to the transfer or assignment of mortgage not the transfer of servicing.

9

15 U.S.C. § 1641(g)(1) states that a creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Even if the court were to consider the notice of service transfer as a combined disclosure permitted under 12 CFR Part 1026.39(b)(1), said disclosure would be inadequate, incomplete, misleading and ambiguous therefore the Notice of Service Transfer is inadequate and would be in violation of 15 U.S.C. § 1641(a). The statute requires a violation to be apparent on the face of a disclosure statement includes but not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter. Here the Notice of Servicing Transfer is incomplete and therefore a violation of 15 U.S.C. § 1641(a).

4.    **REQUIREMENTS FOR CERTAIN MORTGAGE**

Based on 15 U.S.C. § 1641 and (Regulation Z) 12 CFR Part 1026 the Defendant failed to provide adequate notice of mortgage transfer with disclosure relative to a rescission notice which requires a general statement "Your home is the security for the new transaction". Pursuant to 15 U.S.C. § 1639(a)(1)(B), a creditor shall provide a statement in conspicuous type size that they can lose their home. Furthermore Cenlar failed to provide information as to where transfer of ownership of the debt to the covered person is or may be recorded in public records, or,

10

alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided.

(Regulation Z) 12 CFR Part 1026.39 requires disclosures of mortgage transfer when a covered person obtains ownership of an existing mortgage. Paragraph 39(a)(1) of 12 CFR Part 1026.39 defines a covered person as Covered persons.-The disclosure requirements of this section apply to any "covered person" that becomes the legal owner of an existing mortgage loan, whether through a purchase, or other transfer or assignment, regardless of whether the person also meets the definition of a "creditor" in Regulation Z. The fact that a person purchases or acquires mortgage loans and provides the disclosures under this section does not by itself make that person a "creditor" as defined in the regulation.

## 5.     PARTIAL INTEREST

Transfer or assignment to servicer other than for administrative convenience. A loan servicer could be liable under TILA where borrowers sufficiently alleged that servicer was also owner of obligation at issue under 15 USCS § 1641(f)(1). Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010).

In this instance Cenlar became a covered person when they obtained partial interest in Plaintiff's loan. Paragraph 39(a)(2)(i) of 12 CFR Part 1026.39 defines a covered person to include a person whom obtained Partial interest. A person may become a covered person by acquiring a partial interest in the mortgage loan. If the original creditor transfers a partial interest in the loan to one or more persons, all such transferees are covered persons under this section.

Pursuant to Paragraph 39(c)(3)(1) of 12 CFR Part 1026.39 the acquisition of partial interest of a loan and the change in agent or party authorized to receive notice and resolve issues

11

concerning the consumer's payments is a covered person and requires the new creditor to provide a disclosure. Paragraph 39(c)(3)(1) Acquisition of partial interests states. This exception applies if the covered person acquires only a partial interest in the loan, and there is no change in the agent or person authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments. If, as a result of the transfer of a partial interest in the loan, a different agent or party is authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, the disclosures under this section must be provided.

The examples indicated under Paragraph 39(c)(3)(2)(iii) confirms Cenlars status as a covered person which required Cenlar to provide a mortgage transfer disclosure as well as the requisite notice of rescission with a conspicuous type size indicating "You could lose your home". The example given in Paragraph 39(c)(3)(2)(iii) provides examples that state "The original creditor transfers fifty percent of its interest in the loan to covered person A and also authorizes party X as its agent to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. Since there is a change in an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, person A is required to provide the disclosures under this section. Person A then transfers all of its interest in the loan to covered person B. Person B is not required to provide the disclosures under this section if the original creditor retains a partial interest in the loan and party X retains the same authority.

Based on the information provided in Defendant July 12, 2019 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan. Paragraph 39(c)(1)(2) Transfer of partial interests indicates that "A covered person that subsequently transfers a partial interest in the loan is required to provide

12

the disclosures required by this section if the covered person retains a partial interest in the loan on the 30th calendar day after it acquired the loan, unless an exception in § 1026.39(c) applies. For example, if covered person A acquires the loan on March 15 and subsequently transfers fifty percent of its interest in the loan to covered person B on April 1, person A is required to provide the disclosures under this section if it retains a partial interest in the loan on April 14. Person B in this example must also provide the disclosures required under this section unless an exception in § 1026.39(c) applies. Either person A or person B could provide the disclosure on behalf of both of them if the disclosure satisfies the timing and content requirements applicable to each of them. In this example, a single disclosure for both covered persons would have to be provided on or before April 14 to satisfy the timing requirements for person A's acquisition of the loan on March 15. See comment 39(b)(4)-1 regarding a single disclosure for multiple transfers". Based on Defendant's statement, CitiMortgage is a covered person and is also required to provide a notice of mortgage transfer and relevant disclosures.

It is clear from the face of the "Notice of Servicing Transfer" that the original creditor nor the new creditor disclosed where transfer of ownership of the debt to a covered person (new servicer) is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in the public records at the time the disclosure is provided as required by 15 U.S.C. § 1641(g)(D). The disclosure was also required to have in conspicuous type "You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan" see 15 U.S.C. § 1639(a)(1)(B).

The Defendant is a new creditor and a covered person as described under 15 U.S.C. § 1602 Definitions and rules of construction and 12 CFR Part § 1026.39 Mortgage transfer disclosures

13

respectively. A "covered person" means any person, as defined in § 1026.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation. In this instance the Defendant became a covered person when they acquired security interest in Defendants mortgage.

Pursuant to § 1026.39(c)(3) a covered person is not required to provide a disclosure if the covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest. Here the party authorized to resolve issues concerning the payments of the loan changed which required notification of Defendants acquisition of the debt obligation related to Plaintiff's mortgage see Exhibit F joint correspondence from previous creditor and Defendant. Paragraph 6 of the correspondence clearly indicates a change in party authorized to resolve issues and other details concerning the loan. However the disclosure failed to identify the location of the place where transfer of ownership of the debt is recorded or include conspicuous type size stating "You could lose your home, and any money you have put into it, if you do not meet your obligation under the loan".

The Notice of Servicing Transfer further confirms a transfer of ownership of the debt obligation from one servicer to another servicer. The term servicer is defined as the person

14

responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The key term here is " including the person who makes or holds a loan if such person also services the loan" In this instance the loan was transferred from a servicer who was also the holder of the debt obligation to a servicer who currently holds the debt obligation. Defendants partial ownership is evident by the change in loan number, name of payee and address of payee. Furthermore UCC § 3-301 Rights of a Holder indicates "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name." In this instance the Defendant is not only servicing the loan as described in 12 U.S.C. § 2605(i)(3) but is also the servicer 12 U.S.C. § 2605(i)(2) and is enforcing payment in his own name.

The Defendant is also a creditor as defined under 15 U.S.C. § 1602(g) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a

15

finance charge is or may be required, and the Bureau shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. The term "creditor" includes a private educational lender (as that term is defined in section 1650 of this title) for purposes of this subchapter.

Nevertheless 12 CFR Part § 1026.2(a)(25)(6) Security Interest, Specificity of disclosure. A creditor need not separately disclose multiple security interests that it may hold in the same collateral. The creditor need only disclose that the transaction is secured by the collateral, even when security interests from prior transactions remain of record and a new security interest is taken in connection with the transaction. In disclosing the fact that the transaction is secured by the collateral, the creditor also need not disclose how the security interest arose. For example, in a closed-end credit transaction, a rescission notice need not specifically state that a new security interest is "acquired" or an existing security interest is "retained" in the transaction. The acquisition or retention of a security interest in the consumer's principal dwelling instead may be disclosed in a rescission notice with a general statement such as the following: "Your home is the security for the new transaction." Here the previous creditor was required to disclose "Your home is the security for the new transaction". The failure of such disclosure is apparent on the face of the Notice of Servicing Transfer and therefore Defendants violated TILA in relation to the April 1, 2019 credit transaction.

It is clear from the statutory language that Congress intended for mortgage loans sold or

16

otherwise transferred or assigned to a third party to be held liable as "creditors" for their violations of 15 U.S.C. § 1641(g). See Fowler v. U.S. Bank, F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014); Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012) (finding "Congress broadened the definition of 'creditor' in [TILA] through the passage of § 1641(g)" to include new owners or assignees of debt; even if trustee for securitized loans not liable as owner of debt, still liable as assignee).

BNK 6-l violation provided Plaintiff with a rescission type effect. BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

BNK 6-l provides that "Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded".

As such both Defendant should be penalized for violation New York banking laws. The law provides that each Defendants is responsible for their own violation. As such both Defendants are subject to statutory damages required plus the return of all monies paid. Defendant is also subject to actual damages in excess of amount paid, statutory damages and punitive damages.

## IV. DAMAGES RELATED TO TILA VIOLATIONS

The purpose of making creditors civilly liable is to force disclosure of various transactions and afford borrowers more control over their credit and the terms related to those credit

17

transactions. The purpose of affording a borrower the right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics. See Williams v. Public Finance Corp. 598 F.2d 349 (1979). In addition to damages, TILA also grants consumers rescission rights when they enter into credit transactions that pledge their "principal dwelling" as security.

15 U.S.C. § 1635(a). Creditors are responsible for "clearly and conspicuously" disclosing a consumer's right to rescind and for providing "appropriate [rescission] forms" to the consumer. In this instance the Defendant is a creditor who grants credit to the Plaintiff see 15 U.S.C. § 1602(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. Defendant Cenlar obtained legal title of Plaintiff's debt obligation as of April 1, 2019 as evidence by information provided in the Notice of Servicing Transfer. Pursuant to 15 U.S.C. § 1639(a)(1) the creditor shall provide disclosure in a conspicuous type with the verbiage noted in 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.". Here neither creditor CitiMortgage (transferer) nor the New creditor Cenlar (transferee) provide such verbiage in its disclosure of the credit transfer (credit sale). 15 U.S.C. § 1602(h) defines "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the

18

-PA 200-

property upon full compliance with his obligations under the contract. As such both the original and new creditor was required to disclose the transfer of mortgage. The face of the disclosure clearly shows that the creditors both old and new failed to conspicuously disclose the obligors right to rescind or inform obligor that pursuant to 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

TILA allows for a creditor whom commits a single violation of the Act to be penalizing twice for violating two separate laws. Secondly, the statute allows for multiple remedies. § 1640(g) and § 1639(g) are mutually exclusive remedies in traditional common law and contract law. Congress did not imply that the Section 1640 remedy should defer to a related remedy in the same Act for the same violation, Congress instead inferred that additional relief can be sought under a different title. As such Plaintiff is entitled to damages even if it relates to the violation of two separate laws.

As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants is liable to Plaintiff for:

a. Rescission of this transaction. Pursuant to 15 U.S.C. § 1635(a) the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. Here the Defendant failed to provide the requisite disclosures. The March 15, 2019 Notice of Servicing Transfer does not include the required disclosure and or notice of right to rescind. By statute Plaintiff has up to three year after the date of the April 1, 2019 consummation

19

of the debt obligation sale of Plaintiff's mortgage as such Plaintiff is entitled to rescind said transaction until April 1, 2022 if appropriate disclosures were never provided.

b. Termination of any security interest in Plaintiff's property created under the transaction. Pursuant to 15 U.S.C. § 1635(b) when an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. The statutory requirement of TILA provides that a consumer can exercise his rights to rescind the contract without first tendering the consideration that he received. Nevertheless even if the court were to require proof of obligors ability to tender payment to creditor open satisfaction of creditors obligation the obligor would easily be in a position to pay the creditor $157,000.00 from the $244,115.08 principle and interest paid to prior creditor which is due from the new creditor.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction. Pursuant to 15 U.S.C. § 1635(b) Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. As such Defendant is required to return approximately $244,115.08 paid against a $349,115.08 principle and interest loan with a balance of $105,000.00 remaining.

20

d. Statutory damages of $4,000 for each creditor relative to rescission disclosure violation § 1635. As a creditor Defendant failed to provide the requisite disclosure notice relative to the obligors right to rescind. The Defendant is also responsible for prior creditors violation evident on the face of the disclosure. In this instance the disclosure was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore entitled to a statutory award of $8,000.00 in damages.

e. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(f). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. The Defendant is also responsible for prior creditors violations evident on the face of the disclosure. In this instance the disclosure provided by the prior and new creditor was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore is entitled to a statutory award of $8,000.00 in damages.

f. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(g). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. Pursuant to § 1641(g) not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer. The Defendant failed to provide the location of the place where transfer of ownership of the debt is recorded. The Defendant is liable for statutory damages of $4,000.00 for said failure.

g. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's October 21, 2019 rescission notice and Plaintiff's November 11, 2019 follow up rescission notice pursuant to § 1641(g). Defendant is also liable for statutory damages for failure to rescind transaction pursuant to § 1641(c) which states that any consumer who has the right to rescind a transaction

21

under section 1635 of this title may rescind the transaction as against any assignee of the obligation. That fact that the Defendant failed to provide notice of the transfer of the debt obligation with in the 30 day period allotted under § 1641(g) triggers Plaintiff's right to rescind the April 1, 2019 credit sale.

h. Forfeiture of return of loan proceeds pursuant to § 1635(b). Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The creditors failure to perform its obligation renders the return of the property impracticable and therefore forfeiture of obligors tender is appropriate.

i. Actual damages (court fees and other cost of action)in an amount to be determined at trial cost of action § 1640 Civil Liability, § 1635, § 1641(f) and § 1641(g).

> New action court cost $400.00
>
> Paper and office supplies $850.00
>
> Hours spent preparing complaint and motion 320 hr @ $200 = $64,000.00
>
> Lost revenue could not work on construction projects 320 hr @ $200 = $64,000.00

j. Double the finance charge $374,008.68 § 1640(a)(2)(i). in the case of an individual action twice the amount of any finance charge in connection with the transaction (see Exhibit L finance charge).

22

k. Statutory damage in the amount of $4,000.00 pursuant to § 1640(a)(2)(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000.

l. All finances charges and fees paid by the consumer. Pursuant to § 1640(a)(4) in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material. The sum of all finance charges is approximately $142,822.32.

m. Award such other further relief as the Court deems just and proper.

### V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION

BNK 6-l and BNK 6-m mirrors TILA violations. Pursuant to BNK 6-l "any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following actual damages, including consequential and incidental damages; and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded; except that this element of statutory damages shall not be awarded for violations of:"

BNK 6-m(13) provides a Defense to foreclosure. In any action by a lender or assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert as a defense, any violation of this section.

Damages for said violation are covered in BNK 6-m(9), (10) and (11) where a consumer is entitled to damages BNK 6-m(9) Damages. Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower of a subprime home loan for

23

actual damages. BNK 6-m(10) Attorneys fees. A court may also award reasonable attorneys' fees to a prevailing borrower in a foreclosure action. BNK 6-m(11) Equitable relief. A borrower may be granted injunctive, declaratory and such other equitable relief as the court deems appropriate in an action to enforce compliance with this section.

As such Plaintiff is entitled to damages for violations related to BNK 6-l(m) and (q) as well as Defendant's violation of BNK 6-m(e) and (l).

## VI. FDCPA VIOLATION

Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here the Plaintiff is a consumer and the Defendant Cenlar is acting in its own capacity as well as acting on behalf of FNMA and is attempting to collect a debt in a name other than its own as such violating 15 U.S.C. § 1692e.

24

The Defendant falsely represented itself in this action giving the appearance of a third person collecting a debt, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Creditors who collect their own debts may see that definition and stop reading. Big mistake – because Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

## CONLUSION

For the reasons cited in this Memorandum and in the attached Affidavit of Roger Rowe, I ask the court to dismiss Defendant's motion with prejudice and grant Plaintiff summary judgment pursuant to Fed. R. 56(e)(4) and Fed. R. 56(f)(1).

The Defendant failed to properly support their affirmative defense that Plaintiff was in default of his loan. Defendant cannot be in default of a loan in which Defendant Citibank promised the subsequent holder the he (Citibank) would pay if Plaintiff failed to pay.

25

Defendant provided no evidence in admissible form to support his claim that Plaintiff is in default. The Defendant failed to provide affidavits from someone with personal knowledge. Moreover in order to support a motion for summary judgment the Defendant was required to submit a statement of undisputed fact. This court has long held that failure to submit a statement of undisputed facts as prescribed under Local Rule 56.1 is grounds for dismissal. Moreover, Defendant failed to provide notice to pro se litigant as prescribed under Local Rule 56.2.

This court has consistently ruled that a party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S., 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1).  In this instance the moving party

As such Plaintiff respectively ask this court to grant Plaintiff's claim in its entirety.


July 26, 2021


Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com


26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

The Honorable Joan M. Azrack

Case No. 2:19-cv-07278-JMA-AYS

|  |  |
|---|---|
| Roger Rowe | |
| Plaintiff(s) | STATEMENT OF MATERIAL FACTS |
| -v- | Pursuant to Local Civil Rule 56.1 |
| Cenlar FSB | |
| Defendant(s) | |

1.      On November 7, 2002 Plaintiff entered into a $157,500.00 credit transaction with Citibank,.N.A a non-party to this action (**see Exhibit B**).

2.      On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original  Citibank, N.A  loan was currently owned by Federal National Mortgage Administration (FNMA) a non-party to this action located at MidTown Center 1100 15th Street NW Washington, DC 20005) (**see Exhibit A**).

3.      As part of this consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home (see Exhibit A page 19)[1].

4.      The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

---

[1] The indorsements on the face of the November 7, 2002 contract identifies the parties with privity to enforce said contract. In contract law, privity is a doctrine that imposes rights and obligations to parties of a contract and restricts non-contractual parties from enforcing the contract.

1

5.      On or about July 12, 2019 Plaintiff was notified that Defendant CitiMortgage transferred servicing to Cenlar and that Cenlar was the New Servicer (see Exhibit F page 2).

6.      As defined by 12 CFR Part 1024(Regulation X) a "Servicer" means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). As evidenced on the face of the "NOTICE OF SERVICING TRANSFER" CitiMortgage transferred both the servicing rights the rights as a holder.

7.      As prescribed under UCC § 3-301 "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name". Here Cenlar is a holder of the instrument and is accepting payment in his own name (**see Exhibit F page 5**).

8.      Defendant's Cenlar FSB and CitiMortgage failed disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C. 1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

9.      Defendant's failed to respond properly to Plaintiff's notice of rescission (**see Exhibit C**).

10.      In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion (**see ECF Doc. 11**).

11.      Cenlar failed to provide a separate statement of undisputed facts as required under Local Rule 56.1 which is grounds for dismissal of their summary judgment motion.

2

12.     Cenlar failed to provide Notice to Pro Se Litigant as required under Local Rule 56.2 which is grounds for dismissal of their summary judgment motion.

13.     Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge.

14.     Defendant Cenlar's claim that Plaintiff defaulted under the terms of the Loan on or about June 1, 2019 [sic] (**see ECF Doc. 11-2 page 2**) is inadmissible hearsay and is not supported by affidavit made on personal knowledge.

15.     Moreover BNK 6-l(11) states that "Upon a judicial finding that a high-cost home loan violates any provision of this section, whether such violation is raised as an affirmative claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall be available as a defense without time limitation". Here Plaintiff's asserts an affirmative claim and defenses against Defendants for violations of BNK 6-l.

16.     Furthermore, in any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan. Here Plaintiff asserts his defenses to payment as it relates to Defendant's violation of BNK 6-l.

17.     Plaintiff now submits this amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment includes objections to Defendant Cenlar's contention that Plaintiff is in default as well as the inclusion of Defendant CitiMortgage.

3

18.     Plaintiff includes CitiMortgage in this action based on the Notice of Servicing Transfer and the transfer of the rights to collect the debt to the new servicer Cenlar. Based on the joint notice provided by Defendants CitiMortgage and Cenlar. CitiMortgage is the assignee of the mortgage who in turn transferred the mortgage to Cenlar. Evidence of the assignment can be seen in the CitiMortgage indorsement (**see Exhibit F page 7& 10**) as evidenced by the CitiMortgage conditional and qualified indorsement in blank and evidence of the transfer to Cenlar is noted in the Notice of Servicing Transfer (**see Exhibit F page 2**).

19.     The November 7, 2002 credit transaction between Plaintiff and Citibank involved the refinancing of a high-cost mortgage. The face of the October 23, 1989 Note shows a 10.625% interest rate (**see Exhibit B page 8**). As such the consolidated loan is considered a high-cost loan.

20.     A "High-cost home loan" means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of BNK 6-l. As noted in BNK 6-l(g)(i) "For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeded eight percentage points over the yield on the treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. In this instance the delta between the first lien interest rate of 10.625 and the December 16, 2002 treasury yield of 1.5 is 9.125 (**see Exhibit K page 6**). As such the loan exceeded the 8% threshold.

21.     The total points and fees also exceed five percent of the total loan amount of a loan fifty thousand dollars or more. The November 7, 2002 contract consolidated the balance

4

on the first lien of $37,606.56 and the second lien of $119,893.44 for a total of $157,500.00 (**see Exhibit B page 17**).

22. As indicated on the face of the "Anticipated Settlement" dated September 16, 2002 (**see Exhibit N**). Plaintiff paid 33.266% in closing cost. Pursuant to BNK 6-l(2)(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender. Here the lender refinanced his own high-cost home loan which was held by its affiliate CitiMortgage (**see Exhibit H**).

23. As such the Defendant's are liable to Plaintiff for actual damages, including consequential, incidental damages and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded (see BNK 6-l(7). As such Plaintiff is entitled to rescission.

24. Nevertheless, the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to Citibank, N.A. exclusively and said pleaded document was apparently used to secure these receivables in this transaction as well.

25. Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. and CitiMortgage ("the indorser") is negligent as it relates to altering and producing an unauthorized signature (see Exhibit F page 7 & 10).

5

26.     Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

27.     Not only was CitiMortgage negligent as it relates to the production of an unauthorized signature. Both CitiMortgage and Citibank N.A. altered the instrument when it made material changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As defined by UCC 1-201 an "Unauthorized signature means a signature made without actual, implied, or apparent authority. The term includes a forgery" as such Defendant CitiMortgage forged Plaintiff's signature discharging Plaintiff from any liability.

28.     Moreover UCC 3-802 states that "Unless otherwise agreed where an instrument is taken for an underlying obligation the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor".

29.     In this instance the indorser is a bank and the instrument has no recourse on it as evidenced by the words "without recourse" (**see Exhibit F page 7 & 10**).

30.     As such Plaintiff is not in default and was in fact discharged form his obligation when the holder CitiMortgage intentionally cancelled the instrument by indorsing the instrument with the words "without recourse".

6

31.     As a third party answerable to Plaintiff if he is sued under Article 3 Citibank NA and CitiRetail Services LLC is placed on notice as prescribed under UCC 3-803 and must come and defend Plaintiff.

32.     As indicated in Defendant's disclosure statement (see ECF Doc. 21) Citibank, NA and Citi Retail Services LLC holds ownership in CitiMortgage and is liable for their actions. Moreover, the fact that Citibank charged Plaintiff closing cost on a refinance in which a lender and it affiliates are holder is a clear violation of BNK 6-l(q) and as such is liable to damages under BNK 6-l.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

7

-PA 215-

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Roger Rowe

        Plaintiff(s)

    -v-

Cenlar FSB

        Defendant(s)

2:19-cv-07278-JMA-AYS

## AFFIRMATION/DECLARATION
## OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule 56 of the Federal Rules of Civil Procedure.

### RESPONSE TO FACTUAL BACKGROUND

1. On November 7, 2002, Plaintiff entered a Consolidated Extension and Modification Agreement ("CEMA") with Citibank NA a non-party to this action.

2. On April 19, 2019 Plaintiff was informed that a third Defendant Cenlar was transferred servicing and was now the "New Servicer" of Plaintiff's loan.

3. On October 21, 2019 Plaintiff sent Defendant's his notice of rights to rescission (see Exhibit C). Defendant's contention that Plaintiff claim is based on a nearly twelve-year CEMA transaction is a clear misunderstanding of the statutes. Plaintiff's rescission notice is based on the April 1, 2019 transaction in which Cenlar transferred the rights of a holder (see Exhibit F).

4. Pursuant to 15 USC 1641(g) "In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer". In this instance Defendant's failed to provide said notice

1

with in the time period prescribed. Although the law allows the notice of servicing to be combined with the notice of mortgage transfer. The Notice of Service Transfer was insufficient to provide Plaintiff notice as to the location of the place where transfer of ownership of the debt is recorded.

5.   In addition to Defendant's failure to provide adequate notice any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage. Here Defendant Cenlar is a new creditor (see Exhibit D[1]) who is subject to all claims and defenses related to purchase or assignment of a mortgage referred to in section 1602(aa).

6.   Furthermore, this mortgage is also subject to BNK 6-l which prohibits the lender form financing any point and fee in excess of 3% (see BNK 6-l(m). The Lender is also prohibited from refinancing its' own high-cost loan with a new high-cost loan (see BNK 6-l(q).

## ARGUMENTS

### A.  Legal Standing

7.   The Defendant is attempting to submit an improper pre-answer motion. Defendant asserts an affirmative claim which he states Plaintiff is in default (see ECF Doc. 11-2 page 2). However by the offering an affirmative defense Defendant actually affirms the existence of a cause of action.

### B.  Plaintiff claim is not time barred

8.    Defendant's contention that Plaintiff's claims are time barred is belied by the evidence in front this court. As prescribed under UCC 3-606(1)(b) The holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiably impairs any

---

[1] Cenlar reported to the Credit Reporting Agencies that he was the New Creditor.

collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

9.  In this instance Plaintiff give his collateral to Citibank for the benefit of the November 7, 2002 contract. CitiMortgage was never authorized to transfer title. As indicated on the face of the first lien note, Citibank transferred its rights to Federal Home Loan Mortgage Corporation ("FNMA") On December 13, 1989. However, FNMA never transferred the instrument back to Citibank or CitiMortgage.

10.  As such CitiMortgage indorsement in blank show that the indorsement is not in the chain of title and there by provides notice of it accommodation character (see UCC 3-415(4)). As an accommodation party Plaintiff is not responsible to the accommodated party and if you pays the instrument has recourse against the instrument (see UCC 3-415(5)).

11. Nevertheless. Plaintiff is not time barred under TILA or BNK 6-l as it related to bringing an action against an assigner, assignee, transferer or transferee.

**C.  Plaintiff Stated Claim Against CitiMortgage & Cenlar**

12. Defendant's misunderstands the post commencement disclosure requirements under 15 USC 1641(g). Plaintiff is not alleging that Defendants were required to disclose the transfer of the loan to FNMA. Plaintiff claim specifically refers to The April 1, 2019 credit transaction. As a new creditor Cenlar was required to disclose the assignment of mortgage (security interest) from CitiMortgage.

13. Moreover, Defendants claim that Plaintiff failed to state claim pursuant to TILA against Cenlar or CitiMortgage under 15 U.S.C. § 1641(g) where "Plaintiff's own complaint establishes neither were owner or assigner of the Loan or "covered persons" as contemplated under the regulations. [sic] page 5 of Defendants memorandum of law. Is utterly inconsistent with the fact

3

presented. The signature on the face of the note confirms CitiMortgage indorsement as an assigner of the note. The transfer on April 1, 2019 confirms CitiMortgage transfer to Cenlar. As such Plaintiff claims correctly identifies CitiMortgage as the assigner and Cenlar purchaser/transferee.

### D. Plaintiff Properly States Breach of Contract Claim

14. Defendant once again is attempting to misrepresent the statues or character of the November 7, 2002 contract (between Plaintiff and Citibank) with subsequent contracts between Citibank its affiliates and third parties.

15. The fact that Defendants asserted rights as a third-party beneficiary confirms Defendant's belief of the existence of a valid contract. Under New York law, a party asserting rights as a third-party beneficiary must establish that "(1) a valid and binding contract existed, (2) the contract was intended for the plaintiff's benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the contracting parties intended to compensate the plaintiff."

16. For Defendant to claim "that there is no actual contract between the parties to this action" [sic] page 5 Defendants Memorandum of law, shows utter disdain to the court and the rule of law. Defendant not only presents himself as a third-party beneficiary with rights to enforce Plaintiff's loan (see Exhibit F), Defendant also asserts that Plaintiff is in default of a contract in which he has the right to enforce.

17. Here there is no question of (1) the existence of the November 7, 2002 contract. (2) the contract was not intended for the benefit of the Defendants (3) the benefit is incidental. As such Plaintiff as a holder of an incidental security instrument Defendant owes Plaintiff a duty of care and by law is required to return the instrument on demand (see UCC 3-419(1)(a), (b)).

### E. Plaintiff Stated Breach of Fiduciary Duty Claim

4

18.  As a holder of the instrument Defendants owed Plaintiff a duty of care as prescribed under UCC 9-207(a) "Duty of care when secured party in possession.   Except as otherwise provided in subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession. In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed".

19. In this instance Defendant's failed to preserve Plaintiff's rights as a prior party to the November 7, 2002 contract. As evidenced by CitiMortgage blank indorsement, CitiMortgage promised to pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3-115 on incomplete instruments.

20. Here the conditional and qualified indorsement precludes the presumption that the transferee is the owner. Pursuant to UCC 3-201(3) "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner".

21. As such the conditional and qualified indorsement is insufficient proof as to who is the actual owner of the note.

**F.  Plaintiff Stated Conversion Claim**

22. Plaintiff appropriately stated his conversion claim. Defendants claim that Plaintiff did not rescind the loan conflates the issue of the November 7, 2002 credit transaction and the April 1, 2019 credit transaction.

23. Plaintiff is not seeking to rescind the November 7, 2002 credit transaction. The subject of this action is the April 1, 2019 credit transaction. Proof of Plaintiff's right to rescind the April 1,

5

2019 credit transaction is codified under USC 1641(g). As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," Defendant failed to provide such notice after acquiring a security interest in Plaintiff's loan.

24. In addition to Defendant's violations of TILA, Defendants also violated BNK 6-l which provides the same effects as rescission[2]. BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

25. Here Defendant's clearly violated state and federal predatory lending laws and as such is responsible for actual, statutory and punitive damages.

### G. Defendant Cenlar is a Debt Collector

26. As indicated in Plaintiff's amended complaint (see ¶ 110 of amended complaint) Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

---

[2] Rescission rights under TILA is not the same as traditional rescission, under TILA the plaintiff is not require the return funds which then triggers rescission rights. Under TILA the action is punitive to prevent the banks from unscrupulous behavior and as such the bank is required to first return what it received from the consumer.

6

27. Here Cenlar is clearly a creditor and identifies himself as a creditor (see Exhibit D Plaintiff's credit report). Defendant Cenlar reported to the credit agency that they are in fact the creditor of the subject mortgage account. As such Defendant Cenlar is in violation of FDCPA.

**H. Plaintiff Stated Claim for Aiding and Abetting**

28. Defendant properly stated the elements of an aiding and abetting claim (see Defendants Memorandum of law page 11). Here Defendants counsel has actual knowledge of the existence of a fraud. The face of the note clearly states "without recourse" preclude the presumption that the holder is the owner. For Counsel to make such a false claim without evidence or an affidavit from a person with knowledge provides assistance to advance a fraud.

29. Ignorance is no excuse to the law and the negligence of an attorney to understand the law does not exempt him from an aiding and abetting cause of action.

**I. Plaintiff Should Be Permitted to Amend His Complaint**

30. Defendant's contention that "Plaintiff should not be allowed to amend the Complaint a second time because the deficiencies in the Plaintiff's Complaint cannot be remedied by amendment" [sic] page 12 of memorandum of law, is contrary to the rule of law and is an attempt to deprive Plaintiff of due process.

31. Plaintiff provided evidence of (1) the existence of a contract, (2) Plaintiff's performance, (3) Defendant's breach, (4) Defendant's violation of TILA, BNK and UCC. As such the only remaining issue is Defendant's liability. It is preposterous for Defendant's to claim an affirmative defenses while stating that no cause of action exist. If no cause of action exist Defendant should not be claiming that I am in default or that I owe them money.

<u>**CONCLUSION**</u>

7

32. As such I ask the court to dismiss Defendant's Rule 12(6) motion and grant all Plaintiff's claims. Not only is Defendants motion an improper pre-answer motion, Defendants and their counsel continues to mislead this court as to the status and character of the note and the Defendants ability to enforce the instrument as a third-party beneficiary.

33. Furthermore, Defendant's predatory activities should not go unpunished. Defendant assigned and transferred Plaintiff's loan for their own benefit and charged excessive fees in the process. As such this court should penalize Defendants to the maximum extent of the law.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

8

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

      v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

5164351v.1

## TABLE OF CONTENTS

I.      ARGUMENT ...................................................................................................1

        A.      Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred...............1

        B.      Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under
                TILA .....................................................................................................2

        C.      Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector ...........3

        D.      Plaintiff Has Abandoned The Remainder Of His Claims ...............................4

        E.      Plaintiff Cannot Amend His Complaint Through His Opposition...................5

II.     CONCLUSION .............................................................................................6

i

5164351v.1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Lynch,*
  16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016) ....................................3

*Beach v. Ocwen Federal Bank,*
  523 U.S. 410, 118 S.Ct. 1408 (1998) ..................................................................1

*Dins v. Nationstar Mortg., LLC,*
  16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017)....................................2

*Dougherty v. North Hempstead Bd. of Zoning Appeals,*
  282 F.3d 83 (2d Cir. 2002) ................................................................................6

*Jain v. McGraw-Hill Cos., Inc.,*
  827 F. Supp. 2d 272 (S.D.N.Y. 2011) ...............................................................4

*Lipton v. Cty. of Orange, N.Y.,*
  315 F.Supp.2d 434 (S.D.N.Y. 2004) .................................................................4

*Qurashi v. Ocwen Loan Servicing, LLC,*
  *760 Fed.Appx. 66 (2d Cir. 2019)* .....................................................................3

*Rogers v. Hines,*
  No. 16-cv-457, 2016 WL 7378988 (D. Conn. 2016) ..........................................5

*Tyus v. Newton,*
  13–cv–1486, 2015 WL 1471643 (D. Conn. 2015) .............................................5

*Wright v. Ernst & Young LLP,*
  152 F.3d 169 (2d Cir. 1998)..............................................................................5

**Statutes**

15 U.S.C. § 1635.....................................................................................................1, 2

15 U.S.C. § 1641.....................................................................................................2, 3

FDCPA.................................................................................................................3, 4, 6

New York Banking Law § 6-l.......................................................................................5

TILA .........................................................................................................................1

5164351v.1

**Other Authorities**

12 C.F.R. § 1026.39(a)(1).............................................................................................................3

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 3, 6

Fed. R. Civ. P. 56.......................................................................................................................1

-PA 227-

5164351v.1

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law[1] in further support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.    **ARGUMENT**

### A.    **Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.**

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago. Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature. Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement. Plaintiff's claim is not supported by either the facts as he alleges them or the law.

In moving for dismissal of Plaintiff's claim of rescission pursuant to TILA, Defendants noted that the Loan at issue originated on November 7, 2002, that Plaintiff himself annexed a copy of the signed TILA Disclosure Statement to his First Amended Complaint, and that at best, Plaintiff had three years from origination to rescind the Loan pursuant to TILA. *See* 15 U.S.C. § 1635(f); *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998). Thus, Plaintiff's claimed rescission in October of 2019 was at least *fourteen years* too late. Plaintiff responds by ignoring the actual language of 15 U.S.C. § 1635(a) and makes the illogical claim that the sub-servicing of the Loan by Cenlar on behalf of CitiMortgage somehow amounted to a "consumer

---

[1] In support of his opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff submitted a Statement of Material Facts pursuant to Local Civil Rule 56.1. However, the Eastern District of New York's Local Civil Rule 56.1 requires that a statement of material facts be submitted upon a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Neither Defendants nor Plaintiff have moved for summary judgment. In fact, Defendants have not submitted an answer to the First Amended Complaint, as the instant motion is made pre-answer. As a statement of material facts is not required for the instant motion, Defendants will not be responding to the one submitted by Plaintiff.

credit transaction" as defined by TILA and so Plaintiff's time to rescind the Loan began anew seventeen years after the Loan was originated.

*Dins v. Nationstar Mortg., LLC*, 16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017) is instructive. In that case, the plaintiff took out a mortgage loan in June of 2006. The mortgage was assigned to the defendant in 2011 and the plaintiff was not notified. The mortgage was further assigned in 2015 and the plaintiff again was not notified. The plaintiff commenced an action in 2016 alleging, *inter alia*, that he was entitled to rescind the mortgage loan because he was not otherwise informed of these transfers. The defendant moved to dismiss the complaint. *Id.* at *1. In addressing his request for rescission, the District Court rejected the plaintiff's theory and held, "TILA contains a three-year statute of limitations for rescission claims. 15 U.S.C. § 1635(f)…Dins alleges that the loan transaction occurred on or about June 30, 2006…The right of rescission therefore expired on or about June 30, 2009. Plaintiff filed this lawsuit in 2016, over six years after the right of rescission expired. Accordingly, Dins's rescission claim is dismissed." *Id.* at *6.

Plainly put, Plaintiff is mistaken as to the accrual of his time to seek rescission pursuant to TILA. The consumer credit transaction at issue here occurred on November 7, 2002, when the subject Loan was originated. *See* Compl. ¶ 9. Setting aside the fact that Plaintiff himself annexed a copy of the TILA Disclosure Statement bearing his signature to the First Amended Complaint, Plaintiff had until November 6, 2005 *at the latest* to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely and Plaintiff's demand for rescission must be dismissed with prejudice.

### B.    **Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.**

Defendants moved to dismiss Plaintiff's causes of action under 15 U.S.C § 1641(g) as that section of TILA is applicable to the creditor of a debt, not the servicer. *See* 15 U.S.C. § 1641(g)(1);

2

12 C.F.R. § 1026.39(a)(1). In response to this, Plaintiff alleges that Cenlar obtained a "partial interest" in the Loan. However, the sole document Plaintiff uses in support of this position actually refutes Plaintiff's point[2].

Plaintiff alleges that, "[b]ased on the information provided in Defendant (sic) July 12, 2009 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan." Memorandum of Law in Opposition, p. 12. However, the July 12, 2019 response could not be clearer: "The Loan was originated by CitiBank, N.A. dba CitiMortgage Inc. and is currently owned by Federal National Mortgage Administration (FNMA)...CitiMortgage, Inc....is the servicer of the Loan. Cenlar FSB subservices the loan on behalf of CitiMortgage, Inc., effective April 1, 2019." Comp. Ex. A. Plaintiff relies on this document for his position that Cenlar obtained a "partial interest" in the Loan. In fact, this document is clear that the only owner of the Loan is FNMA.

Defendants are not creditors or covered person as contemplated under TILA and are not subject to the requirements of 15 U.S.C. § 1641. Accordingly, the corresponding allegations in Plaintiff's complaint must be dismissed with prejudice.

**C.**     **Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector.**

Defendants moved to dismiss Plaintiff's cause of action pursuant to the FDCPA, which is asserted solely as against Cenlar, because Cenlar is not a debt collector as defined by the FDCPA. Particularly, Cenlar began servicing the debt before it fell into default and so is not considered a debt collector as a matter of law. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66,

---

[2] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may rely upon documents which have been attached to the complaint as exhibits. *See Abraham v. Lynch*, 16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016).

3

5164351v.1

68 (2d Cir. 2019). Plaintiff's own Complaint includes a Notice of Servicing Transfer demonstrating that Cenlar began servicing the loan effective April 1, 2019 (*See* Compl., Ex. F) and a payment history demonstrating the Loan was current at that time (*See* Compl., Ex. G.). Cenlar is not a debt collector under the FDCPA.

Plaintiff does not address this claim at all, but instead states that Cenlar is not collecting a debt on behalf of FNMA, but on its own behalf. Plaintiff proceeds upon the very same mistaken premise as his TILA claim: Plaintiff alleges that Cenlar is the owner of his Loan. However, the documents which Plaintiff himself attaches to his Complaint demonstrate FNMA, not Cenlar, is the owner of the Loan and Cenlar merely subservices the Loan on behalf of CitiMortgage. Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed with prejudice.

### D. Plaintiff Has Abandoned The Remainder Of His Claims.

Defendants moved to dismiss seven claims asserted in Plaintiff's First Amended Complaint: (1) Rescission pursuant to TILA; (2) Damages pursuant to TILA; (3) Breach of Contract; (4) Breach of Fiduciary Duty; (5) Conversion; (6) Violation of the FDCPA; and (7) Aiding and Abetting Fraud. In opposing Defendant's motion, Plaintiff only addresses the claims related to TILA and the FDCPA. Plaintiff has effectively abandoned the remainder of his First Amended Complaint.

It is well-settled that a court may deem a claim abandoned based on a plaintiff's failure to respond to an argument raised by a defendant in a dispositive motion. *See Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (holding that the plaintiff abandoned six claims when her brief failed to respond to the defendants' arguments on those claims); *Lipton v. Cty. of Orange, N.Y.*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("[A court] may, and generally

4

5164351v.1

will, deem a claim abandoned when a plaintiff fails to respond to a defendant's argument that the claim should be dismissed.").

Plaintiff does not argue that his causes of action for Breach of Contract, Breach of Fiduciary Duty, Conversion, and Aiding and Abetting Fraud should survive Defendants' motion to dismiss. As such, these causes of action should be dismissed with prejudice.

### E.     Plaintiff Cannot Amend His Complaint Through His Opposition.

In opposing Defendant's motion, Plaintiff asserts for the first time that an unspecified defendant violated New York Banking Law §§ 6-l and/or 6-m. *See* Memorandum in Opposition pp. 23 – 24. Such a claim is not asserted anywhere in Plaintiff's First Amended Complaint and cannot be asserted now.

Plaintiff cannot inject new factual allegations or legal theories into the case through an opposition to a motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff cannot amended a complaint to add new factual allegations in opposition to a motion to dismiss); *Rogers v. Hines*, No. 16-cv-457, 2016 WL 7378988, at *4 (D. Conn. 2016) ("As this distinction was not included in the amended complaint and the plaintiff cannot amend his complaint through a memorandum, the defendants' motion to dismiss is granted...."); *Tyus v. Newton*, 13–cv–1486, 2015 WL 1471643, at *5 (D. Conn. 2015) ("The plaintiff may not ... amend the amended complaint in a memorandum in opposition to a motion to dismiss"). The Court should therefore disregard these new legal theories entirely.

Setting aside the fact that Plaintiff cannot simply assert these claims, Plaintiff does not in fact allege a violation of either Banking Law §§ 6-l or 6-m. Instead, Plaintiff claims that the unspecified violation entitles him to damages pursuant to the Banking Law. Even if Plaintiff could assert a claim in opposition, which he cannot, Plaintiff does not actually do so. These allegations should be disregarded.

5164351v.1

For the very same reason, Plaintiff should not be permitted to amend his complaint a second time. Defendants have demonstrated that Plaintiff's TILA claim is time-barred and otherwise misdirected at Defendants and that Plaintiff cannot demonstrate that Defendants are debt collectors for the purposes of the FDCPA. These issues formed the basis for Cenlar's first motion to dismiss and Plaintiff did not resolve them in his first amendment, nor could he. Thus, any further amendment should be denied as futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

## II.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.

Dated:   August 11, 2021
New York, NY

STRADLEY RONON STEVENS & YOUNG, LLP
A Pennsylvania Limited Liability Company

By:   /s/ *Lijue T. Philip*
Lijue T. Philip
100 Park Avenue, Suite 2000
New York, New York 10017
Telephone: (212) 812-4124
Facsimile: (646) 682-7180
LPhilip@stradley.com

*Counsel for Cenlar FSB & CitiMortgage, Inc.*

6

5164351v.1

## CERTIFICATE OF SERVICE

I, hereby certify that on August 11, 2021, I caused the foregoing document to be be served

on the below by First Class Mail.

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

_s/ Lijue T Philip_
Lijue T. Philip

5164351v.1