# 22-1870

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Roger Rowe

Plaintiff-Appellant

- v -

Cenlar FSB, CitiMortgage, Inc

Defendant(s)-Appellee(s)

On Appeal from the United States District Court
for the Eastern District of New York
District Court Case No. 2:19-cv-7278-JMA-AYS
From a Contract Action Related to a Consumer Credit Transaction

Special Appendix
Appendix Vol II
Page 235 to 451

Roger Rowe, Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

# Table of Contents

Docket List Oct 11, 2022........................................................................ 1

First Amended Complaint Doc 19........................................................ 3

Exhibit A Cenlar Letter dated July 12, 2019...................................... 49

Exhibit B First Second Mortgage 119k, 134k.................................... 52

Exhibit C Notice of Rescission October 21, 2019.............................. 75

Exhibit D Credit Report........................................................................ 82

Exhibit E Cenlar Payoff Statement...................................................... 102

Exhibit F Notice of Service Transfer & Note Indorsement................. 107

Exhibit G Cenlar Loan History Report............................................... 118

Exhibit H Loan Servicing Disclosure.................................................. 134

Exhibit I QWR June 27, 2019............................................................. 136

Exhibit J Cenlar response to QWR August 2, 2019........................... 138

Exhibit K Daily Treasury Yield Rates................................................. 142

Exhibit L Loan Disclosure................................................................... 149

Exhibit M Settlement Cost................................................................... 151

Exhibit N Estimate Closing Cost......................................................... 153

Corporate Disclosure Doc 21............................................................... 156

Motion to Dismiss Doc 24.................................................................... 158

Opposition to Motion to Dismiss.......................................................... 178

Plaintiff Statement of Material Fact..................................................... 209

Plaintiff Affirmation in Opposition of Motion to Dismiss.................... 216

Memorandum of Law in further Support of Motion............................. 224

Memorandum & Order Dec 22, 2021 Doc 25...................................... 235

Judgment Dec 29, 2021 Doc 26........................................................... 246

Motion for Relief from Judgement Doc 27...................................................... 248

Opposition to Relief from Judgment Doc 28.............................................. 384

Plaintiff Affirmation for Relief Doc 29........................................................ 397

Motion to Compel Doc 30.......................................................................... 422

Opposition to Motion to Compel Doc 31.................................................... 427

Plaintiff Affirmation for Motion to Compel Doc 32................................... 434

Memorandum and Order Aug 25, 2022 Doc 33.......................................... 438

Notice of Appeal Doc 34............................................................................. 449

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROGER ROWE,

                         Plaintiff,

                -against-

CENLAR FSB, CITIMORTGAGE, INC.,

                       Defendants.
-----------------------------------------------------------------X

**APPEARANCES:**

Roger Rowe
    *Pro Se Plaintiff*

Lijue T. Philip
Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, New York 10017
    *Attorney for Defendants Cenlar FSB and CitiMortgage, Inc.*

For Online Publication Only

**MEMORANDUM AND ORDER**
19-CV-07278 (JMA) (AYS)

FILED
CLERK

3:18 pm, Dec 22, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

    Plaintiff Roger Rowe ("plaintiff"), acting pro se, commenced this action against defendants

Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (together, the "defendants") for

allegedly violating federal and state laws in connection with a home mortgage refinancing.

Plaintiff's first amended complaint seeks to rescind the loan he received from non-party

CitiMortgage N.A. and to terminate the lien on the property.  (First Amended Complaint ("FAC"),

ECF No. 19.)  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the plaintiff's federal

claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

    Before the Court is defendants' motion to dismiss the FAC for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the Court

grants defendants' motion as to plaintiff's federal claims and dismisses those claims with prejudice.  Additionally, because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are dismissed without prejudice.

## I. BACKGROUND

### A. Factual Background[1]

On November 7, 2002, plaintiff entered into a Consolidation Extension and Modification Agreement ("Modification Agreement") with Citibank, N.A. in the amount of $157,500.00 (the "Loan") with respect to refinancing a mortgage on the property located at 20 Spruce Avenue, Amityville, New York (the "Property").  (FAC ¶¶ 9, 14, Ex. B.)  On that same date, plaintiff signed a Truth-in-Lending Disclosure Statement with regard to the Loan.  (FAC, Ex. L.)  Pursuant to a notice of servicing transfer dated March 15, 2019, effective April 1, 2019, Cenlar began servicing plaintiff's Loan on behalf of CitiMortgage.  (FAC, Ex. F.)  Plaintiff claims that he was informed of the transfer of servicing rights on or about July 12, 2019.  (FAC ¶ 15.)

Plaintiff failed to make the June 2019 and July 2019 monthly payments on the Loan.  (Ex. A.)  At that time, Federal National Mortgage Administration ("FNMA") was the current owner of plaintiff's Loan.  (FAC ¶ 10, Ex. A.)  On October 21, 2019, claiming TILA violations, plaintiff purported to rescind the Loan by sending Cenlar a notice of rescission.  (FAC, Ex. C.)

### B. Procedural Background

Plaintiff commenced an action against Cenlar on December 30, 2019 alleging violations of TILA, the FDCPA, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and various state law

---

[1] The following facts are taken from plaintiff's FAC and the exhibits attached thereto, and are undisputed, unless otherwise indicated.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).  The factual allegations in the FAC are presumed true for purposes of resolving the defendants' motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010).

claims. (ECF No. 1.) On April 28, 2020, Cenlar filed a motion to dismiss plaintiff's complaint. (ECF No. 11.) After the motion was fully briefed by both parties (ECF Nos. 12, 13), on August 6, 2020, plaintiff filed a motion to amend the complaint. (ECF No. 14.) By docket entry order dated March 15, 2021, the Court granted plaintiff's motion to amend the complaint and denied Cenlar's motion to dismiss as moot. (Electronic Order, March 15, 2021.) On March 22, 2021, plaintiff filed his FAC alleging violations of TILA, as well as state law claims for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud against Cenlar and CitiMortgage. The FAC also alleges a FDCPA claim against Cenlar. As relief, plaintiff requests that the Court declare the Loan void; and demands the return of monies paid, damages, costs and attorney fees. On August 11, 2021, defendants filed a fully briefed motion to dismiss on behalf of all parties. (ECF No. 24.)

## II. DISCUSSION

### A. <u>Standard of Review</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. <u>Twombly</u>, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006). A court may also consider materials attached

to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira, 380 F.3d at 67.

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## B. **Plaintiff's TILA Claims Against Both Defendants**

Plaintiff alleges that defendants violated TILA and its implementing regulation, Regulation Z, by failing to provide adequate disclosures and seeks damages and rescission of the Loan.  (FAC ¶¶ 28-35.)

Defendants contend that TILA is inapplicable to them as neither defendant is an owner or assignee of the Loan, and further argues that plaintiff's right to rescind is time-barred. (Defs. Br., ECF No. 24-1 at 7-9.)[2]  The Court agrees.

### 1. **Damages Claim**

TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added).   Similarly, Regulation Z, which is the "regulatory vehicle through which TILA is implemented," McLean-Laprade v. HSBC, No. 12-CV-1774, 2013 WL 3930565, at *8 (W.D.N.Y. July 30, 2013), requires that a "covered person" —defined as any person "that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through

---

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

purchase, assignment or other transfer. . ." — is required to provide a disclosure regarding the transfer of the mortgage. 12 CFR 1026.39(a)(1), (b).

Here, plaintiff claims that defendants violated § 1641(g)(1) and Regulation Z when they allegedly failed to provide him with notice of the mortgage transfer and the requisite notice of rescission. (FAC ¶¶ 30-32; Pl. Opp. Br., ECF No. 24-4 at 10, 15-17.)  However, as the servicer and subservicer of the Loan, CitiMortgage and Cenlar, respectively, had no ownership interest in the Loan itself. See § 1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.")  The Loan Modification Agreement provides that Citibank N.A. was the original creditor of plaintiff's Loan. (FAC, Ex. B at 67.)  Pursuant to the notice of servicing transfer, attached to plaintiff's complaint, effective April 1, 2019, CitiMortgage transferred its servicing rights to Cenlar as subservicer of the Loan. (FAC, Ex. F.)  Therefore, §1641(g)(1) and its Regulation Z are inapplicable to Cenlar and CitiMortgage as they are loan servicers and not "owner[s] or assignee[s]" of the Loan. See Thrane v. Litton Loan Servicing LP, No. 08-CV-4149, 2009 WL 9121140, at *2 (E.D.N.Y. Oct. 27, 2009) (dismissing TILA claim against mortgage loan servicer when it was "not now and has never been an assignee of the [ ] loan"); Blaize–Sampeur v. McDowell, No. 05-CV-4275, 2006 WL 3903957, at *3 n. 4 (E.D.N.Y. Oct. 18, 2006) (finding TILA did not apply to loan servicing company).

In fact, according to plaintiff's own allegations, non-party, FNMA is the transferee of the Loan. (FAC ¶ 10.)  Thus, only FNMA, as the "new owner or assignee," would have been obligated to notify plaintiff of the transfer of ownership. See § 1641(g)(1).  As loan servicers, neither Cenlar nor CitiMortgage was required to disclose the transfer of the Loan to third party FNMA.

Therefore, plaintiff fails to state a TILA claim for damages against either defendant and his claim is dismissed.

### 2. Rescission Claim

Plaintiff claims that he rescinded the Loan on October 21, 2019 in accordance with TILA. (FAC ¶ 33, Ex. C.)

Defendants contend that plaintiff's claim for rescission is time-barred. (Defs. Br. at 7-8.) The Court agrees.

TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender fails to provide notice of the borrower's right of rescission or fails to make a material disclosure. See § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."); Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998).

Pursuant to plaintiff's FAC, the Loan transaction occurred on November 7, 2002. (FAC ¶ 9.). The fully executed Truth-in-Lending Disclosure Statement attached to plaintiff's complaint is also dated November 7, 2002. (FAC, Ex. L.) Therefore, plaintiff's right to rescind the Loan expired on November 10, 2002. See § 1635(a). However, even if, as plaintiff suggests, he was not provided with the Truth-in-Lending Disclosure Statement on November 7, 2002, plaintiff's right to rescission would have expired three years after the date of consummation of the Loan, on or about November 7, 2005 — fourteen years prior to plaintiff's alleged rescission on October 21, 2019. See § 1635(f).

Plaintiff refers to the April 1, 2019 loan servicing transfer to Cenlar as a "credit sale" and considers Cenlar "the new creditor" in this alleged "transfer of ownership of the debt." (Pl. Opp. Br. at 12, 15; see FAC ¶¶ 30, 45.) Therefore, plaintiff claims, his right to rescind was extended three years from April 1, 2019 to April 1, 2022 due to defendants' alleged failure to provide him with "the required disclosure and or notice of his right to rescind." (Pl. Opp. at 10, 19.) However, Plaintiff is incorrect.

As discussed above, the documents attached to plaintiff's FAC, specifically, the March 15, 2019 notice of servicing transfer, demonstrate that his loan was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019. (See Ex. F.) Plaintiff fails to properly plead that the ownership interest in plaintiff's Loan was assigned or transferred to either defendant. Thus, because plaintiff's right to rescind expired, at the latest, three years from the November 7, 2002 Loan consummation, plaintiff's claim of rescission is untimely.[3] Accordingly, as plaintiff fails to state a claim for rescission pursuant to TILA, his claim is dismissed.

## C. **Plaintiff's FDCPA Claim Against Cenlar**

The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Under the FDCPA, "debt collectors" are persons engaged in "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The FDCPA explicitly excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted

---

[3] Additionally, the Court notes that because TILA's statute of limitation for damages is one-year from the date of the alleged violation, 15 U.S.C. § 1640(e), any claim for damages with respect to an alleged Truth-in-Lending violation would also be time-barred.

to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F).  Thus, "[a] mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt." Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017); Diaz v. Residential Credit Sols., Inc., 297 F.R.D. 42, 49 (E.D.N.Y. 2014) (The actions of a mortgage servicer are only covered under the FDCPA "if the debt at issue was acquired after the customer or debtor defaulted on the loan in question."); Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 415-16 (E.D.N.Y. 2013) (holding that a mortgage servicer was not a "debt collector" because the plaintiff was not in default when the servicer began servicing the mortgage).

Plaintiff fails to sufficiently allege that Cenlar is a "debt collector" subject to liability under the FDCPA.  The exhibits attached to plaintiff's complaint demonstrate that the Loan was not in default until June 2019, two months after Cenlar began servicing the Loan.  (See Ex. A, F.)  As plaintiff's allegations are insufficient to establish that Cenlar obtained the Loan when it was in default, plaintiff fails to allege that Cenlar was a debt collector within the meaning of the FDCPA. See Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 88 (2d Cir. 2003) ("[A]n entity cannot be a debt collector unless the debt it attempts to collect is in default.") (citing 15 U.S.C. § 1692a(6)(F)(iii)); Zirogiannis, 221 F. Supp. 3d at 302-03 (finding a complaint insufficient to survive dismissal where the plaintiff failed to plead that the alleged debt collector became a loan servicer after the disputed debt entered default).  Therefore, plaintiff fails to state a claim against Cenlar arising under the FDCPA.  Accordingly, plaintiff's FDCPA claim against Cenlar is dismissed.

**D.  State Law Claims**

Plaintiff asserts state law claims against both defendants for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud.

Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [ ] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) . . ., courts should 'abstain from exercising pendent jurisdiction.'" Birch v. Pioneer Credit Recovery, Inc., No. 06-CV-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)).

Having determined that plaintiff's federal claims in this action do not survive defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. See § 1367(c)(3).  Accordingly, the Court dismisses plaintiff's state law claims without prejudice.

**E.  Leave to Amend**

In his opposition papers, plaintiff requests leave to "amend [his] complaint a second time." (See Pl. Affirmation in Opp. to Defs. Mot., ECF No. 24-6 at 7.)

"A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (internal quotation marks omitted)).  However, while "pro se

plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Id. (citations omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Moreover, while amendments to pro se complaints should be granted "fairly freely," even pro se litigants are not entitled to unlimited opportunities to amend their pleadings. Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980) (citation omitted); Best v. City of N.Y., No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

The Court has carefully considered whether leave to amend is warranted here. Notably, plaintiff has already amended his complaint once and was able to review defendants' motion to dismiss prior to filing his amended complaint. Thus, plaintiff already had an opportunity to address the deficiencies in his original complaint that Cenlar identified in its motion to dismiss. That alone is reason to deny leave to amend here. Additionally, even a liberal reading of the FAC does not give any indication that a valid claim might be stated by plaintiff. Accordingly, leave to amend the FAC is denied.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to plaintiff's TILA and FDCPA claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses those claims without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the pro se plaintiff

and mark this case closed.

**SO ORDERED.**

Dated:  December 22, 2021
       Central Islip, New York

                                   /s/ (JMA)
                                 JOAN M. AZRACK
                                 UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ROGER ROWE,

                    Plaintiffs,

   - against -

CENLAR LAB and CITIMORTGAGE, INC.,

                 Defendant.
-------------------------------------------------------X

**FILED**
**CLERK**

1:34 pm, Dec 29, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**JUDGMENT**
CV 19-7278 (JMA)(AYS)

      A Memorandum and Order of Honorable Joan M. Azrack, United States District Judge, having been filed on December 22, 2021, granting defendant's motion to dismiss the first amended complaint with respect to plaintiff's TILA and FDCPA claims for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses those claims without prejudice, denying plaintiff's request, in his opposition papers, for leave to "amend [his] complaint a second time", denying *in forma pauperis* status for the purpose of any appeal, and respectfully directing the Clerk of the Court to close this case, it is

      **ORDERED AND ADJUDGED** that plaintiff Roger Rowe take nothing of defendants Cenlar Lab and CitiMortgage, Inc.; that defendants' motion to dismiss the first amended complaint with respect to plaintiff's TILA and FDCPA claims are granted; that the Court declines to retain jurisdiction over plaintiff's state law claims and dismisses those claims without prejudice; that plaintiff's request for leave to amend his complaint for a second time is denied; that *in forma pauperis* status for the purpose of any appeal is denied; and that this case is closed.

Dated:  December 29, 2021
        Central Islip, New York

                                    DOUGLAS C. PALMER
                                    CLERK OF THE COURT
                              BY:   /s/ MARY ELLEN KIRCHNER
                                    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

✴FILED✴

2022 JAN 10  PM 4: 32

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

The Honorable Joan M. Azrack

Case No. 2:19-cv-07278-JMA-AYS

---

**ROGER ROWE**
        Plaintiff(s)
    -v-
**CENLAR FSB, CITIMORTGAGE, INC**
        Defendant(s)

---

**MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS Pursuant to FED R. 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)**

PLEASE TAKE NOTICE that upon the annexed affirmation and Memorandum of Roger Rowe sworn to or affirmed on the 10th day of January 2022 and open the complaint herein, Defendant will move this Court, Hon. Joan M. Azrack U.S.D.J., in room 920, Long Island Courthouse, 100 Federal Plaza Central Islip, NY 11722 on motion pursuant to Federal Rule of Civil Procedure 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6).

Signed this 10th day of January, 2022 .

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

To: Lijue T. Philip
*Attorney for the Plaintiff*
*Cenlar FSB & CitiMortgage*
100 Park Avenue, Suite 2000
Tel: (212) 812-4124
lphilip@stradley.com

1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ROGER ROWE
      Plaintiff(s)                            2:19-cv-07278-JMA-AYS
    -v-
CENLAR FSB, CITIMORTGAGE, INC
      Defendant(s)

## AFFIRMATION/DECLARATION
## MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE
## ALTERNATIVE AMEND FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b),
## 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule.

## PRELIMINARY STATEMENT

Plaintiff brings this motion for relief from judgment and to amend the finding of the Courts December 22, 2021 decision and order and the December 29, 2021 judgement or in the alternate commence a new trial or hearing (*See* Exhibit A Rule 12(b) motion package).

Although the Court granted Defendants its motion to dismiss, the Court rendered a favorable determined which under controlling law would defeat the December 29, 2021 judgment. Pursuant to Rule 52(c) the Court may enter partial judgment against the party on a claim or defense that, under the controlling law, can maintained or defeated only with favorable finding on the issue. In this instance the Court erred when it dismissed Plaintiff's Federal claims despite affirming that Defendants had no legal right to collect on the note or mortgage.

The record clearly shows that the issues upon which the judgment was rendered is not supported by fact and conclusions of law, as required by Rule 52(a). Pursuant to Rule 52(a)(6), a ruling shall be set aside if it is clearly erroneous. In this instance the Courts December 29, 2021

1

judgment is clearly erroneous and belies the Courts findings that the Plaintiff's "loan was not transferred or assigned to the Defendants" [sic] Dkt No. 25 page 7. If Plaintiff's loan was not transferred or assigned to Defendants, any action to enforce the loan would be barred as a matter of law. Plaintiff's TILA, RESPA and FDCPA claim are all based on Defendant's misrepresentation in fact enforce the loan. Once the Court affirmed Defendants had not legal right to collect on the "Note" the Court should have found Defendants liable for all claims under the complaint.

TILA and RESPA was enacted to empower and protect consumers from various predatory lending practices and punish unscrupulous lenders, creditors, assignee's and transferee's from engaging in deceptive and deceiving activities. Congress also provides a consumer with protections under FDCPA, which was enacted to prevent unfair and deceptive debt collections practices. Under TILA, RESPA and FDCPA, a consumer has a private right to commence an action against creditors, lenders and their assignee's or transferee's.

The record clearly shows Defendant's violated various TILA, RESPA and FDCPA statutes in connection to the November 7, 2002 and April 1, 2019 credit transaction. The evidence presented to the Court proves (1) the existence of the transaction, (2) payments against the transaction and (3) the rights to recourse against the instrument in relation to the transaction. TILA, RESPA and FDCPA streamlines applicable contract, real estate, bailment, surety, tort and banking laws so that the average consumer can readily identify infractions without understand the branches of philosophy concerning the law and the principles that lead courts to make the decisions they do.

Defendant's failure to establish his rights to enforce the loan provides further evidence of Defendant's breach of contract, breach of fiduciary duty, conversion, FDCPA and adding and abetting claim. Although some of Plaintiff's claims may appear to be duplicative or mislabeled, Plaintiff is entitled to summary judgment as a matter of law which would only leave the

2

determination of Plaintiff's damages claims. Absent the right to enforce the note and mortgage Defendants, undoubtedly misrepresented the characteristics, type, status and their rights to collect the debt. Defendant CitiMortgage fraudulently collected payment from Plaintiff for over 17 years which is a violation of Federal Law. As such Plaintiff is entitled to summary judgment and damages related to all claims cited in the complaint.

### STATEMENT OF FACTS & FACTUAL BACKGROUND

1. On November 7, 2002 Plaintiff entered into a $157,500.00 credit transaction with Citibank, N.A a non-party to this action (see Ex. B to the Comp).

2. On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original Citibank, N.A loan was currently owned by Federal National Mortgage Administration (FNMA) a non-party to this action located at MidTown Center 1100 15th Street NW Washington, DC 20005) (see Ex. A to the Comp).

3. As part of the alleged transfer of ownership relative to the November 7, 2002 consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home (see Ex. A to the Comp page 19)[1].

4. The security interest in the November 7, 2002 credit transaction was not created to finance the acquisition or initial construction of Plaintiff's home.

5. On or about July 12, 2019 Plaintiff was notified that Defendant CitiMortgage transferred servicing to Cenlar and that Cenlar was the New Servicer (see Ex. F to the Comp page 2)[2].

---

[1] The indorsements on the face of the November 7, 2002 contract identifies the parties with privity to enforce said contract. In contract law, privity is a doctrine that imposes rights and obligations to parties of a contract and restricts non-contractual parties from enforcing the contract.

[2] Cenlar obtained both servicing and servicer rights as distinguished under USC § 2605.

3

6.  As defined by 12 CFR Part 1024(Regulation X) a "Servicer" means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). As evidenced on the face of the "NOTICE OF SERVICING TRANSFER" CitiMortgage transferred both the servicing rights the rights as a holder[3].

7.  As prescribed under UCC § 3-301 "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name". Here Cenlar is a holder of the instrument and is accepting payment in his own name (see Ex. F to the Comp page 5).

8.  Defendant's Cenlar FSB and CitiMortgage failed to disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C. 1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

9.  Defendant's failed to respond properly to Plaintiff's notice of rescission (see Ex. C to the Comp). The rights to rescind was established as a means to settle TILA violation out of court. However if a creditor, assignee or transferee is found to have violated any of TILA's statutes the consumer is entitled to commence an action for damages.

10. In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion (see ECF Doc. 11).

11. Cenlar failed to provide a separate statement of undisputed facts as required under Local Rule 56.1 which is grounds for dismissal of their summary judgment motion.

---

[3] Cenlar is more than a mere servicer. Cenlar is also a holder with the rights to collect payment in his own name even though he don't have the rights to enforce title or payment.

4

12. Cenlar failed to provide Notice to Pro Se Litigant as required under Local Rule 56.2 which is grounds for dismissal of their summary judgment motion.

13. Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge[4].

14. Defendant Cenlar's claim that Plaintiff defaulted under the terms of the Loan on or about June 1, 2019 [sic] (see ECF Doc. 11-2 page 2) is inadmissible hearsay and is not supported by affidavit made on personal knowledge.

15. Moreover BNK 6-l(11) states that "Upon a judicial finding that a high-cost home loan violates any provision of this section, whether such violation is raised as an affirmative claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall be available as a defense without time limitation". Here Plaintiff's asserts an affirmative claim and defenses against Defendants for violations of BNK 6-l. TILA also provides similar defenses and claims see § 1635(i).

16. Furthermore, in any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan. Here Plaintiff asserts his defenses to payment as it relates to Defendant's violation of BNK 6-l. TILA also provides similar defenses and claims see § 1635(i).

---

[4] Defendant claimed that Plaintiff was in default but provided no evidence supporting his statement.

5

17. Plaintiff submitted and amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment included objections to Defendant Cenlar's contention that Plaintiff is in default as well as the inclusion of Defendant CitiMortgage (the Master Servicer).

18. Plaintiff includes CitiMortgage in this action based on the Notice of Servicing Transfer and the transfer of the rights to collect the debt to the new servicer Cenlar. Based on the joint notice provided by Defendants CitiMortgage and Cenlar. CitiMortgage is the assignee of the mortgage debt obligation who in turn transferred the mortgage debt obligation to Cenlar. Evidence of the assignment can be seen in the CitiMortgage indorsement (see Ex. F to the Comp page 7& 10) which is evidenced by the CitiMortgage conditional and qualified indorsement in blank and evidence by the Notice of Servicing Transfer (see Ex. F to the Comp page 2).

19. The November 7, 2002 credit transaction between Plaintiff and Citibank involved the refinancing of a high-cost mortgage. The face of the October 23, 1989 Note shows a 10.625% interest rate (see Ex. B to the Comp page 8). As such the consolidated loan is considered a high-cost loan[5].

20. A "High-cost home loan" means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of BNK 6-l. As noted in BNK 6-l(g)(i) "For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeded eight percentage points over the yield on the treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. In this instance the delta between the

---

[5] The violation is on the face of the disclosure which makes any assignee or transferee liable to rescission and relief under section 1640.

6

first lien interest rate of 10.625 and the December 16, 2002 treasury yield of 1.5 is 9.125

(see Ex. K to the Comp page 6). As such the loan exceeded the 8% threshold.

21. The total points and fees also exceed five percent of the total loan amount of a loan fifty

thousand dollars or more. The November 7, 2002 contract, consolidated the balance on the

first lien of $37,606.56 and the second lien of $119,893.44 for a total of $157,500.00 (**see**

**Ex. B to the Comp page 17**).

22. As indicated on the face of the "Anticipated Settlement" dated September 16, 2002 (**see**

**Ex. N to the Comp**). Plaintiff paid 33.266% in closing cost. Pursuant to BNK 6-l(2)(q) No

points and fees when a lender refinances its own high-cost home loan with a new high-cost home

loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan

if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan

held by the lender or an affiliate of the lender. Here the lender refinanced his own high-cost home

loan which was held by its affiliate CitiMortgage (see Ex. H to the Comp)[6].

23. As such Defendant's, are liable to Plaintiff for actual damages, including consequential,

incidental damages and statutory damages as follows (i) all of the interest, earned or

unearned, points and fees, and closing costs charged on the loan shall be forfeited and any

amounts paid shall be refunded (see BNK 6-l(7)) and § 1641(d)(2). In addition, Plaintiff is

entitled to rescission.

24. Nevertheless, the party Plaintiff pledged collateral to made available through a

securitization transaction without Plaintiff's knowledge or consent and purportedly

negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to

---

[6] This is a violation of both Federal (TILA) and State (BNK 6l & m).

Citibank, N.A. exclusively and said pleaded document was apparently used to secure these receivables in this transaction as well.

25. Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. and CitiMortgage ("the indorser") is negligent as it relates to altering and producing an unauthorized signature (see Ex. F to the Comp page 7 & 10).

26. Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

27. Not only was CitiMortgage negligent as it relates to the production of an unauthorized signature. Both CitiMortgage and Citibank N.A. altered the instrument when it made material changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As defined by UCC §1-201 an "Unauthorized signature means a signature made without actual, implied, or apparent authority. The term includes a forgery" as such Defendant CitiMortgage forged Plaintiff's signature discharging Plaintiff from any liability.

28. Moreover UCC § 3-802 states that "Unless otherwise agreed where an instrument is taken for an underlying obligation the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor".

8

29. In this instance the indorser is a bank and the instrument has no recourse on it as evidenced by the words "without recourse" (see Ex. F to the Comp page 7 & 10).

30. As such Plaintiff is not in default and was in fact discharged form his obligation when the holder CitiMortgage intentionally cancelled the instrument by indorsing the instrument with the words "without recourse". (see Ex F. to the Comp)

31. As a third party answerable to Plaintiff if he is sued under Article 3 Citibank NA and CitiRetail Services LLC is placed on notice as prescribed under UCC 3-803 and must come and defend Plaintiff[7].

32. As indicated in Defendant's disclosure statement (see ECF Doc. 21) Citibank, NA and Citi Retail Services LLC holds ownership in CitiMortgage and is liable for their actions. Moreover, the fact that Citibank charged Plaintiff closing cost on a refinance in which a lender and it affiliates are holder is a clear violation of § 1605 and BNK 6-l(q) and as such is liable to damages under § 1641 and BNK 6-l[8].

33. Defendants mislead the Court to believe that it was just a mere servicer when in fact the Defendants where credit/assigners and credit/purchasers as evidenced by the "Notice of Servicing Transfer" See Ex F. to the Comp. The face of the Note with the qualified indorsement in blank affirms CitiMortgage prior ownership in the loan.

34. The Court erred as a matter of law when it granted summary judgment based on hearsay evidence. Defendants failed to provide affidavits from a person with personal knowledge. Although an attorney affirmation can qualify as an affidavit, the attorney must have personal knowledge for his affirmation to have any probative value.

---

[7] Although CitiBank and Retail Services were placed on notice neither responded to or appeared.
[8] This is also a TILA violation (see 1605(e)).

9

35. Rule 56(c) and Local Rule 56.1 requires a statement of material fact be followed by citation to evidence which would be admissible. Here Defendants failed to provide admissible evidence (affidavits from a person with personal knowledge) comparative to disclosure and non-disclosure related claims or defenses[9].

36. The Court erred when it determined that Plaintiff's TILA claim related to the November 7, 2002 credit transaction was time barred. Although the rescission in equity may be time barred rescission as a penalty related to other claims which a consumer can assert against the original creditor remains see § 1641.

37. The Court erred when it failed to opine on Plaintiff's TILA claims related to the April 1, 2019 credit transaction. TILA allows a consumer to file an action within one year against a creditor/assignee or a creditor/purchaser as well as the right to rescind any credit transaction within the prescribed time period.

38. The Court erred when it failed to observe Plaintiff's rescission claim against the March 15, 2019 "credit sale". § 1641(d) states that "(Any consumer… may rescind the transaction as against any assignee of the obligation"). The statement "the transaction as against any assignee" relates to the March 15, 2019 credit sale which is a consumer credit transaction as defined under § 1602.

39. The Court erred as a matter of law when it failed to admit Plaintiffs uncontroverted statements of material fact and granted Defendant's motion for summary judgment; despite Defendant's failure annex a statement of fact to his motion and specifically controvert corresponding numbered paragraphs of Plaintiff's statement of facts.

---

[9] 1641(d)(1) states that "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) [1] of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage".

40. Plaintiff was denied due process when the Court failed to administer the proceeding according to Federal Rules of Civil Proceedings. Nowhere in the record shows Defendants providing a separate statement of fact see Exhibit A Rule 12 motion package.

41. Although the Court determined that loan was never assigned or transferred to the Defendants. The Court erroneously granted Defendant's motion to dismiss see Exhibit A Rule 12 motion package.

42. Based on Rule 52(a)(6) the finding of facts should be set aside when the finding is clearly erroneous. In this instance the fact Defendant failed to prove it had a legal right to collect on the note should have precluded the granting of its motion to dismiss Dkt No 25 page 7.

43. Pursuant to Rule 8(b)(6) Defendants, admitted to the allegation in the pleadings when it failed to respond to Plaintiff's statement of facts see Exhibit A Rule 12 motion package. However, despite Defendant's admittance the Court granted Defendant's motion.

## ARGUMENTS

**RULE 52**

44. In light of the Court finding that Plaintiff loan was not assigned or transferred to Defendants, Plaintiff ask the Court to amend its finding and conclusion pursuant to Rule 52(b) where the question is based on the sufficiency of the evidence to support the dismissal of Plaintiff's complaint.

45. The evidence presented by the Defendants is inadmissible hearsay and does not controvert the undisputed fact in front the Court which as a matter of law requires judgment in favor of the Plaintiff.

11

46. Plaintiff also request the modification of its judgment to reflect the favorable ruling that Defendants were not the holder of the mortgage or note at the commencement of the action and therefore, is not entitled to enforce the note or mortgage Dkt No 25 page 7.

47. The Courts determination that Defendants were not the assignee nor transferee of the note and mortgage also proves that defendants misrepresented the existence of a debt and their right to collect the debt and as such is liable for FDCPA violations and all claim in the complaint.

48. The fact that the Plaintiff was neither the holder of the note or mortgage but collected payments for over 17 years is evidence of Plaintiff's breach of contract, breach of fiduciary duty, conversion and adding and abetting claim referenced in the complaint. Given the Courts determination the Judgment should be modified to reflect Plaintiff's award.

**RULE 59**

49. In light of the Courts favorable decision and Plaintiff's belief that the face of the evidence supports all his claims there is actually no need for a new trial or hearing. However, as a procedural measure Plaintiff request a new trial or hearing in the alternative if the Court should deny his motion to amend or alter.

50. The Courts finding that Defendants were not assignee's or transferee's of the mortgage or note precludes Defendants from enforcing the note or mortgage as a matter of law. As such the only remaining issue is for the Court to calculate Plaintiff's award.

**RULE 60**

51. A Rule 60(b)(1) claim of "mistake." provides in relevant part that a court may relieve a party from final judgment or order. Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a

12

judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law. In this instance Plaintiff believe that his due process rights were infringed upon. Nevertheless, In light of the favorable ruling it appears that the judicial process would cure any deprivation or infraction related to equal treatment under the law or due process.

52. Based on the record it is clear that the Defendant's and counsel submitted evidence which they know was false. Despite being informed of their false statements, Defendant's and counsel failed to correct or cease disseminating their falsities. Rule 60(b)(3) provides a vehicle in which a litigant can pursue relative to intrinsic or extrinsic fraud, misrepresentation and other misconduct from the opposing party. However, in light of the favorable ruling the Court may not see the need to investigate this matter any further.

53. Plaintiff complaint was based on breach of contract, breach of fiduciary duty, conversion, adding and abetting and FDCPA claims. The fact that the Court determined that Defendants were never assigned or transferred Plaintiff's loan precludes Defendants as a matter of law from enforcing the note or mortgage. As stated previously if the Defendants never owner or held the mortgage or note the Defendants fraudulently took Plaintiff's property. Pursuant to UCC 3-415(5) if payment was made on the instrument the accommodation party is entitled to recourse on the instrument. As such the December 29, 2021 judgment must be modified to reflect the Courts findings.

## CONCLUSION

54. I respectfully ask the court to modify its December 22, 2021 Memorandum and Order and its December 29, 2021 judgment to reflect the record and the Courts findings that

13

Defendants were not holders of the mortgage or note at the commencement of the action and is not able to obtain a judgment against the note or mortgage as a matter as law.

55. The fact that Defendants were neither assignee's of transferee's of the loan affirms Plaintiff's claims of breach of contract, breach of fiduciary duty, conversion, FDCPA and adding and abetting. There is no doubt that Plaintiff paid CitiMortgage for over 17 years, and that CitiBank and CitiMortgage promised to pay the instrument and if payment was made on the instrument, Plaintiff was entitled to recourse on the instrument and as such Plaintiff is entitled to recover damages.

56. Furthermore, Defendant's predatory activities should not go unpunished. Defendants assigned and transferred Plaintiff's loan for their own benefit and charged him excessive fees while benefiting from the unauthorized uses of Plaintiff's collateral. As such this court should penalize Defendants to the maximum extent of the law.

Dated: January 10, 2022

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROGER ROWE,

               Plaintiff

     - v -

CENLAR FSB, CITIMORTGAGE, INC

               Defendants.

**Case No. 2:19-cv-07278 (JMA) (AYS)**

---

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)

---

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

i

# Table of Contents

MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE
AMEND FINDINGS..................................................................................................... 1

I.      BACKGROUND AND PROCEDURAL HISTORY ......................................... 3

II.     STATEMENT OF FACTS ................................................................................ 5

III.    ADDITIONAL STATEMENT OF FACTS ...................................................... 5

IV.    LEGAL STANDARDS OF REVIEW ............................................................. 6
A. Motion Pursuant to Rule 52(b) & Local Rule 6.3 ......................................... 6
B. Motion for New Trial Rule 59 ...................................................................... 7
C. Motion for Relief form Judgment or Order Rule 60....................................... 7

D. Violation of Substantive and Procedural Due Process.................................... 8

V. AURGUMENT ................................................................................................. 10
1. Questioning the Evidentiary Support Rule 52(5) ........................................ 10
2. Motion for New Trial Rule 59 ................................................................... 11
3. Motion for Relief from Judgment Rule 60 ................................................. 11
Rule 60(b)(1) ............................................................................................... 11
Rule 60(b)(3) ............................................................................................... 13

VI. PLAINTIFF'S OBJECTION TO JUDGMENT ............................................. 14
Plaintiff's TILA Claims Against Both Defendants ......................................... 14

1.    Damages Claim.................................................................................... 16

2.    Rescission Claim.................................................................................. 17

3.    Plaintiff's FDCPA Claim Against Cenlar ............................................. 20

4.    State Law Claim.................................................................................. 21

5.    Leave to Amend.................................................................................. 22

CONCLUSION ..................................................................................................... 23

ii

## Table of Authorities

**Cases**

." *Bristol v. Schenk*, 14-CV-6647, 2017 WL 9485715 ............................................... 12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ...................................... 10

*Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) ................................................................................... 12

Boddie v. Connecticut, 401 U.S. 371, 378 (1971) ....................................................... 9

citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)) ......................................................................................................... 9

*Deutsche Bank Natl. Trust Co. v Monica*, 131 AD3d 737, 739) ............................... 10

DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994) ....................................... 8

Fleming v. New York University, 865 F.2d 478, 484 (2d Cir. 1989) ........................... 8

Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39 (2d Cir.1989) ..................... 7

Gervais v. O'Connell, Harris & Assoc., 297 F.Supp. 2d 435, 440 (D. Conn. 2003) ............. 21

Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021) ......................................... 8

In *Anthony v. Fein, Such & Crane, LLC*, 5:15-CV-0452 (DNH/TWD) (N.D.N.Y. Sep. 28, 2016) ............................................................................................................................ 21

In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) ........... 2, 12

*In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)) ............... 6

In re Waugh, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting In re St. Stephen's 350 E. 116th St., 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)) ......................................... 8

*Jackson v. Killian*, No. 08 Civ. 4386, 2010 WL 2103646, at *1 (S.D.N.Y. May 25, 2010) ......... 6

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576 (2010) ............... 20

*Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015) ............................ 1

Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006) ...................................... 20

Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) ........................... 9

Kluge v. Fugazy, 145 A.D.2d 537, 536 N.Y.S.2d 92 (2d Dep't. 1988) ...................... 19

Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) ................................................................................. 9

*Mallet v. Miller*, 438 F. Supp. 2d 276, 277 (S.D.N.Y. 2006) ..................................... 6

Mayberry v. Maroney, 529 F.2d 332, 337 (3d Cir. 1976) ........................................... 8

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940) ................................ 7

O'Brien v. Nat'l Property Analysts Partners, 739 F.Supp. 896, 900 (S.D.N.Y.1990);  12 Moore's Federal Practice §60.44[4] (3d ed.1997) ................................................................ 7

Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)) ................................................................................................ 9

*PPO Industries v. AO.P. Svs*., 235 AD.2d 979 (3d Dep't 1997) .............................. 10

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012) ........................... 10

Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hudson v.
  Palmer, 468 U.S. 517, 532 (1984).................................................................................... 9
Rule 56(c)............................................................................................................................ 5
*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ..................................... 6
Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012) ........................... 8
Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)..................................................... 11
*Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782 ..................... 10
Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997); Hurd, 984 F.3d at 1088 ................... 9
Woods v. Sieger, Ross & Aguire, LLC, No. 11 Civ. 5698 (JFK), 2012 WL 1811628 ............... 21

## Statutes

§ 1602(g)(2) ..................................................................................................................... 20
§ 1602(h)............................................................................................................................ 18
§ 1602(i).............................................................................................................................. 18
§ 1635(a) ............................................................................................................................ 18
§ 1640.................................................................................................................................. 5
§ 1641........................................................................................................................... passim
§ 1641(c) ............................................................................................................................ 24
§ 1641(d) .......................................................................................................................... 2, 14
§ 1641(f)(1) ........................................................................................................................ 16
§ 1692................................................................................................................................. 20
§ 1692k(a) .......................................................................................................................... 21
§ 3-413 ......................................................................................................................... 15, 24
§ 3-802 ............................................................................................................................... 24
UCC § 3-104(b) ................................................................................................................. 15
UCC § 3-301 ................................................................................................................ 15, 16
UCC § 3-413(1) ................................................................................................................. 15
UCC § 3-415(5) ............................................................................................................. 2, 11
UCC § 3-416 ...................................................................................................................... 15
UCC § 3-802 ................................................................................................................ 15, 16

## Rules

Local Rule 56.1 .......................................................................................................... passim
Local Rule 56.1(c) ......................................................................................................... 2, 5
Rule 52(c) .......................................................................................................................... 22
Rule 56 ........................................................................................................................ 10, 14
Rule 56(e)(2) ..................................................................................................................... 23
Rule 56.1 ................................................................................................................ 2, 12, 22, 23
Rule 56.2 ........................................................................................................................... 22

iv

**Regulations**

12 CFR Part 1024 (Regulation X)     18

v

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER ROWE<br>Plaintiff<br>- v -<br>CENLAR FSB, CITIMORTGAGE, INC<br>Defendants. | **Case No. 19-CV (JMA) (AYS)** |

## MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS

I Roger Rowe (Plaintiff) in the above action file this memorandum in support of my motion for relief from this Court's December 29, 2021 Judgment (see ECF # 26) and Order dated December 22, 2021 (see ECF # 25). I ask the Court to amend its finding or in the alternative order a new trial relative to the granting of Defendant's Cenlar FSB and CitiMortgage, Inc., Federal Rule of Civil Procedure 12(b)(6) motion.  Plaintiff request is based on Federal Rule of Civil Procedure 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3), 60(6) and the Courts violation of Plaintiff's substantive and procedural due process.

Rule 52 specifically allow a party to file a motion to amend the finding or make additional findings. The motion can also be accompanied by a motion for a new trial. The rule also allows the Court to set a side a finding based on clearly erroneous evidence or when a party questions the sufficiency of the evidence. In this instance the evidence provided is insufficient and fails to meet the substantial evidence threshold necessary to deny Plaintiff his statutory right to a judgment.

It is well settled that TILA provides a consumer with the right to commence an action against creditors or assigners related to a credit transaction in which a security interest will be retained in his property. As stated in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015) "The Act contemplates various situations in which the question of a lender's compliance

1

with the Act's disclosure requirements may arise in a lawsuit". The Act also allows a consumer to bring an action for nondisclosure related violation (see § 1641(d)(2)(B).

Rule 59 permits the Court to take additional testimony, amend findings of facts and conclusions of law or make new ones and direct the entry of a new judgment. Here the facts are undisputed as Defendants admit to all allegations when they asserted their affirmative defenses. Local Rule 56.1(c) mandates the movant and opponent to annex a separate, short and concise statement of fact specifically controverting the oppositions statement. If a party fails to submit a controverting statement the opposing party's statement would be deemed admitted. Moreover, the Court failure to demand strict compliance with Local Rule 56.1 is a procedural defect entitling Plaintiff to a new hearing. Despite Defendants failure to comply with the requirements of Local Rule 56.1 and its prejudicial effects on Plaintiff's substantive and procedural rights to due process; the Court found Defendants were neither assignee's or transferee's of the loan which precludes Defendants from enforcing or collecting payment as a matter of law.

Rule 60 permits the Court to correct an oversite or omission whenever one is found in a judgment, order or other part of the record. The rule also provides relief for fraud (whether previously called intrinsic or extrinsic). In this instance the Court overlooked or inadvertently misunderstood Plaintiff's claims when it associated the claims to the November 7, 2002 credit transaction in lieu of the April 1, 2019 credit transaction. The record clearly indicates that existence of a contract and Plaintiff's right to recourse against the holder of said contract (UCC § 3-415(5). There is no doubt that Plaintiff was deprived his due process rights when the Court granted summary judgment without Defendants providing a separate statement of material facts. In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) this Court has ruled that a litigant's failure to comply with Rule 56.1 mandate effectively concedes to the assertion

2

which are supported by the evidence cited. Moreover, the fact that the Court determined that Defendants were not assignee's nor transferee's precludes them from enforcing title or collecting payment as a matter of law.

As such Plaintiff respectfully ask the Court to modify its December 22, 2021 order and its December 29, 2021 judgment so that it accurately reflect his rights to title and property. Plaintiff also ask that the judgment includes damages sufficient to deter Defendants from violating TILA and other Federal Law's.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On November 7, 2002, Plaintiff entered into a credit transaction evidenced by the note (the "Note") *See* Ex. F to Comp and mortgage (the "Mortgage") *See* Ex. B to Comp (collectively referred to as the "Loan") with Citibank N.A. ("CitiBank"). The Loan was to refinance a prior Citibank loan on Plaintiff's residential property. *See* Ex. F to Comp. CitiMortgage was servicer[1] of the loan *See* Ex H to Comp. As the holder of the servicing contract CitiMortgage is considered the Master servicer[2]. On April 1, 2019 CitiMortgage entered a credit sale contract agreement as ("Transferor servicer") and transferred servicing rights to Cenlar the ("Transferee servicer")[3]. *See* Ex. F to the Comp.

On July 12, 2019 Defendant Cenlar responded to Plaintiff's QWR stating that the loan was originated by CitiBank. N.A. dba CitiMortgage, Inc. and that the current owner of the loan is

---

[1] Servicer means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan), which is distinguished from Servicing which means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

[2] Master servicer means the owner of the right to perform servicing. A master servicer may perform the servicing itself or do so through a subservicer. *See* 12 CFR Part 1024(Regulation X).

[3] Transferee servicer means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding. *See* 12 CFR Part 1024(Regulation X).

3

FNMA. *See* Ex. A to the Comp. Defendant Cenlar also claimed that Plaintiff, defaulted under the terms of the Loan on or about June 1, 2019. *Id.* On October 21, 2019 Plaintiff sent Cenlar the new creditor and authorized representative a "Notice of Rescission" related to the April 1, 2019 credit transaction. *See* Ex. C to the Comp.

On December 30, 2019 Plaintiff commenced this action by filing this Complaint. *See* Dkt. No. 1. Plaintiff alleged a cause of action pursuant to the Truth in Lending Act ("TILA") to rescind the Loan and for damages; for damages for "False Entry in Book, Report, Or Statement of Such Bank"; and for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"). *Id.* After a pre-motion conference was held on March 5, 2020, Cenlar was permitted to move to dismiss the complaint, which the Court noted it may consider as a summary judgment motion upon review. Dkt. No. 10. On April 28, 2020, Cenlar moved to dismiss the complaint pursuant to Fed R. Civ. P. 12(b)(6) and to deny leave to amend. Dkt. No. 11. Plaintiff opposed this motion on or about May 31, 2020. Dkt No. 12. Cenlar filed a memorandum in further support of its motion on June 15, 2020. Dkt No. 13.

On August 6, 2020 Plaintiff filed a motion to amend complaint to include CitiMortgage and asserted additional allegations in support his existing causes of action (add causes of action for conversion, breach of contract, breach of fiduciary duty and "aiding and abetting"). On March 15, 2021 this Court granted Plaintiff's motion to amend his complaint. On March 22, 2021 Plaintiff filed his "First Amended Complaint" Dkt No. 19. On April 8, 2021 CitiMortgage filed its notice of appearance along with its corporate disclosure statement Dkt No. 20 and 21. On April 8, 2021 Defendants filed a motion for a pre motion conference Dkt No. 22. On April 15, 2021 Plaintiff filed his opposition to Defendants Rule 12(b)(6) motion.

4

On May 24, 2021 this Court denied Defendant's motion for a pre motion conference and directing Defendants to serve their motion to dismiss by June 24, 2021 and that Plaintiff shall serve his opposition by July 26, 2021 and the Defendant is to serve a reply and file the fully briefed motion by August 16, 2021 (see Exhibit A Rule 12(b) motion package).

## II.  STATEMENT OF FACTS[4]

## III.  ADDITIONAL STATEMENT OF FACTS

1. Defendants mislead the Court to believe that it was just a mere servicer when in fact the Defendants where credit/assigners and credit/purchasers as evidenced by the "Notice of Servicing Transfer" See Ex F. to the Comp. The face of the Note with the qualified indorsement in blank affirms CitiMortgage prior ownership in the loan.

2. The Court erred as a matter of law when it granted summary judgment based on hearsay evidence. Rule 56(c) and Local Rule 56.1 requires a statement of material fact be followed by citation to evidence which would be admissible. Here Defendants failed to provide admissible evidence (affidavits from a person with personal knowledge) comparative to disclosure and non-disclosure related claims or defenses[5].

3. The Court erred when it determined that Plaintiff's TILA claim related to the November 7, 2002 credit transaction was time barred. Although the rescission may be time barred other claims my in fact lie under § 1640.

4. The Court erred when it failed to opine on Plaintiff's TILA claims related to the April 1, 2019 credit transaction. TILA allows a person to file an action within one year against a

---

[4] Plaintiff incorporates Dkt No. 24-5 statement of fact. Defendants failed to provide a statement controverting these facts. Pursuant to Local Rule 56.1(c) statements required to be served are admitted if uncontroverted.

[5] 1641(d)(1) states that "Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) ¹ of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage".

5

creditor/assignee or a creditor/purchaser as well as the rescission of any credit transaction within the prescribed time period.

5. The Court erred as a matter of law when it failed to admit Plaintiffs uncontroverted statements of material fact and granting Defendant's motion for summary judgment despite Defendant's failure to specifically controvert corresponding numbered paragraphs of Plaintiff's statement of facts.

## IV.    LEGAL STANDARDS OF REVIEW
### A. Motion Pursuant to Rule 52(b) & Local Rule 6.3

Motions for reconsideration are governed by Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, which states: Unless otherwise provided by statute or rule . . . a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment." *Jackson v. Killian*, No. 08 Civ. 4386, 2010 WL 2103646, at *1 (S.D.N.Y. May 25, 2010).

Reconsideration of a previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. *See Mallet v. Miller*, 438 F. Supp. 2d 276, 277 (S.D.N.Y. 2006) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See Mallet*, 438 F. Supp. 2d at 277 ("A motion for reconsideration under Local Rule 6.3

6

must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision.

**B. Motion for New Trial Rule 59**

Rule 59 allows the trial court to grant a new trial for any of the reasons for which new trials have traditionally been granted in actions at law in U.S. courts. Parties most commonly base their motions for a new trial on the verdict being against the weight of the evidence, the damages being excessive, or the trial court committing a prejudicial error of law see 11 WRIGHT ET AL., supra note 8, § 2805; *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). New trials are also granted because the trial was not fair in light of newly discovered evidence or the misconduct of jurors, judges, or counsel. Also, Rule 59 permits the trial court to order, on its own initiative, a new trial "for any reason that would justify granting one on a party's motion." A U.S. district court has the power to weigh evidence and assess the credibility of witnesses, and it has discretion to grant a new trial if the verdict appears to the court to be against the weight of the evidence.

**C. Motion for Relief form Judgment or Order Rule 60**

A Rule 60(b)(1) claim of "mistake." provides in relevant part that a court may relieve a party from final judgment or order. Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law." *Fustok v. Conti Commodity Servs., Inc.*, 873 F.2d 38, 39 (2d Cir.1989) (citations omitted); *O'Brien v. Nat'l Property Analysts Partners*, 739 F. Supp. 896, 900 (S.D.N.Y.1990); 12 Moore's Federal Practice § 60.44[4] (3d ed.1997).

7

To prevail under Rule 60(b)(3), the movant must demonstrate by clear and convincing evidence that the order or judgment from which relief is sought was procured by fraud, misrepresentation or other misconduct. *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989) ("[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."). "To meet this high burden, the [movant] must do more than make 'conclusory allegations of fraud' and must show that the alleged fraud, misrepresentation, or other misconduct was 'material to the outcome.'" *In re Waugh*, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)).

Where a party seeks relief under Rule 60(b)(6) for reasons not covered by any of the other preceding five enumerated provisions under Rule 60(b), the burden of proof is no less exacting. The rule . . . "confers no standardless residual discretionary power to set aside judgments on mere second thought," and allows relief only under "extraordinary circumstances" that are "sufficient to overcome our overriding interest in the finality of judgments," *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976) (Gibbons, J. concurring), or "where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994).

### D. Violation of Substantive and Procedural Due Process

Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To analyze a claim under substantive due process, courts perform a two-step analysis. *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021). "The first step in substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White*

8

Plains, 57 F.3d 202, 211 (2d Cir. 1995). Not all rights are entitled to protection. Only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process. See generally Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997); Hurd, 984 F.3d at 1088.

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Further, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971). The Supreme Court, however, distinguishes between (1) claims based on established state procedures, and (2) claims based on random, unauthorized acts by state employees. See Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984); and Parratt v. Taylor, 451 U.S. 527, 537 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). On the one hand, where a plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre deprivation hearing." Id. (citing Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996)). "Under those circumstances, 'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" Id. (quoting Hellenic, 101 F.3d at 880). In contrast, when a plaintiff brings a procedural due process claim "[b]ased on random unauthorized acts by state employees," the state satisfies procedural due process requirements so

9

long as it provides a meaningful post-deprivation remedy.16 Id. (citing Hellenic, 101 F.3d at 880;

and Hudson, 468 U.S. at 532).

# V. AURGUMENT

## 1. Questioning the Evidentiary Support Rule 52(5)

Rule 52(5) allows a party to question the sufficiency of the evidence relied on in support

of the findings. In this instance the evidence does not support the fact pattern presented.

Defendant's failed to establish its prima facie entitlement to judgment as a matter of law, as it

failed to submit evidence demonstrating the Plaintiff's default in payment (see *Tri-State Loan

Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782; *Deutsche Bank Natl. Trust Co. v Monica*,

131 AD3d 737, 739).

In support of its motion, inter alia, for summary judgment, the Defendant's relied on copies

of the note and mortgage, and hearsay information from their counsel ("Lijue T. Philip"). It is

settled law that an affidavit by an attorney who has no personal knowledge of the pertinent facts

lacks probative value, *See PPO Industries v. AO.P. Svs.*, 235 AD.2d 979 (3d Dep't 1997). As such

the evidence submitted by Defendants is inadmissible and summary judgment should have been

denied.

Here the evidence provided is inconsistent and raises a genuine issue of material fact.

Summary judgment is proper only where, construing the evidence in the light most favorable to

the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Redd v. N.Y. Div. of Parole*, 678 F.3d

166, 173–74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable

jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). A fact is material within the meaning of Rule 56 where it "might affect the

10

outcome of the suit under the governing law". In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal citations and quotations omitted).

In this instance the Court actually determined that Plaintiff's loan was never transferred or assigned to Defendant's *See* Dkt No. 25 page 7. As such Defendant's were estoppel from enforcing or collecting payment as a matter of law. The evidence in front the Court clearly shows Defendant's collected payments against the instrument and that if Plaintiff paid the instrument he would have a right of recourse against the instrument (UCC § 3-415(5)).

### 2. Motion for New Trial Rule 59

In the alternative Plaintiff request a new trial in light of Defendants failure to provide substantial evidence in support of its motion. This court has the power to weigh evidence and assess the credibility of witnesses, and it has discretion to grant a new trial if the verdict appears to the court to be against the weight of the evidence. Given the weight of the evidence i.e. the prominent notice on the face of the instrument informing Cenlar ("transferee") that the credit transaction is subject to all claims and defenses against the original lender and the lack of admissible evidence (hearsay), the Defendants were estoppel from obtaining summary judgment as a matter of law.

### 3. Motion for Relief from Judgment Rule 60

### Rule 60(b)(1)

Although most motions to declare a judgment void rest on claims that the court lacked jurisdiction over the parties, the subject matter, or both, a judgment is equally void if a court with jurisdiction has "acted in a manner inconsistent with due process of law. Here the Plaintiff was

11

denied the opportunity of a fair and evenhanded hearing. The Court failure to assure Defendants strict compliance with Rule 56.1 prohibited Plaintiff from addressing the facts of the case. The Court allowed the moving party to submit a defective motion absent the mandatory statement of fact. The Court then concluded that Plaintiff failed to correct deficiencies in his pleading See Dkt No. 25 page 10. However, the Court failed to compel Defendants to submit the mandated statement of material facts. Without relevant facts Plaintiff was not afforded the opportunity to address all the facts. The Courts action was bias showed favoritism to one part over the next.

In *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) this Court vehemently emphasized consequences of a litigant's failure to comply with Local Rule 56.1 when it stated "The requirement is strict; failure to submit a Rule 56.1 statement with a motion for summary judgment may result in the motion's denial". The Court also cited *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417-18 (2d Cir. 2009).

Both the E.D.N.Y. and the S.D.N.Y., consistently ruled that failure to comply with the local rule 56.1 submission of a separate statement of fact is grounds for dismissal. The Courts have stated "Significantly, the requirement of filing a Rule 56.1 statement is not waived due to a litigant's pro se status." *Bristol v. Schenk*, 14-CV-6647, 2017 WL 9485715, at *4 (E.D.N.Y. July 31, 2017) (Tomlinson, Mag. J.) (collecting cases)., *report and recommendation adopted*, 14-CV-6647, 2017 WL 4277158 (E.D.N.Y. Sept. 25, 2017) (Bianco, J.). A party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1).

12

That being said, it seems that compliance with Local Rule 56.1 relates only to "pro se litigants". Given your Honors prior rulings, its apparent that I am not receiving equal protection under the laws of the United States. The constitution guarantees that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, a person similarly situated must be similarly treated. However, in this situation Plaintiff is clearly not being treated the same. Defendants clearly did not provide a statement of facts nor did they controvert Plaintiff's separate (numbered paragraph) statement of facts which under Antwi resulted in the dismissal of the motion for failure to annex a statement of material fact.

There is no rational basis or reason to allow a litigant to circumvent civil procedures or settled law. Although I am a non-attorney pro se litigant, I don't seek preferential treatment nor should I have to wonder, if a jurist is bias or obtuse. I would like to believe that your Honor and this Court is not bias towards me or any other pro se litigants. As a citizen of the United States of America and the great State of New York, I have faith in the Judicial system and the jurist entrusted in carrying out the business of the court. However, jurist are human and they sometimes overlook evidence and in some instances make mistakes. Rule 60 provides a pique-less mechanism to correct an oversite or error without initiating an appeal. Although it is difficult for some jurist to admit to an oversight or mistake in judgment a dedicated jurist who vowed to abide by the States Code of Conduct would respect and apply the law in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

**Rule 60(b)(3)**

Based on the record it is clear that the Defendant's and counsel submitted evidence which they know was false. Despite being informed of their false statements Defendant's and counsel failed to correct or cease with said misrepresentation. An attorney has a duty to correct false

13

statements of fact or law made to a tribunal or correct such false statement of fact or law see Rule

3.3 Candor Toward the Tribunal. In this instance counsels' action are sanctionable and should be

treated with the same prosecutorial force as applied to Defendant for failure to comply with Rule

56. Here it is clear that Defendants committed fraud (whether previously called intrinsic or

extrinsic) and intentionally misrepresented the fact which ultimately deprived Plaintiff of a fair

hearing the opportunity to obtain affidavits, declarations or take discovery. Moreover, Defendants

used the judicial system as a tool of injustice. As such the judgment against Plaintiff should be

reversed and the claims against Defendant granted in its entirety.

## VI. PLAINTIFF'S OBJECTION TO JUDGMENT

### Plaintiff's TILA Claims Against Both Defendants

The Courts contention that Plaintiff merely alleges that defendants violated TILA and its

implementing regulation, Regulation Z, by failing to provide adequate disclosures and seeks

damages and rescission of the Loan (see FAC ¶¶ 28-35.) diminishes the breadth and depth of

Defendants actions. It is important to point out that TILA provides damages for claims related to

disclosures as well as all claims and defenses with respect to the mortgage that the consumer could

assert against the creditor of the mortgage ( § 1641(d). Based on the determination December 12,

2021 "Memorandum and Order" Dot No. 25, the Court overlooked or misapprehended pertinent

facts related to this case.

Although Defendants contend that TILA is inapplicable to them for neither is owner or

assignee of the Loan, and that plaintiff's right to rescind is time-barred. (Defs. Br., ECF No. 24-1

at 7-9.). The Court should not agree with such an erroneous and illogical statement. It is settled

law that "The holder of an instrument whether or not he is the owner may transfer or negotiate it

and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or

enforce payment in his own name" (see UCC § 3-301). In this instance Defendants themselves proclaim to be the holder of the instrument with rights to collect. *See* Ex F. to the Comp, as such the equivalent to privity exist which holds Defendant's liable to any damage sustained by Plaintiff.

As described under § 1641(d), Plaintiff has a statutory right to damages against a holder ("assignee, transferee or purchaser") for all claims a consumer may have against the original creditor[6]. As described in the complaint and evident by his indorsement, Plaintiff signed as an accommodation party. Pursuant to UCC § 3-416 the addition of words to the signature of one of two or more makers or accepters creates a presumption that the signature is for the accommodation of the others.

Under UCC § 3-413(1) the maker or accepter of the instrument ("CitiMortgage") engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3-115 on incomplete instrument. As evidenced by the qualified indorsement in blank, the instrument is incomplete and does not transfer ownership or title until complete. UCC § 3-104(b) states that "Any writing to be a negotiable instrument within this Article must… contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article" (emphasis added), as such the blank indorsement is conditional by default. Moreover, the qualified indorsement pro tanto discharges the obligor see (UCC § 3-802). Nevertheless, CitiBank and CitiMortgage promised to pay the instrument according to its tenor and they are therefore liable to Plaintiff for damages. TILA, also provides a statutory right of action against purchasers ("Cenlar") for accepting the debt obligation.

---

[6] The time to commence an action against an assignee is one year

15

### 1. Damages Claim

Plaintiff respectfully disagree with the Courts determination related to the dismissal of his complaint. The Courts contention that Defendants are merely servicer and subservicer is belied by the record. The face of the October 23, 1989 and the November 7, 2002 "Note" indicates the pro tanto discharge of all parties (UCC § 3-802). In addition, CitiMortgage qualified conditional indorsement in blank "Notes" evidence its prior ownership of Plaintiff's loan.

As the Court properly stated  "A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." [sic] Dkt No. 25 page 5. (15 U.S.C. § 1641(f)(1)). Here, the qualified conditional blank indorsement on the note proves CitiMortgage was a prior ownership of the loan and depending on the turns of the transfer may still retain partial ownership of the debt obligation. Further proof of CitiMortgage ownership of the loan is evidenced by Cenlar's statement "The Loan was originated by Citibank. N.A. dba CitiMortgage, Inc and is Currently owned by Federal National Mortgage Administration" [sic] ¶ 2 of Cenlar's July 12, 2019 letter. In addition, the notice of transfer of mortgage servicing rights states that CitiMortgage transferred the mortgage servicing rights to Cenlar (Transferee servicer[7]). By accepting the transfer Cenlar is now the holder and owner of the debt obligation as prescribed under UCC § 3-301. As such Defendants are more than servicers and are liable to Plaintiff under TILA and RESPA.

In this instance both the principal ("CitiMortgage") and its agent ("Cenlar") is liable for their own action for failing to comply with federal statutes. Congress enacted TILA to deter assigners and purchasers from unconscionable activities which the average consumer would not detect. TILA was enacted to simplify a consumer's response to a predatory creditor/lender financial transaction. Without TILA a consumer would be faced with the daunting task of learning

---

[7] Transferee servicer means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding.

16

and understanding Contract, Surety, Real Estate, Bailment, Tort and Banking Law's in lieu of merely identifying an error related to pre-determined items in a disclosure.

As such the Court must ensure Defendant's compliance with TILA with the same enthusiasm as its focus on Plaintiff's acquisition of the loan and. Even if a consumer obtained a loan and failed to pay the loan, TILA provides a consumer with a cause of action as a defense, counterclaim or an original action if the lender is found to have violated TILA. The Courts discission appears to be partial, partisan and slanted in Defendant's favor. The Court cannot and should not enforce one part of a contract and consent or acquiesce to the violation of other parts of the contract. In this Instance Defendant's brazenly violated not only the terms of the contract but the statutory provisions enacted by Congress ("TILA").

The Court determined that Defendants was not the assignee or transferee of Plaintiff's loan. In order to enforce title or payment a litigant must provide evidence that he is a holder of the mortgage and note at the commencement of the action and proof of a default. In this instance action Defendant failed to provide evidence that he was the holder of the mortgage and note at the commencement of the action or that there was a default. As such Defendant's mortgage claim fails and Plaintiff is entitled to judgment on all claims as a matter of law.

## 2. Rescission Claim

The Court mistakenly asserts that the "March 15, 2019 notice of servicing transfer, demonstrates that his loan[8] was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019" [sic] Dkt No. 25 page 7, is belied by the face of the disclosure. The term servicer and servicing are distinctive terms and should not be viewed as synonymous. A "Servicer" may hold his own loan while

---

[8] The term loan is sometimes misinterpreted to include the "Note" when in fact it is merely the debt obligation.

17

"Servicing" is merely the act of performing certain function related to the loan. In this instance the face of the disclosure indicates a combination the "Notice of Servicing Transfer" and the transfer of service from the current servicer "CitiMortgage" to the new servicer "Cenlar"[9].

Moreover 12 CFR Part 1024 (Regulation X) defines Transferee servicer and Transferer servicer as:

> "Transferee servicer" means a servicer that obtains or will obtain the right to perform servicing pursuant to an agreement or understanding.
> "Transferor servicer" means a servicer, including a table-funding mortgage broker or dealer on a first- lien dealer loan, that transfers or will transfer the right to perform servicing pursuant to an agreement or understanding.

Here Citibank N.A. was the broker or dealer on the first-lien dealer loan and transferred the right to perform servicing to CitiMortgage *See* Ex H. to the Comp. The agreement transferred ownership of the loan to CitiMortgage (see term Master servicer[10] 1024.31).

15 U.S.C. § 1635(a) provides a statutory right to rescind "any consumer credit transaction". As defined under 15 U.S.C. § 1602(i) The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

In this instance Plaintiff is a consumer as defined under 15 U.S.C. 1602(i) which therefore affords him the right to rescind the March 15, 2019 "credit sale". A credit sale is defined under 15 U.S.C. § 1602(h) as "refers to any sale in which the seller is a creditor. The term includes any

---

[9] As noted on the face of the disclosure Cenlar is the new servicer. A new servicer obtains ownership of the debt obligation and has the rights of the holder who transferred it (UCC 3-301).
[10] The holder of a loan does not have to be the owner of the loan in order to transfer the loan (UCC 3-301).

18

contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract".

Here CitiMortgage is a creditor as evidenced by their own reporting to the credit reporting agency *See* Ex D. to the Comp, Moreover Cenlar admits that CitiBank N.A. dba CitiMortgage was the original lender *See* Ex A to the Comp. As such CitiMortgage ("creditor") was the seller of the March 15, 2019 consumer credit transaction. Therefore, Plaintiff has a statutory right to rescind the March 15, 2019 consumer credit transaction.

Defendant's claim that Plaintiff is currently in default of his loan and that Cenlar has rights to collect payment is patently false. Nevertheless, the Court has denied Defendant's mortgage claim when it stated "As discussed above, the documents attached to plaintiff's FAC, specifically, the March 15, 2019 notice of servicing transfer, demonstrate that his loan was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019. (See Ex. F.)" [sic] Dkt No. 25 page 7. Being that the Court determined the loan was not the transferee or assignee, Defendant's mortgage claim fails as a matter of law which precluded Cenlar from receive future payment.

In order to claim rights to the mortgage or the note Defendants must prove he has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced). Kluge v. Fugazy, 145 A.D.2d 537, 536 N.Y.S.2d 92 (2d Dep't. 1988) (absent the transfer of the debt (the note), assignment of the mortgage is a nullity). As such

19

Plaintiff is entitled to a judgment precluding Defendant's from impeding, enforcing title or collecting payment.

### 3. Plaintiff's FDCPA Claim Against Cenlar

Plaintiff sufficiently plead his FDCPA claim and provided substantial evidence in support of his claim. The March 15, 2019 consumer credit transaction provides sufficient evidence that Defendant is a new creditor. Pursuant to 15 U.S.C. § 1602(g)(2) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

The March 15, 2019 consumer credit transaction ("credit sale") is an agreement evidencing the indebtedness and security interest in Plaintiff's home. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576 (2010). Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006) (holding that entity satisfying the definition of "debt collector" falls under the FDCPA even if enforcing security interests). In this instance the disclosure provided was an attempt to mislead the consumer as to whether the transferee was the actual owner of the debt obligation or merely a servicing agent.

The record clearly shows Defendant Cenlar retaining partial interest in a security instrument secured by property which is used as the principal dwelling of the person to whom credit is extended. The record also shows that such interest arose by operation of law (UCC § 3-301). However, the debt obligation in question was pro tanto discharged as evident by the qualified

20

conditional indorsement in blank. Defendant Cenlar clearly misrepresented the status of Plaintiff's debt to the credit agencies and more alarming to this Court.

In *Anthony v. Fein, Such & Crane, LLC*, 5:15-CV-0452 (DNH/TWD) (N.D.N.Y. Sep. 28, 2016) The FDCPA provides that "any debt collector who fails to comply with any provisions of th[e] [Act] with respect to any person is liable to such person." 15 U.S.C. § 1692k(a). Successful plaintiffs may recover "actual damage[s]," plus costs and "a reasonable attorney's fee as determined by the court." Id. Emotional distress damages are among those recoverable as actual damages in cases alleging violation of the FDCPA. See Woods v. Sieger, Ross & Aguire, LLC, No. 11 Civ. 5698 (JFK), 2012 WL 1811628, at * 4, 2012 U.S. Dist. LEXIS 69972, at * 11- 12 (S.D.N.Y. May 18, 2012) (collecting cases) (finding $1,000 to fairly compensate Plaintiff who suffered feelings of fear, anxiety, panic, and nervousness, as well as stomach pains, sleep loss, and headaches," as a result of defendant's calls); Gervais v. O'Connell, Harris & Assoc., 297 F.Supp. 2d 435, 440 (D. Conn. 2003) (awarding $1,500 in emotional and mental distress damages).

Nevertheless, the Court has already determined that Defendants were neither an assignee or transferee hence Defendant's had no rights to claim the existence of the debt. That being said for 17 years CitiMortgage fraudulently claimed the existence of a debt and collected payment from Plaintiff. Such unconscionable behavior brings rise to TILA's statutory damages as well as punitive damages, emotional damages and actual damages. Defendants cannot be allowed to continue with such unscrupulous and depraved behavior so I plead to this Court to intervene immediately end such egregious acts.

### 4.  State Law Claim

The Court improperly dismiss Plaintiff's breach of contract, breach of fiduciary, conversion and adding and abetting fraud claim. The ("State Law Claim") are actually part of

21

Plaintiff's 1641(d) and (e) TILA claims which provides a consumer with a one-year period to commence an action for damages against an assignee or purchaser.

Although the Court determined that Defendants were neither transferee's or assignee's (which precludes Defendant's from enforcing or claiming rights to title or collecting payment) the Courts failed to opine or enter a judgment against Defendant's mortgage default claim which under controlling law, can't be maintained without a favorable finding on that issue, see Rule 52(c). Being that the Court determined that Defendants were not transferee's or assignee's nor did Defendants provide admissible evidence authorizing then to enforce the terms of the loan, Defendants are required by law to return all the proceeds received (deposit, closing cost, principal and interest).

**5. Leave to Amend**

Although Plaintiff believes his claims are sufficiently plead and Defendants Motion is defective. I would ask the Court to compel a statement of material fact from Defendant so that I may controvert each statement with a corresponding statement of my own. It is difficult to address any alleged defects or properly address a pleading when the opposing party fails to provide the requisite statement of fact which the non-moving party needs to controvert.

Both Local Rule 56.1 and 56.2 mandate Defendant to serve certain documents on Plaintiff. Rule 56.1 states that "there shall be annexed to the notice a separate, short concise statement, in numbered paragraph, of the material facts as to which the moving party contends there is no genuine issue to be tried". Rule 56.2 states that "Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion".

22

Based on your Honors decision in *Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019) it is evident that the Court understands the importance of strict compliance with Rule 56.1. Your Honor's failure to assure strict compliance with the rule threatens Plaintiff's equal protection under the law and his rights to due process.

Its' disheartening to hear the Court say that "plaintiff already had an opportunity to address the deficiencies in his original complaint that Cenlar identified in its motion to dismiss" [sic] Dkt No. 25 page 10. Defendant's failure to provide a statement of fact is the genesis of the deficient motion. Moreover, Defendant's failure to address Plaintiff's statement of facts should have resulted in the Court admitting all Plaintiff facts as truth (see Rule 56(e)(2)). A moving party's defective motion should not result in an unfavorable decision toward the non-moving party.

## CONCLUSION

There is no doubt that TILA requires certain disclosures with in three years of the consummation of any consumer credit transaction (operative words "any consumer credit transaction"). In this instance there are two consumer credit transaction related to Plaintiff's loan: the first is the November 7, 2002, the second is the April 1, 2019. An assignee/purchaser or transferee/purchaser is liable to the consumer for various violation on the face of the disclosure as determined under § 1640 or under § 1641. Moreover § 1641(d) allows a consumer to rescind a transaction as against any assignee of the obligation[11].

Under TILA a consumer has a private right of action against creditors, assignees and transferees in relation to any consumer credit transaction. The record shows that CitiMortgage and Cenlar entered a "credit sale" on March 15, 2019 and consummated said sale on April 1, 2019 See

---

[11] If the loan was entered in 2009 and the loan obligation is transferred each year thereafter until 2019, the consumer would have the right to rescind the transaction against the assignee of the 2019 transaction.

23

Ex. F to the Comp. As prescribed under 1635(a) Plaintiff has the right to rescind the April 1, 2019 consumer credit transaction as well as any relief under section 1640 of this title.

In addition, the record indicates that Defendant CitiMortgage was a prior owner of the Note evident by CitiMortgage's qualified indorsement in blank See Ex. F to the Comp, which would hold Defendants liable to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage[12].

Congress enacted TILA to address predatory lending activities such as: aggressive pursuit of loan recipients, targeting of high-risk borrowers who cannot easily obtain or repay loans, misrepresentation of loan terms, charges, and fees and other forms of consumer fraud, discrimination, loan packing and loan flipping. TILA provides two forms of recovery, the statue state that a civil action may be brought against an assignee only for violations apparent from the disclosure statement "[e]xcept as otherwise specifically provided in this subchapter." 15 U.S.C. § 1641(a) & (e) (1). But § 1641(c) is such an exception: it specifically provides that a customer has the right to rescind against "*any* assignee of the obligation," § 1641(c) (emphasis added), and not just against the more limited set of assignees described in § 1641(a) and (e) (1).

In this instance the face of the March 15, 2019 disclosure is belied by the other documents assigned or disclosed (the Note). The qualified indorsement in blank on the face of the Note indicates the discharge of the debt as prescribed under UCC § 3-802. Moreover, Plaintiff is entitled to commence a civil action against Defendants for any claim against the mortgage a consumer could assert against the creditor of the mortgage. As such Plaintiff is entitled to commence an action against Defendants for CitiBank's failure to pay the indebtedness as promised see UCC § 3-413.

---

[12] CitiBank N.A. is the creditor for the November 7, 2002 credit transaction.

24

Defendants fail to prove that they or third-party beneficiaries, assignee's or transferee's. Moreover, the Court determined that the Defendants or neither assignee's or transferee's which precludes Defendant from enforcing title or payment. The fact that CitiMortgage admitted to fraudulently collecting payment for 17 years evidence damages incurred by Plaintiff and is entitled to all amounts paid plus statutory damages and punitive damages of at least 10 time to actual damages to deter Defendant's action. The statutory scheme of TILA intends for these damages to be severable to hold each servicer liable for its actions and inspire servicers to review and police themselves.

As such Plaintiff respectfully ask this court to amend its findings dismissing this complaint and grant Plaintiff's claims in its entirety or in the alternative order a new trail.

Respectfully.

Signed this 10th day of January, 2022.

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

25

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ROGER ROWE,

                Plaintiffs,

  - against -

CENLAR LAB and CITIMORTGAGE, INC.,

                Defendant.
-----------------------------------------------------------------X

FILED
CLERK

1:34 pm, Dec 29, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**JUDGMENT**
CV 19-7278 (JMA)(AYS)

      A Memorandum and Order of Honorable Joan M. Azrack, United States District Judge,

having been filed on December 22, 2021, granting defendant's motion to dismiss the first

amended complaint with respect to plaintiff's TILA and FDCPA claims for failure to state a

claim pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court declines to retain

jurisdiction over plaintiff's remaining state law claims and dismisses those claims without

prejudice, denying plaintiff's request, in his opposition papers, for leave to "amend [his]

complaint a second time", denying *in forma pauperis* status for the purpose of any appeal, and

respectfully directing the Clerk of the Court to close this case, it is

      **ORDERED AND ADJUDGED** that plaintiff Roger Rowe take nothing of defendants

Cenlar Lab and CitiMortgage, Inc.; that defendants' motion to dismiss the first amended

complaint with respect to plaintiff's TILA and FDCPA claims are granted; that the Court

declines to retain jurisdiction over plaintiff's state law claims and dismisses those claims without

prejudice; that plaintiff's request for leave to amend his complaint for a second time is denied;

that *in forma pauperis* status for the purpose of any appeal is denied; and that this case is closed.

1

Dated: December 29, 2021
      Central Islip, New York

                                     DOUGLAS C. PALMER
                                     CLERK OF THE COURT
BY:   /s/ MARY ELLEN KIRCHNER
                                     DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------X

ROGER ROWE,

                Plaintiff,

         -against-

**MEMORANDUM AND ORDER**
19-CV-07278 (JMA) (AYS)

CENLAR FSB, CITIMORTGAGE, INC.,

              Defendants.

------------------------------------------------------------X

**FILED**
**CLERK**

3:18 pm, Dec 22, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Roger Rowe
   *Pro Se Plaintiff*

Lijue T. Philip
Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, New York 10017
   *Attorney for Defendants Cenlar FSB and CitiMortgage, Inc.*

**AZRACK, United States District Judge:**

     Plaintiff Roger Rowe ("plaintiff"), acting pro se, commenced this action against defendants Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (together, the "defendants") for allegedly violating federal and state laws in connection with a home mortgage refinancing. Plaintiff's first amended complaint seeks to rescind the loan he received from non-party CitiMortgage N.A. and to terminate the lien on the property. (First Amended Complaint ("FAC"), ECF No. 19.) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over the plaintiff's federal claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

     Before the Court is defendants' motion to dismiss the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court

1

grants defendants' motion as to plaintiff's federal claims and dismisses those claims with prejudice. Additionally, because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are dismissed without prejudice.

## I. BACKGROUND

### A. Factual Background[1]

On November 7, 2002, plaintiff entered into a Consolidation Extension and Modification Agreement ("Modification Agreement") with Citibank, N.A. in the amount of $157,500.00 (the "Loan") with respect to refinancing a mortgage on the property located at 20 Spruce Avenue, Amityville, New York (the "Property"). (FAC ¶¶ 9, 14, Ex. B.) On that same date, plaintiff signed a Truth-in-Lending Disclosure Statement with regard to the Loan. (FAC, Ex. L.) Pursuant to a notice of servicing transfer dated March 15, 2019, effective April 1, 2019, Cenlar began servicing plaintiff's Loan on behalf of CitiMortgage. (FAC, Ex. F.) Plaintiff claims that he was informed of the transfer of servicing rights on or about July 12, 2019. (FAC ¶ 15.)

Plaintiff failed to make the June 2019 and July 2019 monthly payments on the Loan. (Ex. A.) At that time, Federal National Mortgage Administration ("FNMA") was the current owner of plaintiff's Loan. (FAC ¶ 10, Ex. A.) On October 21, 2019, claiming TILA violations, plaintiff purported to rescind the Loan by sending Cenlar a notice of rescission. (FAC, Ex. C.)

### B. Procedural Background

Plaintiff commenced an action against Cenlar on December 30, 2019 alleging violations of TILA, the FDCPA, the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and various state law

---

[1] The following facts are taken from plaintiff's FAC and the exhibits attached thereto, and are undisputed, unless otherwise indicated. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). The factual allegations in the FAC are presumed true for purposes of resolving the defendants' motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010).

2

claims. (ECF No. 1.) On April 28, 2020, Cenlar filed a motion to dismiss plaintiff's complaint. (ECF No. 11.) After the motion was fully briefed by both parties (ECF Nos. 12, 13), on August 6, 2020, plaintiff filed a motion to amend the complaint. (ECF No. 14.) By docket entry order dated March 15, 2021, the Court granted plaintiff's motion to amend the complaint and denied Cenlar's motion to dismiss as moot. (Electronic Order, March 15, 2021.) On March 22, 2021, plaintiff filed his FAC alleging violations of TILA, as well as state law claims for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud against Cenlar and CitiMortgage. The FAC also alleges a FDCPA claim against Cenlar. As relief, plaintiff requests that the Court declare the Loan void; and demands the return of monies paid, damages, costs and attorney fees. On August 11, 2021, defendants filed a fully briefed motion to dismiss on behalf of all parties. (ECF No. 24.)

## II. DISCUSSION

### A. **Standard of Review**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). A court may also consider materials attached

3

to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira, 380 F.3d at 67.

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

**B. Plaintiff's TILA Claims Against Both Defendants**

Plaintiff alleges that defendants violated TILA and its implementing regulation, Regulation Z, by failing to provide adequate disclosures and seeks damages and rescission of the Loan. (FAC ¶¶ 28-35.)

Defendants contend that TILA is inapplicable to them as neither defendant is an owner or assignee of the Loan, and further argues that plaintiff's right to rescind is time-barred. (Defs. Br., ECF No. 24-1 at 7-9.)[2] The Court agrees.

**1. Damages Claim**

TILA provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added). Similarly, Regulation Z, which is the "regulatory vehicle through which TILA is implemented," McLean-Laprade v. HSBC, No. 12-CV-1774, 2013 WL 3930565, at *8 (W.D.N.Y. July 30, 2013), requires that a "covered person" —defined as any person "that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through

---

[2] For ease of reference, the Court refers to the electronic document filing system ("ECF") pagination.

4

purchase, assignment or other transfer. . ." — is required to provide a disclosure regarding the transfer of the mortgage.  12 CFR 1026.39(a)(1), (b).

Here, plaintiff claims that defendants violated § 1641(g)(1) and Regulation Z when they allegedly failed to provide him with notice of the mortgage transfer and the requisite notice of rescission.  (FAC ¶¶ 30-32; Pl. Opp. Br., ECF No. 24-4 at 10, 15-17.)  However, as the servicer and subservicer of the Loan, CitiMortgage and Cenlar, respectively, had no ownership interest in the Loan itself.  See § 1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.")  The Loan Modification Agreement provides that Citibank N.A. was the original creditor of plaintiff's Loan.  (FAC, Ex. B at 67.)  Pursuant to the notice of servicing transfer, attached to plaintiff's complaint, effective April 1, 2019, CitiMortgage transferred its servicing rights to Cenlar as subservicer of the Loan.  (FAC, Ex. F.)  Therefore, §1641(g)(1) and its Regulation Z are inapplicable to Cenlar and CitiMortgage as they are loan servicers and not "owner[s] or assignee[s]" of the Loan.  See Thrane v. Litton Loan Servicing LP, No. 08-CV-4149, 2009 WL 9121140, at *2 (E.D.N.Y. Oct. 27, 2009) (dismissing TILA claim against mortgage loan servicer when it was "not now and has never been an assignee of the [ ] loan"); Blaize–Sampeur v. McDowell, No. 05-CV-4275, 2006 WL 3903957, at *3 n. 4 (E.D.N.Y. Oct. 18, 2006) (finding TILA did not apply to loan servicing company).

In fact, according to plaintiff's own allegations, non-party, FNMA is the transferee of the Loan.  (FAC ¶ 10.)  Thus, only FNMA, as the "new owner or assignee," would have been obligated to notify plaintiff of the transfer of ownership.  See § 1641(g)(1).  As loan servicers, neither Cenlar nor CitiMortgage was required to disclose the transfer of the Loan to third party FNMA.

5

-PA 300-

Therefore, plaintiff fails to state a TILA claim for damages against either defendant and his claim is dismissed.

### 2. Rescission Claim

Plaintiff claims that he rescinded the Loan on October 21, 2019 in accordance with TILA. (FAC ¶ 33, Ex. C.)

Defendants contend that plaintiff's claim for rescission is time-barred. (Defs. Br. at 7-8.) The Court agrees.

TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from three days to three years if the lender fails to provide notice of the borrower's right of rescission or fails to make a material disclosure. See § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."); Beach v. Ocwen Fed. Bank, 523 U.S. 410, 419 (1998).

Pursuant to plaintiff's FAC, the Loan transaction occurred on November 7, 2002. (FAC ¶ 9.). The fully executed Truth-in-Lending Disclosure Statement attached to plaintiff's complaint is also dated November 7, 2002. (FAC, Ex. L.) Therefore, plaintiff's right to rescind the Loan expired on November 10, 2002. See § 1635(a). However, even if, as plaintiff suggests, he was not provided with the Truth-in-Lending Disclosure Statement on November 7, 2002, plaintiff's right to rescission would have expired three years after the date of consummation of the Loan, on or about November 7, 2005 — fourteen years prior to plaintiff's alleged rescission on October 21, 2019. See § 1635(f).

6

Plaintiff refers to the April 1, 2019 loan servicing transfer to Cenlar as a "credit sale" and considers Cenlar "the new creditor" in this alleged "transfer of ownership of the debt." (Pl. Opp. Br. at 12, 15; see FAC ¶¶ 30, 45.) Therefore, plaintiff claims, his right to rescind was extended three years from April 1, 2019 to April 1, 2022 due to defendants' alleged failure to provide him with "the required disclosure and or notice of his right to rescind." (Pl. Opp. at 10, 19.) However, Plaintiff is incorrect.

As discussed above, the documents attached to plaintiff's FAC, specifically, the March 15, 2019 notice of servicing transfer, demonstrate that his loan was not transferred or assigned to defendants, but rather, the loan servicing rights were transferred from CitiMortgage to Cenlar as of April 1, 2019. (See Ex. F.) Plaintiff fails to properly plead that the ownership interest in plaintiff's Loan was assigned or transferred to either defendant. Thus, because plaintiff's right to rescind expired, at the latest, three years from the November 7, 2002 Loan consummation, plaintiff's claim of rescission is untimely.[3] Accordingly, as plaintiff fails to state a claim for rescission pursuant to TILA, his claim is dismissed.

## C. **Plaintiff's FDCPA Claim Against Cenlar**

The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Under the FDCPA, "debt collectors" are persons engaged in "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The FDCPA explicitly excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted

---

[3] Additionally, the Court notes that because TILA's statute of limitation for damages is one-year from the date of the alleged violation, 15 U.S.C. § 1640(e), any claim for damages with respect to an alleged Truth-in-Lending violation would also be time-barred.

7

to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." Id. § 1692a(6)(F). Thus, "[a] mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt." Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017); Diaz v. Residential Credit Sols., Inc., 297 F.R.D. 42, 49 (E.D.N.Y. 2014) (The actions of a mortgage servicer are only covered under the FDCPA "if the debt at issue was acquired after the customer or debtor defaulted on the loan in question."); Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 415-16 (E.D.N.Y. 2013) (holding that a mortgage servicer was not a "debt collector" because the plaintiff was not in default when the servicer began servicing the mortgage).

Plaintiff fails to sufficiently allege that Cenlar is a "debt collector" subject to liability under the FDCPA. The exhibits attached to plaintiff's complaint demonstrate that the Loan was not in default until June 2019, two months after Cenlar began servicing the Loan. (See Ex. A, F.) As plaintiff's allegations are insufficient to establish that Cenlar obtained the Loan when it was in default, plaintiff fails to allege that Cenlar was a debt collector within the meaning of the FDCPA. See Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 88 (2d Cir. 2003) ("[A]n entity cannot be a debt collector unless the debt it attempts to collect is in default.") (citing 15 U.S.C. § 1692a(6)(F)(iii)); Zirogiannis, 221 F. Supp. 3d at 302-03 (finding a complaint insufficient to survive dismissal where the plaintiff failed to plead that the alleged debt collector became a loan servicer after the disputed debt entered default). Therefore, plaintiff fails to state a claim against Cenlar arising under the FDCPA. Accordingly, plaintiff's FDCPA claim against Cenlar is dismissed.

**D. State Law Claims**

Plaintiff asserts state law claims against both defendants for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud.

Where no federal claims remain in an action, and diversity jurisdiction is lacking, a district court is not required to retain jurisdiction of remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [ ] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) . . ., courts should 'abstain from exercising pendent jurisdiction.'" Birch v. Pioneer Credit Recovery, Inc., No. 06-CV-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)).

Having determined that plaintiff's federal claims in this action do not survive defendants' motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. See § 1367(c)(3). Accordingly, the Court dismisses plaintiff's state law claims without prejudice.

**E. Leave to Amend**

In his opposition papers, plaintiff requests leave to "amend [his] complaint a second time." (See Pl. Affirmation in Opp. to Defs. Mot., ECF No. 24-6 at 7.)

"A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (internal quotation marks omitted)). However, while "pro se

9

plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Id. (citations omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). Moreover, while amendments to pro se complaints should be granted "fairly freely," even pro se litigants are not entitled to unlimited opportunities to amend their pleadings. Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980) (citation omitted); Best v. City of N.Y., No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

The Court has carefully considered whether leave to amend is warranted here. Notably, plaintiff has already amended his complaint once and was able to review defendants' motion to dismiss prior to filing his amended complaint. Thus, plaintiff already had an opportunity to address the deficiencies in his original complaint that Cenlar identified in its motion to dismiss. That alone is reason to deny leave to amend here. Additionally, even a liberal reading of the FAC does not give any indication that a valid claim might be stated by plaintiff. Accordingly, leave to amend the FAC is denied.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to plaintiff's TILA and FDCPA claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses those claims without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

10

The Clerk of the Court is directed to send a copy of this Order to the pro se plaintiff

and mark this case closed.

**SO ORDERED.**

Dated:  December 22, 2021
        Central Islip, New York

                                   /s/ (JMA)
                                   JOAN M. AZRACK
                                   UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROGER ROWE, | |
| Plaintiff, | |
| v. | Case No.: 2:19-cv-7278-JMA-AYS |
| CENLAR FSB; CITIMORTGAGE, INC., | |
| Defendants. | |

## MOTION OF DEFENDANTS CENLAR FSB AND CITIMORTGAGE, INC. TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

Defendants, Cenlar FSB and CitiMortgage, Inc., hereby move for the dismissal of the First Amended Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In support of this Motion, Defendants incorporate by reference the accompanying Memorandum of Law. A proposed Order is attached.

Dated: June 17, 2021  STRADLEY RONON STEVENS & YOUNG, LLP
New York, NY

By:   /s/ Lijue T. Philip

Lijue T. Philip
100 Park Avenue, Suite 2000
New York, New York 10017
Telephone: (212) 812-4124
Facsimile: (646) 682-7180
LPhilip@stradley.com

*Counsel for Cenlar FSB and CitiMortgage, Inc.*

5025132v.2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

    v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)

5025132v.2

## TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ........................................................................1

II.    FACTUAL BACKGROUND .......................................................1

III.   ARGUMENT ...............................................................................2

    A.    Legal Standard ...................................................................2

    B.    Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred...............3

    C.    Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA ....................................................................................4

    D.    Plaintiff Fails To State A Claim For Breach of Contract.....................5

    E.    Plaintiff Fails To State A Claim For Breach of Fiduciary Duty .................7

    F.    Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage ....................................................................8

        1.    Plaintiff Fails To State A Claim For Common Law Conversion.....8

        2.    Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC .........................................................................9

    G.    Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector........10

    H.    Plaintiff Fails To State A Claim For Aiding And Abetting............................11

    I.    Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile ...........................12

IV.   CONCLUSION ...........................................................................13

i

5025132v.2

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beach v. Ocwen Federal Bank*,
    523 U.S. 410, 118 S.Ct. 1408 (1998)...............................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................2

*Dougherty v. North Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002)............................................................................12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F.Supp.2d 162 (2d Cir. 2011) ..................................................................7

*Fed. Deposit Ins, Corp. v. Wilson*,
    11-CV-0065, 2013 WL 1236864 (E.D. N.Y. Mar. 26, 2013)........................11

*Hourani v. Wells Fargo Bank, N.A.*,
    158 F.Supp.3d 142 (E.D. N.Y. Feb. 1, 2016) .................................................8

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
    923 F.Supp.2d 430 (E.D. N.Y. Feb. 14, 2013) ...............................................6

*Prezzi v. Schelter*,
    469 F.2d 691 (2d Cir. 1972)............................................................................3

*Qurashi v. Ocwen Loan Servicing, LLC*,
    *760 Fed.Appx. 66 (2d Cir. 2019)* .................................................................10

*RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*,
    156 Fed.Appx. 349 (2d Cir. 2005)..................................................................6

*Roth v. CitiMortgage, Inc.*,
    756 F.3d 178 (2d Dept. 2014).......................................................................10

*Shoemaker v. State of Cal.*,
    101 F.3d 108 (2d Cir. 1996)............................................................................3

*Thyroff v. Nationwide Mut. Ins. Co.*,
    360 Fed.Appx. 179 (2d Cir. 2010)..................................................................8

*Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.*,
    87 N.Y.2d 36, 660 N.E.2d 1121 (1995)...........................................................8

5025132v.2

## Statutes

15 U.S.C. § 1635(a) ......................................................................................3, 4, 12

15 U.S.C. § 1635(f) ...........................................................................................3, 4

15 U.S.C. § 1640 ..................................................................................................4

15 U.S.C. § 1641(g) ...........................................................................................4, 5

FDCPA......................................................................................................1, 10, 11

NY UCC § 3-201(3)...........................................................................................9, 11

NY UCC § 3-204(2)...........................................................................................9, 11

NY UCC § 3-419 ..................................................................................................9

TILA ..................................................................................................................1, 3

UCC ...........................................................................................................8, 9, 10

## Other Authorities

12 C.F.R. § 1026.39 ..............................................................................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................1, 2, 12, 13

Federal Rules of Civil Procedure Rule 8 .................................................................3

5025132v.2

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law in support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I. **INTRODUCTION**

In response to Cenlar's motion to dismiss his complaint, Plaintiff sought and was granted leave to amend his complaint. However, the complaint as amended does not resolve any of the issues Cenlar raised in its first motion to dismiss and dismissal remains appropriate. Plaintiff reasserts her cause of action to rescind his mortgage loan pursuant to the Truth in Lending Act ("TILA"), but does so nearly fourteen years too late. Plaintiff alleges that the defendants are guilty of breach of contract, but fail to allege the existence of a contract between the parties. Plaintiff alleges that defendants "converted" a security agreement by not returning it upon demand, but demonstrates by his own complaint that he made no such demand. Plaintiff alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), but fails to allege that either Cenlar or CitiMortgage are debt collectors. Indeed, he affirmatively proves the contrary by the allegations in his own complaint. Accordingly, Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## II. **FACTUAL BACKGROUND**

On or about November 7, 2002, Plaintiff entered into a Consolidation Extension and Modification Agreement ("CEMA") with Citibank, N.A. (the "Loan"), which created a single lien in the amount of $157,500.00 on the property known as 20 Spruce Road, Amityville, New York 11701-1019 (the "Property"). *See* First Amended Compl. ("Compl."), Ex. B. Plaintiff signed a Truth in Lending Disclosure Statement at the time he signed the CEMA on November 7, 2002. *See* Compl., Ex. L.

5025132v.2

Effective April 1, 2019, Cenlar began subservicing the Loan on behalf of CitiMortgage. *See* Compl., Ex. F. A little more than three months after this service transfer, Plaintiff fell two months behind on his monthly payments on the Loan, with payments for both June 2019 and July 2019 due as of July 12, 2019. *See* Compl., Ex. A.

Plaintiff claims to have rescinded the Loan pursuant to TILA by correspondence dated October 21, 2019. *See* Compl., Ex. C. Notably, this was nearly twelve years after Plaintiff entered into the CEMA and signed the Truth in Lending Disclosure Statement. Likewise, Plaintiff makes no claim that he returned the proceeds from the Loan or transferred title to the Property to the holder of the CEMA.

For the reasons set forth below, Plaintiff's Complaint fails to state a claim and should be dismissed with prejudice.

## III.   ARGUMENT

### A.    Legal Standard.

A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim if it does not contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Further, a complaint must contain more than unsupported legal conclusions. *See id.* at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

"[A] complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (internal citations and quotations omitted).

2

5025132v.2

A pro se plaintiff is typically afforded liberal pleading standards, however a pro se plaintiff must still comply with Rule 8 in order to survive a motion to dismiss. *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996).

Here, Plaintiff is unable to plead the elements of the three claims he asserts against Defendants, and Plaintiff's Complaint should therefore be dismissed with prejudice.

## B.     Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago. Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature. Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement. Plaintiff's claim is not supported by either the facts as he alleges them or the law.

15 U.S.C. § 1635(a) provides that,

> in the case of any consumer credit transaction…in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Bureau, of his intention to do so.

The time to rescind is governed by 15 U.S.C. § 1635(f), which states, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, *notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor…*" (emphasis added). *See also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998). Generally, a cause of action pursuant to TILA seeking

3

5025132v.2

damages must be brought "within one year from the date of the occurrence of the violation..." 15 U.S.C. § 1640.

In commencing this action, Plaintiff alleges that the Loan at issue originated on November 7, 2002. *See* Compl. ¶ 9. Further, Plaintiff himself annexes a copy of the Truth in Lending Disclosure Statement bearing his signature and dated November 7, 2002 to his First Amended Complaint. *See* Compl., Ex. L. Thus, Plaintiff had until November 10, 2002 to rescind the Loan and did not do so. By Plaintiff's inclusion of this signed disclosure form, he defeats his own claim for rescission as well as for damages for the failure to provide the disclosure. Assuming *in arguendo* that Plaintiff did not receive the Truth in Lending Disclosure Statement – which is inconceivable in light of Plaintiff's signature and his decision to annex the document to his First Amended Complaint – Plaintiff still had until November 6, 2005 to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely. Similarly, Plaintiff's cause of action for damages would have accrued on November 7, 2002, when he was entitled to said disclosures and would be time-barred on November 6, 2003, pursuant to 15 U.S.C. § 1640. Accordingly, Plaintiff's claims under TILA should be dismissed.

### C. Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.

Plaintiff alleges that Cenlar and CitiMortgage violated 15 U.S.C § 1641(g) of TILA when both allegedly failed to inform him of the transfer of the Loan to Federal National Mortgage Association ("FNMA"). However, both section 1641(g) of TILA and its corresponding regulatory section demonstrate that neither Cenlar nor CitiMortgage are guilty of any such violation.

15 U.S.C. 1641(g)(1) provides that, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, *the creditor that is the*

4

*new owner or assignee* of the debt shall notify the borrower in writing of such transfer..." (emphasis added).

Further, the related regulatory provision of TILA, 12 C.F.R. § 1026.39(a)(1), defines a "covered person" having such a disclosure obligation as any person "that becomes the *owner* of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer..." (emphasis added). 12 C.F.R. § 1026.39(b) goes on to specify that any such covered person is required to provide a disclosure regarding the transfer of the mortgage loan.

Plaintiff's own complaint demonstrates that 15 U.S.C. § 1641(g) is not applicable to either Cenlar or CitiMortgage. Plaintiff asserts that CitiMortgage and Cenlar violated 15 U.S.C § 1641(g) when both allegedly failed to disclose that the Loan was transferred to FNMA. *See* Compl. ¶ 16. However, the statute on which Plaintiff relies places the onus not upon Defendants but rather upon "the creditor that is the new owner or assignee..." 15 U.S.C. § 1641(g)(1). Similarly, 12 C.F.R. § 1026.39(a)(1) places the requirement on the *transferee* of the mortgage loan. Taking Plaintiff's allegation as true for the purposes of this motion, FNMA – not Cenlar or CitiMortgage – would be the creditor and/or transferee under 15 U.S.C. § 1641(g)(1) and thus the "covered person" under 12 C.F.R. § 1026.39(a)(1). *See* Compl. ¶ 10.

Therefore, Plaintiff fails to state a claim pursuant to TILA against either Cenlar or CitiMortgage under 15 U.S.C. § 1641(g) where Plaintiff's own complaint establishes neither were the owner or assignee of the Loan or "covered persons" as contemplated under the regulation.

### D. Plaintiff Fails To State A Claim For Breach of Contract.

Plaintiff alleges that Cenlar and CitiMortgage have breached their contract with Plaintiff. However, Plaintiff himself demonstrates that there is no actual contract between the parties to this action. In the absence of this very first element, Plaintiff fails to state a claim for breach of contract.

5

5025132v.2

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 156 Fed.Appx. 349, 350 (2d Cir. 2005). Generally speaking, a loan servicer cannot be held liable for breach of contract in the absence of an independent contract with the plaintiff unless there is an allegation of an agency relationship. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 451 (E.D. N.Y. Feb. 14, 2013) (breach of contract action dismissed against loan servicer in the absence of an independent contractual relationship or an alleged agency relationship with a party in privity).

Plaintiff fails to set forth the existence of a contract as between CitiMortgage and/or Cenlar and himself. The "contract" Plaintiff points to is the note and mortgage between Plaintiff and Citibank, N.A. *See* Compl. ¶ 62. Plaintiff does not allege either Cenlar or CitiMortgage are parties to this contract and a review of the agreements fail to show any privity. Further, while Plaintiff alleges that, "[a]s evident by the indorsement on the Note, Citibank, N.A. materially changed the contract when it added CitiMortgage and Cenlar as a party's (sic)" (*Id.* at ¶ 68), a review of the indorsements fail to support such a claim. Neither note included in the complaint are indorsed in favor of either Cenlar or CitiMortgage. In the absence of an independent contractual relationship between Plaintiff and Cenlar and/or CitiMortgage and the allegation of any agency relationship, Plaintiff fails to state a claim for breach of contract.

Notwithstanding Defendants' lack of privity to the contract at issue, Plaintiff does not even allege a breach on Defendant's part. Plaintiff alleges, "Citibank N.A. breached the contract when they negligently altered the contract by means of an unauthorized signature which resulted in the sale of Plaintiff (sic) mortgage obligation. Citibank N.A. did not get Plaintiff's authorization to

5025132v.2

sale (sic) Plaintiff's collateral or associated debt obligation." Compl. ¶ 65. Plaintiff's claims are clearly targeted at Citibank, N.A., which he readily admits is a "non party (sic) to this action". *See* Compl. ¶ 9. Plaintiff does not otherwise allege how Cenlar and/or CitiMortgage would be liable for actions which it alleges Citibank N.A. undertook. Therefore, Plaintiff fails to sufficiently allege that it was Defendants which breached the terms of the note or mortgage.

Finally, even if Cenlar and/or CitiMortgage were subject to claims that Plaintiff makes solely against Citibank, N.A., Plaintiff still does not establish a breach. As noted, Plaintiff claims that Citibank, N.A. indorsed and negotiated the note without his prior consent. *See* Compl. ¶ 65. However, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, indorsement and negotiation of the note without Plaintiff's prior consent was contemplated and agreed to by the parties to the mortgage. Plaintiff fails to establish the existence of a breach of the note or mortgage.

### E.    Plaintiff Fails To State A Claim For Breach of Fiduciary Duty.

Interwoven in his claim for breach of contract, Plaintiff alleges that Cenlar and CitiMortgage breached their respective fiduciary duties to Plaintiff. However, Plaintiff fails to demonstrate the existence of a contractual relationship amongst the parties and any other sort of relationship which could give rise to a fiduciary obligation. In the absence of any such relationship, there cannot be a breach of a fiduciary duty.

"To state a claim for breach of fiduciary duties under New York law, a plaintiff must establish: '(1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 191 (2d Cir. 2011). Further, "[u]nder New York law, 'absent specific contractual language or circumstances

7

5025132v.2

to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor.'" *Hourani v. Wells Fargo Bank, N.A.*, 158 F.Supp.3d 142, 148 (E.D. N.Y. Feb. 1, 2016).

As noted above, Plaintiff relies upon the note and mortgage as the basis for his contractual claim. *See* Compl. ¶ 62. Neither Cenlar nor CitiMortgage are parties to either the note or mortgage. *See* Compl., Ex. B. Plaintiff does not allege any other relationship between Cenlar, CitiMortage and himself which would give rise to a fiduciary relationship. Accordingly, in the absence of a fiduciary relationship, there can be no claim for a breach of a fiduciary duty.

**F.** **Plaintiff Fails To State A Claim For Conversion Against Cenlar Or CitiMortgage.**

Tied to his factually and legally incorrect claim that he rescinded the Loan, Plaintiff claims that Cenlar and CitiMortgage converted "the security instrument" by failing to return it upon demand. However, the very evidence Plaintiff includes in his complaint demonstrates (1) he did not rescind the Loan, (2) he did not demand return of a security instrument and (3) that the indorsement of a promissory note pursuant to the UCC does not amount to conversion.

**1.** **Plaintiff Fails To State A Claim For Common Law Conversion.**

Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *See Vigiliant Ins. Co. of America v. Housing Authority of City of El Paso, Tex.*, 87 N.Y.2d 36, 660 N.E.2d 1121 (1995). Generally speaking, conversion does not occur until the defendant has refused to return property after demand or until he sooner disposes of it. *See Thyroff v. Nationwide Mut. Ins. Co.*, 360 Fed.Appx. 179, 180 (2d Cir. 2010).

By the First Amended Complaint, Plaintiff alleges that, "Cenlar's failure to return the security instrument on demand resulted in an act of conversion." Compl. ¶ 38. Plaintiff claims

8

5025132v.2

that the demand occurred by virtue of the October 21, 2019 letter. *See* Compl. ¶ 41. Notably, this correspondence is the basis for Plaintiff's claim of rescission pursuant to TILA, which Defendants have already demonstrated to be ineffective. Thus, Plaintiff had no authority to "demand" return of the security instrument to begin with. Notwithstanding, a review of the October 21, 2019 correspondence fails to reveal any explicit demand for the return of a security instrument. *See* Compl. Ex. C. In the absence of a demand, Plaintiff fails to state a claim for conversion.

> **2.      Plaintiff Fails To State A Claim For Conversion Pursuant To The UCC.**

Pertinent to this action, NY UCC § 3-419(1)(b) – (1)(c) provides, "[a]n instrument is converted when…any person to whom it is delivered for payment refuses on demand either to pay or to return it; or it is paid on a forged indorsement."

Though it was not terribly clear in his original complaint, nor is it any clearer in his amended complaint, Plaintiff seemingly alleges that CitiBank, N.A. committed "forgery" when it endorsed the November 7, 2002 promissory note in blank. *See* Compl. ¶¶ 23 – 24, Ex. F. This claim fails as a matter of law. NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank. Plaintiff himself admits that the payee of the November 7, 2002 note was CitiBank, N.A., a fact clear on the face of the promissory note itself. *See* Compl. ¶ 9, Ex. F. Thus, CitiBank, N.A. was free to indorse the promissory note in blank pursuant to the UCC. Further, Plaintiff does not allege that CitiBank, N.A. did not authorize the indorsement. Instead, Plaintiff alleges the indorsement is a forgery because Plaintiff's did not authorize CitiBank N.A. to indorse the promissory note. *See* Compl. ¶ 50. However, the UCC contains no requirement for a payor of an instrument to agree to negotiation. Plaintiff fails to state a claim of conversion under the UCC for forgery.

5025132v.2

Plaintiff's claim of failure to return an instrument upon demand fairs no better. Plaintiff claims that Cenlar failed to return "the security instrument" on demand, which resulted in conversion. *See* Compl. ¶ 38. Plaintiff claims that the return was demanded by way of his Notice of Rescission. *See* Compl., Ex. C. However, reviewing the Notice of Rescission in a light most favorable to Plaintiff, it only demands the "return of any money or property that has been given to anyone in connection with the transaction..." *Id.* Setting aside the utterly vague nature of this demand, there is no clear demand made for any negotiable instrument as contemplated under the UCC. Notably, the security instrument (in the case the mortgage) is not a negotiable instrument under the UCC. Regardless, in the absence of any such demand, Plaintiff's conversion claim pursuant to the UCC fails against both Cenlar and CitiMortgage.

### G.   Plaintiff's FDCPA Claim Fails Because Cenlar is not a Debt Collector.

Plaintiff's claim under the FDCPA, which is asserted solely as against Cenlar, fails because Plaintiff does not allege that Cenlar is a debt collector as defined by the FDCPA.

A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66, 68 (2d Cir. 2019) ("A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status."). Moreover, a complaint that "does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default...fails to plausibly allege that [the servicer] qualifies as a debt collector under FDCPA." *Roth v. CitiMortgage, Inc.*, 756 F.3d 178, 183 (2d Dept. 2014).

Plaintiff's Complaint identifies Cenlar as the sub-servicer of Plaintiff's loan. *See* Compl. ¶ 21. Plaintiff makes no claim that either CitiMortgage or Cenlar began servicing the debt after it fell into default. In fact, Plaintiff does not claim that the loan is in default. Further, Plaintiff

10

5025132v.2

includes correspondence to the First Amended Complaint establishing that Cenlar began sub-servicing the loan effective April 1, 2019[1] (*See* Compl., Ex. F), a payment history confirming the loan was current at that time (*See* Compl., Ex. G) and correspondence supporting that it wasn't until after Cenlar began subservicing that Plaintiff fell behind (*See* Compl., Ex. A). Accordingly, Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed.

**H.   Plaintiff Fails To State A Claim For Aiding And Abetting.**

Plaintiff claims that Cenlar and CitiMortgage aided and abetted in the fraudulent indorsement of the note. Plaintiff does not claim that the indorsement of the note was obtained fraudulently or that the signature was forged, but instead that the indorsement of the note itself is a fraudulent act and that Cenlar and CitiMortgage aided and abetted in it. Plaintiff is incorrect.

"The elements of a claim for aiding and abetting fraud are, 'the existence of a fraud, defendant's knowledge of the fraud, and that the defendant providing substantial assistance to advance the fraud's commission.'" *Fed. Deposit Ins, Corp. v. Wilson*, 11-CV-0065, 2013 WL 1236864 *5 (E.D. N.Y. Mar. 26, 2013).

Plaintiff seemingly alleges that the indorsement of a note in this Loan amounts to fraud. *See* Compl. ¶¶ 119 – 120. However, as noted above, NY UCC § 3-201(3) provides that a note may be transferred by indorsement and NY UCC § 3-204(2) specifically provides that whomever a note is made payable to may subsequently indorse the note in blank. Further, the mortgage Plaintiff signed specifically stated, "[t]he Note or an interest in the Note, together with this Security

---

[1] __While Plaintiff claims that this notice indicated that Cenlar was collecting its own debt (*See* Compl. ¶ 111), in fact the notice specifically states that Cenlar has entered into an agreement with CitiMortgage "to perform various functions" and that the servicing of the loan is transferring to Cenlar. *See* Compl., Ex F.

11

5025132v.2

Instrument, may be sold one or more times. I may not receive any prior notice of these sales." *See* Compl., Ex. B. Thus, beyond the statutory authority to negotiate the note, Plaintiff explicitly assented to a sale of the obligation and agreed that he need not be consulted. CitiBank, N.A. exercising this contractual right cannot be viewed as fraudulent.

Thus, where the indorsement and negotiation of the note is not itself fraudulent, there can be no cause of action against either Cenlar or CitiMortgage for aiding and abetting.

**I.      Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Because Doing So Would Be Futile.**

Plaintiff should not be permitted to amend the Complaint a second time because the deficiencies in Plaintiff's Complaint cannot be remedied by an amendment. This is evident because Plaintiff was already granted one amendment and asserted a complaint containing the exact same deficiencies as before.

Plaintiff's attempt to rescind the Loan was almost seventeen years after origination and was not coupled with any return of the loan proceeds. No amendment could ever change that reality. *See* 15 U.S.C. § 1635(a). Further, each of the remaining causes of action relate to an alleged rescission which was significantly untimely. A proposed amended complaint that would not withstand a Rule 12(b)(6) motion to dismiss would be considered futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Therefore, the Court should dismiss the Complaint with prejudice against Defendant.

12

5025132v.2

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.

Dated:   June 17, 2021               STRADLEY RONON STEVENS & YOUNG, LLP
         New York, NY                A Pennsylvania Limited Liability Company

                                     By:   /s/ *Lijue T. Philip*
                                           Lijue T. Philip
                                           100 Park Avenue, Suite 2000
                                           New York, New York 10017
                                           Telephone: (212) 812-4124
                                           Facsimile: (646) 682-7180
                                           LPhilip@stradley.com

                                           *Counsel for Cenlar FSB & CitiMortgage,*
                                           *Inc.*

13

5025132v.2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

    v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

## ORDER

AND NOW, on this _____ day of _____, 2021, upon consideration of the Motion of Defendants, Cenlar FSB and CitiMortgage, Inc., to dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Brief in support thereof, any response thereto, and any argument thereon, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED.

It is further ORDERED that the Complaint in this action is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

Honorable Joan M. Azrack

5025132v.2

## CERTIFICATE OF SERVICE

I, hereby certify that on June 17, 2021, I caused the foregoing document to be served on the below by First Class Mail:

> Roger Rowe
> 20 Spruce Rd
> Amityville, New York 11701

> s/ *Lijue T Philip*_____
> Lijue T. Philip

5025132v.2

Case 22-1870, Document 39, 12/12/2022, 3441838, Page96 of 220

Case 2:19-cv-07278-JMA-AYS Document 24-4 Filed 08/11/21 Page 1 of 31 PageID #: 739
Case 2:19-cv-07278-JMA-AYS Document 27 Filed 01/10/22 Page 96 of 136 PageID #: 868

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Roger Rowe

      Plaintiff(s)                            2:19-cv-07278-JMA-AYS

  -v-

Cenlar FSB

      Defendant(s)

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

1

Case 22-1870, Document 39, 12/12/2022, 3441838, Page97 of 220

Case 2:19-cv-07278-JMA-AYS   Document 24-4   Filed 08/11/21   Page 2 of 31 PageID #: 740
Case 2:19-cv-07278-JMA-AYS   Document 27   Filed 01/10/22   Page 81 of 136 PageID #: 869

I. BACKGROUND                                                                  1

II. LEGAL STANDARD                                                             2

III. TILA DISCLOSURE VIOLATION                                                 4

    1.  RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION                        4

    2.  RIGHTS TO RESCISSION                                                 8

    3.  NOTICE OF MORTGAGE TRANSFER                                          9

    4.  REQUIREMENTS FOR CERTAIN MORTGAGE                                   10

    5.  PARTIAL INTEREST                                                    11

IV. DAMAGES RELATED TO TILA VIOLATIONS                                        17

V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION                              23

VI. FDCPA VIOLATION                                                           24

CONLUSION                                                                     25

2

## Cases

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)                                                   2

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)                                           2

Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002)              25

Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991)                     9

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007)                                         3

Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012)                                 17

Fowler v. U.S. Bank,  F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014)                       17

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)                                                  3

Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015                         9

Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996)                             5

Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002)                               8

Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co.

    2/4/10) (Driscoll, J.)                                                                         3

Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010)                11

Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006)             3

Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015)                    24

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010)                      24

Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc)                         4

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986)                                           3

Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979)                                   4

3

Case 22-1870, Document 39, 12/12/2022, 3441838, Page99 of 220

Case 2:19-cv-07278-JMA-AYS Document 24-4 Filed 08/11/21 Page 4 of 31 PageID #: 742
Case 2:19-cv-07278-JMA-AYS Document 27 Filed 01/10/22 Page 99 of 130 PageID #: 891

Williams v. Public Finance Corp. 598 F.2d 349 (1979)                    17

**Statutes**

§ 1602(h)                                                              7, 18

§ 1635                                                                passim

§ 1635(a)                                                              1, 4

§ 1639                                                                passim

§ 1640(a)(2)(iv)                                                        23

§ 1640(e)                                                                4

§ 1641                                                                passim

§ 1641(a)                                                             7, 10

§ 1641(g)(1)                                                           1, 9

§1635(b)                                                                 9

12 U.S. § 504                                                            2

12 U.S. § 505                                                            2

15 U.S.C. § 1601(a)                                                      3

15 U.S.C. § 1602(f)                                                     18

15 U.S.C. § 1602(g)                                                     15

15 U.S.C. § 1611                                                         3

15 U.S.C. § 1635                                                      passim

15 U.S.C. § 1639(a)(1)(B)                                               18

15 U.S.C. § 1640                                                       4, 8

4

Case 22-1870, Document 39, 12/12/2022, 3441838, Page100 of 220

Case 2:19-cv-07278-JMA-AYS Document 24-4 Filed 06/11/21 Page 5 of 31 PageID #: 743
Case 2:13-cv-07278-JMA-AYS Document 27 Filed 01/10/22 Page 9F of 158 PageID #: 892

| | |
|---|---|
| 15 U.S.C. § 1640(a)(2)(A)(iv) | 4 |
| 15 U.S.C. § 1692 | 2 |
| 15 U.S.C. § 1692e | 25 |
| 15 USC Chapter 41 Subchapter I Part B | 5 |
| 1692e(10) | 25 |
| 1692e(14) | 25 |
| 1692e(2)(A) | 25 |
| Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005) | 6 |
| Fed R Civ 12(b) (6) | 2 |
| Fed. R. Civ. P. 8(a) | 2 |
| NY GBS § 349 | 2 |
| UCC § 3-301 | 15 |

**Regulations**

| | |
|---|---|
| 12 C.F.R. § 1026 | 1 |
| 12 CFR Part § 1026.2(a)(25)(6) | 16 |
| 12 CFR Part 1026 | 7, 8, 10, 11 |
| 12 CFR Part 1026.2 | 8 |
| 12 CFR Part 1026.39 | 7, 10, 11 |
| 12 U.S.C. § 2605(i)(2) | 15 |
| 12 U.S.C. § 2605(i)(3) | 15 |

5

# I. BACKGROUND

Plaintiff Roger Rowe filed a three-count Complaint (Doc. No. 2) against defendant, Cenlar FSB in this District Court. Plaintiff allege that he executed a real estate mortgage with nonparty Citibank, on November 7, 2002, and that Federal National Mortgage Administration (FNMA) was the current owner of the first mortgage lien and that as of April 1, 2019 Cenlar FSB was assigned, transferred or sold security interest in Plaintiff's mortgage(s). Plaintiff further alleges that Cenlar failed to provide adequate disclosures and the disclosures provided are generally misleading, incomplete, inaccurate and ambiguous. Plaintiff claimed that Defendant failed to provide a notice of mortgage transfer as required by the Truth in Lending Act, 15 U.S.C. (TILA).

As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer,"

The Plaintiff also alleges that Defendant failed to rescind the loan pursuant to 15 U.S.C. § 1635. Under 15 U.S.C. § 1635 the Plaintiff has the right to rescind a consumer credit transaction and void the Defendant's security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 1026 [formerly § 226] (hereinafter called "Regulation Z"). § 1635(a) requires a creditor to disclose clearly and conspicuously an obligor's right to rescind. Defendant

1

failed to provide the request disclosures and or the disclosures provided were incomplete, inaccurate and ambiguous.

Plaintiff also seeks damages for Defendant's violations of 12 U.S. § 504 and 12 U.S. § 505, FDCPA 15 U.S.C. § 1692, NY GBS § 349. Plaintiff alleges that the Defendant made statements when they claimed $107,239.00 was owed to various credit reporting agencies (CRA). Plaintiff's own payment history shows a principal balance of zero as of March 30, 2019 see (Exhibit G). Plaintiff also alleges that Defendant inaccurately stated the character, status and amount of the debt obligation. The actions noted were willful, deceptive and a violation of NY GBS § 349.

Defendants also violated BNK 6-l when the lender exceeded one or more of the thresholds as defined in paragraph (g) of this subdivision. Defendants violated BNK 6-l(m) Financing of points and fees. In making a high-cost home loan, a lender shall not, directly or indirectly, finance any points and fees as defined in paragraph (f) of subdivision one of this section, in an amount that exceeds three percent of the principal amount of the loan. As well as BNK 6-l(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender.

## II. LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Fed R Civ 12(b) (6) motion to dismiss does not need detailed factual allegations, a

2

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.". Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss.". When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

When a plaintiff is pro se, the Court must apply a liberal reading to the complaint and hold pro se litigants to a less stringent pleading standard. Pezhman v. City of New York, 29 A.D.3d 164, 168, 812 N.Y.S.2d 14, 18 (1st Dep't 2006) (a "pro se complaint should be construed liberally in favor of the pleader). Net Com Data Corp. of New York v. Brunetti, 2010 N.Y. Misc. LEXIS 1436 (Sup. Ct. Nassau Co. 2/4/10) (Driscoll, J.) (answer stating that defendant "does not waive any right to challenge jurisdiction . . . at any point during this proceeding even upon final determination" is "precisely the sort of drafting leniency the law permits for a pro se litigant"). Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ( pro se pleadings "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

3

Washington v. James, 782 F.2d 1134, 1138 (2nd Cir. 1986) (complaint not to be dismissed unless "frivolous on its face or wholly unsubstantial").

### III. TILA DISCLOSURE VIOLATION

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). Besides imposing criminal liability, TILA creates a private cause of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1611 (criminal liability), 1640(a)1 (civil liability).

TILA's remedial scheme was designed to deter and prevent disclosure violations by creditors. See Williams v. Public Fin. Corp., 598 F.2d 349, 356 (5th Cir. 1979). Rather than relying solely on government enforcement efforts, Congress deliberately provided consumers that right to privately enforce TILA's disclosure requirements. Thus, for example, TILA entitles consumers to collect statutory damage awards, even when they suffered no actual damages. Under TILA a consumer has more protection against deceptive creditors than is provided by non statutory law.

### 1. RIGHT OF RESCISSION AS TO CERTAIN TRANSACTION

TILA's extended right of rescission also encourages consumers to police lender conduct. Rescission is uniquely important and central to TILA's deterrent scheme because it serves a function not replicated by other TILA remedies.

Recovery of actual damages under TILA generally requires proof of detrimental reliance, a difficult showing for consumers to establish see, e.g., Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc). Although statutory damages are available without proof of reliance, TILA caps statutory damages awards to only $4,000 for credit transactions secured by a

4

consumer's home—a relatively low amount that limits consumer incentives to enforce TILA. See 15 U.S.C. § 1640(a)(2)(A)(iv).

TILA requires damage claims be brought within 3 year of a creditor's violation of any provisions under § 1635 and subsection (f) or (g) of § 1641. TILA also allows an obligor to bring an action before the end of the 3 years period for violations of section § 1639., see § 1640(e). In this instance Defendant violated § 1635(a) when they failed to provide notice of the April 1, 2019 credit transaction. As such Plaintiff brought this action when Defendant failed to return money and property following Plaintiffs October 21, 2019 notice of rescission.

§ 1635(a) gives an obligor the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the information and rescission forms required under 15 USC Chapter 41 Subchapter I Part B. The Defendant failed to clearly and conspicuously disclose Plaintiff's right to rescission which extends Plaintiff right to rescind until Defendant provide clear and conspicuous disclosures or the 3 year statute expiration.

Defendant obtained interest in Plaintiff's loan on April 1, 2019 as evidenced in the joint Notice of Servicing Transfer (see Exhibit F). The Defendant failed to provide Plaintiff with notice of his right to rescission. The Plaintiff failure to provide rescission forms extended Plaintiff's right to rescind until Defendant provides appropriate disclosure forms or 3 years after consummation. As such Plaintiff right to rescission is not time barred. The Defendant obtained the debt obligation on April 1, 2019 which gives Plaintiff until April 1, 2022 to commence an action against Defendant.   Rescission is particularly important as a means for deterring TILA violations. Because many mortgage loans are sold on the secondary market or securitized, effectively absolving the loans from consumer damages claims. TILA attempts to inform the consumer of a

5

transfer of their mortgage loan or any security interest in said loan. TILA is structured to hold Assignees liable for original creditor's violations that are apparent on the face of loan disclosure statements.

Indeed, one of the very purposes of securitization is to insulate parties from responsibility for the liability producing conduct of the original lender by taking advantage of assignee liability limitations. See, e.g., Lynn M. Lopucki, The Death of Liability, 106 Yale L.J. 1, 23-30 (1996). Congress specified, however, that consumers may exercise TILA rescission rights "against any assignee," 15 U.S.C. § 1641(c), thus ensuring that rescission would remain as a deterrent even if a mortgage loan is sold or securitized. The potential for rescission also gives the secondary mortgage market strong incentives to police loan originators to prevent threshold TILA violations.

The accessibility of TILA's rescission remedy to consumers was enacted to make rescission a private, out of court process and give the consumer the power to incentivize due diligence on the part of lenders. See, e.g., Belini v. Wash. Mut. Bank, 412 F.3d 17, 25 (1st Cir. 2005). In the course of this consumer credit transaction, Defendant's CitiMortgage and Cenlar committed among other violations; violated 15 U.S.C. § 1635(a) and Regulation Z § 1026.23(b) [formerly § 226.23(b)] by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:

a. Identified the transaction.

b. Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

d. Clearly and conspicuously disclosed the effects of rescission.

e. Clearly and conspicuously disclosed the date the rescission period expired.

6

The Truth in Lending Act provides rescission as a remedy for obligors subject to lender loan disclosure violations. Under 15 U.S.C. §1635(a), the right is available until midnight of the third day after closing or after delivery of the lending documents and rescission forms required under TILA; at the latest, the right expires after three years. Unlike common law rescission, where tender is required, the obligor need only notify the creditor of rescission and it is automatically effectuated under TILA.

The Defendant's contention that Plaintiff's TILA claim is somehow "Time - Barred" is a misrepresentation of the law. On April 1, 2019 the Defendant was part of a credit sale relative to Plaintiffs mortgage. § 1602(h) refers to credit sales as any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

As the new creditor the Defendant was required to provide various disclosures to the person who is obligated on the consumer credit transaction see § 1639(a)(1)(B). The disclosure were to have conspicuous type size noting the following. "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

The disclosure provided by Defendant's as Exhibit 1 is immaterial due to the fact that said credit transaction is not related to the subject matter of this litigation. Defendants claim that the Notice of Servicing Transfer somehow provided sufficient notice is patently false. It is apparent

7

on the face of the Notice of Servicing Transfer that it fails to meet the requirements of a Notice of

Mortgage Transfer pursuant to § 1641(g) and 12 CFR Part 1026.39. Under § 1641(a) a violation

apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure

which can be determined to be incomplete or inaccurate from the face of the disclosure statement

or other documents assigned, or (2) a disclosure which does not use the terms required to be used

by this subchapter.

In this instance it is apparent on the face of the Notice of Servicing Transfer that the notice

is incomplete, inaccurate and ambiguous. The notice fails to provide information related to §

1641(g)(D) the location of the place where transfer of ownership of the debt is recorded. The

disclosure does not include § 1639(a)(1)(B) language stating "If you obtain this loan, the lender

will have a mortgage on your home. You could lose your home, and any money you have put into

it, if you do not meet your obligations under the loan.".

## 2.    RIGHTS TO RESCISSION

Under TILA, a borrower has two remedies for a loan disclosure violation: civil damages

and rescission. 15 U.S.C. § 1640, 1635. With regard to rescission, TILA provides that borrowers

have until midnight of the third business day following the consummation of a loan transaction to

rescind the transaction. 15 U.S.C. § 1635(a). A borrower's right of rescission is extended from

three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission

or (2) fails to make a material disclosure. See Miguel v. Country Funding Corp., 309 F.3d 1161,

1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3)). Here, Plaintiffs

seek rescission and damages for the Defendants failure to provide adequate disclosure.

(Regulation Z) 12 CFR Part 1026.2 Definitions and Rules of Construction 2(a)(11)(2)-

8

Rescission rules. For purposes of rescission under §§ 1026.15 and 1026.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transaction. An ownership interest does not include, for example, leaseholds or inchoate rights, such as dower.

In Jesinoski et ux. v. Countrywide Home Loans Inc., et al., 574 U.S. 259 2015 Justice Scalia opinion noted that "Nothing in our jurisprudence, and no tool of statutory interpretation, requires that a congressional Act must be construed as implementing its closest common-law analogue. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice."

As such Plaintiff is only required to provide written notice of rescission to exercise his right to rescind. The Defendants failure to return money given and reflect the termination of any security interest in Plaintiff's home is a direct violation of §1635(b). As such the Plaintiff is entitled to rescission and statutory damages as proscribed under TILA.

## 3.    NOTICE OF MORTGAGE TRANSFER

Defendant's contention that their March 15, 2019 Notice of Service Transfer satisfied their notice provisions required under 15 U.S.C. § 1641(g)(1) is incorrect. The provisions under 15 U.S.C. § 1641(g)(1) relates to the transfer or assignment of mortgage not the transfer of servicing.

9

15 U.S.C. § 1641(g)(1) states that a creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Even if the court were to consider the notice of service transfer as a combined disclosure permitted under 12 CFR Part 1026.39(b)(1), said disclosure would be inadequate, incomplete, misleading and ambiguous therefore the Notice of Service Transfer is inadequate and would be in violation of 15 U.S.C. § 1641(a). The statute requires a violation to be apparent on the face of a disclosure statement includes but not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter. Here the Notice of Servicing Transfer is incomplete and therefore a violation of 15 U.S.C. § 1641(a).

## 4.    REQUIREMENTS FOR CERTAIN MORTGAGE

Based on 15 U.S.C. § 1641 and (Regulation Z) 12 CFR Part 1026 the Defendant failed to provide adequate notice of mortgage transfer with disclosure relative to a rescission notice which requires a general statement "Your home is the security for the new transaction". Pursuant to 15 U.S.C. § 1639(a)(1)(B), a creditor shall provide a statement in conspicuous type size that they can lose their home. Furthermore Cenlar failed to provide information as to where transfer of ownership of the debt to the covered person is or may be recorded in public records, or,

10

alternatively, that the transfer of ownership has not been recorded in public records at the time the disclosure is provided.

(Regulation Z) 12 CFR Part 1026.39 requires disclosures of mortgage transfer when a covered person obtains ownership of an existing mortgage. Paragraph 39(a)(1) of 12 CFR Part 1026.39 defines a covered person as Covered persons.-The disclosure requirements of this section apply to any "covered person" that becomes the legal owner of an existing mortgage loan, whether through a purchase, or other transfer or assignment, regardless of whether the person also meets the definition of a "creditor" in Regulation Z. The fact that a person purchases or acquires mortgage loans and provides the disclosures under this section does not by itself make that person a "creditor" as defined in the regulation.

## 5. PARTIAL INTEREST

Transfer or assignment to servicer other than for administrative convenience. A loan servicer could be liable under TILA where borrowers sufficiently alleged that servicer was also owner of obligation at issue under 15 USCS § 1641(f)(1). Olivera v. Am. Home Mortg. Servicing, Inc., 689 F. Supp. 2d 1218 (N.D. Cal. 2010).

In this instance Cenlar became a covered person when they obtained partial interest in Plaintiff's loan. Paragraph 39(a)(2)(i) of 12 CFR Part 1026.39 defines a covered person to include a person whom obtained Partial interest. A person may become a covered person by acquiring a partial interest in the mortgage loan. If the original creditor transfers a partial interest in the loan to one or more persons, all such transferees are covered persons under this section.

Pursuant to Paragraph 39(c)(3)(1) of 12 CFR Part 1026.39 the acquisition of partial interest of a loan and the change in agent or party authorized to receive notice and resolve issues

11

concerning the consumer's payments is a covered person and requires the new creditor to provide a disclosure. Paragraph 39(c)(3)(1) Acquisition of partial interests states. This exception applies if the covered person acquires only a partial interest in the loan, and there is no change in the agent or person authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments. If, as a result of the transfer of a partial interest in the loan, a different agent or party is authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, the disclosures under this section must be provided.

The examples indicated under Paragraph 39(c)(3)(2)(iii) confirms Cenlars status as a covered person which required Cenlar to provide a mortgage transfer disclosure as well as the requisite notice of rescission with a conspicuous type size indicating "You could lose your home". The example given in Paragraph 39(c)(3)(2)(iii) provides examples that state "The original creditor transfers fifty percent of its interest in the loan to covered person A and also authorizes party X as its agent to receive notice of the right to rescind and resolve issues concerning the consumer's payments on the loan. Since there is a change in an agent or party authorized to receive notice of the right to rescind and resolve issues concerning the consumer's payments, person A is required to provide the disclosures under this section. Person A then transfers all of its interest in the loan to covered person B. Person B is not required to provide the disclosures under this section if the original creditor retains a partial interest in the loan and party X retains the same authority.

Based on the information provided in Defendant July 12, 2019 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan. Paragraph 39(c)(1)(2) Transfer of partial interests indicates that "A covered person that subsequently transfers a partial interest in the loan is required to provide

12

the disclosures required by this section if the covered person retains a partial interest in the loan on the 30th calendar day after it acquired the loan, unless an exception in § 1026.39(c) applies. For example, if covered person A acquires the loan on March 15 and subsequently transfers fifty percent of its interest in the loan to covered person B on April 1, person A is required to provide the disclosures under this section if it retains a partial interest in the loan on April 14. Person B in this example must also provide the disclosures required under this section unless an exception in § 1026.39(c) applies. Either person A or person B could provide the disclosure on behalf of both of them if the disclosure satisfies the timing and content requirements applicable to each of them. In this example, a single disclosure for both covered persons would have to be provided on or before April 14 to satisfy the timing requirements for person A's acquisition of the loan on March 15. See comment 39(b)(4)-1 regarding a single disclosure for multiple transfers". Based on Defendant's statement, CitiMortgage is a covered person and is also required to provide a notice of mortgage transfer and relevant disclosures.

It is clear from the face of the "Notice of Servicing Transfer" that the original creditor nor the new creditor disclosed where transfer of ownership of the debt to a covered person (new servicer) is or may be recorded in public records, or, alternatively, that the transfer of ownership has not been recorded in the public records at the time the disclosure is provided as required by 15 U.S.C. § 1641(g)(D). The disclosure was also required to have in conspicuous type "You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan" see 15 U.S.C. § 1639(a)(1)(B).

The Defendant is a new creditor and a covered person as described under 15 U.S.C. § 1602 Definitions and rules of construction and 12 CFR Part § 1026.39 Mortgage transfer disclosures

13

respectively. A "covered person" means any person, as defined in § 1026.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation. In this instance the Defendant became a covered person when they acquired security interest in Defendants mortgage.

Pursuant to § 1026.39(c)(3) a covered person is not required to provide a disclosure if the covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest. Here the party authorized to resolve issues concerning the payments of the loan changed which required notification of Defendants acquisition of the debt obligation related to Plaintiff's mortgage see Exhibit F joint correspondence from previous creditor and Defendant. Paragraph 6 of the correspondence clearly indicates a change in party authorized to resolve issues and other details concerning the loan. However the disclosure failed to identify the location of the place where transfer of ownership of the debt is recorded or include conspicuous type size stating "You could lose your home, and any money you have put into it, if you do not meet your obligation under the loan".

The Notice of Servicing Transfer further confirms a transfer of ownership of the debt obligation from one servicer to another servicer. The term servicer is defined as the person

14

responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The key term here is " including the person who makes or holds a loan if such person also services the loan" In this instance the loan was transferred from a servicer who was also the holder of the debt obligation to a servicer who currently holds the debt obligation. Defendants partial ownership is evident by the change in loan number, name of payee and address of payee. Furthermore UCC § 3-301 Rights of a Holder indicates "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name." In this instance the Defendant is not only servicing the loan as described in 12 U.S.C. § 2605(i)(3) but is also the servicer 12 U.S.C. § 2605(i)(2) and is enforcing payment in his own name.

The Defendant is also a creditor as defined under 15 U.S.C. § 1602(g) The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a

15

finance charge is or may be required, and the Bureau shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. The term "creditor" includes a private educational lender (as that term is defined in section 1650 of this title) for purposes of this subchapter.

Nevertheless 12 CFR Part § 1026.2(a)(25)(6) Security Interest, Specificity of disclosure. A creditor need not separately disclose multiple security interests that it may hold in the same collateral. The creditor need only disclose that the transaction is secured by the collateral, even when security interests from prior transactions remain of record and a new security interest is taken in connection with the transaction. In disclosing the fact that the transaction is secured by the collateral, the creditor also need not disclose how the security interest arose. For example, in a closed-end credit transaction, a rescission notice need not specifically state that a new security interest is "acquired" or an existing security interest is "retained" in the transaction. The acquisition or retention of a security interest in the consumer's principal dwelling instead may be disclosed in a rescission notice with a general statement such as the following: "Your home is the security for the new transaction." Here the previous creditor was required to disclose "Your home is the security for the new transaction". The failure of such disclosure is apparent on the face of the Notice of Servicing Transfer and therefore Defendants violated TILA in relation to the April 1, 2019 credit transaction.

It is clear from the statutory language that Congress intended for mortgage loans sold or

16

otherwise transferred or assigned to a third party to be held liable as "creditors" for their violations of 15 U.S.C. § 1641(g). See Fowler v. U.S. Bank, F. Supp. 2d, 2014 WL 850527, (S.D. Tex. Mar. 4, 2014); Flemister v. Citibank, 2012 WL 6675273, (C.D. Cal. Dec. 20, 2012) (finding "Congress broadened the definition of 'creditor' in [TILA] through the passage of § 1641(g)" to include new owners or assignees of debt; even if trustee for securitized loans not liable as owner of debt, still liable as assignee).

BNK 6-l violation provided Plaintiff with a rescission type effect. BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

BNK 6-l provides that "Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded".

As such both Defendant should be penalized for violation New York banking laws. The law provides that each Defendants is responsible for their own violation. As such both Defendants are subject to statutory damages required plus the return of all monies paid. Defendant is also subject to actual damages in excess of amount paid, statutory damages and punitive damages.

## IV. DAMAGES RELATED TO TILA VIOLATIONS

The purpose of making creditors civilly liable is to force disclosure of various transactions and afford borrowers more control over their credit and the terms related to those credit

17

transactions. The purpose of affording a borrower the right of rescission is broader; not only is it designed to compel disclosure, but it also serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics. See Williams v. Public Finance Corp. 598 F.2d 349 (1979). In addition to damages, TILA also grants consumers rescission rights when they enter into credit transactions that pledge their "principal dwelling" as security.

15 U.S.C. § 1635(a). Creditors are responsible for "clearly and conspicuously" disclosing a consumer's right to rescind and for providing "appropriate [rescission] forms" to the consumer. In this instance the Defendant is a creditor who grants credit to the Plaintiff see 15 U.S.C. § 1602(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment. Defendant Cenlar obtained legal title of Plaintiff's debt obligation as of April 1, 2019 as evidence by information provided in the Notice of Servicing Transfer. Pursuant to 15 U.S.C. § 1639(a)(1) the creditor shall provide disclosure in a conspicuous type with the verbiage noted in 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.". Here neither creditor CitiMortgage (transferer) nor the New creditor Cenlar (transferee) provide such verbiage in its disclosure of the credit transfer (credit sale). 15 U.S.C. § 1602(h) defines "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the

18

property upon full compliance with his obligations under the contract. As such both the original and new creditor was required to disclose the transfer of mortgage. The face of the disclosure clearly shows that the creditors both old and new failed to conspicuously disclose the obligors right to rescind or inform obligor that pursuant to 15 U.S.C. § 1639(a)(1)(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

TILA allows for a creditor whom commits a single violation of the Act to be penalizing twice for violating two separate laws. Secondly, the statute allows for multiple remedies. § 1640(g) and § 1639(g) are mutually exclusive remedies in traditional common law and contract law. Congress did not imply that the Section 1640 remedy should defer to a related remedy in the same Act for the same violation, Congress instead inferred that additional relief can be sought under a different title. As such Plaintiff is entitled to damages even if it relates to the violation of two separate laws.

As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants is liable to Plaintiff for:

a. Rescission of this transaction. Pursuant to 15 U.S.C. § 1635(a) the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. Here the Defendant failed to provide the requisite disclosures. The March 15, 2019 Notice of Servicing Transfer does not include the required disclosure and or notice of right to rescind. By statute Plaintiff has up to three year after the date of the April 1, 2019 consummation

19

of the debt obligation sale of Plaintiff's mortgage as such Plaintiff is entitled to rescind said transaction until April 1, 2022 if appropriate disclosures were never provided.

b. Termination of any security interest in Plaintiff's property created under the transaction. Pursuant to 15 U.S.C. § 1635(b) when an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. The statutory requirement of TILA provides that a consumer can exercise his rights to rescind the contract without first tendering the consideration that he received. Nevertheless even if the court were to require proof of obligors ability to tender payment to creditor open satisfaction of creditors obligation the obligor would easily be in a position to pay the creditor $157,000.00 from the $244,115.08 principle and interest paid to prior creditor which is due from the new creditor.

c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction. Pursuant to 15 U.S.C. § 1635(b) Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. As such Defendant is required to return approximately $244,115.08 paid against a $349,115.08 principle and interest loan with a balance of $105,000.00 remaining.

20

d. Statutory damages of $4,000 for each creditor relative to rescission disclosure violation § 1635. As a creditor Defendant failed to provide the requisite disclosure notice relative to the obligors right to rescind. The Defendant is also responsible for prior creditors violation evident on the face of the disclosure. In this instance the disclosure was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore entitled to a statutory award of $8,000.00 in damages.

e. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(f). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. The Defendant is also responsible for prior creditors violations evident on the face of the disclosure. In this instance the disclosure provided by the prior and new creditor was incomplete, inaccurate and ambiguous on its face. Plaintiff is therefore is entitled to a statutory award of $8,000.00 in damages.

f. Statutory damages of $4,000 for Notice of Mortgage Transfer violation § 1641(g). As a creditor Defendant failed to provide the requisite disclosure notice relative to the notice of mortgage transfer. Pursuant to § 1641(g) not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer. The Defendant failed to provide the location of the place where transfer of ownership of the debt is recorded. The Defendant is liable for statutory damages of $4,000.00 for said failure.

g. Statutory damages of $4,000 for Defendants' failure to respond properly to Plaintiff's October 21, 2019 rescission notice and Plaintiff's November 11, 2019 follow up rescission notice pursuant to § 1641(g). Defendant is also liable for statutory damages for failure to rescind transaction pursuant to § 1641(c) which states that any consumer who has the right to rescind a transaction

21

under section 1635 of this title may rescind the transaction as against any assignee of the obligation. That fact that the Defendant failed to provide notice of the transfer of the debt obligation with in the 30 day period allotted under § 1641(g) triggers Plaintiff's right to rescind the April 1, 2019 credit sale.

h. Forfeiture of return of loan proceeds pursuant to § 1635(b). Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The creditors failure to perform its obligation renders the return of the property impracticable and therefore forfeiture of obligors tender is appropriate.

i. Actual damages (court fees and other cost of action)in an amount to be determined at trial cost of action § 1640 Civil Liability, § 1635, § 1641(f) and § 1641(g).

> New action court cost $400.00
>
> Paper and office supplies $850.00
>
> Hours spent preparing complaint and motion 320 hr @ $200 = $64,000.00
>
> Lost revenue could not work on construction projects 320 hr @ $200 = $64,000.00

j. Double the finance charge $374,008.68 § 1640(a)(2)(i). in the case of an individual action twice the amount of any finance charge in connection with the transaction (see Exhibit L finance charge).

22

k. Statutory damage in the amount of $4,000.00 pursuant to § 1640(a)(2)(iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000.

l. All finances charges and fees paid by the consumer. Pursuant to § 1640(a)(4) in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material. The sum of all finance charges is approximately $142,822.32.

m. Award such other further relief as the Court deems just and proper.

## V. NEW YORK BANKING LAW HIGH-COST LOAN VIOLATION

BNK 6-l and BNK 6-m mirrors TILA violations. Pursuant to BNK 6-l "any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower for the following actual damages, including consequential and incidental damages; and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded; except that this element of statutory damages shall not be awarded for violations of:"

BNK 6-m(13) provides a Defense to foreclosure. In any action by a lender or assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert as a defense, any violation of this section.

Damages for said violation are covered in BNK 6-m(9), (10) and (11) where a consumer is entitled to damages BNK 6-m(9) Damages. Any person found by a preponderance of the evidence to have violated this section shall be liable to the borrower of a subprime home loan for

23

actual damages. BNK 6-m(10) Attorneys fees. A court may also award reasonable attorneys' fees to a prevailing borrower in a foreclosure action. BNK 6-m(11) Equitable relief. A borrower may be granted injunctive, declaratory and such other equitable relief as the court deems appropriate in an action to enforce compliance with this section.

As such Plaintiff is entitled to damages for violations related to BNK 6-l(m) and (q) as well as Defendant's violation of BNK 6-m(e) and (l).

## VI. FDCPA VIOLATION

Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 573, 130 S. Ct. 1605, 1606, 176 L. Ed. 2d 519 (2010).

In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); accord Polanco v. NCO Portfolio Mgmt., Inc., 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same). Here the Plaintiff is a consumer and the Defendant Cenlar is acting in its own capacity as well as acting on behalf of FNMA and is attempting to collect a debt in a name other than its own as such violating 15 U.S.C. § 1692e.

24

The Defendant falsely represented itself in this action giving the appearance of a third person collecting a debt, rather than its "true name," such an action is a violation of 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10) and 1692e(14). "Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt." Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 498 (E.D.N.Y. 2002).

Section 803(6) of the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Creditors who collect their own debts may see that definition and stop reading. Big mistake – because Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

### CONLUSION

For the reasons cited in this Memorandum and in the attached Affidavit of Roger Rowe, I ask the court to dismiss Defendant's motion with prejudice and grant Plaintiff summary judgment pursuant to Fed. R. 56(e)(4) and Fed. R. 56(f)(1).

The Defendant failed to properly support their affirmative defense that Plaintiff was in default of his loan. Defendant cannot be in default of a loan in which Defendant Citibank promised the subsequent holder the he (Citibank) would pay if Plaintiff failed to pay.

25

Defendant provided no evidence in admissible form to support his claim that Plaintiff is in default. The Defendant failed to provide affidavits from someone with personal knowledge. Moreover in order to support a motion for summary judgment the Defendant was required to submit a statement of undisputed fact. This court has long held that failure to submit a statement of undisputed facts as prescribed under Local Rule 56.1 is grounds for dismissal. Moreover, Defendant failed to provide notice to pro se litigant as prescribed under Local Rule 56.2.

This court has consistently ruled that a party moving for summary judgment under Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S., 13-CV-835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15,2014) (Ramos, J.) (denying pro se plaintiff's motion seeking summary judgment for failing to comply with Local Rule56.1). In this instance the moving party

As such Plaintiff respectively ask this court to grant Plaintiff's claim in its entirety.

July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

26

Case 2:19-cv-07278-JMA-AYS Document 24 Filed 08/11/21 Page 1 of 7 PageID #: 379

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

The Honorable Joan M. Azrack

Case No. 2:19-cv-07278-JMA-AYS

| | |
|---|---|
| Roger Rowe | |
|      Plaintiff(s) | STATEMENT OF MATERIAL FACTS |
|   -v- | Pursuant to Local Civil Rule 56.1 |
| Cenlar FSB | |
|      Defendant(s) | |

1.    On November 7, 2002 Plaintiff entered into a $157,500.00 credit transaction with Citibank,.N.A a non-party to this action (**see Exhibit B**).

2.    On or about July 12, 2019, Defendant Cenlar FSB, informed Plaintiff that his original  Citibank, N.A loan was currently owned by Federal National Mortgage Administration (FNMA) a non-party to this action located at MidTown Center 1100 15th Street NW Washington, DC 20005) (**see Exhibit A**).

3.    As part of this consumer credit transaction, Citibank, N.A. retained a security interest in a collateral debt obligation for 20 Spruce rd Amityville, NY 11701 which is Plaintiff's home (see Exhibit A page 19)[1].

4.    The security interest was not created to finance the acquisition or initial construction of Plaintiff's home.

---

[1] The indorsements on the face of the November 7, 2002 contract identifies the parties with privity to enforce said contract. In contract law, privity is a doctrine that imposes rights and obligations to parties of a contract and restricts non-contractual parties from enforcing the contract.

1

5. On or about July 12, 2019 Plaintiff was notified that Defendant CitiMortgage transferred servicing to Cenlar and that Cenlar was the New Servicer (see Exhibit F page 2).

6. As defined by 12 CFR Part 1024(Regulation X) a "Servicer" means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). As evidenced on the face of the "NOTICE OF SERVICING TRANSFER" CitiMortgage transferred both the servicing rights the rights as a holder.

7. As prescribed under UCC § 3-301 "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or satisfaction, discharge it or enforce payment in his own name". Here Cenlar is a holder of the instrument and is accepting payment in his own name (**see Exhibit F page 5**).

8. Defendant's Cenlar FSB and CitiMortgage failed disclose or provide notice of mortgage transfer or right of rescission as required under 15 U.S.C. 1641(g) (particularly the location of the place where transfer of ownership of the debt is recorded).

9. Defendant's failed to respond properly to Plaintiff's notice of rescission (**see Exhibit C**).

10. In response to my complaint Defendant Cenlar filed a Rule 12(b)(6) motion which included matters outside the pleadings thus converting their Rule 12 motion to a summary judgment motion (**see ECF Doc. 11**).

11. Cenlar failed to provide a separate statement of undisputed facts as required under Local Rule 56.1 which is grounds for dismissal of their summary judgment motion.

2

12. Cenlar failed to provide Notice to Pro Se Litigant as required under Local Rule 56.2 which is grounds for dismissal of their summary judgment motion.

13. Plaintiff objected to Defendants Rule 12 motion which included matters outside the pleading. The matters outside the pleadings were not supported by admissible evidence nor did it include an affidavit made on personal knowledge.

14. Defendant Cenlar's claim that Plaintiff defaulted under the terms of the Loan on or about June 1, 2019 [sic] (**see ECF Doc. 11-2 page 2**) is inadmissible hearsay and is not supported by affidavit made on personal knowledge.

15. Moreover BNK 6-l(11) states that "Upon a judicial finding that a high-cost home loan violates any provision of this section, whether such violation is raised as an affirmative claim or as a defense, the loan transaction may be rescinded. Such remedy of rescission shall be available as a defense without time limitation". Here Plaintiff's asserts an affirmative claim and defenses against Defendants for violations of BNK 6-l.

16. Furthermore, in any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan. Here Plaintiff asserts his defenses to payment as it relates to Defendant's violation of BNK 6-l.

17. Plaintiff now submits this amended complaint Pursuant to Rule 15(b)(1) and Rule 15(c)(C). The amendment includes objections to Defendant Cenlar's contention that Plaintiff is in default as well as the inclusion of Defendant CitiMortgage.

3

Case 2:19-cv-07278-JMA-AYS   Document 27   Filed 01/10/22   Page 124 of 136 PageID #: 922

18.     Plaintiff includes CitiMortgage in this action based on the Notice of Servicing Transfer and the transfer of the rights to collect the debt to the new servicer Cenlar. Based on the joint notice provided by Defendants CitiMortgage and Cenlar. CitiMortgage is the assignee of the mortgage who in turn transferred the mortgage to Cenlar. Evidence of the assignment can be seen in the CitiMortgage indorsement (**see Exhibit F page 7& 10**) as evidenced by the CitiMortgage conditional and qualified indorsement in blank and evidence of the transfer to Cenlar is noted in the Notice of Servicing Transfer (**see Exhibit F page 2**).

19.     The November 7, 2002 credit transaction between Plaintiff and Citibank involved the refinancing of a high-cost mortgage. The face of the October 23, 1989 Note shows a 10.625% interest rate (**see Exhibit B page 8**). As such the consolidated loan is considered a high-cost loan.

20.     A "High-cost home loan" means a home loan in which the terms of the loan exceed one or more of the thresholds as defined in paragraph (g) of BNK 6-l. As noted in BNK 6-l(g)(i) "For a first lien mortgage loan, the annual percentage rate of the home loan at consummation of the transaction exceeded eight percentage points over the yield on the treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. In this instance the delta between the first lien interest rate of 10.625 and the December 16, 2002 treasury yield of 1.5 is 9.125 (**see Exhibit K page 6**). As such the loan exceeded the 8% threshold.

21.     The total points and fees also exceed five percent of the total loan amount of a loan fifty thousand dollars or more. The November 7, 2002 contract consolidated the balance

4

Case 22-1870, Document 39, 12/12/2022, 3441838, Page131 of 220

Case 2:19-cv-07278-JMA-AYS   Document 24-5   Filed 08/11/21   Page 5 of 7 PageID #: 774
Case 2:19-cv-07278-JMA-AYS   Document 21   Filed 01/10/22   Page 135 of 136 PageID #: 923

on the first lien of $37,606.56 and the second lien of $119,893.44 for a total of $157,500.00 (**see Exhibit B page 17**).

22.    As indicated on the face of the "Anticipated Settlement" dated September 16, 2002 (**see Exhibit N**). Plaintiff paid 33.266% in closing cost. Pursuant to BNK 6-l(2)(q) No points and fees when a lender refinances its own high-cost home loan with a new high-cost home loan. A lender shall not charge a borrower points and fees in connection with a high-cost home loan if the proceeds of the high-cost home loan are used to refinance an existing high-cost home loan held by the lender or an affiliate of the lender. Here the lender refinanced his own high-cost home loan which was held by its affiliate CitiMortgage (**see Exhibit H**).

23.    As such the Defendant's are liable to Plaintiff for actual damages, including consequential, incidental damages and statutory damages as follows (i) all of the interest, earned or unearned, points and fees, and closing costs charged on the loan shall be forfeited and any amounts paid shall be refunded (see BNK 6-l(7). As such Plaintiff is entitled to rescission.

24.    Nevertheless, the party Plaintiff pledged collateral to made available through a securitization transaction without Plaintiff's knowledge or consent and purportedly negotiated the security evidenced by the Note/Mortgage lien which Plaintiff pledged to Citibank, N.A. exclusively and said pleaded document was apparently used to secure these receivables in this transaction as well.

25.    Pursuant to UCC § 3-404 any unauthorized signature is wholly inoperative as to that of the person whose name is signed unless he ratifies it or is precluded from denying it. As such Citibank N.A. and CitiMortgage ("the indorser") is negligent as it relates to altering and producing an unauthorized signature (see Exhibit F page 7 & 10).

5

26.    Pursuant to UCC § 3-406 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

27.    Not only was CitiMortgage negligent as it relates to the production of an unauthorized signature. Both CitiMortgage and Citibank N.A. altered the instrument when it made material changes to the contract. UCC § 3-407(a) indicates that an alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense. As defined by UCC 1-201 an "Unauthorized signature means a signature made without actual, implied, or apparent authority. The term includes a forgery" as such Defendant CitiMortgage forged Plaintiff's signature discharging Plaintiff from any liability.

28.    Moreover UCC 3-802 states that "Unless otherwise agreed where an instrument is taken for an underlying obligation the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor".

29.    In this instance the indorser is a bank and the instrument has no recourse on it as evidenced by the words "without recourse" (**see Exhibit F page 7 & 10**).

30.    As such Plaintiff is not in default and was in fact discharged form his obligation when the holder CitiMortgage intentionally cancelled the instrument by indorsing the instrument with the words "without recourse".

6

31.     As a third party answerable to Plaintiff if he is sued under Article 3 Citibank NA and CitiRetail Services LLC is placed on notice as prescribed under UCC 3-803 and must come and defend Plaintiff.

32.     As indicated in Defendant's disclosure statement (see ECF Doc. 21) Citibank, NA and Citi Retail Services LLC holds ownership in CitiMortgage and is liable for their actions. Moreover, the fact that Citibank charged Plaintiff closing cost on a refinance in which a lender and it affiliates are holder is a clear violation of BNK 6-l(q) and as such is liable to damages under BNK 6-l.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

7

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Roger Rowe

        Plaintiff(s)                     2:19-cv-07278-JMA-AYS

    -v-

Cenlar FSB

        Defendant(s)

## AFFIRMATION/DECLARATION
## OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule 56 of the Federal Rules of Civil Procedure.

### RESPONSE TO FACTUAL BACKGROUND

1. On November 7, 2002, Plaintiff entered a Consolidated Extension and Modification Agreement ("CEMA") with Citibank NA a non-party to this action.

2. On April 19, 2019 Plaintiff was informed that a third Defendant Cenlar was transferred servicing and was now the "New Servicer" of Plaintiff's loan.

3. On October 21, 2019 Plaintiff sent Defendant's his notice of rights to rescission (see Exhibit C). Defendant's contention that Plaintiff claim is based on a nearly twelve-year CEMA transaction is a clear misunderstanding of the statutes. Plaintiff's rescission notice is based on the April 1, 2019 transaction in which Cenlar transferred the rights of a holder (see Exhibit F).

4. Pursuant to 15 USC 1641(g) "In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer". In this instance Defendant's failed to provide said notice

1

with in the time period prescribed. Although the law allows the notice of servicing to be combined with the notice of mortgage transfer. The Notice of Service Transfer was insufficient to provide Plaintiff notice as to the location of the place where transfer of ownership of the debt is recorded.

5. In addition to Defendant's failure to provide adequate notice any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage. Here Defendant Cenlar is a new creditor (see Exhibit D[1]) who is subject to all claims and defenses related to purchase or assignment of a mortgage referred to in section 1602(aa).

6. Furthermore, this mortgage is also subject to BNK 6-l which prohibits the lender form financing any point and fee in excess of 3% (see BNK 6-l(m). The Lender is also prohibited from refinancing its' own high-cost loan with a new high-cost loan (see BNK 6-l(q).

## ARGUMENTS

### A. Legal Standing

7. The Defendant is attempting to submit an improper pre-answer motion. Defendant asserts an affirmative claim which he states Plaintiff is in default (see ECF Doc. 11-2 page 2). However by the offering an affirmative defense Defendant actually affirms the existence of a cause of action.

### B. Plaintiff claim is not time barred

8. Defendant's contention that Plaintiff's claims are time barred is belied by the evidence in front this court. As prescribed under UCC 3-606(1)(b) The holder discharges any party to the instrument to the extent that without such party's consent the holder unjustifiably impairs any

---

[1] Cenlar reported to the Credit Reporting Agencies that he was the New Creditor.

2

Case 22-1870, Document 39, 12/12/2022, 3441838, Page136 of 220

Case 2:19-cv-07278-JMA-AYS Document 24-6 Filed 08/11/21 Page 3 of 8 PageID #: 729
Case 2:19-cv-07278-JMA-AYS Document 27 Filed 01/10/22 Page 136 of 136 PageID #: 928

collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

9. In this instance Plaintiff give his collateral to Citibank for the benefit of the November 7, 2002 contract. CitiMortgage was never authorized to transfer title. As indicated on the face of the first lien note, Citibank transferred its rights to Federal Home Loan Mortgage Corporation ("FNMA") On December 13, 1989. However, FNMA never transferred the instrument back to Citibank or CitiMortgage.

10. As such CitiMortgage indorsement in blank show that the indorsement is not in the chain of title and there by provides notice of it accommodation character (see UCC 3-415(4)). As an accommodation party Plaintiff is not responsible to the accommodated party and if you pays the instrument has recourse against the instrument (see UCC 3-415(5)).

11. Nevertheless. Plaintiff is not time barred under TILA or BNK 6-l as it related to bringing an action against an assigner, assignee, transferer or transferee.

**C. Plaintiff Stated Claim Against CitiMortgage & Cenlar**

12. Defendant's misunderstands the post commencement disclosure requirements under 15 USC 1641(g). Plaintiff is not alleging that Defendants were required to disclose the transfer of the loan to FNMA. Plaintiff claim specifically refers to The April 1, 2019 credit transaction. As a new creditor Cenlar was required to disclose the assignment of mortgage (security interest) from CitiMortgage.

13. Moreover, Defendants claim that Plaintiff failed to state claim pursuant to TILA against Cenlar or CitiMortgage under 15 U.S.C. § 1641(g) where "Plaintiff's own complaint establishes neither were owner or assigner of the Loan or "covered persons" as contemplated under the regulations. [sic] page 5 of Defendants memorandum of law. Is utterly inconsistent with the fact

3

presented. The signature on the face of the note confirms CitiMortgage indorsement as an assigner of the note. The transfer on April 1, 2019 confirms CitiMortgage transfer to Cenlar. As such Plaintiff claims correctly identifies CitiMortgage as the assigner and Cenlar purchaser/transferee.

### D.  Plaintiff Properly States Breach of Contract Claim

14. Defendant once again is attempting to misrepresent the statues or character of the November 7, 2002 contract (between Plaintiff and Citibank) with subsequent contracts between Citibank its affiliates and third parties.

15. The fact that Defendants asserted rights as a third-party beneficiary confirms Defendant's belief of the existence of a valid contract. Under New York law, a party asserting rights as a third-party beneficiary must establish that "(1) a valid and binding contract existed, (2) the contract was intended for the plaintiff's benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the contracting parties intended to compensate the plaintiff."

16. For Defendant to claim "that there is no actual contract between the parties to this action" [sic] page 5 Defendants Memorandum of law, shows utter disdain to the court and the rule of law. Defendant not only presents himself as a third-party beneficiary with rights to enforce Plaintiff's loan (see Exhibit F), Defendant also asserts that Plaintiff is in default of a contract in which he has the right to enforce.

17. Here there is no question of (1) the existence of the November 7, 2002 contract. (2) the contract was not intended for the benefit of the Defendants (3) the benefit is incidental. As such Plaintiff as a holder of an incidental security instrument Defendant owes Plaintiff a duty of care and by law is required to return the instrument on demand (see UCC 3-419(1)(a), (b)).

### E.  Plaintiff Stated Breach of Fiduciary Duty Claim

4

18. As a holder of the instrument Defendants owed Plaintiff a duty of care as prescribed under UCC 9-207(a) "Duty of care when secured party in possession. Except as otherwise provided in subsection (d), a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession. In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed".

19. In this instance Defendant's failed to preserve Plaintiff's rights as a prior party to the November 7, 2002 contract. As evidenced by CitiMortgage blank indorsement, CitiMortgage promised to pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3-115 on incomplete instruments.

20. Here the conditional and qualified indorsement precludes the presumption that the transferee is the owner. Pursuant to UCC 3-201(3) "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner".

21. As such the conditional and qualified indorsement is insufficient proof as to who is the actual owner of the note.

**F. Plaintiff Stated Conversion Claim**

22. Plaintiff appropriately stated his conversion claim. Defendants claim that Plaintiff did not rescind the loan conflates the issue of the November 7, 2002 credit transaction and the April 1, 2019 credit transaction.

23. Plaintiff is not seeking to rescind the November 7, 2002 credit transaction. The subject of this action is the April 1, 2019 credit transaction. Proof of Plaintiff's right to rescind the April 1,

5

2019 credit transaction is codified under USC 1641(g). As a new creditor, § 1641(g)(1) requires Defendant to provide a disclosure of the sale of a mortgage loan " not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," Defendant failed to provide such notice after acquiring a security interest in Plaintiff's loan.

24. In addition to Defendant's violations of TILA, Defendants also violated BNK 6-l which provides the same effects as rescission[2].   BNK 6-l states that "In any action by an assignee to enforce a loan against a borrower in default more than sixty days or in foreclosure, a borrower may assert any claims in recoupment and defenses to payment under the provisions of this section and with respect to the loan, without time limitations, that the borrower could assert against the original lender of the loan".

25. Here Defendant's clearly violated state and federal predatory lending laws and as such is responsible for actual, statutory and punitive damages.

**G.  Defendant Cenlar is a Debt Collector**

26. As indicated in Plaintiff's amended complaint (see ¶ 110 of amended complaint) Section 803(6) goes on to say "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." In other words, if a creditor collects its own debts but uses a different name that suggests it's a third-party debt collector, the statute views the company as a debt collector subject to the FDCPA.

---

[2] Rescission rights under TILA is not the same as traditional rescission, under TILA the plaintiff is not require the return funds which then triggers rescission rights. Under TILA the action is punitive to prevent the banks from unscrupulous behavior and as such the bank is required to first return what it received from the consumer.

6

Case 22-1870, Document 39, 12/12/2022, 3441838, Page140 of 220

Case 2:19-cv-07278-JMA-AYS Document 24-6 Filed 08/11/21 Page 7 of 8 PageID #: 783
Case 2:19-cv-07278-JMA-AYS Document 27 Filed 03/10/22 Page 124 of 130 PageID #: 932

27. Here Cenlar is clearly a creditor and identifies himself as a creditor (see Exhibit D Plaintiff's credit report). Defendant Cenlar reported to the credit agency that they are in fact the creditor of the subject mortgage account. As such Defendant Cenlar is in violation of FDCPA.

**H. Plaintiff Stated Claim for Aiding and Abetting**

28. Defendant properly stated the elements of an aiding and abetting claim (see Defendants Memorandum of law page 11). Here Defendants counsel has actual knowledge of the existence of a fraud. The face of the note clearly states "without recourse" preclude the presumption that the holder is the owner. For Counsel to make such a false claim without evidence or an affidavit from a person with knowledge provides assistance to advance a fraud.

29. Ignorance is no excuse to the law and the negligence of an attorney to understand the law does not exempt him from an aiding and abetting cause of action.

**I. Plaintiff Should Be Permitted to Amend His Complaint**

30. Defendant's contention that "Plaintiff should not be allowed to amend the Complaint a second time because the deficiencies in the Plaintiff's Complaint cannot be remedied by amendment" [sic] page 12 of memorandum of law, is contrary to the rule of law and is an attempt to deprive Plaintiff of due process.

31. Plaintiff provided evidence of (1) the existence of a contract, (2) Plaintiff's performance, (3) Defendant's breach, (4) Defendant's violation of TILA, BNK and UCC. As such the only remaining issue is Defendant's liability. It is preposterous for Defendant's to claim an affirmative defenses while stating that no cause of action exist. If no cause of action exist Defendant should not be claiming that I am in default or that I owe them money.

**<u>CONCLUSION</u>**

7

32. As such I ask the court to dismiss Defendant's Rule 12(6) motion and grant all Plaintiff's claims. Not only is Defendants motion an improper pre-answer motion, Defendants and their counsel continues to mislead this court as to the status and character of the note and the Defendants ability to enforce the instrument as a third-party beneficiary.

33. Furthermore, Defendant's predatory activities should not go unpunished. Defendant assigned and transferred Plaintiff's loan for their own benefit and charged excessive fees in the process. As such this court should penalize Defendants to the maximum extent of the law.

Dated: July 26, 2021

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

ROGER ROWE,

               Plaintiff,

   v.

CENLAR FSB; CITIMORTGAGE, INC.,

               Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6)**

5164351v.1

## TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................................1

    A.    Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred ...............1

    B.    Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under
        TILA ...............................................................................................................2

    C.    Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector ...........3

    D.    Plaintiff Has Abandoned The Remainder Of His Claims ..................................4

    E.    Plaintiff Cannot Amend His Complaint Through His Opposition....................5

II.    CONCLUSION .....................................................................................................6

i

5164351v.1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Lynch*,
   16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016)....................................3

*Beach v. Ocwen Federal Bank*,
   523 U.S. 410, 118 S.Ct. 1408 (1998)....................................................................1

*Dins v. Nationstar Mortg., LLC*,
   16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017).......................................2

*Dougherty v. North Hempstead Bd. of Zoning Appeals*,
   282 F.3d 83 (2d Cir. 2002)...................................................................................6

*Jain v. McGraw-Hill Cos., Inc.*,
   827 F. Supp. 2d 272 (S.D.N.Y. 2011)....................................................................4

*Lipton v. Cty. of Orange, N.Y.*,
   315 F.Supp.2d 434 (S.D.N.Y. 2004)......................................................................4

*Qurashi v. Ocwen Loan Servicing, LLC*,
   760 Fed.Appx. 66 (2d Cir. 2019) ..........................................................................3

*Rogers v. Hines*,
   No. 16-cv-457, 2016 WL 7378988 (D. Conn. 2016)...............................................5

*Tyus v. Newton*,
   13–cv–1486, 2015 WL 1471643 (D. Conn. 2015) .................................................5

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)..................................................................................5

**Statutes**

15 U.S.C. § 1635.................................................................................................1, 2

15 U.S.C. § 1641................................................................................................2, 3

FDCPA.............................................................................................................3, 4, 6

New York Banking Law § 6-l...................................................................................5

TILA ..................................................................................................................1

ii

5164351v.1

Case 2:19-cv-07278-JMA-AYS Document 27 Filed 01/10/22 Page 129 of 136 PageID #: 931

**Other Authorities**

12 C.F.R. § 1026.39(a)(1) ..................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 3, 6

Fed. R. Civ. P. 56 ...........................................................................................................1

iii

5164351v.1

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law[1] in further support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

## I.   ARGUMENT

### A.   Plaintiff's Claim For Rescission Pursuant To TILA Is Time-Barred.

Plaintiff readily acknowledges that the Loan at issue in this action was originated nearly eighteen years ago. Plaintiff himself includes a copy of a Truth in Lending Disclosure Statement from eighteen years ago which bears his signature. Yet, Plaintiff claims that he rescinded the loan seventeen years after he signed the disclosure statement. Plaintiff's claim is not supported by either the facts as he alleges them or the law.

In moving for dismissal of Plaintiff's claim of rescission pursuant to TILA, Defendants noted that the Loan at issue originated on November 7, 2002, that Plaintiff himself annexed a copy of the signed TILA Disclosure Statement to his First Amended Complaint, and that at best, Plaintiff had three years from origination to rescind the Loan pursuant to TILA. *See* 15 U.S.C. § 1635(f); *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 410, 118 S.Ct. 1408, 1408 (1998). Thus, Plaintiff's claimed rescission in October of 2019 was at least *fourteen years* too late. Plaintiff responds by ignoring the actual language of 15 U.S.C. § 1635(a) and makes the illogical claim that the sub-servicing of the Loan by Cenlar on behalf of CitiMortgage somehow amounted to a "consumer

---

[1] In support of his opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff submitted a Statement of Material Facts pursuant to Local Civil Rule 56.1. However, the Eastern District of New York's Local Civil Rule 56.1 requires that a statement of material facts be submitted upon a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Neither Defendants nor Plaintiff have moved for summary judgment. In fact, Defendants have not submitted an answer to the First Amended Complaint, as the instant motion is made pre-answer. As a statement of material facts is not required for the instant motion, Defendants will not be responding to the one submitted by Plaintiff.

5164351v.1

credit transaction" as defined by TILA and so Plaintiff's time to rescind the Loan began anew seventeen years after the Loan was originated.

*Dins v. Nationstar Mortg., LLC*, 16-CV-2943, 2017 WL 570941 (S.D. N.Y. Feb. 13, 2017) is instructive. In that case, the plaintiff took out a mortgage loan in June of 2006. The mortgage was assigned to the defendant in 2011 and the plaintiff was not notified. The mortgage was further assigned in 2015 and the plaintiff again was not notified. The plaintiff commenced an action in 2016 alleging, *inter alia*, that he was entitled to rescind the mortgage loan because he was not otherwise informed of these transfers. The defendant moved to dismiss the complaint. *Id.* at *1. In addressing his request for rescission, the District Court rejected the plaintiff's theory and held, "TILA contains a three-year statute of limitations for rescission claims. 15 U.S.C. § 1635(f)...Dins alleges that the loan transaction occurred on or about June 30, 2006...The right of rescission therefore expired on or about June 30, 2009. Plaintiff filed this lawsuit in 2016, over six years after the right of rescission expired. Accordingly, Dins's rescission claim is dismissed." *Id.* at *6.

Plainly put, Plaintiff is mistaken as to the accrual of his time to seek rescission pursuant to TILA. The consumer credit transaction at issue here occurred on November 7, 2002, when the subject Loan was originated. *See* Compl. ¶ 9. Setting aside the fact that Plaintiff himself annexed a copy of the TILA Disclosure Statement bearing his signature to the First Amended Complaint, Plaintiff had until November 6, 2005 *at the latest* to rescind the Loan pursuant to 15 U.S.C. § 1635(f). Yet, Plaintiff claims he exercised his right of rescission on October 21, 2019. *See* Compl. ¶ 33. This was nearly *fourteen years* too late. Plaintiff's election of rescission pursuant to 15 U.S.C. 1635(a) is untimely and Plaintiff's demand for rescission must be dismissed with prejudice.

### B. Plaintiff Fails To State Claims Against Cenlar Or CitiMortgage under TILA.

Defendants moved to dismiss Plaintiff's causes of action under 15 U.S.C § 1641(g) as that section of TILA is applicable to the creditor of a debt, not the servicer. *See* 15 U.S.C. § 1641(g)(1);

2

5164351v.1

12 C.F.R. § 1026.39(a)(1). In response to this, Plaintiff alleges that Cenlar obtained a "partial interest" in the Loan. However, the sole document Plaintiff uses in support of this position actually refutes Plaintiff's point[2].

Plaintiff alleges that, "[b]ased on the information provided in Defendant (sic) July 12, 2009 response to Plaintiff's Qualified Written Request (QWR) Defendant appears to suggest that multiple covered persons have interest in Plaintiff's loan." Memorandum of Law in Opposition, p. 12. However, the July 12, 2019 response could not be clearer: "The Loan was originated by CitiBank, N.A. dba CitiMortgage Inc. and is currently owned by Federal National Mortgage Administration (FNMA)...CitiMortgage, Inc....is the servicer of the Loan. Cenlar FSB subservices the loan on behalf of CitiMortgage, Inc., effective April 1, 2019." Comp. Ex. A. Plaintiff relies on this document for his position that Cenlar obtained a "partial interest" in the Loan. In fact, this document is clear that the only owner of the Loan is FNMA.

Defendants are not creditors or covered person as contemplated under TILA and are not subject to the requirements of 15 U.S.C. § 1641. Accordingly, the corresponding allegations in Plaintiff's complaint must be dismissed with prejudice.

**C.** **Plaintiff's Still Fails To Sufficiently Allege Cenlar is a Debt Collector.**

Defendants moved to dismiss Plaintiff's cause of action pursuant to the FDCPA, which is asserted solely as against Cenlar, because Cenlar is not a debt collector as defined by the FDCPA. Particularly, Cenlar began servicing the debt before it fell into default and so is not considered a debt collector as a matter of law. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 Fed.Appx. 66,

---

[2] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may rely upon documents which have been attached to the complaint as exhibits. *See Abraham v. Lynch*, 16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016).

3

5164351v.1

68 (2d Cir. 2019). Plaintiff's own Complaint includes a Notice of Servicing Transfer demonstrating that Cenlar began servicing the loan effective April 1, 2019 (*See* Compl., Ex. F) and a payment history demonstrating the Loan was current at that time (*See* Compl., Ex. G.). Cenlar is not a debt collector under the FDCPA.

Plaintiff does not address this claim at all, but instead states that Cenlar is not collecting a debt on behalf of FNMA, but on its own behalf. Plaintiff proceeds upon the very same mistaken premise as his TILA claim: Plaintiff alleges that Cenlar is the owner of his Loan. However, the documents which Plaintiff himself attaches to his Complaint demonstrate FNMA, not Cenlar, is the owner of the Loan and Cenlar merely subservices the Loan on behalf of CitiMortgage. Plaintiff cannot sustain a cause of action under the FDCPA against Cenlar because it is not a debt collector under the meaning of the statute and this cause of action should be dismissed with prejudice.

**D.      Plaintiff Has Abandoned The Remainder Of His Claims.**

Defendants moved to dismiss seven claims asserted in Plaintiff's First Amended Complaint: (1) Rescission pursuant to TILA; (2) Damages pursuant to TILA; (3) Breach of Contract; (4) Breach of Fiduciary Duty; (5) Conversion; (6) Violation of the FDCPA; and (7) Aiding and Abetting Fraud. In opposing Defendant's motion, Plaintiff only addresses the claims related to TILA and the FDCPA. Plaintiff has effectively abandoned the remainder of his First Amended Complaint.

It is well-settled that a court may deem a claim abandoned based on a plaintiff's failure to respond to an argument raised by a defendant in a dispositive motion. *See Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (holding that the plaintiff abandoned six claims when her brief failed to respond to the defendants' arguments on those claims); *Lipton v. Cty. of Orange, N.Y.*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("[A court] may, and generally

4

will, deem a claim abandoned when a plaintiff fails to respond to a defendant's argument that the claim should be dismissed.").

Plaintiff does not argue that his causes of action for Breach of Contract, Breach of Fiduciary Duty, Conversion, and Aiding and Abetting Fraud should survive Defendants' motion to dismiss. As such, these causes of action should be dismissed with prejudice.

## E. **Plaintiff Cannot Amend His Complaint Through His Opposition.**

In opposing Defendant's motion, Plaintiff asserts for the first time that an unspecified defendant violated New York Banking Law §§ 6-l and/or 6-m. *See* Memorandum in Opposition pp. 23 – 24. Such a claim is not asserted anywhere in Plaintiff's First Amended Complaint and cannot be asserted now.

Plaintiff cannot inject new factual allegations or legal theories into the case through an opposition to a motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a plaintiff cannot amended a complaint to add new factual allegations in opposition to a motion to dismiss); *Rogers v. Hines*, No. 16-cv-457, 2016 WL 7378988, at *4 (D. Conn. 2016) ("As this distinction was not included in the amended complaint and the plaintiff cannot amend his complaint through a memorandum, the defendants' motion to dismiss is granted...."); *Tyus v. Newton*, 13–cv–1486, 2015 WL 1471643, at *5 (D. Conn. 2015) ("The plaintiff may not ... amend the amended complaint in a memorandum in opposition to a motion to dismiss"). The Court should therefore disregard these new legal theories entirely.

Setting aside the fact that Plaintiff cannot simply assert these claims, Plaintiff does not in fact allege a violation of either Banking Law §§ 6-l or 6-m. Instead, Plaintiff claims that the unspecified violation entitles him to damages pursuant to the Banking Law. Even if Plaintiff could assert a claim in opposition, which he cannot, Plaintiff does not actually do so. These allegations should be disregarded.

5164351v.1

For the very same reason, Plaintiff should not be permitted to amend his complaint a second time. Defendants have demonstrated that Plaintiff's TILA claim is time-barred and otherwise misdirected at Defendants and that Plaintiff cannot demonstrate that Defendants are debt collectors for the purposes of the FDCPA. These issues formed the basis for Cenlar's first motion to dismiss and Plaintiff did not resolve them in his first amendment, nor could he. Thus, any further amendment should be denied as futile. *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

## II.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice and grant such other and further relief as it deems appropriate.


Dated:    August 11, 2021          STRADLEY RONON STEVENS & YOUNG, LLP
          New York, NY             A Pennsylvania Limited Liability Company

                                   By:    */s/ Lijue T. Philip*
                                          Lijue T. Philip
                                          100 Park Avenue, Suite 2000
                                          New York, New York 10017
                                          Telephone: (212) 812-4124
                                          Facsimile: (646) 682-7180
                                          LPhilip@stradley.com


                                          *Counsel for Cenlar FSB & CitiMortgage, Inc.*

6

5164351v.1

## CERTIFICATE OF SERVICE

I, hereby certify that on August 11, 2021, I caused the foregoing document to be be served

on the below by First Class Mail.

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

s/ *Lijue T Philip* _____
Lijue T. Philip

5164351v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                Plaintiff,

      v.

CENLAR FSB; CITIMORTGAGE, INC.,

                Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

**DEFENDANTS CENLAR FSB AND CITIMORTGAGE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND FINDINGS PURSUANT TO FED R. 52(A)(6), 52(B), 59(A)(1)(B), 59(A)(2), 60(1), 60(3) AND 60(6)**

5455562v.2

## TABLE OF CONTENTS

I.  INTRODUCTION................................................................................................1

II.  FACTUAL BACKGROUND .............................................................................1

III.  PROCEDURAL HISTORY ...............................................................................2

IV.  ARGUMENT.......................................................................................................3

    A.  Legal Standard.........................................................................................3

    B.  Plaintiff's Request For Relief Pursuant To Fed. R. Civ. P. 52 and 59 Are Procedurally Improper And Must Be Denied. ...............................4

    C.  Plaintiff Request For Relief Pursuant To Fed. R. Civ. P. 60 Must Be Denied.......................................................................................................5

V.  CONCLUSION ...................................................................................................8

i

5455562v.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Lynch,*
  16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016)....................................................6

*Analytical Surveys, Inc. v. Tonga Partners, L.P.,*
  684 F.3d 36 (2d Cir. 2012)........................................................................................................3

*Cruz v. Barnhart,*
  4-Cv-9794, 2006 WL 547681 ....................................................................................................5

*Franza v. Stinson,*
  98-CV-5484, 2006 WL 2683023 (S.D. N.Y. Sept. 19, 2006) ...................................................7

*Linge v. Georgia,*
  13-CV-116, 2013 WL 12108609 (N.D. G.A. Oct. 23, 2013) ....................................................5

*Mendell In Behalf of Viacom, Inc. v. Gollust,*
  909 F.2d 724 (2d Cir. 1990)......................................................................................................5

*Robinson v. IBM Corporate,*
  08-CV-2448, 2008 WL 2705523 (E.D. N.Y. July 10, 2008)....................................................7

*United States v. Int'l Bhd. Of Teamsters,*
  247 F.3d 370 (2d Cir. 2001).....................................................................................................4

*Wechsler v. Hunt Health Systems, Ltd.,*
  94-CV-8294, 2004 WL 2210261 (S.D. N.Y. Sept. 30, 2004) ...................................................3

*Youssef v. Halcrow, Inc.,*
  11-CV-2283, 2013 WL 2338182 (S.D. N.Y. May 24, 2013) ....................................................4

**Statutes**

Fair Debt Collection Practices Act ...............................................................................................1, 2, 4

Truth in Lending Act ....................................................................................................................1, 2, 6

**Other Authorities**

12 CFR 1026.39(a)(1), (b) ...................................................................................................................6

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2, 3, 4, 5

Fed. R. Civ. P. 52 ........................................................................................................................3, 4, 5

ii

5455562v.2

Local Civil Rule 56.1 .................................................................................................5

Local Rule 6.3 ............................................................................................................3

**-PA 387-**

5455562v.2

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law in opposition to the motion of Roger Rowe ("Rowe" or "Plaintiff") which seeks "Relief from Judgment, New Trial and in the Alternative Amend Findings Pursuant to Fed R. 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)".

## I.    **INTRODUCTION**

Rowe commenced this action against Cenlar on December 30, 2019, alleging violations of *inter alia* the Truth in Lending Act ("TILA") and the Fair Debt Collection Practices Act ("FDCPA") before amending his complaint to name CitiMortgage as a defendant.  Defendants then moved to dismiss the First Amended Complaint, which motion was granted.  Rowe now asks this Court for relief from its Judgment dismissing the Amended Complaint, but fails to support this request.  Rowe initially mistakes Defendants' prior motion as one for summary judgment, rather than dismissal, and so misapplies the respective standard that the Court applied.  Rowe also claims that Defendants submitted evidence in support of their motion for dismissal when the only "evidence" Defendants relied upon was Rowe's own Amended Complaint and the documents he attached thereto.  More importantly, Rowe does not point to any mistaken application of the law or the facts by this Court in dismissing the Amended Complaint.  Instead, Rowe simply disagrees with this Court's determination and seeks to propound his same arguments again.  This does not form a basis for the Court to vacate the Judgment and Rowe's motion should be denied.

## II.   **FACTUAL BACKGROUND**

On or about November 7, 2002, Rowe entered into a Consolidation Extension and Modification Agreement ("CEMA") with Citibank, N.A. (the "Loan"), which created a single lien in the amount of $157,500.00 on the property known as 20 Spruce Road, Amityville, New York 11701-1019 (the "Property").  *See* First Amended Compl. ("Compl."), Ex. B.  Plaintiff signed a

5455562v.2

Truth in Lending Disclosure Statement at the time he signed the CEMA on November 7, 2002. *See* Compl., Ex. L.  Effective April 1, 2019, Cenlar began subservicing the Loan on behalf of CitiMortgage.  *See* Compl., Ex. F.  Plaintiff claimed to have rescinded the Loan pursuant to TILA by correspondence dated October 21, 2019.  *See* Compl., Ex. C.  Notably, this was nearly seventeen years after Plaintiff entered into the CEMA and signed the Truth in Lending Disclosure Statement.

### III.   **PROCEDURAL HISTORY**

Plaintiff commenced this action solely against Cenlar on December 30, 2019, alleging violations of TILA, the FDCPA, and fraud.  *See* Dkt. No. 1.  Cenlar moved to dismiss the complaint on April 28, 2020.  *See* Dkt. No. 11.  After that motion was fully briefed on June 15, 2020 (*See* Dkt. No. 13), Plaintiff separately moved to amend the complaint on August 6, 2020 (*See* Dkt. No. 14).  By Docket Order dated March 15, 2021, the Court granted Plaintiff leave to file an amended complaint and denied Defendants' motion as moot.

On March 22, 2021, Plaintiff filed his First Amended Complaint, which added CitiMortgage as a defendant.  Plaintiff asserted causes of action pursuant to TILA, the FDCPA, Breach of Contract, Breach of Fiduciary Duty, and for Aiding and Abetting Fraud.  Plaintiff also annexed exhibits to the First Amended Complaint: a July 12, 2019 letter to Plaintiff from Cenlar; a copy of the CEMA; Plaintiff's purported October 21, 2019 Notice of Rescission; a credit report for Plaintiff; an August 22, 2019 payoff statement from Cenlar to Plaintiff; a Notice of Service Transfer letter from CitiMortgage to Plaintiff; a payment history for the Loan; a June 27, 2019 letter from Plaintiff to Cenlar; an August 2, 2019 letter from Cenlar to Plaintiff; a Daily Treasury Yield Curve Rate table; a TILA Disclosure Statement baring Plaintiff's signature; a Good Faith Estimate of Settlement Costs; and a July 19, 2002 letter from CitiMortgage to Plaintiff.  *Id.*

On August 11, 2021, Defendants filed a fully briefed Fed. R. Civ. P. 12(b)(6) Motion to Dismiss First Amended Complaint.  *See* Dkt. No. 24.  Defendants did not annex any documentary

2

5455562v.2

evidence to their motion. *Id.* On December 22, 2021, Defendants' motion was granted and Plaintiff's federal claims were dismissed with prejudice, while his state-law claims were dismissed without prejudice. *See* Dkt. No. 25. A judgment dismissing Plaintiff's federal claims with prejudice and state law claims without prejudice was issued on December 29, 2021 (the "Judgment"). *See* Dkt No. 26.

## IV.   **ARGUMENT**

### A.   **Legal Standard.**

Fed. R. Civ. P. 52(b) provides that, "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or mark additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 59(e) provides that, "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

To that end, "[t]he standards governing motions for amendment of findings under Rule 52(b), motion to alter or amend a judgment pursuant to Rule 59(e), and motions for reconsideration pursuant to Local Rule 6.3 are the same." *Wechsler v. Hunt Health Systems, Ltd.*, 94-CV-8294, 2004 WL 2210261 *2 (S.D. N.Y. Sept. 30, 2004). This standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

Fed. R. Civ. P. 59(a)(1)(B) provides that, "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party...after a nonjury trial, for any reasons for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(2) provides that, "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgement

5455562v.2

if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of new judgment."

Fed. R. Civ. P. 60(b) provides that a court may relieve a party from a final judgment based upon mistake, inadvertence, surprise or excusable neglect (60[b][1]); fraud, misrepresentation, or misconduct by the opposing party (60[b][3]); or any other reason that justifies relief (60[b][6]). To that end, "[b]ecause '[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances,' a party moving under Rule 60(b) must meet an 'onerous standard.' *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001)." *Youssef v. Halcrow, Inc.*, 11-CV-2283, 2013 WL 2338182 *1 (S.D. N.Y. May 24, 2013).

**B.**      **Plaintiff's Request For Relief Pursuant To Fed. R. Civ. P. 52 and 59 Are Procedurally Improper And Must Be Denied.**

Plaintiff argues for relief pursuant to Fed. R. Civ. P. 52(b), claiming that Defendants presented "inadmissible hearsay" in support of their motion (Affirmation/Declaration ¶ 45), for a modification of the Judgment to state that Defendants are not entitled to enforce the note or mortgage (*Id.* at ¶ 46), that Defendants are liable under the FDCPA (*Id.* at ¶ 47) and that Defendants are guilty of aiding and abetting and conversion. *See* Affirmation/Declaration ¶¶ 45 – 48. With regards to Rule 59, Plaintiff first concedes "there is actually no need for a new trial or hearing" (*Id.* at ¶ 49) before asking that the Court "calculate Plaintiff's award" (*Id.* at ¶ 50).

Plaintiff disregards that both Rule 52 and 59 are premised on a judgment issued *after trial*. *See generally* Fed. R. Civ. P. 52(a)(1); 59(a). There can be no dispute whether this motion is proceeding post-trial because no trial was held on this matter. Defendants' motion was a pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Thus, in the absence of a nonjury trial being held, Plaintiff's request for relief pursuant to Fed. R. Civ. P. 52 and 59 must be denied.

5455562v.2

*See Linge v. Georgia*, 13-CV-116, 2013 WL 12108609 *1 (N.D. G.A. Oct. 23, 2013) ("Rule 52[b] is inapplicable here as no trial took place before this action was closed."); *Cruz v. Barnhart*, 4-Cv-9794, 2006 WL 547681 f.1 (S.D. N.Y. Mar. 7, 2006) ("Fed.R.Civ.P. Rule 59[a] does not apply as there was no trial in this case").

**C.      Plaintiff Request For Relief Pursuant To Fed. R. Civ. P. 60 Must Be Denied.**

Plaintiff alleges that the Judgment should be vacated pursuant to Fed. R. Civ. P. 60(b) upon a claim of "mistake". Plaintiff alleges that the mistake warrants vacatur in spite of the fact that it resulted in a "favorable ruling" for Plaintiff. *See* Affirmation/Declaration ¶ 51. In fact, it is Plaintiff who is mistaken on the instant motion. Plaintiff claims that the very evidence that he submitted to this Court was fraudulent and that his own act warrants vacatur. This is simply not the purpose of Rule 60.

A motion seeking to vacate a judgment pursuant to Fed. R. Civ.P. 60(b)(1) is addressed to the sound discretion of the district court and should only be granted upon a showing of exceptional circumstances. *See Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (affirming the district court's denial of Plaintiff's Rule 60(b) motion).

Plaintiff seems confused on several points regarding Defendants' motion which he now seeks relief from. First, Plaintiff claims that the Court "erred as a matter of law when it granted summary judgment based on hearsay evidence." Affirmation/Declaration ¶ 34. However, Defendants did not move for summary judgment, but made a pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 24. Accordingly, the Court did not grant Defendants summary judgment, but granted dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 25, pp 1 – 2. Thus, Plaintiff's references to a statement of material facts pursuant to Local Civil Rule 56.1 is inappropriate here (Affirmation/Declaration ¶¶ 35, 39 – 40, 43) and was

5

5455562v.2

equally inappropriate in opposition to Defendants' motion to dismiss, as Defendants noted in their reply memorandum of law (*See* Dkt. No. 24).

Further, where Plaintiff seeks relief pursuant to Rule 60 upon a claim that Defendants submitted "evidence which they know was false" (Affirmation/Declaration ¶ 52), Defendants in fact did not submit evidence in support of its motion. Instead, Defendants pointed solely to the First Amended Complaint and the thirteen documents that Plaintiff himself appended thereto. *See Abraham v. Lynch*, 16-CV-3502, 2016 WL 8786874 (E.D. N.Y. Dec. 15, 2016) (In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may rely upon documents which have been attached to the complaint as exhibits). Plaintiff cannot voluntarily include documents as exhibits to his own complaint, subsequently call these documents "false", and then ask that the Court disregard these documents.

Lastly, none of the arguments Plaintiff sets forth provides any basis to relieve him from the Judgment. The Court determined that Plaintiff's claim for damages pursuant to TILA failed as a matter of law because neither Cenlar nor CitiMortgage were a "covered person" under 12 CFR 1026.39(a)(1), (b). *See* Dkt. No. 25, pp. 4 – 5. This finding was supported by the correspondence that Plaintiff included in his First Amended Complaint as Exhibit A, stating that it was Federal National Mortgage Administration, not Defendants, which owned the Loan and that Cenlar and CitiMortgage serviced the loan on its behalf. *See* Dkt. No. 19, Ex. A. Plaintiff himself conceded this point in his First Amended Complaint. *See* Compl. ¶ 10. Plaintiff presents nothing to call into question this conclusion, one that he himself arrived at.

Plaintiff's rescission claim was also properly dismissed as time-barred. Plaintiff included a copy of the Consolidation, Extension and Modification Agreement ("CEMA") as an exhibit to his First Amended Complaint. *See* Dkt. No. 19, Ex. B. This agreement was dated November 7,

5455562v.2

2002, so more than fourteen years passed from the expiration of Plaintiff's right to rescind to the sending of his purported Notice of Rescission and the Court properly determined rescission was time-barred.  *See* Dkt. No. 25, p. 6.  Further, the Court properly determined that the service transferring of the Loan was not a "credit sale" as Plaintiff alleged, but merely the transfer of servicing rights.  *Id.* at p. 7.  This again was supported by the letter which Plaintiff attached to his own First Amended Complaint.  *See* Dkt. No. 19, Ex. F.

 In fact, Plaintiff does not present an extraordinary circumstance warranting relief pursuant to Rule 60.  Instead, Plaintiff attempts to relitigate Defendants' Motion to Dismiss. This simply is not the purpose of a Rule 60 motion.  *See Robinson v. IBM Corporate*, 08-CV-2448, 2008 WL 2705523 (E.D. N.Y. July 10, 2008) (a Rule 60[b] cannot serve as an attempt to relitigate the merits of a prior decision); *Franza v. Stinson*, 98-CV-5484, 2006 WL 2683023 (S.D. N.Y. Sept. 19, 2006) (Plaintiff's mere disagreement with the court's determination is not an extraordinary circumstance within Rule 60).

7

5455562v.2

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court denies Plaintiff's motion for "Relief from Judgment, New Trial and in the Alternative Amend Findings Pursuant to Fed R. 52(a)(6), 52(b), 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)" and grant such other and further relief as it deems appropriate.

Dated:    January 19, 2022                STRADLEY RONON STEVENS & YOUNG, LLP
          New York, NY                    A Pennsylvania Limited Liability Company


                                          By:    /s/ <u>Lijue T. Philip</u>
                                                 Lijue T. Philip
                                                 100 Park Avenue, Suite 2000
                                                 New York, New York  10017
                                                 Telephone:  (212) 812-4124
                                                 Facsimile:  (646) 682-7180
                                                 LPhilip@stradley.com


                                                 *Counsel for Cenlar FSB & CitiMortgage,*
                                                 *Inc.*

8

5455562v.2

## CERTIFICATE OF SERVICE

I, hereby certify that on January 19, 2022, I caused the foregoing document to be served on the below by First Class Mail.

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

*s/ Lijue T Philip*_____
Lijue T. Philip

5455562v.2

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 28 2022 ★

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

ROGER ROWE
        Plaintiff(s)                                2:19-cv-07278-JMA-AYS

   -v-

CENLAR FSB, CITIMORTGAGE, INC
        Defendant(s)

---

## AFFIRMATION/DECLARATION
## MOTION FOR RELIEF FROM JUDGMENT, NEW TRIAL AND IN THE
## ALTERNATIVE AMEND FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b),
## 59(a)(1)(B), 59(a)(2), 60(1), 60(3) and 60(6)

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule of Law. I also submit the attached memorandum of law in support of this affirmation.

## PRELIMINARY STATEMENT

Plaintiff reply to Defendant's motion in opposition for relief from judgment and to amend the finding of the Courts December 22, 2021 decision and order Dkt. No. 25 and its December 29, 2021 judgement Dkt. No. 26 or in the alternate commence a new trial or hearing.

Plaintiff respectfully ask this Court to amend it judgment to reflect the foundational legal question and controlling law which resolves the controversy leaving no genuine issue as to any material fact.

Although the Courts decided the fundamental issue on a point of law ("deep issue") the Court failed to reflect its determination in the December 21, 2021 decision and order. Black's Law (8th ed. 2004) defines a deep issue as "Essentially, a deep issue is the ultimate, concrete question that a court needs to answer to decide a point your way. Deep refers to the deep structure of the case — not to deep thinking. The deep issue is the final question you pose when you can no longer

1

usefully ask the follow-up question, 'And what does that turn on?'" Bryan A. Garner, The Winning Brief 56 (2d ed. 2004).

In this instance the question ("deep issue") is whether Defendants have a legal right to enforce Plaintiff note or mortgage (the loan)?

The question was decided in the negative when the Court determined that Defendants were never transferees or assignees of the loan in question. If the Defendants were never transferee or assignee of the note or mortgage, they committed fraud on the Court when they fraudulently obtain summary judgment masquerading as a person entitled to collect.

Furthermore, Defendants claim that FNMA owners the loan is belied by the qualified indorsement in blank. As proscribed under UCC § 3-201(3) "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner". Here the record is void of an agreement or authorization proving FNMA's ownership, in fact the qualified indorsement in blank discharges the underlying obligor (*See* UCC § 3-802). Even if Defendants were to provide an agreement, the qualified indorsement in blank precludes them from enforcing the loan as a matter of law, being that the loan was pro tanto discharged pursuant to UCC § 3-802.

Congress enacted TILA, RESPA and FDCPA to protect consumers from unfair, abusive or deceptive lending and servicing practices such as the unconscionable act of illegally collecting a loan for 17 years. The Act also provides protections from predatory lenders who over charge consumers when the refinance a loan (points and fees). In this instance the record clearly indicates that the Defendants were not entitled to enforce the loan and the face of the disclosure showed

2

material violations. As such the Courts December 21, 2021 decision and order as well as the December 29, 2021 judgment should be modified to reflect Plaintiff rights to property and damages (actual, statutory or punitive).

### STATEMENT OF FACTS & FACTUAL BACKGROUND

1. The statement of facts noted in the Dkt. No. 27 are incorporated in this submission.

### ADDITIONAL STATEMENT OF FACTS & FACTUAL BACKGROUND

2. The Court determined that Defendants were neither transferee or assignee of the loan.

3. Defendants admit that they did not own the loan Dkt. No. 28 page 10.

4. Defendants admit that they are not a "covered person" Dkt. No. 28 page 10.

5. The Court provided notice to convert Defendants Rule 12 motion to that of a Rule 56 summary judgment motion See Dkt. No 10.

6. Defendants continues to conflate the issue as to the type of motion submitted and the Courts ultimate decision to convert the Rule 12 motion to a Rule 56 summary judgment motion Dkt. No. 28 page 9.

7. Defendant falsely claims that he did not submit evidence in support of its motion Dkt. No. 28 page 10. However, Defendants pre motion conference letter clearly includes the submission of evidence outside the pleadings where Defendants claim that Plaintiff was in default Dkt. No. 22 page 3. Dkt. No. 7 page 1 provides further evidence of Defendants affirmative defense claim relative to Plaintiff's alleged default on or about June 1, 2019.

### ARGUMENTS

8. The fact that Defendants were neither transferee or assignee precludes them from enforcing the loan as a matter of law.

3

9. Absent the legal right to enforce Plaintiff's loan, Defendant's undoubtably violated TILA and FDCPA.

10. Defendants or liable to Plaintiff for damages resulting from their unconscionable behavior. Not only did Defendants defraud the Plaintiff, Defendants brazenly lied to the Court and used the judicial system as an instrument of injustice when they fraudulently obtained summary judgment.

11. Defendants and their attorney should be sanctioned for making a mockery of the Court.

12. The judgment should be vacated for various violation of Plaintiff's substantive and procedural due process under the constitution.

## CONCLUSION

13. I respectfully ask the court to modify its December 22, 2021 Memorandum and Order and its December 29, 2021 judgment to reflect the record and more so the findings of the Court relative to Defendant's inability to enforce the loan.

14. Furthermore, Defendant's unconscionable predatorial activities should not go unpunished. Defendants fraudulently assigned and transferred Plaintiff's loan obligation and illegally charged excessive fees while benefiting from the unauthorized uses and impairment of Plaintiff's collateral. As such this court should penalize Defendants to the maximum extent of the law inclusive of damages (actual, statutory and punitive).

Dated: January 28, 2022

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

ROGER ROWE,

                     Plaintiff

        - v -                              **Case No. 2:19-cv-07278 (JMA) (AYS)**

CENLAR FSB, CITIMORTGAGE, INC

                     Defendants.

_____


_____


**PLAINTIFFS MEMORANDUM OF LAW IN REPLY TO DEFENDANTS
OPPOSITION TO PLAINTIFFS MOTION FOR RELIEF FROM
JUDGMENT, NEW TRIAL AND IN THE ALTERNATIVE AMEND
FINDINGS PURSUANT TO FED. R CIV. P. 52(a)(6), 52(b), 59(a)(1)(B),
59(a)(2), 60(1), 60(3) and 60(6)**

_____


Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

i

## Table of Contents

INTRODUCTION...............................................................................................................1

I.    ARGUMENT.............................................................................................................3

    A.    Plaintiff Request For Relief Pursuant to Fed. R. Civ. P 52 and 59 Are procedurally proper and should be granted.............................................................................................3

    B.    Plaintiff Request For Relief Pursuant to Fed. R. Civ. P 60 Should Be Granted ..........5

CONCLUSION ...............................................................................................................14

ii

## Table of Authorities

### Cases

*ACE Chrome Corp. v. IBEX Const., LLC*, No. 08 Civ. 10401, 2009 WL 2482136, at *3 (S.D.N.Y. Aug. 13, 2009) ................................................................................................ 3

*Ashcroft v. Al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ......................... 15

*Bank of New York v. Silverberg*, 86 A.D.3d 274, 275, 926 N.Y.S.2d 532, 533 .............. 16

*Beach v. Great Western Bank*, 692 So.2d 146,148-149 (Fla.1997)........................................ 6

*Beach v. Great Western*, 670 So.2d 986 (Fla. 4th DCA 1996)....................................... 6

*Beach v. Ocwen*, 118 S.Ct.1408 (1998) ............................................................ 6, 8

*Belini v. Washington Mut. Bank*, FA, 412 F.3d 17, p. 28 (1st Cir. 2005)....................................... 8

*Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019)..................... 12

*Deutsche Bank Natl. Trust Co. v Monica*, 131 AD3d 737, 739) .................................... 4

*Dove v. McCormick*, 698 So.2d 585, 586 (Fla. 5th DCA 1997)............................................ 7

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) .................... 15

*Huff v. Stewart-Gwinn Furniture Co.*,713 F.2d 67, 69 (4th Cir. 1983) ............................ 9

In *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) ................................................ 12, 14

In *Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d 935, 938 (9th Cir. 1975) ....................... 10

In *re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011)................................................... 14

In *re Gorman*, Case No. 11-73029-ast (Bankr. E.D.N.Y. Oct. 27, 2011) ...................................... 16

*Kasket v. Chase Manhattan Bank*, 695 So.2d 431,434 (Fla.4 DCA 1997) [Kasket I,] Dove, p.586-587, Pignato, p.1013, Rodash, p.1144............................................................ 7

*Kluge v. Fugazy*, 145 A.D.2d 537, N.Y.S.2d 92 (2d Dep't. 1988) ................................................ 2

*LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001)............................................................................................. 3

*Mars v. Spartanburg Chrysler Plymouth, Inc.*,713 F.2d 65, 67 (4th Cir. 1983)............................ 9

*Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990)........................ 5

*Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015)........................................ 12, 14

*Pignato v. Great Western Bank*, 664 So.2d 1011, 1013 (Fla. 4th DCA 1996)............................ 7

*Rodash v. AIB Mortgage*, 16 F.3d 1142 (11th Cir.1994)................................................. 7

*Semar v. Platte Valley Federal S L Ass'n*, 791 F.2d 699, 703-4 (9th Cir. 1986) .......................... 9

*Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782 ...................................... 4

*Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (quoting *Trammel v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017)) ...................................................................... 11

*White v. New Hampshire Dept. of Employment Security*, 455 U. S. 445, 450 ............................... 5

### Statutes

§ 1602(h) ............................................................................................... 11

§ 1605(a) .............................................................................................. 10

§ 1635(b) ........................................................................................................... 9, 10
§ 1692(f)(1) ..................................................................................................... 14, 17
§ 9-102(74) ........................................................................................................... 10
§1635 ...................................................................................................................... 8
§1640(a) ............................................................................................................. 7, 8
§1640(a)(1) ............................................................................................................. 7
§1640(a)(2)(A)(i) .................................................................................................... 7
§1640(a)(2)(A)(iv) .................................................................................................. 7
§1640(a)(3) ............................................................................................................. 7
§1640(a)(4) ............................................................................................................. 7
§1641(a)(1) ............................................................................................................. 8
§1641(c) .................................................................................................................. 8
§1641(e)(1)-(2) ....................................................................................................... 8
§1641(e)(2). ............................................................................................................ 8
UCC § 3.201(3)....................................................................................................... 2
UCC § 3-201 ........................................................................................................... 6
UCC § 3-413 ........................................................................................................... 1
UCC § 3-802 ........................................................................................................... 1

## Rules

looks Rule 52(c) ..................................................................................................... 3
Rule 12(b)(6) ........................................................................................................ 12
Rule 52(a) ............................................................................................................... 3
Rule 52(c) .............................................................................................................. 16
Rule 56 ............................................................................................................ 12, 13

## Regulations

§ 1026.2(a)(16)(3) ................................................................................................ 11
Reg Z 226.23 ........................................................................................................... 8
Reg Z 226.23(a)(3)................................................................................................. 8
Reg Z 226.31 ....................................................................................................... 7, 8
Reg Z 226.32 ........................................................................................................... 7
Reg Z. § 1026.2(a)(16).......................................................................................... 10

## INTRODUCTION

On July 12, 2019 Defendant Cenlar sent Plaintiff a letter stating that as of April 1, 2019 they were the new servicer and would be providing servicing for his Consolidated Extension and Modification Agreement (CEMA) and that Federal National Mortgage Administration (FNMA) was a third-party beneficiary. However, Cenlar failed to provide evidence that FNMA was entitled to enforce the note or mortgage.

After sending numerous correspondence asking Defendants, (1) how Plaintiff come to owe them money, (2) what documentation they have showing Plaintiff agreed to pay FNMA or Cenlar, (3) copies of any judgment against Plaintiff and (4) how the amount owed was calculated, Plaintiff received a copy of the October 23, 1989 (1st Mortgage) and the November 7, 2002 (2nd Mortgage) exhibiting a prominent conditional, qualified, blank indorsements proving that the notes in question were pro tanto discharged (UCC § 3-802).

Moreover, the Courts determined that the loan was not transferred or assigned to defendants (*See* Dkt. No. 25 page 7). Nevertheless, Defendants continue to insist that they are entitled to receive payment on a loan in arrears (*See* Dkt No. 19 page 48). Furthermore, the "Previous Loan History" sheet (*See* Dkt No. 19 page 117 to 131), extirpates Defendants claim of having no record of the loan being paid in full. The record clearly shows a zero principal balance which does not support Defendants claim that the Plaintiff is "responsible to continue making payments (*See* Dkt No. 19 page 137).

Defendants claim Plaintiff is responsible for payment and that FNMA is the owner of the loan is belied by the qualified blank indorsement which states that maker or accepter engages that he will pay the instrument according to its tenor at the time of his engagement or as complete pursuant to Section 3-115 on incomplete instruments (*See* UCC § 3-413). Moreover UCC § 3-

1

415(5) "An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party".

It is obvious that Defendants is attempting to make a mockery of the Court by forcing your Honor, into making a clearly erroneous judgment. The fact that the Court determined Defendants were never transferred or assigned the loan evidenced their misrepresenting the type, character and amount of the debt. Defendants clearly demanded payment of a third-party debt in which they were not transferred or assigned title. Moreover, the Defendants failed to provide evidence in admissible for (from a person with knowledge) that FNMA was transferred or assigned the loan or even gave Defendant's authorization to enforce or collect on the loan.

As such Defendants clearly violated TILA and FDCPA and should have never been granted summary judgment. Moreover, the Courts actions violated Plaintiff's substantive and procedural due process when it abruptly dismissal Plaintiff's claims, despite its determination that Defendants were not transferees or assignees of the loan. It is well settled that a absent the assignment of a debt (the note), assignment of the mortgage is a nullity *See* Kluge v. Fugazy, 145 A.D.2d 537, N.Y.S.2d 92 (2d Dep't. 1988).

UCC § 3.201(3) states that "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor". As such the qualified blank indorsement on the face of the instrument precludes the transferee from being the owner. The second sentence under UCC § 3.201(3) states that "Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner".

New York law requires a party asserting rights as a third-party beneficiary must establish that "(1) a valid and binding contract existed, (2) the contract was intended for the plaintiff[']s

2

benefit, and (3) the benefit to the plaintiff is immediate (rather than incidental), indicating that the

contracting parties intended to compensate the plaintiff." *ACE Chrome Corp. v. IBEX Const., LLC*,

No. 08 Civ. 10401, 2009 WL 2482136, at *3 (S.D.N.Y. Aug. 13, 2009). The "parties' intent to

benefit the third party must be apparent from the face of the contract . . . [and] [a]bsent clear

contractual language evincing such intent, New York courts have demonstrated a reluctance to

construe such an intent." *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 729 N.Y.S.2d

671, 676 (N.Y. App. Div. 2001) (citations omitted).

## I.      ARGUMENT

### A.      Plaintiff Request For Relief Pursuant to Fed. R. Civ. P 52 and 59 Are procedurally proper and should be granted

Defendants misinterprets or over looks Rule 52(c) which directs a litigant to proceed under

Rule 52(a) "If a party has been fully heard on an issue during a nonjury trial and the court finds

against the party on that issue, the court may enter judgment against the party on a claim or defense

that, under the controlling law, can be maintained or defeated only with a favorable finding on that

issue. The court may, however, decline to render any judgment until the close of the evidence. A

judgment on partial findings must be supported by findings of fact and conclusions of law as

required by Rule 52(a)".

This rule is substantially similar to Federal Rule of Civil Procedure 52, as amended in 2007

and 2009, but maintains the following local distinctions in subsection (a)(1): 1) the parties can

expressly waive the requirement that the court state its findings of fact and conclusions of law in

a nonjury action; 2) the phrase "after the close of evidence" has been deleted to permit the court

to make partial findings and conclusions as the case progresses; and 3) the findings and conclusions

need only state the controlling grounds for the decision. Consistent with the federal rule, the 10-

day deadline for parties to file post-judgment motions has been expanded to 28 days. This was

3

necessitated by the Rule 6(b) prohibition on an extension of this deadline. The change is intended to give parties more time to prepare a satisfactory post-judgment motion while maintaining certainty in appeal times.

In this instance Defendants failed to establish its prima facie entitlement to judgment as a matter of law, as it failed to submit evidence demonstrating the defendants' default in payment (see *Tri-State Loan Acquisitions III, LLC v Litkowski*, 172 AD3d 780, 782; *Deutsche Bank Natl. Trust Co. v Monica*, 131 AD3d 737, 739) and more so Defendants rights to enforce the loan. The record clearly shows Defendant attempting to collect a debt and Defendants were neither owner's, transferees or assigners of the Note or Mortgage. The Courts decision is clearly erroneous and in the interest of justice must be reversed.

Moreover Rule 52(b) provides that "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59". Based on the record and the Courts determination that Defendants were neither transferees or assignees of the note or mortgage a new trial is not necessary. Absent possession of the note and mortgage at the time of an action Defendants lack standing to commence an action to foreclose which means they don't have the right to enforce payment. As such a new trial is not needed unless the Court believes additional fact finding is necessary.

In order to prevent an unnecessary or premature appeal, Plaintiff filed a timely post-judgment motion asking the Court to correct a clearly error. Defendant's opposition to Plaintiff's motion to amend the judgment to reflect the record and the findings of the Court, shows Defendant's brazen disrespect for the rule of law and his persistent attempts to use the Court as an instrument of injustice. Congress enacted TILA and FDCPA to deter banks from unconscionable

4

lending and collection practices. Here Defendants collected payment under false pretense in violation of TILA and therefore is subject to statutory, actual and punitive damages.

Finally, Defendant's contention that Plaintiff's motion must be denied is belied by the law and the rulings of the U.S. Supreme Court. Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend a district court's judgment within 28 days from the entry of judgment, with no possibility of an extension. The Rule enables a district court to "rectify its own mistakes in the period immediately following" its decision, *White v. New Hampshire Dept. of Employment Security*, 455 U. S. 445, 450, but not to address new arguments or evidence that the moving party could have raised before the decision. A timely filed motion suspends the finality of the original judgment for purposes of appeal, and only the district court's disposition of the motion restores finality and starts the 30-day appeal clock. If an appeal follows, the ruling on the motion merges with the original determination into a single judgment. As such Plaintiff's motion should be granted in its entirety.

**B.    Plaintiff Request For Relief Pursuant to Fed. R. Civ. P 60 Should Be Granted**

Defendant mistakenly perceives Plaintiff is asserting a claim that the evidence submitted is fraudulent. The evidence submitted represents undisputed facts, the note, the mortgage, payment history, credit agency report, correspondence and closing documents. The fraudulent activity noted in Plaintiff's motion is related to Defendants actions not the actual documents.

Defendant and its counsel can attempt to evade the law or seek comfort in an erroneous judgment but the judicial system is structured to correct injustice where ever it appears. Counsel is correct when he states the the District Court should only vacate a judgment upon the showing of exceptional circumstances. *See Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (affirming the district court's denial of Plaintiff's Rule 60(b) motion).

5

The record clearly shows that the note and mortgage were never assigned to the Defendants. Moreover, the Court determined that Defendants were never the transferees or assignees of the note or mortgage which is a prerequisite to enforce a note and mortgage in the State of New York ("Standing"). To suggest that a person without standing would be allowed to retain an erroneous judgment from an un bias jurist or an Appeals Court is wishful thinking at its best.

Defendant's claims are far-fetched, unsupported and full of a marred of false and disingenuous statements. Although Defendants may have pointed to all the documents attached to the FAC said document are insufficient to establish rights to enforce the note as a matter of law. Defendant failed to provide evidence from a person with personal knowledge to support its claim that FNMA owned the note or mortgage or evidence of FNMA or his entitlement to an unqualified indorsement which precludes him or his principal (FNMA) from the presumption of ownership as prescribed under UCC § 3-201. Defendant suggestion that Plaintiff somehow conceded to FNMA being the owner of Plaintiff's loan is disingenuous. Plaintiff merely stated that Cenlar FSB, informed him that his original loan was currently owned by FNMA. Defendant failed to say that Plaintiff went on to say that Citibank retained security interest in the collateral debt See Dkt No. 19 ¶ 12 and failed to inform Plaintiff of that transaction See Dkt No. 19 ¶ 16.

Defendants claim that the Court properly dismissed Plaintiff's recission claim is inconsistent with established law. Congress passed TILA to remedy fraudulent practices in the disclosure of the cost of consumer credit, assure meaningful disclosure of credit terms, ease credit shopping, and balance the lending scales weighted in favor of lenders. *Beach v. Ocwen*, 118 S.Ct.1408 (1998), aff'g *Beach v. Great Western Bank*, 692 So.2d 146,148-149 (Fla.1997), aff'g *Beach v. Great Western*, 670 So.2d 986 (Fla. 4th DCA 1996), *Dove v. McCormick*, 698 So.2d 585,

6

586 (Fla. 5th DCA 1997), *Pignato v. Great Western Bank*, 664 So.2d 1011, 1013 (Fla. 4th DCA 1996), *Rodash v. AIB Mortgage*, 16 F.3d 1142 (11th Cir.1994).

TILA creates several substantive consumer rights. §1640(a)(1) gives consumers actual damages for TILA errors in connection with disclosure of any information. §1640(a)(2)(A)(i) states that "in the case of an individual action twice the amount of any finance charge in connection with the transaction", §1640(a)(2)(A)(iv) states that "in the case of an individual action relating to a credit transaction not under an open-end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000". §1640(a)(3) states that "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court". §1640(a)(4) states that "in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material". See Beach, 692 So.2d p.148-149, *Kasket v. Chase Manhattan Bank*, 695 So.2d 431,434 (Fla.4 DCA 1997) [Kasket I,] Dove, p.586-587, Pignato, p.1013, Rodash, p.1144.

HOEPA loans (Also called a §1639 or Section 32 loan.) TILA requires additional disclosures and imposes more controls on loans that meet either the "T-Bill Trigger" or "Points and Fees Trigger" set forth at §1602(aa). §1639, Reg Z 226.31 & Reg Z 226.32, require the creditor for a §1602(aa) loan to give additional early (3 days before consummation) disclosures to the consumer and prohibits loans from containing certain terms (i.e. a prohibition on certain balloon payments). It also has a special actual damage provision at §1640(a)(4) which may provide post 3-year rescission.

7

Assignee liability, §1641(a)(1) and §1641(e)(1)-(2) provides that assignees are liable for §1640(a) damages if the disclosure errors are apparent on the face of the disclosure statement and other documents assigned. Congress statutorily designated the TILA disclosure statement, the TILA notice of right to cancel, and any summary of the closing costs as documents assigned. *See* §1641(e)(2). Furthermore §1641(c) provides that assignees are liable for §1635 rescission regardless of the apparent on the face of the "documents assigned" standard for damages claims. *Belini v. Washington Mut. Bank*, FA, 412 F.3d 17, p. 28 (1st Cir. 2005).

Each consumer with the right to rescind must receive one (1) copy of the correct TILA Disclosure Statement and two (2) copies of a correct Notice of Right to Cancel form. If not, the consumer can rescind for up to 3 years after closing. See: Reg Z 226.23(a)(3), fn 48; Beach v. Ocwen, 118 S.Ct.1408 (1998). The error must be a "material error" which is defined at Reg Z 226.23 "The term "material disclosures" means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in sections 226.32(c) and (d)." A HOEPA loan requires additional disclosures 3 days before consummation. See: Reg Z 226.31(c)(1) ("The creditor shall furnish the disclosures required by section 226.32 at least three business days prior to consummation of a mortgage transaction covered by section 226.32."). The failure to deliver the HOEPA forms is an additional TILA material disclosure which extends the right to rescind for violations. See: Reg Z 226.23(a)(3): "The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation".

8

In *Semar v. Platte Valley Federal S L Ass'n*, 791 F.2d 699, 703-4 (9th Cir. 1986) the court concluded that TILA and Reg Z contain detailed disclosure requirements for consumer loans. A lender's violation of TILA allows the borrower to rescind a consumer loan secured by the borrower's primary dwelling. 15 U.S.C. § 1635(a). Technical or minor violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind. "To ensure that the consumer is protected . . . (TILA and Reg Z must) be absolutely complied with and strictly enforced." *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) (holding that technical violation, even if merely a "minor variation in language and type size" from TILA requirements, imposes liability); see also *Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir. 1983) (minor violations of TILA and Reg Z impose liability even if, as creditor alleged, consumer "was not misled and was given a meaningful and correct disclosure of crucial credit terms").

Unlike equitable rescission, where the intent is to maintain the status quo and return the parties to their prior position, TILA's aim is to punish the wrongdoer and deter unconscionable behavior. 15 U.S.C. § 1635(b) outlines the procedures which allows an obligor to rescind a contract without first having to returning property. The statute clearly states that "Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under the section, the obligor shall tender the property to the creditor except if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."

9

On rescission, the security interest is dissolved and the borrower returns "the property" to the lender except if impracticable or inequitable. 15 U.S.C. § 1635(b). TILA specifically states that the borrower "is not liable for any finance or other charge.". In *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 938 (9th Cir. 1975)") interest was determined to be a finance charge. 15 U.S.C. § 1605(a). Moreover, the fact that Defendants collected payment in which they had no legal right is exactly the type of unfair and deceptive behavior TILA was enacted to deter. If Defendants was neither a holder, covered person, transferee or assignee of the note and mortgage then the Defendants should not have masqueraded as a servicer with rights to enforce the note or mortgage. Defendants claim that "the Court properly determined that the service transfer of the Loan was not a "credit sale" as Plaintiff alleged, but merely a transfer of servicing rights." [sic] Dkt No. 28 page 1, is not supported by law. Servicing rights is a security interest as defined under UCC § 9-102(74) and Defendant CitiMortgage qualified indorsement in blank evidence the security interest.

Reg Z. § 1026.2(a)(16) defines "Credit sale" as "means a sale in which the seller is a creditor. The term includes a bailment or lease (unless terminable without penalty at any time by the consumer) under which the consumer" The official interpretation of 2(a)(16)(1) Special disclosure. States "If the seller is a creditor in the transaction, the transaction is a credit sale and the special credit sale disclosures (that is, the disclosures under § 1026.18(j)) must be given. This applies even if there is more than one creditor in the transaction and the creditor making the disclosures is not the seller. (See the commentary to § 1026.17(d).)". 2(a)(16)(3) Refinancings states that "Generally, when a credit sale is refinanced within the meaning of § 1026.20(a), loan disclosures should be made. However, if a new sale of goods or services is also involved, the transaction is a credit sale". 2(a)(16)(3) states that "Incidental sales. Some lenders sell a product or service - such as credit, property, or health insurance - as part of a loan transaction. Section

10

1026.4 contains the rules on whether the cost of credit life, disability or property insurance is part of the finance charge. If the insurance is financed, it may be disclosed as a separate credit-sale transaction or disclosed as part of the primary transaction; if the latter approach is taken, either loan or credit-sale disclosures may be made. (See the commentary to § 1026.17(c)(1) for further discussion of this point.)".

The term "credit sale" is also defined under 15. U.S.C. § 1602(h) as "refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.".

In this instance the qualified indorsement in blank clearly identifies Citibank N.A. as the creditor who sold the rights to Citimortgage who in turn transferred the rights to Cenlar. This Court affirmed Citibanks status when it determined that Citibank was the original creditor *See* Dkt No. 25 page 5. There is no doubt that the credit sale in question falls under 15. U.S.C. 1602(h) and § 1026.2(a)(16)(3) as "Incidental sales", of which a product or service (servicing rights) were sold. The being said as a matter of law the April 1, 2019 credit sale should have been rescinded.

Defendants claim that "Plaintiff does not present an extraordinary circumstance warranting relief pursuant to Rule 60" (*See* Dkt No. 28 page 11) is belied by the law. Any condition where a citizen is denied due process or is treated differently under similar circumstances is a violation of a person's constitutional right. *See Valderas v. City of Lubbock,* 937 F.3d 384, 389 (5th Cir. 2019) (quoting *Trammel v. Fruge,* 868 F.3d 332, 339 (5th Cir. 2017)).

11

-PA 415-

In *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) (per curiam). The United States Constitution Amendment V & XIV assures a citizen due process and equal protection under the law. Based on the record I am sure that a reasonable jurist would correct a plain error or an oversite which resulted in an erroneous judgment.

This Courts has consistent denied summary judgment for failure to comply with Local Rule 56.1 *See Davis v. Town of Hempstead*, 14-CV-903 (JMA)(GRB) (E.D.N.Y. Jan. 16, 2019). However, in this instance the Court granted Defendant's summary judgment despite Defendant's failure to submit a statement of material fact. The Courts decision gives the appearance of bias or partiality. Defendants submitted a Rule 12(b)(6) motion which included matters outside the pleadings (e.g. an affirmative claim of Plaintiff's default) which extirpates his claim that the Court granted dismissal pursuant to Fed. R. Civ. P. 12(b)(6) See Dkt. No. 28 page 9. The Court undoubtedly, although erroneously granted summary judgment as prescribed under Rule 56. In *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019) this Court stated that "("Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d), therefore, presents district courts with only two options: (1) "the court may exclude the additional material and decide the motion on the complaint alone" or (2) "it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.").

12

Here the Court not only admitted Defendants affirmative defense relative to Plaintiff's default, it determined that Plaintiff was not in default until June 2019 See Dkt. No. 25 page 8 despite the lack of business records after March 30, 2019 supporting such an allegation. Rule 12(d) explicitly states that the motion must be treated as one for summary judgment under Rule 56, if evidence outside the pleading are presented and not excluded by the court. In this instance the Court converted a Rule 12 motion to a Rule 56 and clearly failed to comply with Rule 56 or Local Rule 56.1 despite informing the party's of its intent to convert the Rule 12 motion to a Rule 56 summary judgment motion See Dkt. No. 18. In any event an error was made and the Court is required by law to correct its mistake.

In addition to the procedural violations noted above, the Court failed to protect Plaintiff's substantive rights, codified under 15 U.S.C. §§ 1640, 1641 of which Congress enacted to protect consumers from predatory lenders and creditors. Although the Court determined that Plaintiff note or mortgage was never transferred or assigned to Defendants, the Court erroneously granted summary judgment. The Court cannot determine that Plaintiff was in default in June but determine that Defendant was not a transferee or assignee of the note or mortgage. Why would Plaintiff pay someone who was not the holder of the note or the person authorized to enforce the note. New York law is clear that a person claiming rights to a note must show proof that the are holders of the loan, assigned the loan or have authority to enforce the loan. The fact that Defendants failed to provide evidence authorizing them to enforce the loan and the Court determined that they were neither transferees or assignees should have precluded them from obtaining summary judgment. In fact the mere attempt to collect a debt that one was not authorized to collect is a violation of TILA and FDCPA.

13

Rule 52, 59 and 60 allows the Court to correct an error and avoid the deprivation of one's constitutional rights. In *Garcia v. Blevins*, 957 F.3d 596 (5th Cir. 2020) the Fifth Circuit stated "To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) (per curiam). We cannot "define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742. Rather, the question must be "frame[d] . . . with specificity and granularity." *Morrow*, 917 F.3d at 874–75. That being said the jurist presiding over this case is learned and has a clear understanding of the statutes, rules and regulations of the State and Federal Government and have taken an oath to uphold the integrity and independence of the judiciary and perform the duties of the office fairly, impartially and diligently.

## CONCLUSION

There is no doubt that Defendants are debt collectors and are attempting to collect a debt as evidenced by the June 12, 2019 letter. 15 U.S.C. § 1692(f)(1) states that "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law". As such FDCPA prohibits the collection of an incidental obligation. In this instance the Court has determined that the Defendants were neither transferees or assignees of the loan and as such was not entitled to collect any payment form the Plaintiff. In *re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y. 2011) the Court ruled that "Movant, which acts as the representative of U.S. Bank, must show that U.S. Bank holds both the Mortgage and the Note.". In this instance Defendants failed to provide evidence supporting its claim that FNMA was the holder of the note and mortgage or that they were authorized to enforce the loan.

14

The qualified blank indorsement evidence CitiMortgage security interest and promise to pay the instrument. Cenlar's acceptance of the subjects them to all claims and defenses the consumer could assert against the creditor of the mortgage, unless they can demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) [1] of this title.

The Court cannot allow Defendants to brazenly utilize the judicial system as an instrument of injustice to deprive a citizen of his property. Acquiescence or pusillanimous action gives the appearance of incompetence, negligence or the willingness to violate a clearly established law. A jurist must avoid (1) violating a statutory or constitutional right, and (2) once the right is "clearly establish" at the time of the challenged conduct (emphasis added) *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Ashcroft v. Al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

Absent the Courts admonishment of Defendants unconscionable behavior and the reversal of the December 29, 2021 judgment, Plaintiff would be deprived of his substantive rights prescribed under 15 U.S.C. §§ 1640, 1641. If the judgment is not reversed and the Court continues to depart from the accepted and usual course of judicial proceedings, the Court would be depriving Plaintiff of his constitutional right to due process and equal treatment under the law.

This Court determined that Defendants were neither transferees or assignees of the loan (which is a prerequisite for proving enforcement rights). The Courts decision is supported by New York Law which requires a person asserting rights to a mortgage to have standing to commence a foreclosure action. *See Bank of New York v. Silverberg*, 86 A.D.3d 274, 275, 926 N.Y.S.2d 532,

15

533. In *re Gorman*, Case No. 11-73029-ast (Bankr. E.D.N.Y. Oct. 27, 2011) the Bankruptcy Court stated "this Court adopted the Silverberg analysis, as New York law has long recognized that the rights under a mortgage lien are held by the holder of the note, and are beneficially transferred to the assignee of a promissory note if the note is properly transferred, even without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage. However, the obverse is not true; an assignment of the mortgage does not effect a transfer of the debt. Said otherwise, and perhaps by oversimplification, the lien follows the debt, but the debt does not follow the lien."

Rule 52(c) specifically prohibits the Court from rendering a decision in which the issue is unsupported by favorable finding of fact or law. Black's Law (8th ed. 2004) defines ("issue") as "In federal civil procedure, an issue is a single, certain, and material point arising out of the allegations and contentions of the parties; it is matter affirmed on one side and denied on the other, and when a fact is alleged in the complaint and denied in the answer, the matter is then put in issue between the parties." 35A C.J.S. Federal Civil Procedure § 357, at 541 (1960). "issue of fact". A point supported by one party's evidence and controverted by another's, "issue of law". A point on which the evidence is undisputed, the outcome depending on the court's interpretation of the law. "legal issue" A legal question, usu. at the foundation of a case and requiring a court's decision. "material issue" An issue that must be decided in order to resolve a controversy. The existence of a material issue of disputed fact precludes summary judgment.

There is no doubt that this case warrants summary judgement, however, the Court erroneously granted Defendant's motion in lieu of granting Plaintiff summary judgment. Although the Court properly determined all issues of fact and law when it answered the legal question as to Defendants rights to enforce the loan in the negative, the Court erroneously granted Defendant's

16

summary judgment. Therefore, the Court cannot in good conscience allow an erroneous judgment to stand or support Defendant's claim that they are entitled to collect payments.

15 U.S.C. § 1692(f)(1) precludes "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law". The fact that Defendant's were never transferred or assigned nor authorized to enforce the note and mortgage is evidence o fan attempt to collect on a incidental debt obligation which violates both TILA and FDCPA.

As such Plaintiff respectfully ask this court to amend its findings to grant Plaintiff's claims in its entirety or in the alternative order a new trail.

Respectfully.

Signed this 28th day of January, 2022.

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

17

Hon. Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, New York 11722

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUN 08 2022   ★

LONG ISLAND OFFICE

Re:   *Rowe v. Cenlar FSB -19-cv-7278*
      *Amended order and judgement*

June 8, 2022
Hon Joan M. Azrack

On January 10, 2022 Plaintiff filed a motion for relief from this Courts December 22, 2021 decision and subsequent order dated December 29, 2021 (Dkt. # 27). On January 19, 2021 Defendants filed their opposition to the motion (Dkt. # 28). On January 28, 2022 Plaintiff field his reply (Dkt. # 29). However, the Court has yet to issue a determination some 120 days later.

As stated in my motion the Court's order is inconsistent with its determination and is unsupported by substantial evidence. Although the Court determined that Defendants were never assigned or transferred Plaintiff's loan, the Court erroneously dismissed the case.

If Defendants were never assigned or transferred the loan, any attempt to collect or claim of being a holder would violate FDCPA and TILA. Moreover, Defendants action has also violated Plaintiff rights under the color of law when it used this Court as an instrument of injustice to deprive Plaintiff of his right to damages as a right under 15 U.S.C § 1641.

Despite the Courts clear and unambiguous determination that Defendants were never transferred or assigned the loan, Defendants continue to demand payment from Plaintiff as May 17, 2022 (see Exhibit A). For these reasons Plaintiff respectfully ask the Court to provide an order prohibiting Defendants form further collection activity and award Plaintiff damages prescribed under 15 U.S.C § 1641 as a matter of law.

Respectfully

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

cc: Lijue T. Philip
    *Attorney for Defendant*
    LPhilip@Stradley.com via ECF

**RECEIVED**

JUN 08 2022

**EDNY PRO SE OFFICE**

# EXHIBIT A

**CENLAR** Persons who are deaf, hard of hearing, or have limited speech, may dial 711 TTY.

PO Box 77404
Ewing, NJ 08628
**STATEMENT ENCLOSED**

**Loan Statement** Page 1 of 2

| | |
|---|---|
| Statement Date: | 05/17/22 |
| Account Number: | 4770947259 |
| Payment Due Date | 06/01/22 |
| **Amount Due** | **$69,883.46** |

*If payment is received after 06/17/22, $18.89 late fee will be charged.*

**Contact Us**
Customer Service/Pay By Phone: 855-839-6253
Website: https://www.loanadministration.com
*Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to PO Box 77423 Ewing NJ 08628*

` 0646976 000026997 09CL52 0929466 M0 AF1298 -D P1 CT`
INES ROWE-BRYAN
ROGER ROWE
20 SPRUCE RD
AMITYVILLE NY 11701-1019

**Account Information**

| | |
|---|---|
| Property Address | 20 SPRUCE RD |
| | AMITYVILLE, NY 11701-1019 |
| Outstanding Principal | $105,093.00 |
| Escrow Balance | -$29,755.94 |
| Maturity Date | December 2032 |
| Interest Rate | 6.0000% |
| Prepayment Penalty | NONE |

**Explanation of Amount Due**

Loan Set Up on Automatic Payment/ACH*   NO
*If your account is set up on Automatic Payment/ACH as indicated above, your account will continue to draft as scheduled.

| | |
|---|---|
| Principal | $501.20 |
| Interest | $443.09 |
| Escrow (for Taxes and Insurance) | $884.26 |
| Other | $0.00 |
| **Current Payment Due 06/01/22** | **$1,828.55** |
| Total Fees Charged Since Last Statement | $18.89 |
| Overdue Amount | $68,036.02 |
| **Total Amount Due** | **$69,883.46** |

**Transaction Activity (04/19/2022 to 05/17/2022)**

| Date | Effective Date | Description | Charges | Payments |
|---|---|---|---|---|
| 05/13/22 | | CITY TAX | | $5,305.86 |
| 05/17/22 | | LATE CHARGE ASSESSED | $18.89 | |

**Past Payments Breakdown** *Unapplied funds represent funds that are held in suspense awaiting final application. If this amount represents a partial payment, your payment will be applied upon receipt of the amount required to complete your payment.

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Other | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| *Unapplied Funds | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

**\*\*Delinquency Notice\*\***

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of 05/17/2022 you are 1091 days delinquent on your mortgage loan.

If you are Experiencing Financial Difficulty: You may call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287, or go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of homeowner counselors or counseling organizations in your area.

Recent Account History
*Payment due 12/01/21: Unpaid balance of $1,828.55        *Payment due 03/01/22: Unpaid balance of $1,828.55
*Payment due 01/01/22: Unpaid balance of $1,828.55        *Payment due 04/01/22: Unpaid balance of $1,828.55
*Payment due 02/01/22: Unpaid balance of $1,828.55        *Payment due 05/01/22: Unpaid balance of $1,828.55
*Current Payment due 06/01/22: $1,828.55
*Total: $69,883.46 due. You must pay this amount to bring your loan current.

---

See Reverse Side For Additional Important Information *Please return this portion with your payment*
Make Checks Payable To:                                                                   MO

Ines Rowe-Bryan
Roger Rowe
20 Spruce Rd
Amityville NY 11701-1019

Check this box if your address or personal information has been updated on the reverse of this payment coupon.

**CENLAR** Persons who are deaf, hard of hearing, or have limited speech, may dial 711 TTY.

| | |
|---|---|
| Payment Due Date: | 06/01/22 |
| Current Payment: | $1,828.55 |
| Past Due Amount: | $64,858.80 |
| Unpaid Late Charges: | $453.36 |
| Other Fees: | $2,742.75 |
| **TOTAL AMOUNT DUE:** | **$69,883.46** |
| After 06/17/22 Pay: | $69,902.35 |

Account Number:
4770947259

Amount
Enclosed        $

*Please do not fold, tape or staple check or coupon.*
*Please only use blue or black ink*

PAYMENT PROCESSING CENTER
PO BOX 11733
NEWARK, NJ 07101-4733

| | |
|---|---|
| Late Charge | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Other Fees | $ |
| Total Amount paid | $ |

*See reverse side for explanations*

`0300000477094725900M0BH0510000018285500000184744000006715696000000001889`

-PA 424-

**IMPORTANT INFORMATION**
Please Read Carefully

**Payment Information:**
Payments are due and payable by the Payment Due Date. Payments can be made online through our website (if offered) or you can access our Automated Telephone System by calling the number listed on this statement. If you wish to pay by check, please be sure to:
1. Remove your coupon from the bottom of your loan statement and send it along with your check or money order to the address shown on the coupon.
2. Do not send cash. DO NOT include correspondence with your payment.
3. When sending your monthly payment via overnight carrier, express or certified mail, or if sending a principal payment separate from your monthly payment, please use the following address: Payment Processing 425 Phillips Blvd, Ewing, NJ 08618. When sending a principal payment only, please remember to indicate 'principal only' along with your loan number in the memo section of your check. PLEASE NOTE: Additional principal payments can only be made with, or after your current month's payment. NO principal payments can be applied to loans that are not current.
4. Do not send partial payments. The disposition of a partial payment received may depend on a number of factors including but not limited to: the amount of the partial payment, whether your loan is delinquent, the investor of your loan, whether your loan contains an escrow feature, the number of times a partial payment was received within a 12 month period, whether your loan is being or has been modified. For any of these reasons, a partial payment may be (1) returned to you, (2) applied to your loan, (3) accepted but held in a non-interest bearing unapplied funds account until you send us additional funds sufficient to equal a full periodic payment due.
5. If payment is in excess of the amount due, you must indicate on the coupon how the excess is to be applied. Monies received in excess of the payment due that are not identified for application may be used to make multiple payments, which could make your loan current or 1 month prepaid. Remaining monies may be applied first to any other balances due, such as fees and advances, if permitted by applicable law.
6. We reserve the right to redeposit returned checks. Redeposit and returned check fees will be charged unless prohibited by law.

---

### Important Contact Information

Please include your account number on ALL correspondence. DO NOT SEND correspondence with your payment.

| **Payments** | **Tax Bills** | **Insurance** | **Collections** | **All other Correspondence** |
|---|---|---|---|---|
| PO Box 11733 | Current Tax Bill not | PO Box 202028 | PO Box 77407 | PO Box 77404 |
| Newark, NJ 07101-4733 | needed (please see | Florence, SC 29502-2028 | Ewing, NJ 08628 | Ewing, NJ 08628 |
| | below for details) | mycoverageinfo.com | FAX 609-538-4017 | FAX 609-538-4005 |
| | | PIN: CEN300 | | |

**New York Borrowers only** - Please note that Citi Mortgage Inc is registered with the Superintendent and that complaints about Citi Mortgage Inc may be submitted to the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov.

---

**TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING. THIS LOAN STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION.**

If you are Experiencing Financial Difficulty: You may call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287, or go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of homeowner counselors or counseling organizations in your area.

**Automatic Payment (ACH):**
We offer a free, convenient service that automatically debits your payment each month from your checking or savings account. To take advantage of this service, visit our website (if offered) and complete the Automatic Payment (ACH) Authorization or contact Customer Service directly.

**Payoff Request**
A written request should be submitted in advance for a payoff statement. You may request a payoff statement be faxed to you by calling 1-877-7PAYOFF (1-877-772-9633) (a fee for faxing applies, if permitted by applicable law). Please have available your account number, social security number, the payoff date, and your fax number. No verbal information can be provided.

**Automated Loan Information:**
You can access your loan information 24 hours a day, 7 days a week by calling our Customer Service automated telephone system or by going online at the web address listed on the reverse side of this statement (if offered). Please have your account number and social security number available.

**Servicemembers Civil Relief Act (SCRA):**
Eligible servicemembers and their spouses or civil partners may receive protections under the SCRA. To find out how to determine if you are eligible for protections under SCRA and to receive instructions on how to invoke your rights, please contact us at the number listed.

**Insurance Coverage:**
All loans are required to have adequate property insurance in force at all times, including flood insurance, if the property is situated in a special flood hazard area. Acceptable hazard and standard dwelling insurance coverage amounts are equal to 100% of the full insured value of the improvements, or equal to the loan balance, if greater than 80% of the replacement costs. Flood insurance must equal the lesser of all loan balances, the full structure replacement cost value or NFIP flood coverage maximum for the property type. There may be, at lender discretion, situations where the flood coverage cannot be lower than 80% of the replacement costs. Please consult your insurance agent to determine the adequacy of your coverages. At time of renewal or if changing insurance companies, please direct any evidence of insurance coverage through one of the following methods: through the website at mycoverageinfo.com using PIN: CEN300, by fax (843) 413-7193 or mail to: PO Box 202028 Florence, SC 29502-2028. Failure to provide evidence of adequate insurance may result in the placement of coverage at your expense.

If your property is damaged by fire, flood or by any other cause, you must notify us immediately and we will instruct you on how to proceed.

**Property Taxes:**
If you received your Real Estate tax bill for an item that is included on your Annual Escrow Statement, please keep it for your records as we receive the tax information directly from your taxing authority. It is not necessary to contact or mail us this information. However, if you receive a delinquent tax bill/notice, please forward bill to us at DelinquentTaxes@loanadministration.com for review and handling.

Supplemental tax bills are generally borrowers responsibility as the bills are sent directly to the borrowers from your tax office and no information or reporting regarding these bills are provided to us. However, if your closing agent collected funds at the time of settlement of your loan in anticipation of a supplemental tax bill being issued, then please submit to us for review at SupplementalTaxes@loanadministration.com.

All Tax Exemption requests must be submitted by YOU directly to your tax office. If approved, please forward the documentation to us at TaxExemptions@loanadministration.com.

Any changes made by your tax office to the property covered under this mortgage (i.e. new parcel number, parcel split) must be communicated to us so that our records can be updated. These changes can be submitted via email to tha.tax@loanadministration.com

---

Please print any changes to your name or address below:

Name: _____

Street: _____

City: _____ State: _____ Zip: _____

Home Phone: _____ Business Phone: _____

E-mail Address: _____

Please mark the reason for the change and attach a copy of the recorded document, license, decree, or certificate if applicable.

( ) Address Change   ( ) Name Change   ( ) Marriage   ( ) Divorce   ( ) Death

*Thank You*
*For Your Business*
*Throughout The*
*Year!*



Loan Number:    **4770947259**

Property Address:    **20 SPRUCE RD**
**AMITYVILLE, NY 11701-1019**

Total amount due needed to bring your account current: **$69,883.46**

| Description | Amount |
|---|---|
| Principal/Interest/Escrow: | $66,687.35 |
| Optional Insurance: | $0.00 |
| Late Charge Fees: | $453.36 |
| NSF Fees: | $0.00 |
| MISC Fees: | $16.25 |
| Recoverable Advances: | $2,726.50 |
| Total Amount Due: | $69,883.46 |

Date upon which the total amount due specified above will expire and no longer be sufficient to bring the account current on 06/16/2022

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ROGER ROWE,

                    Plaintiff,

        v.

CENLAR FSB; CITIMORTGAGE, INC.,

                    Defendants.

Case No.: 2:19-cv-7278-JMA-AYS

**DEFENDANTS CENLAR FSB AND CITIMORTGAGE, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR AND INJUNCTION PURSUANT TO RULE FED. R. CIV. P. 65.**

5455562v.2

Defendants, Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (collectively referred to as "Defendants"), submit this Memorandum of Law in opposition to the motion of Roger Rowe ("Rowe" or "Plaintiff") which seeks injunctive relief pursuant to Fed R. Civ. P. 65.

## I.      INTRODUCTION

Rowe commenced this action against Cenlar on December 30, 2019, alleging violations of *inter alia* the Truth in Lending Act ("TILA") and the Fair Debt Collection Practices Act ("FDCPA") before amending his complaint to name CitiMortgage as a defendant. Defendants moved to dismiss the First Amended Complaint, which motion was granted. Rowe then moved for relief from its Judgment dismissing the Amended Complaint, ostensibly seeking reconsideration. That motion was fully briefed and submitted for determination. Rowe now seeks injunctive relief from this Court, requesting that it restrain Defendant from "further collection activity" and award Plaintiff damages pursuant to 15 U.S.C. § 1641. There is no basis for either form of relief, particularly where Rowe's First Amended Complaint has been dismissed.

## II.      FACTUAL BACKGROUND

On or about November 7, 2002, Rowe entered into a Consolidation Extension and Modification Agreement ("CEMA") with Citibank, N.A. (the "Loan"), which created a single lien in the amount of $157,500.00 on the property known as 20 Spruce Road, Amityville, New York 11701-1019 (the "Property"). *See* First Amended Compl. ("Compl."), Ex. B. Plaintiff signed a Truth in Lending Disclosure Statement at the time he signed the CEMA on November 7, 2002. *See* Compl., Ex. L. Effective April 1, 2019, Cenlar began subservicing the Loan on behalf of CitiMortgage. *See* Compl., Ex. F. Plaintiff claimed to have rescinded the Loan pursuant to TILA by correspondence dated October 21, 2019. *See* Compl., Ex. C. Notably, this was nearly seventeen years after Plaintiff entered into the CEMA and signed the Truth in Lending Disclosure Statement.

5455562v.2

-PA 428-

III.   **PROCEDURAL HISTORY**

Plaintiff commenced this action solely against Cenlar on December 30, 2019, alleging violations of TILA, the FDCPA, and fraud. *See* Dkt. No. 1. Cenlar moved to dismiss the complaint on April 28, 2020. *See* Dkt. No. 11. After that motion was fully briefed on June 15, 2020 (*See* Dkt. No. 13), Plaintiff separately moved to amend the complaint on August 6, 2020 (*See* Dkt. No. 14). By Docket Order dated March 15, 2021, the Court granted Plaintiff leave to file an amended complaint and denied Defendants' motion as moot.

On March 22, 2021, Plaintiff filed his First Amended Complaint, which added CitiMortgage as a defendant. Plaintiff asserted causes of action pursuant to TILA, the FDCPA, Breach of Contract, Breach of Fiduciary Duty, and for Aiding and Abetting Fraud. Plaintiff also annexed exhibits to the First Amended Complaint: a July 12, 2019 letter to Plaintiff from Cenlar; a copy of the CEMA; Plaintiff's purported October 21, 2019 Notice of Rescission; a credit report for Plaintiff; an August 22, 2019 payoff statement from Cenlar to Plaintiff; a Notice of Service Transfer letter from CitiMortgage to Plaintiff; a payment history for the Loan; a June 27, 2019 letter from Plaintiff to Cenlar; an August 2, 2019 letter from Cenlar to Plaintiff; a Daily Treasury Yield Curve Rate table; a TILA Disclosure Statement baring Plaintiff's signature; a Good Faith Estimate of Settlement Costs; and a July 19, 2002 letter from CitiMortgage to Plaintiff. *Id.*

On August 11, 2021, Defendants filed a fully briefed Fed. R. Civ. P. 12(b)(6) Motion to Dismiss First Amended Complaint. *See* Dkt. No. 24. Defendants did not annex any documentary evidence to their motion. *Id.* On December 22, 2021, Defendants' motion was granted and Plaintiff's federal claims were dismissed with prejudice, while his state-law claims were dismissed without prejudice. *See* Dkt. No. 25. A judgment dismissing Plaintiff's federal claims with prejudice and state law claims without prejudice was issued on December 29, 2021 (the "Judgment"). *See* Dkt No. 26.

5455562v.2

On January 10, 2022, Rowe filed what was ostensibly a motion for reconsideration of the Judgment. *See* Dkt. No. 27. Defendants opposed the motion on January 19, 2022 (*see* Dkt. No. 28) and the matter was fully briefed for decision on January 28, 2022 (*see* Dkt. No. 29).

**IV.    ARGUMENT**

**A.    Legal Standard.**

A party seeking a preliminary injunction pursuant to Fed. R. Civ. P. 65 must show (1) irreparable harm and either (2) a likelihood of success on the merits or (3) sufficiently serious questions going to the merits to make a fair basis for litigation and a balance of hardships in favor of injunction. *See Communication Workers of America, Dist. One, AFL-CIO v. NYNEX Corp.*, 898 F.2d 887 (2d Cir. 1990); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979).

**B.    Plaintiff Does Not Demonstrate A Single Element Necessary To Obtain An Injunction Pursuant To Fed R. Civ. P. 65.**

The premise of Rowe's instant motion is based upon the Court's dismissal of the First Amended Complaint.   Particularly, Rowe believes that, "[a]lthough the Court determined that Defendants were never assigned or transferred Plaintiff's loan, the Court erroneously dismissed the case." Dkt. No. 30.  Rowe requests injunctive relief "prohibiting Defendants form (sic) further collection activity…" *Id.*  Thus, it would appear that Rowe's likelihood of success on the merits is tied directly to the First Amended Complaint.  As stated above, the First Amended Complaint was dismissed six months ago.  *See* Dkt. No. 25.  This, by definition, demonstrates that Rowe will not be successful on the merits of his claim.

Further, where Rowe claims his likelihood of success rests in his pending motion for "reconsideration", Rowe will fair no better.  Defendants will not reiterate their arguments in

5455562v.2

opposition to the motion, which remains pending before this Court, but requests that they be incorporated by reference. *See* Dkt. No. 28.

Lastly, where Rowe request that the Court "award Plaintiff damages prescribed under 15 U.S.C. § 1641 as a matter of law" (Dkt. No. 30), Defendants note that Rowe lacks an operative complaint from which it can seek damages for an alleged violation of the Truth in Lending Act ("TILA"). Regardless, Rowe fails to allege how the sending of monthly mortgage statements would implicate TILA, much less give way to liability for either Cenlar or CitiMortgage. Whether the Court considers the dismissed First Amended Complaint, the pending Motion for Consideration or the instant motion, Rowe has not demonstrated any likelihood of success on his claims.

Likewise, Rowe does not argue, even in a conclusory manner, how he faces hardship in the absence of a stay. Rowe readily admitted in his First Amended Complaint that he took out the Loan at issue. *See* Dkt No. 19 ¶ 9. Rowe does not deny that he is obligated to make payments under the Loan and does not otherwise allege what hardship he will face if Defendants continue to send regular correspondence related to the Loan. Rowe makes no such allegations because there are none. Thus, Rowe seeks a seemingly indefinite stay of Defendants' ability to send regular correspondence in the normal course of servicing the Loan without demonstrating any likelihood of success or any hardship in the absence of a stay.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court denies Plaintiff's motion to stay Defendants' ability to engage in "collection activities", for damages pursuant to 15 U.S.C. § 1641 and grant such other and further relief as it deems appropriate.

4

5455562v.2

Dated:   June 15, 2022          STRADLEY RONON STEVENS & YOUNG, LLP
         New York, NY            A Pennsylvania Limited Liability Company

                                 By:   */s/ Lijue T. Philip*_____
                                       Lijue T. Philip
                                       100 Park Avenue, Suite 2000
                                       New York, New York  10017
                                       Telephone:  (212) 812-4124
                                       Facsimile:  (646) 682-7180
                                       LPhilip@stradley.com

                                       *Counsel for Cenlar FSB & CitiMortgage,
                                       Inc.*

5455562v.2

5

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on June 15, 2022, I caused the foregoing document to be served on

the below by First Class Mail.

Roger Rowe
20 Spruce Rd
Amityville, New York 11701

s/ *Lijue T Philip*_____
Lijue T. Philip

5455562v.2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ROGER ROWE
        Plaintiff(s)

   -v-

CENLAR FSB, CITIMORTGAGE, INC
        Defendant(s)

2:19-cv-07278-JMA-AYS

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N

★ **JUN 17 2022**

LONG ISLAND OFFIC

## AFFIRMATION/DECLARATION
## MOTION TO COMPEL ORDER AND JUDGMENT

I, Roger Rowe, declare under penalty of perjury that the following facts are made on personal knowledge and are true and correct as required by Rule of Law. I submit this reply in support of my June 8, 2022 motion to compel.

## INTRODUCTION

Counsel's contention that there is no basis for relief is belied by law and the fact pattern of this case. This Court concluded that Plaintiff's loan was never transferred or assigned to Defendants which should have estoppel Defendants motion to dismiss Plaintiff's Fair Debt Collection Practices Act (FDCPA), Truth in Lending Act (TILA) and contract claims.

It should also be noted that Plaintiff is not seeking any form of injunctive relief. Although the result of a proper order and judgment could have the same effect of an injunction, Plaintiff does not seek such injunctive relief. The June 8, 2022 motion merely ask the Court to issue a long overdue decision, order and judgment that is consistent with the Courts findings. Moreover, Defendants cannot justify sending monthly billing statement if they were never assigned or transferred the loan. Plaintiff should not be receiving monthly billing statements from Defendants (see Dkt No 30), these actions clearly violate TILA and FDCPA and should cease immediately.

1

Defendants blatant disregard of the law and their continuous act of deceit has delayed justice and deprived Plaintiff of his fundamental right to property, due process and equal treatment under the law as well as a individuals right to a jury trial. Although the Court has great discretion in determining facts, the facts must be supported by substantial evidence. In this instance the evidence leading to the Courts decision is unsupported by the fact pattern.

The face of the note clearly indicates a qualified indorsement discharging Plaintiff from the underlaying debt. Congress created laws to protect consumers and punish lenders, servicers and debt collecting agents ("Defendants Counsel") from deceptive practices which as falsely stating the type, character or amount owed a debt. Moreover, the law punishes individual we deprive a person under the color of law. Here the Defendants is attempting to utilize the judicial system as a weapon of injustice by insnaring the Court to participate in the deprivation of Plaintiff rights under the color of law.

## I.   ARGUMENT

### A.   Response to Factual Background

The statute allows recession of any credit transaction once there is evidence of a defective disclosure. Here the face of the post commencement disclosure failed to inform Plaintiff of the location or place where the transfer of the of ownership of the debt is recorded (see 15 U.S.C. § 1641(g)(1)(D)). Moreover, the qualified indorsement on the face of the note clearly indicates the indorser's intent to discharge the underlying obligor (see UCC § 3-802(1)(a).

Furthermore UCC § 3-415(5) states that an accommodation party is not liable to the accommodated party and if he pays the instrument has a right to recourse against such party. Here Citimortgage indorsed the instrument as an accommodated party and promising to pay the

2

instrument to Plaintiff the accommodation party. As such Plaintiff is entitled to all the money paid to Citimortgage for the last seventeen years.

**B.      Injunctive Relief**

Counsels claim that Plaintiff's motion to compel the Court to provide a proper order is one to obtain injunctive relief as prescribed under Fed. R. Civ. P. 5., is an incorrect depiction of Plaintiff's motion. The intent of the June 8, 2022 motion was to inform the Court that despite the Courts determination that Defendants were never assigned or transferred Plaintiff loan, Defendants continues to violate FDCPA and TILA by falsely claiming that Plaintiff owes a balance. The motion to compel also informed the Court that although it has been over 120 days since the motion for reconsideration was fully briefed, the Court has yet to render a determination.

Plaintiff's motions clearly inform the Court of a clear legal right owed to Plaintiff. The Court must not allow Defendants to deprive Plaintiff of his property once it is shown that a clear legal right exist. Here not only did the Court violate Plaintiff's right to a jury trial, the Court refused to grant Plaintiff his right to damages for Defendants violation of TILA and FDCPA.

This Court determined that Defendants were neither assignees or transferees of the loan which pursuant to New York law a holder of the note must prove that he is the owner at the time of the action. Based on the Courts determination Defendants clearly violated TILA and FDCPA when it collected payment and failed to rescind the credit transaction dated April 1, 2019. Defendant's continuous attempts to conflate the seventeen year old disclosure with the disclosure requirements related to the April 1, 2019 credit transaction is disingenuous.

That being said the Court should not allow itself to be an unwilling cohort in Defendants despicable scheme to use the judicial system to deprive Plaintiff of his property. Pursuant to 28 U.S.C. §§ 1983, 1985 it is unlawful to deprive a person of his property under the color of law. Any

3

person found guilty of depriving a person in an action at law or a suit in equity is liable to the party for injuries suffered. If the Court allows Defendant to retain an unjust judgment and keep Plaintiffs property, the Court would in essence become a participant in the deprivation. As such Plaintiff as the Court to grant both motions in their entirety and punish Defendants for their perjurious action.

Respectfully

Dated: June 17, 2022

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

cc: Lijue T. Philip
     *Attorney for Defendant*
     LPhilip@Stradley.com via ECF

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROGER ROWE,

                     Plaintiff,

         -against-

CENLAR FSB, CITIMORTGAGE, INC.,

                    Defendants.
------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
19-CV-07278 (JMA) (AYS)

FILED
CLERK

2:11 pm, Aug 25, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Roger Rowe
   *Pro Se Plaintiff*

Lijue T. Philip
Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, New York 10017
   *Attorney for Defendants Cenlar FSB and CitiMortgage, Inc.*

**AZRACK, United States District Judge:**

Currently, before the Court are motions filed by Plaintiff Roger Rowe ("plaintiff") seeking

reconsideration of the Court's Memorandum and Order dated December 22, 2021 (the "Dismissal

Order," ECF No. 25.) For the reasons discussed below, plaintiff's motion for reconsideration is

denied.

## I.  BACKGROUND

The Court assumes familiarity with the facts of this case, which are detailed in the Court's

Dismissal Order that granted the motion to dismiss filed by Defendants Cenlar FSB ("Cenlar")

and CitiMortgage, Inc. ("CitiMortgage") (together, the "defendants"). The following is a brief

summary of those facts relevant to the disposition of the present motions.

1

## A. **Factual Background**

On November 7, 2002, plaintiff entered into a Consolidation Extension and Modification Agreement ("Modification Agreement") with non-party Citibank, N.A. in the amount of $157,500.00 (the "Loan") with respect to refinancing a mortgage on property.  (Dismissal Order at 2.)  That same date, plaintiff signed a Truth-in-Lending Disclosure Statement with respect to the Loan.  (Id.)  Pursuant to a notice of servicing transfer dated March 15, 2019, effective April 1, 2019, Cenlar began servicing plaintiff's Loan on behalf of CitiMortgage.  (Id.)  Plaintiff claimed that he was informed of the transfer of servicing rights on or about July 12, 2019.  (Id.)

Plaintiff failed to make the June 2019 and July 2019 monthly payments on the Loan; at the time, Federal National Mortgage Administration ("FNMA") was the owner of plaintiff's Loan. (Id.)  Plaintiff purported to rescind the Loan by sending Cenlar a notice of rescission on October 21, 2019, claiming violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*  (Id.)

The underlying complaint involved allegations that defendants violated TILA and its implementing regulation, Regulation Z, by failing to provide adequate disclosures and sought damages and rescission of the Loan.  It also alleged a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* against Cenlar as well as state law claims for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud against Cenlar and CitiMortgage.

The Court granted defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  With respect to plaintiff's TILA claims, the Court found that as servicer and subservicer of plaintiff's Loan, CitiMortgage and Cenlar were not owners or assignees of the Loan

and therefore TILA was inapplicable to defendants as they had no ownership interest in the Loan.[1] (Id. at 5.)

The Court further found that plaintiff's claim of rescission was time barred. Plaintiff contended that he rescinded the Loan on October 21, 2019. (Id. at 6.) However, pursuant to TILA's requirements, plaintiff's right to rescind the Loan expired on November 10, 2002, three days after he received the fully executed November 7, 2002 Truth-in-Lending Disclosure Statement. (Id.) The Court noted that even if plaintiff was not provided with the Truth-in-Lending Disclosure Statement on November 7, 2002, plaintiff's right to rescission would have expired on or about November 7, 2005 – fourteen years prior to plaintiff's alleged rescission on October 21, 2019. (Id.) The Court rejected plaintiff's contention that the April 1, 2019 loan servicing transfer extended his right to rescind the Loan, reasoning that this transaction was not a transfer of ownership of the loan, but rather a transfer of loan servicing rights. (Id. at 7.)

With regard to plaintiff's FDCPA claim against Cenlar, the Court found that Cenlar was not a debt collector within the meaning of the FDCPA and therefore plaintiff failed to state a claim. (Id. at 8.) Specifically, the Court found that plaintiff failed to allege that the Loan was in default at the time Cenlar began servicing the debt. (Id.) According to the exhibits attached to plaintiff's complaint, the Loan was not in default until June 2019, two months after Cenlar began servicing the Loan. (Id.)

Because the Court dismissed plaintiff's federal claims, it declined to exercise supplemental jurisdiction of his state law claims in accordance with 28 U.S.C. § 1367(c)(3). (Id. at 9.) Ultimately, the Court dismissed plaintiff's federal claims with prejudice denying him leave to amend his complaint a second time. (Id. at 9-10.)

---

[1] The Court also noted that plaintiff's TILA claim for damages was time barred because TILA's statute of limitations is one-year from the date of the alleged violation and had therefore expired. (Id. at 7 n. 3.).

3

## B. Procedural Background

On December 30, 2019, plaintiff commenced this pro se action against Cenlar alleging violations of TILA, the FDCPA, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and various state law claims. (ECF No. 1.)  On April 28, 2020, Cenlar filed a motion to dismiss plaintiff's complaint. (ECF No. 11.)  After the motion was fully briefed by both parties (ECF Nos. 12, 13), on August 6, 2020, plaintiff filed a motion to amend the complaint (ECF No. 14) which the Court granted.  (Docket Entry Order dated March 15, 2021).  On March 22, 2021, plaintiff filed his First Amended Complaint ("FAC") alleging violations of TILA, as well as state law claims for conversion, breach of contract, breach of fiduciary duty and aiding and abetting fraud against Cenlar and CitiMortgage. (ECF No. 19.)  The FAC also alleged a FDCPA claim against Cenlar.  As relief, plaintiff requested that the Court declare the Loan void and demanded the return of monies paid, damages, costs and attorney fees.  On December 22, 2021, the Court issued a Memorandum and Order granting defendants' motion to dismiss (Dismissal Order), and on December 29, 2021, the Court entered a judgment dismissing plaintiff's federal claims with prejudice and his state law claims without prejudice. (ECF No. 26.)

Thereafter, on January 10, 2022, plaintiff moved pursuant to Rules 52(a), 52(b), 59(a) and 60(b) of the Federal Rules of Civil Procedure for reconsideration of the Court's Dismissal Order. (ECF No. 27.)  On January 19, 2022, defendants opposed plaintiff's motion for reconsideration (ECF No. 28), and on January 28, 2022, plaintiff filed a reply in further support of his motion. (ECF No. 29.)  On June 8, 2022, plaintiff filed a letter requesting that the Court prohibit defendants from collecting on the Loan and reiterating his claim for damages. (ECF No. 30.)  Defendants filed an opposition on June 15, 2022, interpreting plaintiff's letter as a motion for preliminary injunction, pursuant to Federal Rule of Civil Procedure 65. (ECF No. 31.)  On June 17, 2022,

4

plaintiff filed a reply labeled "motion to compel order and judgment" explaining that he was not seeking injunctive relief but rather was moving "to compel the Court to provide a proper order" with regard to his motion for reconsideration.  (ECF No. 32.)

## II. **DISCUSSION**

### A. **Standard of Review**

"Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order and provides six independent grounds for relief." Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005).  The Second Circuit has instructed that Rule 60(b) is "a mechanism for 'extraordinary judicial relief' invoked only if the moving party demonstrates 'exceptional circumstances.'" Greer v. Mehiel, No. 19-326-CV, 2020 WL 1280679, at *3 (2d Cir. Mar. 17, 2020) (summary order) (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court . . . ." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation and citation omitted).  Moreover, such a motion "may not be used as a substitute for appeal." Manney v. Intergroove Media GMBH, No. 10-CV-4493, 2014 WL 1224171, at *1 (E.D.N.Y. Mar. 24, 2014).  Rule 60(b) provides:

> [o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

Relief under the catch-all provision of Rule 60(b)(6) is reserved for cases presenting "extraordinary circumstances." See Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001). As the "Second Circuit has instructed, a 'court may treat a motion to vacate a prior judgment as having been made under 60(b)(6) *only if the other, more specific grounds for relief encompassed by the rule are inapplicable.*'" Azkour v. Little Rest Twelve, No. 10-CV-4132, 2017 WL 1609125, at *4 (S.D.N.Y. April 28, 2017) (quoting Maduakolam v. Columbia Univ., 866 F.2d 53, 55 (2d Cir. 1989)) (emphasis in original); Stevens, 676 F.3d at 67-68 ("Where a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed.") (quoting States v. Cirami, 535 F.2d 736, 740 (2d Cir. 1976)).

Although a pro se motion is read liberally and interpreted to raise the strongest arguments suggested, "a pro se litigant is not excused from the requirement of producing highly convincing evidence to support a Rule 60(b) motion." Alvarado v. Manhattan Worker Career Ctr., No. 01-CV-9288, 2003 WL 22462032, at *2 (S.D.N.Y. Oct. 30, 2003); accord Hall v. N. Bellmore Sch. Dist., 08-CV-1999, 2016 WL 4005792, at *2 (E.D.N.Y. July 25, 2016).

**B. Plaintiffs' Motion for Reconsideration Lacks Merit**

Plaintiff moves to reopen his case pursuant to Federal Rule 60(1), (3) and (6).[2]

As discussed above, Rule 60(b) is "extraordinary relief" and can be granted "only upon a showing of exceptional circumstances."[3] Greer, 2020 WL 1280679, at *3. "Rule 60(b)(1) motions

---

[2] Plaintiff also moves the Court pursuant to Federal Rules of Civil Procedure 52(a)(6), 52(b), 59(a)(1)(B) and 59(a)(2) for relief from its judgment, for a new trial and, in the alternative, to amend its findings. However, these rules do not apply as there was no trial in this case. See FED. R. CIV. P. 52, 59. The Court notes that Federal Rule of Civil Procedure 59(e) is also inapplicable here as plaintiff has not pointed to any "matters or controlling decisions" that were overlooked by the Court and which would have influenced the Court's prior decision. See Merchant v. Long Island Newsday LLC, No. 14-CV-1674, 2014 WL 6085939, at *1 (E.D.N.Y. Nov. 13, 2014) (citing Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

[3] As discussed above, "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply." ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 109 (2d Cir. 2012). Therefore, given plaintiff's contentions constitute grounds for relief recognized in Rule 60(b)(1) and (3), the Court finds that relief under Rule 60(b)(6) is not applicable

6

premised upon 'mistake' are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order." Lugo v. Artus, No. 05-CV-312298, 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) (internal quotation and citation omitted). However, "mere disagreement" with a court's resolution of legal and factual issues does not amount to an "exceptional circumstance" that warrants Rule 60(b)(1) relief. Williams v. Artus, No. 06–CV–356, 2008 WL 4516241, at *2 (W.D.N.Y. Oct. 2, 2008). Additionally, "Rule 60(b)(1) will not provide a movant an additional opportunity to make arguments or attempt to win a point already 'carefully analyzed and justifiably disposed.'" Azkour, 2017 WL 1609125, at *4 (quoting In re Bulk Oil (USA) Inc., Nos. 93-CV-4492, 4494, 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007)).

Further, pursuant to Rule 60(b)(3), a district court may vacate a final judgment where an adverse party used fraud, misrepresentation, or misconduct in obtaining the judgment. FED. R. CIV. P. 60(b)(3); State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004). However, "a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989). Additionally, a Rule 60(b)(3) movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." State St. Bank, 374 F.3d at 176 (internal quotation marks and citation omitted).

---

here. However, even if plaintiff's asserted grounds for relief did not fall within clause (1) or (3) of the Rule, the circumstances here do not justify relief under Rule 60(b)(6). Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) ("[The] catch-all provision of Rule 60(b)(6) allows courts to vacate judgments whenever necessary to accomplish justice, although such relief should be granted only in extraordinary circumstances."); Manney, 2014 WL 1224171, at *7 ("[A] claim that the decision was wrong [is] not sufficiently extraordinary" to warrant relief under Rule 60(b)(6)) (citing United Airlines, Inc. v. Brien, 588 F.3d 158, 177 (2d Cir. 2009)).

The Court finds that plaintiff has not met the demanding standard for reconsideration under either Rule 60(b)(1) or (3).

Plaintiff contends that the Court "erred as a matter of law when it granted summary judgment based on hearsay evidence" because "[d]efendants failed to provide affidavits from a person with personal knowledge" and "fail[ed] to annex a statement of fact to [their] motion" pursuant to Local Rule 56.1. (Pl. Mot. at 10-11, 32-33.) He also claims that the Court erred when it "failed to observe plaintiff's recission claim against the March 15, 2019 'credit sale.'" (Id. at 11.) Finally, plaintiff contends that "[t]he Court's determination that [d]efendants were not the assignee nor transferee of the note and mortgage also proves that defendants misrepresented the existence of a debt and their right to collect the debt," and "precludes [d]efendants from enforcing the note or mortgage as a matter of law." (Id. at 13.) Therefore, plaintiff contends that because the defendants never owned the Loan, the defendants fraudulently took plaintiff's property. (Id. at 14.)

As a preliminary matter, the Court notes that plaintiff's contentions are based on his mistaken belief that the Court based its Dismissal Order on evidence outside "the four corners" of the FAC. Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998) (In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint.") However, in reviewing a motion to dismiss, the Court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Here, in ruling on the motion, the Court considered the plaintiff's FAC and the documents attached thereto. (See Dismissal Order at 2 n. 1 ("The following facts are taken from plaintiff's FAC and the exhibits attached thereto, and are undisputed, unless otherwise indicated. See Sira v.

8

-PA 445-

Morton, 380 F.3d 57, 67 (2d Cir. 2004).")) Specifically, the Court's Dismissal Order references the following documents which were attached to plaintiff's FAC: the November 7, 2002, Modification Agreement between plaintiff and Citibank, N.A. with respect to the $157,500.00 Loan, including copies of the Note and the Mortgage (Ex. B), a letter dated July 12, 2019 from Cenlar to plaintiff explaining that plaintiff's Loan is currently owned by FNMA and that the loan servicing would be transferred from CitiMortgage to Cenlar effective April 1, 2019 (Ex. A), plaintiff's October 21, 2019 letter to Cenlar purporting to rescind the Loan (Ex. C), a March 15, 2019 Notice of Servicing Transfer (Ex. F), and the November 7, 2002 Truth-and-Lending Disclosure Statement (Ex. L). Based on these documents, *submitted by plaintiff*, the Court determined that plaintiff's FAC failed to state a claim for violations of TILA and the FDCPA.

Contrary to plaintiff's contentions, defendants did not submit any documents in support of their dismissal motion. (See ECF No. 24.) Moreover, as the underlying motion was for dismissal, not for summary judgment, defendants were not required to submit a Rule 56.1 statement of material facts nor an affidavit.

Further, plaintiff's argument that "the Court overlooked or inadvertently misunderstood plaintiff's claims when it associated the claims to the November 7, 2002 credit transaction in lieu of the April 1, 2019 transaction" was already addressed and rejected by this Court. (Pl. Mot. at 22.) As the Court's Order explains, the April 1, 2019 "transaction" was merely a transfer in loan servicers, not a "credit sale contract agreement" as plaintiff argued. (Order at 5 (citing FAC, Ex. F.)) The Court rejected plaintiff's contention that the April 1, 2019 loan servicing transfer extended his right to rescind the Loan, reasoning that this transaction was not a transfer of ownership of the loan, but rather, a transfer of loan servicing rights. (Id.). Notably, plaintiff's new filings do not allege any additional facts in support of his claims, but rather attempt to relitigate

the same argument that the Court already disposed of in its prior Order.  See Shrader v. CSX

Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted

where the moving party seeks solely to relitigate an issue already decided.")  Thus, plaintiff fails

to demonstrate that the Court has made a mistake of law or fact in its Dismissal Order.

With respect to Rule 60(b)(3), plaintiff attempts to circumvent the Court's Order by

arguing that because the Court found that defendants were never transferred or assigned the Loan,

defendants engaged in fraud in seeking to collect on the debt obligation in violation of TILA.  (Pl.

Mot. at 40-41.)  However, plaintiff has not provided any evidence, much less "clear and convincing

evidence, of fraud, misrepresentation or misconduct on the part of defendants.  Moreover, plaintiff

does not contend that defendants' collection efforts "prevented him from fully and fairly presenting

his case."  State Steet, 374 F.3d at 176.  Thus, plaintiff's motion based on Rule 60(b)(3) fails on

the merits.

Therefore, as plaintiff fails to demonstrate "exceptional circumstances" warranting

"extraordinary judicial relief" pursuant to Rule 60(b)(1) or (3), plaintiff's motion for

reconsideration is DENIED.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiff seek in forma

pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good

faith and therefore in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S.

438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the <u>pro</u> <u>se</u> plaintiff.

**SO ORDERED.**

Dated: August 25, 2022
Central Islip, New York

       **/s/ (JMA)**
Joan M. Azrack
United States District Judge

11

**-PA 448-**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 26 2022 ☆

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ROGER ROWE
       Plaintiff(s)
  -v-
CENLAR FSB, CITIMORTGAGE, INC
       Defendant(s)

**Case No. 2:19-cv-07278-JMA-AYS**

**NOTICE OF APPEAL**

Notice is hereby given that, Roger Rowe (Plaintiff) in the above-named action, hereby appeal to the United States Court of Appeals for the Second Circuit from the following (final order dated August 25, 2022 ECF 33) which denied Plaintiff's motion to vacate the court's (December 22, 2021 order dismissing Plaintiff's complaint ECF 25) as well as the courts (final judgement dated December 29, 2021).

Signed this 26th day of August, 2022.

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

To: Lijue T. Philip
    Stradley Ronon Stevens & Young, LLP
    *Attorney for the Plaintiff*
    *Cenlar FSB & CitiMortgage*
    100 Park Avenue, Suite 2000
    New York, New York 10017
    Tel: (212) 812-4124
    lphilip@stradley.com

1

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

ROGER ROWE
   Plaintiff(s)
 -v-
CENLAR FSB, CITIMORTGAGE, INC
   Defendant(s)

**CERTIFICATE OF SERVICE***

**Case No. 2:19-cv-07278-JMA-AYS**

I, Roger Rowe, hereby certify under penalty of perjury that on August 26, 2022, I served a copy of my Notice of Appeal

☐Personal Delivery ☐United States Mail ☐ Federal Express or other

☒Overnight Courier☐Commercial Carrier ☐E-Mail (on consent)

on the following parties:

Lijue T. Philip 100 Park Avenue, Suite 2000 New York, New York 10017

e-mail lphilip@stradley.com

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

Today's Date 08/26/2022

Roger Rowe
Pro Se
20 Spruce rd
Amityville, NY 11701
Tel: (631) 767-6537
rroweny@gmail.com

Generated: Aug 26, 2022 1:20PM

Page 1/1

# U.S. District Court

## New York Eastern - Central Islip

Receipt Date: Aug 26, 2022 1:20PM

Roger Rowe
Central Islip, NY 11722

Rcpt. No: 200000230                    Trans. Date: Aug 26, 2022 1:20PM                    Cashier ID: #JB

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|---------------------|-----|-------|-----|
| 203 | Notice of Appeal/Docketing Fee | | 1 | 505.00 | 505.00 |

| CD | Tender | | | | Amt |
|----|--------|--|--|--|-----|
| MO | Money Order | #5632 | 08/26/2022 | | $505.00 |

| | |
|---|---|
| Total Due: | $505.00 |
| Total Tendered: | $505.00 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

Comments: 19CV7278

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

-PA 451-